# Exhibit A

FILED
4/23/2026 11:10 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH03888
Calendar, 11
37731804

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS,
CHANCERY DIVISION**

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No.: **2026CH03888** |
| BADGER MUTUAL INSURANCE ) | |
| COMPANY ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT**

Plaintiff, Scottsdale Insurance Company ("Scottsdale"), by and through its undersigned

counsel, as and for its Complaint against Badger Mutual Insurance Company ("Badger"), states as

follows:

**NATURE OF THE ACTION**

1.      Scottsdale seeks a determination that Badger breached its duties to its insured,

Benny's Prime Chophouse, LLC ("Benny's Chophouse"), and to Scottsdale, an excess insurer with

a policy directly in excess of the Badger Policy, and that as a result of those breaches, (1) Scottsdale

is equitably subrogated to the rights of non-party Benny's Chophouse against Badger, and (2)

Scottsdale is entitled to equitable indemnification from Badger.

2       Badger's breaches of its duties to Benny's Chophouse and Scottsdale arise from

Badger's failure to settle the Underlying Action (defined herein) within the limits of liability of

the policy it issued to Benny's Chophouse, despite having had multiple opportunities to do so.

3.      As a result of the breaches by Badger, Scottsdale paid approximately $2.6 million

towards the satisfaction of the judgment entered against Benny's Chophouse in the Underlying

Action, which it should not otherwise have been required to pay but for Badger's failure to settle the claim within its limits.

## JURISDICTION AND VENUE

4. This is an action seeking equitable relief.

5. The Court has subject matter jurisdiction because the alleged acts or omissions giving rise to the cause of action arose in Chicago, Illinois.

6. Plaintiff Scottsdale is an Ohio corporation with its principal place of business in Scottsdale, Arizona.

7. Defendant Badger is a Wisconsin insurance company with its principal place of business in Milwaukee, Wisconsin.

## THE UNDERLYING INCIDENT

8. Angel Rivas worked as a busboy at Benny's Chophouse, located in the City of Chicago, Cook County, Illinois.

9. On April 12, 2010, after clocking out from his shift at Benny's Chophouse, Mr. Rivas, who was allergic to seafood, ate an employee meal at Benny's Chophouse, apparently not realizing it contained seafood.

10. Mr. Rivas suffered an allergic reaction and was transported to the hospital, where he died from anaphylactic shock.

11. Mr. Rivas, at the age of forty-three, left behind a wife, and four children, one of whom is severely disabled.

12. At the time of the incident, Badger provided a commercial package policy to Benny's Chophouse ("Badger Policy"), which contained primary limits of liability of $1 million

FILED DATE: 4/23/2026 11:10 AM    2026CH03888

(the "Badger Primary Limit"), and which contained first layer excess limits of liability of $2 million (the "Badger Excess Limit"). A copy of the Badger Policy is attached as **Exhibit A**.

13. At the time of the incident, Scottdale provided excess insurance to Benny's Chophouse over and above the Badger Primary Limit and the Badger Excess Limit, with policy limits of $3 million (the "Scottsdale Policy"). A copy of the Scottsdale Policy is attached as **Exhibit B**.

14. On April 14, 2010, a manager at Benny's Chophouse notified Scottsdale of a potential claim.

15. On April 21, 2010, Scottsdale issued a reservation of rights letter to Benny's Chophouse, noting that the Badger was the primary general liability and employers liability insurer, that Badger also provided the first layer of excess insurance, and that the Scottsdale Policy applied in excess of the Badger Policy.

## THE UNDERLYING ACTION AND SETTLEMENT COMMUNICATIONS

16. On April 10, 2012, Luz Rivas (wife of Mr. Rivas), individually and as special administrator of the Estate of Angel Rivas ("Plaintiff"), filed a Complaint against Benny's Chophouse styled as *Luz Rivas, individually and as special administrator of the Estate of Angel Rivas v. Benny's Prime Chophouse LLC, et al.*, Case No. 2012 L 003805, in the Circuit Court of Cook County, Illinois, Law Division (the "Underlying Action").

17. The Complaint alleges that Benny's Chophouse and its agents were aware of Mr. Rivas' allergy to seafood, and that they prepared and served Mr. Rivas seafood without his knowledge.

18. The Complaint further alleges that Mr. Rivas sustained internal and external injuries, suffered pain and anguish, and was caused to suffocate and die.

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

19.     The Complaint alleges counts for Negligence, Survival Action, Wrongful Death, Loss of Consortium, Res Ipsa Loquitor, and Strict Liability against Benny's Chophouse and sought damages in excess of $50,000, costs of the suit, and medical, hospital, funeral, and burial expenses incurred pursuant to the Family Expense Statute.

20.     Badger provided a defense of Benny's Chophouse since the inception of the Underlying Action, and the same defense counsel ("Defense Counsel") has been defending the case for Benny's Chophouse since that time.

21.     On October 7, 2013, Plaintiff's counsel made a demand to Defense Counsel for the Badger Primary Limit of $1,000,000, and stated that if the demand was not accepted, that Plaintiff would be looking to Badger for bad faith and to Benny's Chophouse individually for any amount awarded in excess of the Badger Primary Limit.

22.     The Underlying Action was stayed from May 12, 2015 through November 8, 2017, while Plaintiff's counsel pursued a Worker's Compensation case.

23.     In September 2016, Plaintiff's counsel made a settlement demand for $350,000 to settle the Underlying Action as part of a global settlement with the workers' compensation claim, for a total amount of $850,000. Badger informed Defense Counsel that Badger would not "throw any more than $20k at the case as a cost of defense measure".

24.     On November 9, 2017, the case was renumbered to Case No. 2017 L 011400 in Law Division of the Circuit Court of Cook County, Illinois.

25.     On March 19, 2018, Plaintiff's counsel renewed a Badger Primary Limit demand of $1,000,000 and indicated that she had never heard back from Defense Counsel to her previous policy limit demand of October 7, 2013. Badger rejected the demand without a counteroffer.

26. Per Badger's directive, Benny's Chophouse's counsel offered $50,000 to settle the matter in its entirety in July 2019.

27. On August 8, 2019, Badger sent an update of the case via letter to Benny's Chophouse. The letter stated that the Badger Policy provides $1,000,000 in general liability coverage and provides $2,000,000 in excess coverage. It stated that Benny's Chophouse may recall that Plaintiff made a $1,000,000 demand, but that Badger did not believe Benny's Chophouse had fault for the death of Angel Rivas, rejected the demand, and offered $50,000. Badger stated that it suggested mediation to Plaintiff, but that was rejected.

28. The Badger letter also stated that the case would proceed to trial in September and that any verdict in excess of the Badger Policy limits would not be paid by Badger, and would be Benny Chophouse's responsibility, unless it had other insurance coverage.

29. On September 5, 2019, Scottsdale sent correspondence to Badger disagreeing with the analysis set forth in its August 8, 2019, letter. Scottsdale highlighted that the following factors, as developed through discovery, could have contributed to Angel Rivas' death and therefore could lead to a finding of culpability on the part of Benny's Chophouse: (a) one of the Benny's Chophouse cooks knew that Mr. Rivas was severely allergic to seafood but did not warn him that the food served to him contained seafood; and (b) there was no protocol in place for protecting employees from exposure to allergens; and (c) a large amount of time elapsed from when Mr. Rivas was exposed to the toxins to when the paramedics arrived.

30. The September 5, 2019, letter from Scottsdale also disagreed with Badger's position that Benny's Chophouse would be responsible for any excess verdict, noting that an insurer that fails to settle a claim where there is a demand within the policy limits may be liable for the full amount of the judgment regardless of policy limits.

31. Additionally, Scottsdale indicated that since Badger failed to settle the case within the $1,000,000 Badger Primary Limit when it had the opportunity to do so, Scottsdale would be allowed to recover any portion of a judgment against Benny's Chophouse in excess of the Badger Policy limits which it becomes obligated to pay.

32. The September 5, 2019, letter from Scottsdale to Badger set forth Scottdale's belief that Badger had placed its interest ahead of both its insured, Benny's Chophouse, and Scottsdale, as excess carrier, and demanded that Badger immediately settle the matter within the combined $3 million limits of the Badger Policy.

33. On September 11, 2019, the Underlying Action was voluntarily dismissed with leave to refile.

34. On October 1, 2019, Badger offered $50,000 to settle the Underlying Action.

35. On August 10, 2020, Plaintiff refiled her First Amended Complaint at Law in Law Division of the Circuit Court of Cook County, Illinois and the case was renumbered to 2020 L 008455. The First Amended Complaint was substantively the same as the initial Complaint and alleged the same counts against Benny's Chophouse.

36. On April 5, 2022, Scottsdale issued another letter to Badger demanding it settle within the $3,000,000 limits of the Badger Policy.

37. On September 13, 2022, Plaintiff's counsel made a policy limit demand of the Badger Primary Limit and Badger Excess Limit, for a total of $3,000,000, stating that the last demand for $1,000,000 was based on representations in Benny's Chophouse's Answers to Interrogatories that there was only $1,000,000 in insurance available, and that Plaintiff's counsel became aware of the $2,000,000 in excess insurance just prior to the first trial setting. The demand

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

again alleged that Plaintiff would be looking to the insurance company for bad faith and Benny's Chophouse individually for any amount awarded in excess of the policies.

38.     On September 14, 2022, Defense Counsel informed Badger and Scottsdale that Plaintiff's counsel recently informed him that the workers compensation carrier had offered $300,000 to settle the workers compensation case and suggested that the $300,000 offer be matched.

39.     On September 22, 2022, Scottsdale corresponded with Defense Counsel, copying Badger, stating that settling a fatality case for $300,000 seemed very reasonable if given the opportunity.

40.     During the bench trial that took place during September and October of 2022, Defense Counsel submitted an update to Badger and Scottsdale, indicating that he no longer had optimism that they could obtain a defense verdict, and that he believed that the judge would find for Plaintiff and award several million dollars, and that the award would be reduced substantially by comparative negligence.

41.     After the last day of trial concluded on October 3, 2022, Defense Counsel sent another update to Badger and Scottsdale providing them with Plaintiff's requested damages at trial of $8,948,880, and that Defense Counsel had responded with proposed damages of $1,284,380, in the event that the Court did not find that decedent's comparative negligence as greater than 50%. Defense Counsel indicated that he believed that the Court would likely not find that decedent was more than 50% at fault, that a judgment against Benny's Chophouse was likely, and recommended attempting to settle the case.

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

42.     Badger ignored the advice of Defense Counsel, who indicated that an adverse judgment was likely, that potential damages were likely in excess of the Badger Policy's combined limits, and that Badger should attempt to settle the case.

43.     Then, on November 16, 2022, consistent with the advice of Defense Counsel, the trial judge[1], did in fact, enter a Judgment Order in favor of Plaintiff and against Benny's Chophouse for an amount well in excess of the Badger Policy's limits, namely $8,205,192, offset by Plaintiff's 45% contributory negligence, for the sum of $4,512,856, plus costs.

44.     On December 29, 2022, Scottsdale sent Badger a letter outlining Defense Counsel's October 3, 2022, correspondence, which conveyed that Benny's Chophouse would likely lose, that a verdict significantly exceeding the limits of the Badger Policy was likely, and that recommended that attempts be made to settle the case.

45.     The Scottsdale letter noted that Badger had ignored Defense counsel's advice, and that Badger had done nothing to try to settle the case during the approximately six weeks between the end of trial and the entry of judgment Benny's Chophouse in the amount of $4,512,856.

46.     The letter also outlined the many opportunities Badger had to reasonably settle within the limits of the Badger Policy, and demanded that Badger undertake all reasonable and necessary efforts to try to settle within its limits.

47.     Benny's Chophouse subsequently filed its Notice of Appeal, and on September 29, 2023, the Appellate Court reversed the November 16, 2022, Judgment Order of the trial court.

48.     On January 10, 2024, Plaintiff made a total policy limit demand (inclusive of the Badger Policy's and Scottsdale Policy's limits) for $6 million.

---

[1] The Underlying Action was tried before a trial judge since neither party filed a jury demand.

49. On January 23, 2024, Scottsdale responded to the total policy limit demand stating that there has not been exhaustion of the underlying policy since Badger had not accepted the demand nor otherwise exhausted its limits.

50. On May 31, 2024, Scottsdale again sent Badger a letter setting forth the many opportunities it had to settle the Underlying Action within the Badger Policy's limits, its failure to do so, and a demand to undertake all reasonable and necessary efforts to settled within the Badger limits.

51. The Underlying Action was remanded for a new trial, which occurred in September 2024.

52. On September 12, 2024, Scottsdale sent Badger another letter noting that it was Scottsdale's understanding that prior to the new trial beginning on September 9, 2024, that Plaintiff demanded $6 million, which was lowered to $4 million and then $3.4 million during settlement discussions facilitated by the Court on September 9, 2024. The most Badger offered during these settlement discussions was $350,000.

53. Scottsdale also noted that it had learned that during trial on September 10, 2024, Plaintiff's counsel indicated that the matter could settle for $1.2 million, which is an amount well within the Badger Policy's combined $3 million limits.

54. Despite Scottsdale again demanding that Badger immediately undertake all reasonable and necessary steps to settle the matter within the Badger limits, the most Badger offered during the second trial was $450,000.

55. The second trial concluded and, on September 30, 2024, Judge Cushing entered a Judgment Order in favor of Plaintiff and against Benny's Prime Chophouse LLC in the amount of

$8,064,380, offset by Plaintiffs' 40% contributory negligence, for the sum of $4,838,628, plus costs and pre-judgment interest.

56.     On October 1, 2024, Badger notified Scottsdale that it offered $500,000 to Plaintiff.

57.     Despite Defense Counsel being less optimistic about success on appeal than he was following the first trial, Badger filed an appeal on October 15, 2024.

58.     On October 15, 2024, Scottsdale sent another letter to Badger reiterating its demand that Badger make all reasonable and necessary efforts to settle the matter within the Badger limits and that if judgment were upheld, Scottsdale would demand that Badger fund the entirety of the $4,838,628 judgment, plus costs and pre- and post-judgment interest, due to Badger's bad faith failure to resolve the matter within its limits when it had many clear opportunities to do the same.

59.     On October 24, 2024, the September 30, 2024 Judgment order was amended to include specific sums for prejudgment interest and costs, with the initial judgment against Benny's Chophouse remaining $4,838,628, plus pre-judgment interest in the amount of $943,332.54, and recoverable costs of $389.31, for a total of $5,782,349.85.

60.     On November 19, 2024, Scottsdale sent Badger another letter outlining Badger's irresponsible conduct to date regarding settlement efforts concerning the Underlying Action, and the fact that Badger never offered more than $500,000 as indicative of its reckless conduct. Scottsdale again demanded that Badger attempt to settle the Underlying Action within the Badger Policy's limits.

61.     On June 26, 2025, Scottsdale was made aware that Badger offered $2.5 million to settle the Underlying Action, and Plaintiff responded with a demand of $5,261,494.90.

62.     On July 1, 2025, Badger offered $3 million to settle the Underlying Action, and Plaintiff responded with a $5.1 million demand. Upon information and belief, Badger did not respond to that demand.

63.     On July 31, 2025, Scottsdale sent Badger a letter outlining all of the opportunities Badger had to settle within the limits of the Badger Policy, its continued bad faith, and demanded that Badger pursue settlement and pay the entirety of any demand.

64.     The Court affirmed the trial court's judgment in its entirety on September 30, 2025.

65.     On October 10, 2025, Scottsdale sent Badger a letter stating that it was Scottsdale's understanding that Defense Counsel believes there is an extremely small chance the Illinois Supreme Court will even hear the case if a Petition for Leave to Appeal is filed and that post-judgment interest will continue to accrue until the judgment is paid. Scottsdale demanded that Badger pay the judgment in its entirety and without delay to avoid further accrual of post-judgment interest. The letter further stated that Badger's unreasonable conduct ultimately resulted in a verdict in excess of the limits on two separate occasions and that Badger is obligated to pay the full judgment in light of its bad faith failure to settle.

66.     Despite Scottsdale's October 10, 2025, letter, on November 4, 2025, Benny's Chophouse filed a Petition for Leave to Appeal with the Supreme Court of Illinois.

67.     On January 28, 2026, the Supreme Court of Illinois denied Benny Chophouse's Petition for Leave to Appeal.

68.     On March 18, 2026, Badger paid $3,965,939.81, representing the Badger limits, pro-rata pre-judgment interest, costs, and post-judgment interest.

69.     On March 25, 2026, Scottsdale paid $2,587,759.19, representing the remaining amount owed on the judgment, pro-rata pre-judgment interest, and post-judgment interest. In

submitting this payment, Scottsdale reserved its right to file this action seeking to hold Badger liable for the entirety of the judgment, all pre- and post-judgment interest, and costs for its bad faith failure to settle.

## COUNT I
### Equitable Subrogation Bad Faith

70.     Scottsdale incorporates by reference herein paragraphs 1 through 69 as if the same were fully set forth at length.

71.     Badger controlled both the defense in the Underlying Action and the settlement process.

72.     Badger owed an obligation to Benny's Chophouse to handle the defense of the Underlying Action, and to attempt to settle the Underlying Action, in good faith.

73.     Scottsdale, as an excess insurer, was required to make a significant payment toward the judgment rendered against Benny's Chophouse and the accumulated post-judgment interest as a result of Badger's wrongful and bad faith failure to settle the Underlying Action for an amount within the Badger Primary Limit of $1 million, and/or the Badger Policy's combined limits of $3 million, when it had multiple opportunities to do so.

74.     Despite there being a reasonable (if not likely) probability of liability and a reasonable (if not likely) probability of a verdict in excess of the Badger Policy's combined limits, Badger repeatedly failed to settle within its limits when it had the opportunity to do so.

75.     Badger breached its duty to Benny's Chophouse to settle within its limits when it had multiple, reasonable opportunities to do so.

76.     As a result of Badger's breach of its duty to Benny's Chophouse, Scottsdale was required to protect the interests of Benny's Chophouse and pay approximately $2.6 million in excess of the Badger Primary Limit and Excess Limit in order to satisfy the judgment.

FILED DATE: 4/23/2026 11:10 AM 2026CH03888

77. Consistent with equitable subrogation rights afforded to Scottsdale under Illinois law, Scottsdale is permitted to be subrogated to the rights of Benny's Chophouse against Badger, and Scottsdale is entitled to recover from Badger the amounts incurred by Scottsdale as a result of Badger's bad faith failure to settle the Underlying Action within its limits.

78. Scottsdale therefore is entitled to recover that amounts it paid to satisfy the judgment, along with all pre- and post-judgment interest, in the Underlying Action, which totals $2,587,759.19, in addition to other damages, such as unnecessary attorneys' fees and costs incurred due to the bad faith refusal of Badger to settle or tender its policy limits.

WHEREFORE, Scottsdale seeks a judgment in its favor and against Badger, in the amount of $2,587,759.19, plus interest, attorneys' fees and costs, and for such other relief as this Court deems just and proper.

## COUNT II
### Equitable Subrogation Negligence

79. Scottsdale incorporates by reference herein paragraphs 1 through 78 as if the same were fully set forth at length.

80. Badger owed an obligation to Benny's Chophouse to handle the defense of the Underlying Action, and to attempt to settle the Underlying Action, in good faith.

81. Scottsdale issued numerous demands to Badger, which controlled the defense and settlement process, to undergo reasonable settlement efforts with Plaintiff to settle within the Badger Policy's limits and to prevent a verdict in excess of Badger Policy's limits.

82. Scottsdale's demands were based on the facts in the Underlying Action, which demonstrated the probability of an adverse finding against Benny's Chophouse and that the damages would exceed Badger's Policy limits.

FILED DATE: 4/23/2026 11:10 AM    2026CH03888

83. Despite those adverse liability facts, the reasonable probability of an adverse liability finding, and the reasonable probability that the amount awarded against Benny's Chophouse would exceed the Badger Policy's limits, Badger negligently failed to settle the Underlying Action within the Badger Policy's limits, and failed to use ordinary care in one or more of the following ways:

(a)    failed to give Benny's Chophouse's and Scottsdale's interests at least equal consideration to its own interest;

(b)    failed to implement a reasonable settlement strategy on behalf of Benny's Chophouse;

(c)    failed to properly evaluate the underlying liability facts and probable damages; and

(d)    ignored facts and considerations that should have induced Badger to make reasonable efforts to settle including making offers up to the Badger Policy's limits; and

(e)    failed to settle the Underlying Action within its limits when it had multiple opportunities to do so, where Plaintiff indicated it would settle within the Badger limits of liability and where it was clear that there was a strong likelihood that the ultimate judgment would exceed the amount that the case could be settled for and that the ultimate judgment would exceed the limits of the Badger Policy.

84. On March 25, 2026 Scottsdale was required to pay $2,587,759.19 on the judgment and pre- and post-judgment interest, in excess of the Badger Policy's limits, in order to protect the interests of Benny's Chophouse.

85. Scottsdale is equitably subrogated to the legal rights of Benny's Chophouse against Badger to recover for the negligent failure of Badger to settle the Underlying Action so Benny's

Chophouse would not be exposed to a judgment in excess of the Badger Policy's limits of $3 million.

86.     In addition to the payment of the judgment and post-judgment interest, Benny's Chophouse and Scottsdale, as its subrogee, were exposed to unnecessary attorney's fees and costs due to the negligent refusals of Bager to settle the Underlying Action.

WHEREFORE, Scottsdale seeks a judgment in its favor and against Badger, in the amount of $2,587.759.19, plus attorneys' fees and costs, and for such other relief as this Court deems just and proper.

## COUNT III
## Equitable Indemnification

87.     Scottsdale incorporates by reference herein paragraphs 1 through 86 as if the same were fully set forth at length.

88.     Badger owed an obligation to Scottsdale, as the excess insurer, to handle the defense of the Underlying Action, and to attempt to settle the Underlying Action, in good faith.

89.     Scottsdale issued numerous demands to Badger, which controlled the defense and settlement process, to undergo reasonable settlement efforts with Plaintiff to settle within the Badger Policy's limits and to prevent a verdict in excess of Badger Policy's limits.

90.     Scottsdale's demands were based on the facts in the Underlying Action, which demonstrated the probability of an adverse finding against Benny's Chophouse and that the damages would exceed Badger's Policy limits.

91.     Scottsdale is entitled to recover for Badger's failure to act in good faith and settle the Underlying Action within the Badger Policy's limits or tender its policy limits when there was a reasonable probability of liability against Benny's Chophouse and a reasonable probability of an excess verdict so that Scottsdale would not be exposed to a judgment in excess of Badger Policy's

$3 million limits, or alternatively exposed to a judgment in an amount substantially greater than the amount the Underlying Action could have been settled.

92. In addition to the payment of the judgment and post-judgment interest, Scottsdale, was exposed to unnecessary attorneys' fees and costs due to the bad faith refusals of Bager to settle the Underlying Action or tender either the Badger Primary Limit of $1 million or the Badger Policy's combined limit of $3 million.

93. Despite Badger being liable for the entirety of the judgment, and pre- and post-judgment interest, Badger refused to pay the judgment with interest in its entirety, forcing Scottsdale to share in payment of the judgment and pre- and post-judgment interest and issue payment in the amount of $2,587,759.19.

94. Scottsdale is entitled to reimbursement from Badger in the amount of $2,587,759.19, which represents the portion of the judgment and pre- and post-judgment it was forced to pay due to Badger's refusal to issue payment in its entirety.

WHEREFORE, Scottsdale seeks a judgment in its favor and against Badger, in the amount of $2,587,759.19, plus attorneys' fees and costs, and for such other relief as this Court deems just and proper.

## PRAYER FOR RELIEF

Plaintiff Scottsdale Insurance Company hereby respectfully requests the entry of an order and judgment in its favor and against Badger Mutual Insurance Company in the amount of $2,587,759.19 plus attorneys' fees and costs, and such other relief as this Court deems just and proper.

Dated: April 23, 2026

Respectfully Submitted,

By:     /s/ Colin Willmott
        Colin B. Willmott, Atty. No. 6317451
        Heidi A. Kuffel, Atty. No. 6313935
        Colin.Willmott@kennedyslaw.com
        Heidi.Kuffel@kennedyslaw.com
        KENNEDYS CMK
        30 S. Wacker Drive, Suite 3650
        Chicago, IL 60606
        Phone: (312) 800-5029
        Fax: (312) 207-2110
        Firm #: 61583
        *Attorneys for Scottsdale Insurance Company*

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

Hearing Date: 6/22/2026 10:00 AM
Location: Court Room 2305
Judge: Jackson, Doretha Renee

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

FILED
4/23/2026 11:10 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH03888
Calendar, 11
37731804

# EXHIBIT A

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

November 29, 2022

TO WHOM IT MAY CONCERN:

This is to certify that the attached BADGER MUTUAL INSURANCE COMPANY policy contract is a true copy of the commercial policy, 00609-70783, Benny's Chophouse, LLC.

Dated at Milwaukee, Wisconsin this 29th day of November, 2022.

_____(seal)
BADGER MUTUAL INSURANCE COMPANY

Witness:

_____


_____


STATE OF WISCONSIN   )
                     ) SS
MILWAUKEE COUNTY   )

Personally came before me this 29th day of November, 2022 Brian Wiza of BADGER MUTUAL INSURANCE COMPANY, to me known to be the person who executed the foregoing instrument, and to me known to be such Vice President of said Corporation, and said Brian Wiza acknowledged that he executed the foregoing instrument as such officer as the deed of said corporation, by its authority.

Dated this 29th day of November, 2022.

Notary Public, Milwaukee Cty, Wisc
My Commission expires_____04/14/2025



## BADGER MUTUAL
### INSURANCE COMPANY
1635 W. NATIONAL AVENUE
MILWAUKEE, WISCONSIN 53204
414-383-1234
800-837-7833

A

| Commercial Policy Program | PAGE 01 |
|---|---|
| **New Business Declaration** | D-5 |

| POLICY NUMBER | POLICY PERIOD 12:01 AM STANDARD TIME | AGENT'S NUMBER | |
|---|---|---|---|
| 00609-70783 | 2/17/10 TO 2/17/11 | 14117 | (847) 318-0411 |

**NAMED INSURED**

Benny's Prime Chophouse LLC
444 N Wabash Ave
Chicago IL 60611-5622

**AGENT'S NAME**

Fidelity Insurance Agency
100 Higgins Rd
Park Ridge IL 60068-5738

---

THE NAMED INSURED IS Limited Liability Company
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

COVERAGES
- - - - - - - - - -

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS/POLICIES FOR WHICH A PREMIUM IS INDICATED.

| COVERAGE PART/POLICY ATTACHED | PREMIUM |
|---|---|
| COMMERCIAL TERRORISM COVERAGE | $0.00 |
| COMMERCIAL PROPERTY COVERAGE | $7,264.00 |
| COMMERCIAL GENERAL LIABILITY COVERAGE | $6,594.00 |
| COMMERCIAL LIQUOR LIABILITY COVERAGE | $2,082.00 |
| COMMERCIAL UMBRELLA COVERAGE | $4,025.00 |
| COMMERCIAL CRIME COVERAGE - BURGLARY AND THEFT | $1,179.00 |
| COMMERCIAL GLASS COVERAGE | $187.00 |
| COMMERCIAL INLAND MARINE | $1,114.00 |
| TOTAL ADVANCE PREMIUM | $22,445.00 |

$4,489.00 RECEIVED WITH APPLICATION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Insured



## BADGER MUTUAL
### INSURANCE COMPANY
1635 W. NATIONAL AVENUE
MILWAUKEE, WISCONSIN 53204
414-383-1234
800-837-7833

A

| Commercial Policy Program | PAGE 02 |
| --- | --- |
| **New Business Declaration** | D-5 |

| POLICY NUMBER | POLICY PERIOD 12:01 AM STANDARD TIME | | AGENT'S NUMBER |
| --- | --- | --- | --- |
| 00609-70783 | 2/17/10 TO 2/17/11 | 14117 | (847) 318-0411 |

| NAMED INSURED | AGENT'S NAME |
| --- | --- |
| Benny's Prime Chophouse LLC<br>444 N Wabash Ave<br>Chicago IL 60611-5622 | Fidelity Insurance Agency<br>100 Higgins Rd<br>Park Ridge IL 60068-5738 |

SCHEDULE OF FORMS AND ENDORSEMENTS:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| ENDORSEMENT NO | EDITION DATE | DESCRIPTION |
| --- | --- | --- |
| CL 0100 | 03-99 | Common Policy Conditions |
| CL 0120 | 10-08 | Amendatory - IL |
| CL 0600 | 01-08 | Certified Terrorism Loss |
| CL 0605 | 01-08 | Certified Terrorism Loss |
| CL 0700 | 10-06 | Virus/Bacteria Exclusion |
| CL 1045B | 01-08 | Discl Notice of Terrorism |
| CL 1650 | 06-06 | Cond NBC Terror Exclusion |
| CL 1660 | 06-06 | Cond NBC Terror Exclusion |
| CL-100 | 1.0 | Common Policy Conditions |
| CL-100G | 2.0 | COMMON POLICY CONDITIONS |
| CL-300 | 1.0 | Amendatory Endorsement-IL |
| CL-998 | 09-07 | Amendatory Endorsement-IL |
| CP 0171 | 10-08 | Exclusion - Water Damage |
| CP 0182 | 10-08 | AMENDATORY ENDT-IL |
| CP 0640 | 07-03 | Limited Fungus Cov-Prop |
| CP 0643 | 01-08 | Excl-War/Military Action |
| CP-1 | 1.0 | Table of Contents |
| CP-100 | 1.0 | Comm Prop Cov Conditions |
| CP-12 | 1.0 | Bldg & Pers Prop Cov Part |
| CP-601 | 2.0 | Spoilage Coverage |
| CP-614 | 1.0 | Protective Devices |
| CP-70D | 01-01 | Bus Inc/Extra Exp 12-mo. |
| CP-85 | 1.0 | Special Perils Part |
| CP-998 | 10-99 | Equipment Breakdown Cov. |
| CP-999 | 07-97 | Restaurant Extension End |
| CR 0100 | 06-99 | Crime Coverage Conditions |
| CR 0304 | 06-99 | Money & Securities In/Out |
| CR 0308 | 06-99 | Employee Dishonesty Cov |
| CR 0429 | 06-99 | Amendatory End-IL |
| CU-100 | 02-95 | Commercial Excess Liab |
| CU-110 | 02-95 | IL Chgs-Cancel & Nonrenew |
| CU-117 | 02-95 | Asbestos Exclusion |
| CU-119 | 02-95 | Athletic Participant Excl |
| CU-121 | 02-95 | Auto Liab Excl |
| CU-125 | 02-95 | Care, Cust or Control Excl |
| CU-142 | 02-95 | Liquor Law Liab Follow |
| CU-148 | 02-95 | Owned Auto Excl |
| CU-150 | 02-95 | Personal Injury Follow |

Insured



## BADGER MUTUAL
### INSURANCE COMPANY
1635 W. NATIONAL AVENUE
MILWAUKEE, WISCONSIN 53204
414-383-1234
800-837-7833

A

Commercial Policy Program     PAGE 03

**New Business Declaration**     D-5

| POLICY NUMBER | POLICY PERIOD 12:01 AM STANDARD TIME | AGENT'S NUMBER | |
|---|---|---|---|
| 00609-70783 | 2/17/10 TO 2/17/11 | 14117 | (847) 318-0411 |

**NAMED INSURED**

Benny's Prime Chophouse LLC
444 N Wabash Ave
Chicago IL 60611-5622

**AGENT'S NAME**

Fidelity Insurance Agency
100 Higgins Rd
Park Ridge IL 60068-5738

SCHEDULE OF FORMS AND ENDORSEMENTS:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| ENDORSEMENT NO | EDITION DATE | DESCRIPTION |
|---|---|---|
| CU-151 | 02-95 | Pollution Excl |
| CU-164 | 02-95 | Employers Liab-Follow |
| CU-167 | 02-95 | IL Amend End |
| CU-998 | 01-05 | Excl: wet-dry rot/bact |
| CU-999 | 01-05 | Lead Exclusion |
| GL 0163 | 01-08 | Excl-War/Military Action |
| GL 0209 | 10-05 | Asbestos Exclusion |
| GL 0215 | 10-05 | Silica Exclusion |
| GL 0250 | 01-08 | Certified Terrorism Loss |
| GL 0348 | 06-02 | Excl Wet/Dry Rot Fungi |
| GL 0349 | 06-02 | Excl Bacteria Contractor |
| GL 0439 | 10-08 | Amendatory End - IL |
| GL 0904 | 10-08 | Personal/Adv Injury Liab |
| GL 0940 | 07-09 | Amend. End-Def Cost Reim. |
| GL 0950 | 05-00 | Known Injury or Damage |
| GL 1280 | 06-06 | Conditional NBC Terror EX |
| GL-100 | 1.0 | Commercial Liability Cov |
| GL-130 | 1.0 | Prod/Completed Wrk Hazard |
| GL-202 | 1.0 | Excl-Athletic/Sports Part |
| GL-224 | 1.0 | Liab Cov-Designated Prem |
| GL-349 | 06-02 | Fungus/Mold Exclusion Lia |
| GL-890 | 1.0 | Lead Liability Exclusion |
| GL-894 | 1.1 | Punitive Damages Excl-IL |
| GL-914 | 1.0 | Limited Liability Company |
| GS 0348 | 01-08 | Excl-War/Military Action |
| GS 1660 | 06-06 | GS Conditional NBC Ex-Lim |
| GS-169 | 1.0 | Amend End IL |
| GS-200 | 3.0 | Glass Cov Part |
| IM 1450 | 01-05 | Sign Coverage |
| IM 2027 | 08-08 | Amendatory End-IL |
| IM 7400 | 04-04 | Fine Arts Floater Cov. |
| LL-300 | 09-98 | Liquor Liability Cov Form |
| LL-301 | 09-98 | Amend End IL-Liquor Liab |
| LL-302 | 09-98 | IL Liquor Liab End |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Insured

FILED DATE: 4/23/2026 11:10 AM   2026CH03888



# BADGER MUTUAL
## INSURANCE COMPANY
1635 W. NATIONAL AVENUE
MILWAUKEE, WISCONSIN 53204
414-383-1234
800-837-7833

A

| Commercial Policy Program | PAGE 04 |
| --- | --- |

| **New Business Declaration** | D-5 |
| --- | --- |

| POLICY NUMBER | POLICY PERIOD 12:01 AM STANDARD TIME | AGENT'S NUMBER | |
| --- | --- | --- | --- |
| 00609-70783 | 2/17/10 TO 2/17/11 | 14117 | (847) 318-0411 |

| NAMED INSURED | AGENT'S NAME |
| --- | --- |
| Benny's Prime Chophouse LLC<br>444 N Wabash Ave<br>Chicago IL 60611-5622 | Fidelity Insurance Agency<br>100 Higgins Rd<br>Park Ridge IL 60068-5738 |

```
ADDITIONAL INSURED(S)
- - - - - - - - - - - - - - - - - - - - -
AI#   INTEREST                  NAME AND ADDRESS
  1   GL-109/*100 Owner         Dan Development LTD
                                As Agent For 444 N Wabash Bldg
                                1 Trans Am Plaza Dr Ste #120
                                Oak Brook Terrace  IL 60181-4286
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
```

AGENCY AT Park Ridge         IL             DATE 3/02/10

AGENT 14117                                                                    Insured



# BADGER MUTUAL
## INSURANCE COMPANY
**1635 W. NATIONAL AVENUE**
**MILWAUKEE, WISCONSIN 53204**
**414-383-1234**
**800-837-7833**

A

| Commercial Fire | PAGE 05 |
|---|---|

| **New Business Declaration** | D-5 |
|---|---|

| POLICY NUMBER | POLICY PERIOD 12:01 AM STANDARD TIME | | AGENT'S NUMBER | |
|---|---|---|---|---|
| 00609-70783 | 2/17/10 TO 2/17/11 | 14117 | (847) 318-0411 |

| NAMED INSURED | AGENT'S NAME |
|---|---|
| Benny's Prime Chophouse LLC<br>444 N Wabash Ave<br>Chicago IL 60611-5622 | Fidelity Insurance Agency<br>100 Higgins Rd<br>Park Ridge IL 60068-5738 |

LOCATION ADDRESS(ES)
- - - - - - - - - - - - - - - - - - - - - -

**LOCATION    001**
**444 North Wabash Avenue**
**Cook County**
**Chicago  IL 60611**

COVERAGES
- - - - - - - - - -

| ITEM NUM | LOC NUM | BLDG NUM | CLASS CODE | PROT CLASS | COUNTY | CONST CODE | DED AMT | REPLACEMENT COST |
|---|---|---|---|---|---|---|---|---|
| 1 | 001 | 001 | 11709 | 02 | 311 | RE | $1,000 | YES |

**Personal Property - Restaurant**
**Including Improvements And Betterments**
**Including Equipment Breakdown**

- - - - - - - - - - - - - - - - - - - -
**LIMIT:   $3,000,000**
- - - - - - - - - - - - - - - - - - - -

- - - - - - - - - - - - - - - - - - - - - - - - -
**COINSURANCE:   100.00%**
- - - - - - - - - - - - - - - - - - - - - - - - -

| COVERAGE DESCRIPTION | RATE | PREMIUM |
|---|---|---|
| 510 Personal Property - Fire/Lightning | | $3,787.00 |
| 511 Personal Property - Extended Coverage | | $483.00 |
| 516 Personal Property - Special Perils | | $884.00 |



## BADGER MUTUAL
### INSURANCE COMPANY
**1635 W. NATIONAL AVENUE**
**MILWAUKEE, WISCONSIN 53204**
**414-383-1234**
**800-837-7833**

A

| Commercial Fire | PAGE 06 |
|---|---|
| **New Business Declaration** | D-5 |

| POLICY NUMBER | POLICY PERIOD 12:01 AM STANDARD TIME | AGENT'S NUMBER | |
|---|---|---|---|
| 00609-70783 | 2/17/10 TO 2/17/11 | 14117 | (847) 318-0411 |

**NAMED INSURED**

Benny's Prime Chophouse LLC
444 N Wabash Ave
Chicago IL 60611-5622

**AGENT'S NAME**

Fidelity Insurance Agency
100 Higgins Rd
Park Ridge IL 60068-5738

| ITEM NUM | LOC NUM | BLDG NUM | CLASS CODE | PROT CLASS | COUNTY | CONST CODE | DED AMT | REPLACEMENT COST |
|---|---|---|---|---|---|---|---|---|
| 2 | 001 | 001 | 11709 | 02 | 311 | RE | | NO |

Income - ALS Actual Loss Sustained
Twelve Months

LIMIT:  UNLIMITED

COINSURANCE:  100.00%

| COVERAGE DESCRIPTION | RATE | PREMIUM |
|---|---|---|
| 600 Bus Income ALS - Fire/Lightning | | $691.00 |
| 601 Bus Income ALS - Extended Coverage | | $269.00 |
| 606 Bus Income ALS - Special Perils | | $281.00 |

| ITEM NUM | LOC NUM | BLDG NUM | CLASS CODE | PROT CLASS | COUNTY | CONST CODE | DED AMT | REPLACEMENT COST |
|---|---|---|---|---|---|---|---|---|
| 3 | 001 | 001 | 11709 | 02 | 311 | RE | $250 | NO |

Food Spoilage

LIMIT:  $50,000

COINSURANCE:  FLAT

| COVERAGE DESCRIPTION | RATE | PREMIUM |
|---|---|---|
| 973 Food Spoilage | | $719.00 |

Insured



# BADGER MUTUAL
## INSURANCE COMPANY
1635 W. NATIONAL AVENUE
MILWAUKEE, WISCONSIN 53204
414-383-1234
800-837-7833

A

| Commercial Fire | PAGE 07 |
|---|---|

| **New Business Declaration** | D-5 |
|---|---|

| POLICY NUMBER | POLICY PERIOD 12:01 AM STANDARD TIME | AGENT'S NUMBER | |
|---|---|---|---|
| 00609-70783 | 2/17/10 TO 2/17/11 | 14117 | (847) 318-0411 |

**NAMED INSURED**

Benny's Prime Chophouse LLC
444 N Wabash Ave
Chicago IL 60611-5622

**AGENT'S NAME**

Fidelity Insurance Agency
100 Higgins Rd
Park Ridge IL 60068-5738

FORMS AND ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| LOC | BLDG | ITEM | NUMBER | DATE | DESCRIPTION | PREMIUM |
|---|---|---|---|---|---|---|
| 001 | 001 | 1 | CP-999 | 07-97 | Restaurant Extension End | $150.00 |

This endorsement is an extension of the
property section of this policy

| 001 | 001 | 1 | PROP | 09-93 | Prop |

Protective devices (CP-614) applies to the
kitchen fire suppression system and the
central station alarm system and the
automatic sprinkler system for items 1 2 &
3 at location 1

TOTAL ADVANCE PREMIUM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    $7,264.00
===========

Insured



**BADGER MUTUAL**
INSURANCE COMPANY
1635 W. NATIONAL AVENUE
MILWAUKEE, WISCONSIN 53204
414-383-1234
800-837-7833

A

| Liability Coverages | PAGE 08 |
|---|---|
| **New Business Declaration** | D-5 |

| POLICY NUMBER | POLICY PERIOD 12:01 AM STANDARD TIME | | AGENT'S NUMBER |
|---|---|---|---|
| 00609-70783 | 2/17/10 TO 2/17/11 | 14117 | (847) 318-0411 |

| NAMED INSURED | AGENT'S NAME |
|---|---|
| Benny's Prime Chophouse LLC<br>444 N Wabash Ave<br>Chicago IL 60611-5622 | Fidelity Insurance Agency<br>100 Higgins Rd<br>Park Ridge IL 60068-5738 |

COVERAGE DESCRIPTION:        GL-100

GENERAL AGGREGATE LIMIT.....................$  2,000,000

    THE MAXIMUM WE WILL PAY FOR ALL DAMAGES
    DURING THE POLICY PERIOD, REGARDLESS OF
    THE NUMBER OF OCCURRENCES.                                 PREMIUM:

BODILY INJURY/PROPERTY DAMAGE
EACH OCCURRENCE LIMIT.......................$  1,000,000    $    4,149.00

MEDICAL PAYMENTS LIMIT......................$     10,000    $    INCLUDED
                                per person

PRODUCTS/COMPLETED WORK AGGREGATE LIMIT.....$  1,000,000    $    1,898.00

FIRE LEGAL LIABILITY LIMIT..................$    100,000    $       34.00

PERSONAL & ADVERTISING INJURY LIMIT.........$  1,000,000    $      413.00

NON-OWNED AUTO LIABILITY LIMIT..............$NO COVERAGE    $NO COVERAGE

HIRED AUTO LIABILITY LIMIT..................$NO COVERAGE    $NO COVERAGE

THIS POLICY DOES PROVIDE COVERAGE FOR PRODUCTS/COMPLETED WORK, SUBJECT
TO THE SPECIFIC PRODUCTS/COMPLETED WORK AGGREGATE LIMIT STATED ABOVE

DEPOSIT PREMIUM...................................$  6,594.00

      SEE NEXT PAGE(S) FOR SCHEDULE OF LIABILITY HAZARDS



## BADGER MUTUAL
### INSURANCE COMPANY
1635 W. NATIONAL AVENUE
MILWAUKEE, WISCONSIN 53204
414-383-1234
800-837-7833

A

General Liability — PAGE 09

**New Business Declaration** — D-5

| POLICY NUMBER | POLICY PERIOD 12:01 AM STANDARD TIME | AGENT'S NUMBER | |
|---|---|---|---|
| 00609-70783 | 2/17/10 TO 2/17/11 | 14117 | (847) 318-0411 |

**NAMED INSURED**

Benny's Prime Chophouse LLC
444 N Wabash Ave
Chicago IL 60611-5622

**AGENT'S NAME**

Fidelity Insurance Agency
100 Higgins Rd
Park Ridge IL 60068-5738

LOCATION ADDRESS(ES)
- - - - - - - - - - - - - - - - - - - - -

    LOCATION    001
        444 North Wabash Avenue
        Cook County
        Chicago  IL 60611

| ITEM | LOC | COUNTY | CLASS | EXPOSURE | PROPERTY DAMAGE DED PER CLAIM |
|---|---|---|---|---|---|
| 4 | 001 | 311 | 06502 | 92 | |

Taverns And Restaurants - NOC

SUBLINE: 004

| COVERAGE | LIMITS | PREMIUM |
|---|---|---|
| SNGL LMT LIAB | 1,000,000 PER OCC. | $4,131.00 |
| MED PAYMENT | 10,000 PER PERS | $18.00 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| ITEM | LOC | COUNTY | CLASS | EXPOSURE | PROPERTY DAMAGE DED PER CLAIM |
|---|---|---|---|---|---|
| 5 | 001 | 311 | 93900 | 2900 | |

Products - Taverns And Restaurants - NOC

SUBLINE: 006

| COVERAGE | LIMITS | PREMIUM |
|---|---|---|
| SNGL LMT LIAB | 1,000,000 PER OCC. | $1,898.00 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| ITEM | LOC | COUNTY | CLASS | EXPOSURE | PROPERTY DAMAGE DED PER CLAIM |
|---|---|---|---|---|---|
| 6 | 001 | 311 | 30630 | 1 | |

Fire Legal Liability

SUBLINE: 004

| COVERAGE | LIMITS | PREMIUM |
|---|---|---|
| SNGL LMT LIAB | 100,000 PER OCC. | $34.00 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Insured



**BADGER MUTUAL**
INSURANCE COMPANY
1635 W. NATIONAL AVENUE
MILWAUKEE, WISCONSIN 53204
414-383-1234
800-837-7833

A

| General Liability | PAGE 10 |
|---|---|

| **New Business Declaration** | D-5 |
|---|---|

| POLICY NUMBER | POLICY PERIOD 12:01 AM STANDARD TIME | | AGENT'S NUMBER | |
|---|---|---|---|---|
| 00609-70783 | 2/17/10 TO 2/17/11 | 14117 | (847) 318-0411 |

**NAMED INSURED**

Benny's Prime Chophouse LLC
444 N Wabash Ave
Chicago IL 60611-5622

**AGENT'S NAME**

Fidelity Insurance Agency
100 Higgins Rd
Park Ridge IL 60068-5738

```
ITEM   LOC   COUNTY   CLASS        EXPOSURE          PROPERTY DAMAGE DED PER CLAIM
  7    001    311     30650            1
Personal Injury Applies To This Policy

SUBLINE: 004

COVERAGE            LIMITS                                      PREMIUM
SNGL LMT LIAB 1,000,000 PER OCC.                                $413.00
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FORMS AND ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
LOC   BLDG   ITEM NUMBER      DATE   DESCRIPTION                PREMIUM
001   001       4 GL-109     05-88  Additional Ins-Landlord     $100.00
TOTAL ADVANCE PREMIUM   . . . . . . . . . . . . . . . . . . . . $6,594.00
                                                             ===========
```

Insured



**BADGER MUTUAL**
INSURANCE COMPANY
1635 W. NATIONAL AVENUE
MILWAUKEE, WISCONSIN 53204
414-383-1234
800-837-7833

A

Liquor Liability                    PAGE 11

**New Business Declaration**        D-5

| POLICY NUMBER | POLICY PERIOD 12:01 AM STANDARD TIME | AGENT'S NUMBER | |
|---|---|---|---|
| 00609-70783 | 2/17/10 TO 2/17/11 | 14117 | (847) 318-0411 |

**NAMED INSURED**

Benny's Prime Chophouse LLC
444 N Wabash Ave
Chicago IL 60611-5622

**AGENT'S NAME**

Fidelity Insurance Agency
100 Higgins Rd
Park Ridge IL 60068-5738

```
OWNER(S):
- - - - - - - - - - - - - - - - - - - - -
OW#   NAME AND ADDRESS
1     444 N Wabash Bldg LLC
      C/O Dan Development LTD
      1 Trans Am Plaza Dr #120
      Oak Brook Terrace  IL 60181

LICENSEE(S):
- - - - - - - - - - - - - - - - - - - -
LC#   NAME AND ADDRESS
1     Benny's Prime Chophouse LLC
      444 N Wabash
      Chicago  IL 60611


LOCATION ADDRESS(ES)
- - - - - - - - - - - - - - - - - - - - -
1     444 North Wabash Avenue
      Cook County
      Chicago  IL 60611

ITEM  LOC   COUNTY  CLASS  TERR    EXPOSURE
 B    001    311    10200 00001     $6,000
  OWNERS THAT APPLY:         1
  LICENSEES THAT APPLY:      1
  Liquor Liability

COVERAGE DESCRIPTION                         LIMITS        PREMIUM
COMBINED SINGLE LIMIT - EACH OCCURRENCE     1,000,000     $2,082.00
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
TOTAL ADVANCE PREMIUM   .............................     $2,082.00
                                                          ============
```

THE INSURED PREMISES WILL CLOSE AT OR BEFORE 2:00 A.M. DURING THE POLICY TERM OF THIS INSURANCE.

Insured



**BADGER MUTUAL**
INSURANCE COMPANY
1635 W. NATIONAL AVENUE
MILWAUKEE, WISCONSIN 53204
414-383-1234
800-837-7833

A

| Commercial Excess | PAGE 12 |
|---|---|
| **New Business Declaration** | D-5 |

| POLICY NUMBER | POLICY PERIOD 12:01 AM STANDARD TIME | | AGENT'S NUMBER |
|---|---|---|---|
| 00609-70783 | 2/17/10 TO 2/17/11 | 14117 | (847) 318-0411 |

| NAMED INSURED | AGENT'S NAME |
|---|---|
| Benny's Prime Chophouse LLC<br>444 N Wabash Ave<br>Chicago IL 60611-5622 | Fidelity Insurance Agency<br>100 Higgins Rd<br>Park Ridge IL 60068-5738 |

## COVERAGES

```
ITEM  LOC  COUNTY  CLASS  TERR  EXPOSURE
  9   001    311   99999  00001       $1
```

| COVERAGE DESCRIPTION | LIMITS |
|---|---|
| COMBINED POLICY AGGREGATE LIMIT | $2,000,000 |
| COMBINED SINGLE LIMIT - EACH OCCURRENCE | $2,000,000 |
| SELF-INSURED RETENTION | $10,000 |

TOTAL ADVANCE PREMIUM .................................. **$4,025.00**
==============

SCHEDULE OF UNDERLYING INSURANCE

| TYPE OF INSURANCE | COMPANY | POLICY NUMBER | POLICY PERIOD |
|---|---|---|---|
| **GENERAL LIABILITY** | BADGER MUTUAL | 0060970783 | 2/17/10<br>2/17/11 |

LIMITS OF LIABILITY:    OCCURRENCE     AGGREGATE
                     $1,000,000     $2,000,000

| **EMPLOYERS LIABILITY** | TECHNOLOGY | 83WECZP7219 | 2/17/10<br>2/17/11 |
|---|---|---|---|

| LIMITS OF LIABILITY: | BODILY INJURY EACH ACCIDENT | BODILY INJURY BY DISEASE POLICY LIMIT | BODLIY INJURY BY DISEASE EACH EMPLOYEE |
|---|---|---|---|
| | $500,000 | $500,000 | $500,000 |

| **LIQUOR LIABILITY** | BADGER MUTUAL | 00609-70783 | 2/17/10<br>2/17/11 |
|---|---|---|---|

LIMITS OF LIABILITY:
                     $1,000,000

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

Insured



**BADGER MUTUAL**
INSURANCE COMPANY
1635 W. NATIONAL AVENUE
MILWAUKEE, WISCONSIN 53204
414-383-1234
800-837-7833

Burglary and Theft     PAGE 13

**New Business Declaration**    D-5

A

| POLICY NUMBER | POLICY PERIOD 12:01 AM STANDARD TIME | | AGENT'S NUMBER |
|---|---|---|---|
| 00609-70783 | 2/17/10 TO 2/17/11 | 14117 | (847) 318-0411 |

**NAMED INSURED**

Benny's Prime Chophouse LLC
444 N Wabash Ave
Chicago IL 60611-5622

**AGENT'S NAME**

Fidelity Insurance Agency
100 Higgins Rd
Park Ridge IL 60068-5738

LOCATION ADDRESS(ES)
. . . . . . . . . . . . . . . . . . . . . . .

   **LOCATION   001**
     **444 North Wabash Avenue**
     **Cook County**
     **Chicago   IL 60611**

COVERAGES
. . . . . . . . .

| ITEM | LOC | COUNTY | CLASS | DED AMT |
|---|---|---|---|---|
| 10 | 001 | 310 | 30631 | $1,000 |

**MONEY AND SECURITIES INSIDE PREMISES ONLY**

| COVERAGE DESCRIPTION | LIMIT | PREMIUM |
|---|---|---|
| 905 Burglary & Theft | $25,000 | $280.00 |

| ITEM | LOC | COUNTY | CLASS | DED AMT |
|---|---|---|---|---|
| 11 | 001 | 310 | 30631 | $1,000 |

**MONEY AND SECURITIES OUTSIDE PREMISES ONLY**

| COVERAGE DESCRIPTION | LIMIT | PREMIUM |
|---|---|---|
| 905 Burglary & Theft | $25,000 | $280.00 |

| ITEM | LOC | COUNTY | CLASS | DED AMT |
|---|---|---|---|---|
| 12 | 001 | 310 | 30631 | $1,000 |

**EMPLOYEE DISHONESTY**

| COVERAGE DESCRIPTION | LIMIT | PREMIUM |
|---|---|---|
| 905 Burglary & Theft | $50,000 | $619.00 |

**TOTAL ADVANCE PREMIUM** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    **$1,179.00**
                                                             ===========

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

Insured



**BADGER MUTUAL**
INSURANCE COMPANY
1635 W. NATIONAL AVENUE
MILWAUKEE, WISCONSIN 53204
414-383-1234
800-837-7833

A

| Glass | PAGE 14 |
|---|---|

| **New Business Declaration** | D-5 |
|---|---|

| POLICY NUMBER | POLICY PERIOD 12:01 AM STANDARD TIME | AGENT'S NUMBER | |
|---|---|---|---|
| 00609-70783 | 2/17/10 TO 2/17/11 | 14117 | (847) 318-0411 |

| NAMED INSURED | AGENT'S NAME |
|---|---|
| Benny's Prime Chophouse LLC<br>444 N Wabash Ave<br>Chicago IL 60611-5622 | Fidelity Insurance Agency<br>100 Higgins Rd<br>Park Ridge IL 60068-5738 |

LOCATION ADDRESS(ES)
- - - - - - - - - - - - - - - - - - - - - - - - -

   **LOCATION   001**
     **444 North Wabash Avenue**
     **Cook County**
     **Chicago  IL 60611**

COVERAGES
- - - - - - - - -

| ITEM | LOC | COUNTY | CLASS | SUBLINE |
|---|---|---|---|---|
| 13 | 001 | 310 | 50 | 4 |

One Hundred Linear Feet

| PLATES | WIDTH | LENGTH | DEDUCTIBLE | LIMIT | PREMIUM |
|---|---|---|---|---|---|
| | | | $250 | $1 | $187.00 |

**TOTAL ADVANCE PREMIUM** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   $187.00

Insured



# BADGER MUTUAL
### INSURANCE COMPANY
**1635 W. NATIONAL AVENUE**
**MILWAUKEE, WISCONSIN 53204**
414-383-1234
800-837-7833

Inland Marine - Commercial    PAGE 15

**New Business Declaration**    D-5

A

| POLICY NUMBER | POLICY PERIOD 12:01 AM STANDARD TIME | AGENT'S NUMBER | |
|---|---|---|---|
| 00609-70783 | 2/17/10 TO 2/17/11 | 14117 | (847) 318-0411 |

**NAMED INSURED**

Benny's Prime Chophouse LLC
444 N Wabash Ave
Chicago IL 60611-5622

**AGENT'S NAME**

Fidelity Insurance Agency
100 Higgins Rd
Park Ridge IL 60068-5738

LOCATION ADDRESS(ES)
. . . . . . . . . . . . . . . . . . . . . . .

**LOCATION   001**
     **444 North Wabash Avenue**
     **Cook County**
     **Chicago  IL 60611**

COVERAGES
. . . . . . . . .

ITEM  LOC   COUNTY
 14   001    310
   SIGN

**CLASS: 214**          DEDUCTIBLE:  $1,000

| COVERAGE DESCRIPTION | LIMIT | PREMIUM |
|---|---|---|
| 741 Inland Marine Commercial | $50,000 | $611.00 |

ITEM  LOC   COUNTY
 15   001    310
   FINE ARTS

**CLASS: 079**          DEDUCTIBLE:  $1,000

| COVERAGE DESCRIPTION | LIMIT | PREMIUM |
|---|---|---|
| 741 Inland Marine Commercial | $50,000 | $503.00 |

**TOTAL ADVANCE PREMIUM** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $1,114.00
============

Insured

# BADGER MUTUAL INSURANCE COMPANY
## CL 0100 03 99
## COMMON POLICY CONDITIONS

1. **Assignment** -- This policy may not be assigned without **our** written consent.

2. **Cancellation** -- **You** may cancel this policy by returning the policy to **us** or by giving **us** written notice and stating at what future date coverage is to stop.

   **We** may cancel this policy, or one or more of its parts, by written notice sent to **you** at **your** last mailing address known to **us**. If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

   If **we** cancel this policy for nonpayment of premium, **we** will give **you** notice at least ten days before the cancellation is effective. If **we** cancel this policy for any other reason, **we** will give **you** notice at least 30 days in advance of cancellation. The notice will state the time that the cancellation is to take effect.

   **Your** return premium, if any, will be calculated according to **our** rules. It will be refunded to **you** with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

3. **Change, Modification, or Waiver of Policy Terms** -- A waiver or change of the **terms** of this policy must be issued by **us** in writing to be valid.

4. **Inspections** -- **We** have the right, but are not obligated, to inspect **your** property and operations at any time. This inspection may be made by **us** or may be made on **our** behalf. An inspection or its resulting advice or report does not warrant that **your** property or operations are safe, healthful, or in compliance with laws, rules, or regulations. Inspections or reports are for **our** benefit only.

5. **Examination of Books and Records** -- **We** may examine and audit **your** books and records that relate to this policy during the policy period and within three years after the policy has expired.

CL 0100 03 99     Copyright, American Association of Insurance Services, 1998     Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## BADGER MUTUAL INSURANCE COMPANY
CL 0120 10 08
### AMENDATORY ENDORSEMENT – ILLINOIS

1. The following applies only to property policies issued to cover one-to-four family residential real or personal property:

   Under Common Policy Conditions, Cancellation is deleted and replaced by the following:

   **Cancellation** -- **You** may cancel this policy by returning the policy to **us** or by giving **us** written notice and stating at what future date coverage is to stop.

   **We** may cancel this policy by mailing **our** written notice of cancellation to **you** and any mortgagee or lienholder at the last mailing address known to **us**. **Our** notice will include the reason or reasons for cancellation. **We** will also mail a copy of the notice to **your** broker, if known, or to the agent of record. Proof of mailing is sufficient proof of notice.

   If this policy has been in effect for 60 days or less, **we** may cancel for any reason.

   If this policy has been in effect more than 60 days, or if it is a renewal of a policy issued by **us**, **we** may cancel if one or more of the following reasons apply:

   a. the premium has not been paid when due;

   b. the policy was obtained by misrepresentation or fraud; or

   c. there has been an act that measurably increases the risk originally accepted.

   If **we** cancel for nonpayment of premium, **we** will mail the cancellation notice at least ten days before the effective date of cancellation.

   If **we** cancel for any reason other than nonpayment of premium, **we** will mail the cancellation notice at least 30 days before the effective date of cancellation.

   **Your** return premium, if any, will be calculated according to **our** rules. It will be refunded to **you** with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

2. The following applies only to property policies issued to cover real property other than one-to-four family residential property:

   Under Common Policy Conditions, Cancellation is deleted and replaced by the following:

   **Cancellation**

   a. **You** may cancel this policy by returning the policy to **us** or by giving **us** written notice and stating at what future date coverage is to stop.

   b. **We** may cancel this policy by mailing **our** written notice of cancellation to **you** and any mortgagee or lienholder at the last mailing address known to **us**. **Our** notice will include the reason or reasons for cancellation. **We** will also mail a copy of the notice to **your** broker, if known, or to the agent of record. Proof of mailing is sufficient proof of notice.

   c. **We** may cancel this policy at any time during the policy period if the premium has not been paid. **We** will mail the cancellation notice at least ten days before the effective date of cancellation.

   d. **We** may cancel this policy at any time during the policy period, if the insured property consists of one or more buildings:

      1) to which, following a fire loss, permanent repairs have not commenced within 60 days after satisfactory adjustment of loss, unless such delay is a direct result of a labor dispute or weather conditions;

      2) that have been unoccupied for 60 consecutive days, except buildings which have a seasonal occupancy and buildings which are undergoing construction, repair, or reconstruction and are properly secured against unauthorized entry;

      3) for which, because of their physical condition, there is an outstanding demolition order, or which have been declared unsafe in accordance with applicable law; or

      4) to which heat, water, sewer service, or public lighting have not been connected for 30 consecutive days or more.

   If **we** cancel this policy for reasons listed under d.1) through d.4) above, cancellation will be effective ten days after **you** and any mortgagee or lienholder have received **our** notice. The notice of cancellation will be sent by regular mail and certified mail, and **your** return premium, if any, will be calculated on a pro rata basis.

   e. If this policy has been in effect for 60 days or less, **we** may cancel for any reason. **We** will mail the cancellation notice at least 30 days before the effective date of cancellation for

CL 0120 10 08        Copyright, American Association of Insurance Services, Inc., 2008        Page 1 of 2

# BADGER MUTUAL INSURANCE COMPANY

cancellation other than described in c. or d. above.

f.   If this policy has been in effect more than 60 days, or if it is a renewal of a policy issued by **us**, **we** may cancel if one or more of the following reasons apply:

1) the policy was obtained through a material misrepresentation;

2) any **insured** has violated any of the **terms** and conditions of the policy;

3) the risk originally accepted has measurably increased;

4) certification of the Director of the loss of reinsurance which provided coverage to **us** for all or a substantial part of the underlying risk insured; or

5) a determination by the Director that the continuation of the policy could place **us** in violation of the insurance laws of this state.

If **we** cancel for any of these reasons, **we** will mail the cancellation notice at least 60 days before the effective date of cancellation.

g.   **Your** return premium, if any, will be calculated according to **our** rules. It will be refunded to **you** with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

3.   If 1. or 2. above do not apply, under Common Policy Conditions, Cancellation is deleted and replaced by the following:

**Cancellation --** **You** may cancel this policy by returning the policy to **us** or by giving **us** written notice and stating at what future date coverage is to stop.

**We** may cancel this policy by mailing **our** written notice of cancellation to **you** and any mortgagee or lienholder at the last mailing address known to **us**. **Our** notice will include the reason or reasons for cancellation. **We** will also mail a copy of the notice to **your** broker, if known, or to the agent of record. Proof of mailing is sufficient proof of notice.

If this policy has been in effect for 60 days or less, **we** may cancel for any reason. If **we** cancel for any reason other than nonpayment of premium, **we** will mail the cancellation notice at least 30 days before the effective date of cancellation.

If this policy has been in effect more than 60 days, or if it is a renewal of a policy issued by **us**, **we** may cancel if one or more of the following reasons apply:

a.   the premium has not been paid when due;

b.   the policy was obtained through a material misrepresentation;

c.   any **Insured** has violated any of the **terms** and conditions of the policy;

d.   the risk originally accepted has measurably increased;

e.   certification of the Director of the loss of reinsurance which provided coverage to **us** for all or a substantial part of the underlying risk insured; or

f.   a determination by the Director that the continuation of the policy could place **us** in violation of the insurance laws of this state.

If **we** cancel for nonpayment of premium, **we** will mail the cancellation notice at least ten days before the effective date of cancellation.

If **we** cancel this policy for any reason other than nonpayment of premium when it has been in effect for more than 60 days, **we** will mail the cancellation notice at least 60 days before the effective date of cancellation.

**Your** return premium, if any, will be calculated according to **our** rules. It will be refunded to **you** with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

4.   Under Common Policy Conditions, the following condition is added:

**Nonrenewal --**

If **we** decide not to renew this policy, **we** will mail **our** notice of nonrenewal to **you** at least 60 days before the end of the policy period. **We** will also mail a copy of the notice to **your** broker, if known, or to the agent of record and any mortgagee or lienholder at the last mailing address known to **us**. Proof of mailing is sufficient proof of notice. **Our** notice will include the reasons for nonrenewal.

5.   Under Common Policy Conditions, the following condition is added:

**Renewal --** If **we** decide to renew this policy with premium increases of 30% or higher, or impose changes in deductible or coverage that materially alter the policy, **we** will mail to **you** written notice of such increase or change in deductible or coverage at least 60 days before the renewal or anniversary date. **We** will also mail a copy of the notice to **your** broker, if known, or to the agent of record. Proof of mailing is sufficient proof of notice. The 60-day prior notification because of premium increase is not necessary where increases exceeding 30% are due to changed conditions or increased or broadened coverage initiated by **you**.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
CL 0600 01 08
## CERTIFIED TERRORISM LOSS

1. The following definitions are added.

   a. **Certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:

      1) to be an act of terrorism;

      2) to be a violent act or an act that is dangerous to human life, property, or infrastructure;

      3) to have resulted in damage:

         a) within the United States; or

         b) to an air carrier (as defined in section 40102 of title 49, United States Code); to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or at the premises of any United States mission;

      4) to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion; and

      5) to have resulted in insured losses in excess of five million dollars in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act, as amended.

   b. **Certified terrorism loss** means loss that results from a **certified act of terrorism.**

2. The **terms** of any terrorism exclusion that is part of or that is attached to this Coverage Part are amended by the following provision:

This exclusion does not apply to **certified terrorism loss.**

3. The following provision is added.

   If the Secretary of the Treasury determines that the aggregate amount of **certified terrorism loss** has exceeded one hundred billion dollars in a Program Year (January 1 through December 31), and **we** have met **our** insurer deductible under the Terrorism Risk Insurance Act, as amended, **we** will not pay for any portion of **certified terrorism loss** that exceeds one hundred billion dollars. If the **certified terrorism loss** exceeds one hundred billion dollars in a Program Year (January 1 through December 31), losses up to one hundred billion dollars are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury under the Terrorism Risk Insurance Act, as amended.

4. The following provisions are added.

   a. Neither the **terms** of this endorsement nor the **terms** of any other terrorism endorsement attached to this Coverage Part provide coverage for any loss that would otherwise be excluded by this Coverage Part under:

      1) exclusions that address war, military action, or nuclear hazard; or

      2) any other exclusion; and

   b. the absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by this Coverage Part under:

      1) exclusions that address war, military action, or nuclear hazard; or

      2) any other exclusion.

CL 0600 01 08     Copyright, American Association of Insurance Services, Inc., 2008     Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
CL 0605 01 08
## CERTIFIED TERRORISM LOSS DISCLOSURE OF PREMIUM AND FEDERAL SHARE OF INSURED LOSSES

### SCHEDULE

**This coverage is included at no additional cost.**

1. The portion of **your** premium that is attributed to coverage for **certified terrorism loss** is shown in the Schedule above.

2. Coverage for **certified terrorism loss**, to the extent that such coverage is provided by this policy or Coverage Part, will be partially reimbursed by the United States Government, Department of Treasury under a federal program. Under that program, the United States pays 85% of insured losses for **certified terrorism loss** that exceeds the statutorily established deductible that **we** retain. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act, as amended, exceed one hundred billion dollars in a Program Year (January 1 through December 31), the Treasury will not make payment for any portion of the amount of such losses that exceeds one hundred billion dollars.

If the Secretary of the Treasury determines that the aggregate amount of **certified terrorism loss** has exceeded one hundred billion dollars in a Program Year (January 1 through December 31), and **we** have met **our** insurer deductible under the Terrorism Risk Insurance Act, as amended, **we** will not pay for any portion of **certified terrorism loss** that exceeds one hundred billion dollars. If the **certified terrorism loss** exceeds one hundred billion dollars in a Program Year (January 1 through December 31), losses up to one hundred billion dollars are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury under the Terrorism Risk Insurance Act, as amended.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
## CL 0700 10 06
## VIRUS OR BACTERIA EXCLUSION

## DEFINITIONS

### Definitions Amended --

When **fungus** is a defined **term**, the definition of **fungus** is amended to delete reference to a bacterium.

When **fungus or related perils** is a defined **term**, the definition of **fungus or related perils** is amended to delete reference to a bacterium.

## PERILS EXCLUDED

The additional exclusion set forth below applies to all coverages, coverage extensions, supplemental coverages, optional coverages, and endorsements that are provided by the policy to which this endorsement is attached, including, but not limited to, those that provide coverage for property, earnings, extra expense, or interruption by civil authority.

1. The following exclusion is added under Perils Excluded, item 1.:

   ### Virus or Bacteria --

   We do not pay for loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.

This exclusion applies to, but is not limited to, any loss, cost, or expense as a result of:

a. any contamination by any virus, bacterium, or other microorganism; or

b. any denial of access to property because of any virus, bacterium, or other microorganism.

2. **Superseded Exclusions --** The Virus or Bacteria exclusion set forth by this endorsement supersedes the **terms** of any other exclusions referring to **pollutants** or to contamination with respect to any loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.

## OTHER CONDITIONS

### Other Terms Remain in Effect --

The **terms** of this endorsement, whether or not applicable to any loss, cost, or expense, cannot be construed to provide coverage for a loss, cost, or expense that would otherwise be excluded under the policy to which this endorsement is attached.

 Copyright, American Association of Insurance Services, Inc., 2006

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
## CL 1045B 01 08
## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

You are hereby notified that under the **Terrorism Risk Insurance Act** (the act), as amended, your policy may contain coverage for certain losses caused by acts of terrorism as defined in Section 102(1) of the Act. For further description of an act of terrorism see below.

Any losses resulting from certified acts of terrorism might be partially reimbursed by the United States. The government generally pays 85% of covered terrorism losses exceeding the statutorily deductible paid by an insurer. The following premium does not include any charges for the portion of loss covered by the federal government under the act.

The act, as amended, contains a $100 billion cap that limits U.S. government reimbursement. It also limits insurers' liability for losses in any one calendar year. If this limit exceeds $100 billion for all insurers, your coverage may be reduced.

In a state that is subject to the Standard Fire Policy statutes with respect to losses resulting from a certified act of terrorism, the coverage in your policy for such fire losses will continue.

The portion of the annual premium that is attributable to coverage for acts of terrorism, as defined in the act, is $**0.00**.

The following excerpt from the Act is provided for your information:

According to Section 102(1) of the Terrorism Risk Insurance Act, as amended, "the term **"act of terrorism"** means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States—(i) to be an act of terrorism; (ii) to be a violent act or an act that is dangerous to (I) human life; (II) property; or (III) infrastructure; (iii) to have resulted in damage within the United States, or outside the United States in the case of (I) an air carrier or vessel described in paragraph (5)(B); or (II) the premises of a United States mission; and (iv) to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion." Section 102(1)(B) states, "No act shall be certified by the Secretary as an act of terrorism if (I) the act is committed as part of the course of war declared by congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or (ii) property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000." Section 102(1)(C) and (D) specify that the determinations are final and not subject to judicial review and that the Secretary of the Treasury cannot delegate the determination to anyone.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
CL 1650 06 06
## CONDITIONAL NUCLEAR, BIOLOGICAL, AND CHEMICAL TERRORISM EXCLUSION

### NOTICE

The **Terrorism Risk Insurance Program** (the Program), as established under federal law, is scheduled to terminate while your policy is in effect.

The Terrorism Exclusion found in this endorsement will apply only if the federal government does not renew, extend, or otherwise replace the Program or if the conditions, definitions, or requirements of the Program are changed by the federal government and federal law no longer requires that we make Terrorism Coverage available to you.

1. The Terrorism Exclusion set forth by this endorsement becomes effective on the earliest of the following:

   a. the date that the federal Terrorism Risk Insurance Program (the Program) established by the Terrorism Risk Insurance Act has terminated with respect to the type of insurance provided by the Coverage Part to which this endorsement applies; or

   b. the effective date of a renewal, extension, or replacement of the Program, if federal law no longer requires that **we** make terrorism coverage available to **you** and the Program has been renewed, extended, or replaced subject to changes that:

      1) redefine terrorism; or

      2) increase **our** financial exposure under the Program; or

      3) impose requirements on insurance coverage for terrorism that differ from the terms, amounts, or other limitations that otherwise govern coverage for loss or damage under the **terms** of the Coverage Part to which this endorsement applies.

   If a condition described above under items 1.a. and 1.b. occurs prior to the effective date of the policy period to which this endorsement applies, the Terrorism Exclusion set forth by this endorsement applies as of the effective date of that policy period.

2. If the Terrorism Exclusion set forth by this endorsement becomes effective, this Terrorism Exclusion:

   a. supersedes any other endorsements that address **certified acts of terrorism, certified terrorism loss, non-certified acts of terrorism, and or non-certified terrorism loss**

that also apply to the Coverage Part to which this endorsement applies, but only with respect to loss or damage caused by one or more incidents of terrorism that occur on or after the effective date of this Terrorism Exclusion; and

   b. remains in effect unless **we** notify **you** of changes to this Terrorism Exclusion.

3. If none of the conditions described above under items 1.a. and 1.b. occur, any other endorsements that address **certified acts of terrorism, certified terrorism loss, noncertified acts of terrorism,** and or **noncertified terrorism loss** that also apply to the Coverage Part to which this endorsement applies continue to apply until **we** notify **you** of changes to such other endorsements.

4. The word terrorism, when shown in this endorsement in **bold**, has the following meaning:

   **Terrorism** means activities against persons, organizations, or property of any nature:

   a. that involve the following or preparation for the following:

      1) use or threat of force or violence; or

      2) commission or threat of a dangerous act; or

      3) commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. when one or both of the following applies:

      1) the effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

CL 1650 06 06      Copyright, American Association of Insurance Services, Inc., 2006      Page 1 of 2

# BADGER MUTUAL INSURANCE COMPANY

2) it appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social, or economic objectives, or to express (or express opposition to) a philosophy or ideology.

5. The following exclusion is added:

**TERRORISM EXCLUSION**

**We** will not pay for loss or damage caused directly or indirectly by **terrorism**, including action in hindering or defending against an actual or expected incident of **terrorism**. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

This exclusion applies only when one or more of the following are attributed to an incident of **terrorism**:

a. the **terrorism** is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation, or radioactive contamination; or

b. radioactive material is released, and it appears that one purpose of the **terrorism** was to release such material; or

c. the **terrorism** is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

d. pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the **terrorism** was to release such materials.

6. When the Terrorism Exclusion set forth by this endorsement applies due to an incident of **terrorism** described above under items 5.a. or 5.b., that Terrorism Exclusion supersedes the Nuclear Hazard Exclusion in the Coverage Part to which this endorsement applies.

7. The following provisions are added.

a. Neither the **terms** of this endorsement nor the **terms** of any other terrorism endorsement attached to the Coverage Part to which this endorsement applies provide coverage for any loss or damage that would otherwise be excluded by that Coverage Part under:

1) exclusions that address war, military action, or nuclear hazard; or

2) any other exclusion.

b. The absence of any other terrorism endorsement does not imply coverage for any loss or damage that would otherwise be excluded by the Coverage Part to which this endorsement applies under:

1) exclusions that address war, military action, or nuclear hazard; or

2) any other exclusion.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
CL 1660 06 06
## CONDITIONAL NUCLEAR, BIOLOGICAL, AND CHEMICAL TERRORISM EXCLUSION
(WITH LIMITED EXCEPTION)

## NOTICE

The Terrorism Risk Insurance Program (the Program), as established under federal law, is scheduled to terminate while your policy is in effect.

The Terrorism Exclusion found in this endorsement will apply only if the federal government does not renew, extend, or otherwise replace the Program or if the conditions, definitions, or requirements of the Program are changed by the federal government and federal law no longer requires that we make Terrorism Coverage available to you.

1. The Terrorism Exclusion set forth by this endorsement becomes effective on the earliest of the following:

    a. the date that the federal Terrorism Risk Insurance Program (the Program) established by the Terrorism Risk Insurance Act has terminated with respect to the type of insurance provided by the Coverage Part to which this endorsement applies; or

    b. the effective date of a renewal, extension, or replacement of the Program, if federal law no longer requires that we make terrorism coverage available to you and the Program has been renewed, extended, or replaced subject to changes that:

        1) redefine terrorism; or

        2) increase our financial exposure under the Program; or

        3) impose requirements on insurance coverage for terrorism that differ from the terms, amounts, or other limitations that otherwise govern coverage for loss or damage under the terms of the Coverage Part to which this endorsement applies.

    If a condition described above under items 1.a. and 1.b. occurs prior to the effective date of the policy period to which this endorsement applies, the Terrorism Exclusion set forth by this endorsement applies as of the effective date of that policy period.

2. If the Terrorism Exclusion set forth by this endorsement becomes effective, this Terrorism Exclusion:

    a. supersedes any other endorsements that address certified acts of terrorism, certified terrorism loss, non-certified acts of terrorism, and or non-certified terrorism loss that also apply to the Coverage Part to which this endorsement applies, but only with respect to loss or damage caused by one or more incidents of terrorism that occur on or after the effective date of this Terrorism Exclusion; and

    b. remains in effect unless we notify you of changes to this Terrorism Exclusion.

3. If none of the conditions described above under items 1.a. and 1.b. occur, any other endorsements that address certified acts of terrorism, certified terrorism loss, noncertified acts of terrorism, and or noncertified terrorism loss that also apply to the Coverage Part to which this endorsement applies continue to apply until we notify you of changes to such other endorsements.

4. The word terrorism, when shown in this endorsement in bold, has the following meaning:

    Terrorism means activities against persons, organizations, or property of any nature:

    a. that involve the following or preparation for the following:

        1) use or threat of force or violence; or

        2) commission or threat of a dangerous act; or

        3) commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

    b. when one or both of the following applies:

        1) the effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

CL 1660 06 06        Copyright, American Association of Insurance Services, Inc., 2006        Page 1 of 2

FILED DATE: 4/23/2026 11:10 AM 2026CH03888

# BADGER MUTUAL INSURANCE COMPANY

2) it appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social, or economic objectives, or to express (or express opposition to) a philosophy or ideology.

5. The following exclusion is added:

## TERRORISM EXCLUSION

Subject to the Fire Exception, **we** will not pay for loss or damage caused directly or indirectly by **terrorism**, including action in hindering or defending against an actual or expected incident of **terrorism**. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

This exclusion applies only when one or more of the following are attributed to an incident of **terrorism**:

a. the **terrorism** is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation, or radioactive contamination; or

b. radioactive material is released, and it appears that one purpose of the **terrorism** was to release such material; or

c. the **terrorism** is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

d. pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the **terrorism** was to release such materials.

**Fire Exception** – If **terrorism** results in fire, **we** will pay for the loss or damage caused by that fire, subject to the **limit** and all **terms** that apply to the affected property. This Fire Exception applies only to direct loss or damage by fire to covered property. Therefore, for example, this Fire exception does not apply to insurance provided under Income, Earnings, Extra Expense, or Legal Liability coverages, endorsements, coverage parts, or policy forms.

6. When the Terrorism Exclusion set forth by this endorsement applies due to an incident of **terrorism** described above under items 5.a. or 5.b., that Terrorism Exclusion supersedes the Nuclear Hazard Exclusion in the Coverage Part to which this endorsement applies.

7. The following provisions are added.

a. Neither the **terms** of this endorsement nor the **terms** of any other terrorism endorsement attached to the Coverage Part to which this endorsement applies provide coverage for any loss or damage that would otherwise be excluded by that Coverage Part under:

1) exclusions that address war, military action, or nuclear hazard; or

2) any other exclusion.

b. The absence of any other terrorism endorsement does not imply coverage for any loss or damage that would otherwise be excluded by the Coverage Part to which this endorsement applies under:

1) exclusions that address war, military action, or nuclear hazard; or

2) any other exclusion.

 Copyright, American Association of Insurance Services, Inc., 2006

# BADGER MUTUAL INSURANCE COMPANY
## CL-100 Ed. 1.0
## COMMON POLICY CONDITIONS

1. **Assignment** -- This policy may not be assigned without **our** written consent.

2. **Cancellation** -- **You** may cancel this policy by returning the policy to **us** or by giving **us** written notice and stating at what future date coverage is to stop.

   **We** may cancel this policy, or one or more of its parts, by written notice sent to **you** at **your** last mailing address known to **us.** If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

   If **we** cancel this policy for nonpayment of premium, **we** will give **you** notice at least 10 days before the cancellation is effective. If **we** cancel this policy for any other reason, **we** will give **you** notice at least 30 days in advance of cancellation. The notice will state the time that the cancellation is to take effect.

   **Your** return premium, if any, will be calculated according to **our** rules. It will be refunded to **you** with the cancellation notice or within a reasonable time.

Payment or tender of the unearned premium is not a condition of cancellation.

3. **Change, Modification, or Waiver of Policy Terms** -- A waiver or change of the **terms** of this policy must be issued by **us** in writing to be valid.

4. **Inspections** -- **We** have the right, but are not obligated, to inspect **your** property and operations at any time. This inspection may be made by **us** or may be made on **our** behalf. An inspection or its resulting advice or report does not warrant that **your** property or operations are safe, healthful, or in compliance with laws, rules, or regulations. Inspections or reports are for **our** benefit only.

5. **Examination of Books and Records** -- **We** may examine and audit **your** books and records that relate to this policy during the policy period and within three years after the policy has expired.

# BADGER MUTUAL INSURANCE COMPANY
## CL-100 Ed. 2.0
## COMMON POLICY CONDITIONS

1. **Assignment** -- This policy may not be assigned without **our** written consent.

2. **Cancellation** -- **You** may cancel this policy by returning the policy to **us** or by giving **us** written notice and stating at what future date coverage is to stop.

   **We** may cancel this policy, or one or more of its parts, by written notice sent to **you** at **your** last mailing address known to **us**. If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

   If **we** cancel this policy for nonpayment of premium, **we** will give **you** notice at least ten days before the cancellation is effective. If **we** cancel this policy for any other reason, **we** will give **you** notice at least 30 days in advance of cancellation. The notice will state the time that the cancellation is to take effect.

   **Your** return premium, if any, will be calculated according to **our** rules. It will be refunded to **you** with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

3. **Change, Modification, or Waiver of Policy Terms** -- A waiver or change of the **terms** of this policy must be issued by **us** in writing to be valid.

4. **Inspections** -- **We** have the right, but are not obligated, to inspect **your** property and operations at any time. This inspection may be made by **us** or may be made on **our** behalf. An inspection or its resulting advice or report does not warrant that **your** property or operations are safe, healthful, or in compliance with laws, rules, or regulations. Inspections or reports are for **our** benefit only.

5. **Examination of Books and Records** -- **We** may examine and audit **your** books and records that relate to this policy during the policy period and within three years after the policy has expired.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
CL-300 Ed. 1.0
## AMENDATORY ENDORSEMENT

The reference to words that have special meaning is deleted and replaced by the following:

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
## CL-998 Ed. 9-07
## AMENDATORY ENDORSEMENT – ILLINOIS

Under COMMON POLICY CONDITIONS, Item #2 **Cancellation**, is amended as follows:

### Delete:

**Your** return premium, if any, will be calculated according to **our** rules. It will be refunded to **you** with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

### Add:

**Your** unearned premium, if any, will be calculated as follows:

Return premiums will be computed on a pro rata basis when:

a. the policy is cancelled by the company;

b. **you** no longer have an insurable interest in the insured property of business; or

c. the policy is rewritten in the same company or group.

If the policy is cancelled for any other reason other than those stated above, the return premium will be .90 of the pro rata unearned premium.

Any unearned premium will be refunded to **you** with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

CL-998 Ed. 9-07

Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
CP 0171 10 08
## EXCLUSION – WATER DAMAGE

The policy is amended as follows. All other **terms** of the policy apply, except as amended by this endorsement.

### PERILS EXCLUDED

1. The Fire Perils Part, Basic Perils Part, Broad Perils Part, and Special Perils Part, when shown on the **declarations**, are amended as follows:

   Exclusion 1.g. is deleted and replaced by the following:

   g. **Water --**

      1) We do not cover loss caused by:

         a) flood; surface water; waves, including, but not limited to, tidal wave and tsunami; tidal water; tides; overflow of any body of water; or spray from any of these; all whether or not driven by wind. This includes, but is not limited to, storm surge, storm tide, and tidal surge;

         b) water that backs up through, overflows from, or is otherwise discharged from:

            (1) a sewer or drain;

            (2) a sump, sump pump, or related equipment; or

            (3) any other type of system designed to remove subsurface water which is drained from the foundation area;

         c) water below the surface of the ground. This includes water that exerts pressure on or flows, seeps, or leaks through or into:

            (1) basements, whether paved or not;

            (2) doors, windows, or other openings;

            (3) foundations, floors, walls, or paved surfaces; or

            (4) swimming pools, septic tanks, or other structures; or

         d) material present in or carried or otherwise moved by water described in items a) through c) above.

         However, if fire, explosion, or sprinkler leakage (if a covered peril) results, we do cover the resulting loss.

      2) This exclusion:

         a) applies regardless of the cause of the water or the material carried or moved by water described under items 1)a) through 1)d) above, whether or not such cause is an act of nature; and

         b) applies to, but is not limited to, water and material present in or carried or moved by water, whether or not driven by wind, that:

            (1) overtops;

            (2) escapes from;

            (3) is released from; or

            (4) is otherwise discharged from;

            a dam, levee, dike, floodgate, seawall, or other device or feature designed or used to retain, contain, or control water.

2. When the Earthquake Perils Part is shown on the **declarations**, exclusion 1.f. is deleted and replaced by the following:

   f. **Water --**

      1) We do not cover loss caused by:

         a) flood; surface water; waves, including, but not limited to, tidal wave and tsunami; tidal water; tides; overflow of any body of water; or spray from any of these; all whether or not driven by wind. This includes, but is not limited to, storm surge, storm tide, and tidal surge;

         b) water that backs up through, overflows from, or is otherwise discharged from:

            (1) a sewer or drain;

            (2) a sump, sump pump, or related equipment; or

            (3) any other type of system designed to remove subsurface water which is drained from the foundation area;

         c) water below the surface of the ground. This includes water that exerts pressure on or flows, seeps, or leaks through or into:

            (1) basements, whether paved or not;

            (2) doors, windows, or other openings;

            (3) foundations, floors, walls, or paved surfaces; or

# BADGER MUTUAL INSURANCE COMPANY

     (4)  swimming pools, septic tanks, or other structures; or

  d)  material present in or carried or otherwise moved by water described in items a) through c) above.

2)  This exclusion:

  a)  applies regardless of the cause of the water or the material carried or moved by water described under items 1)a) through 1)d) above, whether or not such cause is an act of nature; and

  b)  applies to, but is not limited to, water and material present in or carried or moved by water, whether or not driven by wind, that:

     (1)  overtops;

     (2)  escapes from;

     (3)  is released from; or

     (4)  is otherwise discharged from;

  a dam, levee, dike, floodgate, seawall, or other device or feature designed or used to retain, contain, or control water.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
## CP 0182 10 08
# AMENDATORY ENDORSEMENT – ILLINOIS

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

The following amend the Commercial Property Coverage Conditions:

1. Under Definitions, item b. of the definition of **pollutant** is deleted.

2. Under Conditions, Misrepresentation, Concealment, or Fraud is deleted and replaced by the following:

   **Misrepresentation, Concealment, or Fraud** -- **We** do not provide coverage for an insured who has:

   a. willfully concealed or misrepresented:

      1) a material fact or circumstance with respect to this insurance; or

      2) an insured's interest herein; or

   b. engaged in fraudulent conduct or sworn falsely with respect to this insurance or the subject thereof.

   For policies covering one- to four-family dwellings used principally for residential purposes, this condition does not apply to statements made on the application for coverage after the first renewal of the policy is issued, or after the first annual anniversary of the policy's original inception date.

3. Under Conditions, Subrogation is amended to include the following:

   An innocent insured who is the subject of criminal domestic violence by another insured cannot waive his or her right to recover. **We** retain all rights set forth by this Subrogation condition with regard to **our** right to recover, up to the amount **we** pay, for loss caused by an act of criminal domestic violence.

4. Under Conditions, Suit Against Us is amended to include the following:

   However, this period is extended by the number of days between the date proof of loss is submitted and the claim is denied in whole or in part.

The following amends the Special Perils Part only:

5. Under Perils Excluded, Criminal, Fraudulent, or Dishonest Acts is amended to include the following:

   However, if the loss is caused by an act arising out of a pattern of criminal domestic violence and the perpetrator of the loss is criminally prosecuted for the act causing the loss, this exclusion does not apply to an otherwise covered loss suffered by another insured who did not cooperate in or contribute to the act that caused the loss.

Subject to the **terms** under How Much We Pay and all other **terms** of this policy, **our** payment to an insured who did not cooperate in or contribute to the act that caused the loss may be limited to the claimant's insurable interest less payments made to a mortgagee or other party with a legal secured interest in the property.

The following amends the Coverage Part:

6. Under Other Conditions, Appraisal is amended to include the following:

   If **you** request an appraisal related to a loss to covered one- to four-family residential real or personal property, and the full amount of the appraised loss is upheld by agreement of the appraisers or umpire, we will pay the fees incurred for the services of the appraisers and umpire.

7. Under Other Conditions, Mortgage Provisions, if applicable, is deleted and replaced by the following:

   **Mortgage Provisions** -- If a mortgagee (mortgage holder) is named in this policy, loss to building property will be paid to the mortgagee and **you** as the interests of each appear. If more than one mortgagee is named, they will be paid in order of precedence.

   The insurance for the mortgagee continues in effect even when **your** insurance may be void because of **your** acts, neglect, or failure to comply with the coverage **terms**. The insurance for the mortgagee does not continue in effect if the mortgagee is aware of changes in ownership or substantial increase in risk and does not notify **us**.

   **We** may request payment of the premium from the mortgagee, if **you** fail to pay the premium.

   If **we** pay the mortgagee for a loss where **your** insurance may be void, the mortgagee's right to collect that portion of the mortgage debt from **you** then belongs to **us**. This does not affect the mortgagee's right to collect the remainder of the mortgage debt from **you**.

   As an alternative, **we** may pay the mortgagee the remaining principal and accrued interest in return for a full assignment of the mortgagee's interest and any instruments given as security for the mortgage debt.

   If **we** cancel or choose not to renew this policy, **we** will provide notice to the mortgagee using the same **terms** as the cancellation or nonrenewal notice **we** provide to **you**.

   Copyright, American Association of Insurance Services, Inc., 2008

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
CP 0640 07 03
## LIMITED FUNGUS AND RELATED PERILS COVERAGE

### SCHEDULE

| Limited Fungus and Related Perils Coverage Aggregate Limit | Earnings, Extra Expense, or Income Coverage Part Maximum Number of Days |
|---|---|
| $15,000 | 30 days |

This policy is amended to include the following **terms.** All other **terms** of the policy apply, except as amended by this endorsement.

### DEFINITIONS

The following definition is added:

**Fungus or related perils** means:

a. a fungus, including but not limited to mildew and mold;

b. a protist, including but not limited to algae and slime mold;

c. wet rot;

d. dry rot;

e. a bacterium; or

f. a chemical, matter, or compound produced or released by a fungus, a protist, wet rot, dry rot, or a bacterium, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

### PERILS EXCLUDED

1. The following exclusion is added to the Fire Perils Part, Basic Perils Part, Broad Perils Part, and Special Perils Part under Perils Excluded, item 1:

**Fungus or Related Perils –**

a. **We** do not pay for loss, cost, or expense caused by or relating to the existence of or any activity of **fungus or related perils**, except as set forth under the Limited Fungus and Related Perils Coverage **terms** of this endorsement.

However:

1) when the Fire Perils Part, Basic Perils Part, or Broad Perils Part applies, **we** do pay for loss that is caused by a covered peril that results from **fungus or related perils**;

2) when the Special Perils Part applies, **we** do pay for loss that is caused by a **specified peril** that results from **fungus or related perils**; and

3) when Equipment Breakdown coverage applies, **we** do pay for loss that is caused by an **accident** to **covered equipment** that results from **fungus or related perils**, unless the loss is limited or caused by another peril that is excluded under the Equipment Breakdown coverage **terms.**

b. This exclusion does not apply to:

1) loss that results from fire or lightning; or

2) collapse caused by hidden decay, to the extent that such loss is covered when the Broad Perils Part or Special Perils Part applies.

2. Under Perils Excluded in the Basic Perils Part, Broad Perils Part, and Special Perils Part, Contamination or Deterioration is deleted and replaced by the following:

**Contamination or Deterioration** – We do not pay for loss caused by contamination or deterioration, including corrosion, rust, or any quality, fault, or weakness in property that causes it to damage or destroy itself.

However, we do pay for resulting:

a. direct physical loss caused by a covered peril when the Basic Perils Part or Broad Perils Part applies; or

b. breakage of building glass or direct physical loss caused by a **specified peril** when the Special Perils Part applies.

3. When Equipment Breakdown coverage applies, the Contamination or Deterioration exclusion under the Equipment Breakdown **terms** is deleted and replaced by the following:

CP 0640 07 03      Copyright, American Association of Insurance Services, Inc., 2003      Page 1 of 3

# BADGER MUTUAL INSURANCE COMPANY

**Contamination or Deterioration – We** do not pay for loss caused by contamination or deterioration, including corrosion, rust, or any quality, fault, or weakness in property that causes it to damage or destroy itself.

However, **we** do pay for any resulting loss caused by an **accident**.

## SUPPLEMENTAL COVERAGES

The following provision is added under Increased Costs – Ordinance or Law when that Supplemental Coverage applies:

**We** do not pay for:

a.   loss or increased cost caused by the enforcement of any ordinance, law, or decree that regulates or requires the repair, replacement, remodeling, rehabilitation, or razing of property due to the existence of or any activity of **fungus or related perils**; or

b.   costs associated with the enforcement of any ordinance, law, or decree that requires **you** or anyone else to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of **fungus or related perils**.

## ADDITIONAL COVERAGES

The following provision applies to the Additional Coverage provided for Increased Building Loss – Value of Undamaged Portions; Increased Debris Removal – Demolition of Undamaged Portions; or Increased Cost of Construction when added to this policy.

**We** do not pay for:

a.   loss or increased cost caused by the enforcement of any ordinance, law, or decree that regulates or requires the repair, replacement, remodeling, rehabilitation, or razing of property due to the existence of or any activity of **fungus or related perils**; or

b.   costs associated with the enforcement of any ordinance, law, or decree that requires **you** or anyone else to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of **fungus or related perils**.

## LIMITED FUNGUS AND RELATED PERILS COVERAGE

1.   Subject to the Limited Fungus and Related Perils Coverage Aggregate Limit, **we** pay for direct physical loss to covered property, caused by or consisting of **fungus or related perils**:

a.   when the Fire Perils Part, Basic Perils Part, or Broad Perils Part applies and the **fungus or related perils** is the direct result of a covered peril that occurs during the policy period;

b.   when the Special Perils Part applies and the **fungus or related perils** is the direct result of a **specified peril** that occurs during the policy period; or

c.   when Equipment Breakdown coverage applies and the **fungus or related perils** is the direct result of an **accident** to **covered equipment** that occurs during the policy period, unless the loss is limited or caused by a peril that is excluded under the Equipment Breakdown coverage **terms**.

This coverage applies only if all reasonable steps were taken to protect the property at and after the time of the occurrence.

2.   The Limited Fungus and Related Perils Coverage Aggregate Limit is $15,000 unless a different Limited Fungus and Related Perils Coverage Aggregate Limit is shown on the Schedule.

The Limited Fungus and Related Perils Coverage Aggregate Limit also applies to any cost or expense to:

a.   clean up, contain, treat, detoxify, or neutralize **fungus or related perils** on covered property or remove **fungus or related perils** from covered property;

b.   remove and replace those parts of covered property if doing so is necessary to gain access to **fungus or related perils**; and

c.   test for the existence or level of **fungus or related perils** following the repair, replacement, restoration, or removal of damaged property if it is reasonable to believe that **fungus or related perils** are present.

The Limited Fungus and Related Perils Coverage Aggregate Limit is the most that **we** pay for each consecutive annual period and for any remaining period of less than 12 months, beginning with the inception date of this policy as shown on the **declarations**. If however, the policy period is extended for an additional period of less than 12 months, this additional period will be considered part of the preceding annual period for the purpose of determining the **limit**.

 Copyright, American Association of Insurance Services, Inc., 2003

# BADGER MUTUAL INSURANCE COMPANY

The Limited Fungus and Related Perils Coverage Aggregate Limit applies regardless of the number of claims made. Unless separate Limited Fungus and Related Perils Coverage Aggregate Limits are shown for each premises or building described on the Schedule, the Limited Fungus and Related Perils Coverage Aggregate Limit applies regardless of the number of premises or buildings insured under this policy.

The Limited Fungus and Related Perils Coverage Aggregate Limit is the most that **we** pay even if **fungus or related perils** that are the direct result of a specific occurrence recur or continue to exist during this or any future policy period.

This coverage does not increase the **limits** shown for any property, expense, or assessment covered.

3. The limitations set forth by this coverage do not apply to:

    a. **fungus or related perils** that result from fire or lightning;

    b. the Additional Coverage provided for Emergency Removal;

    c. collapse caused by hidden decay, to the extent that such loss is covered when the Broad Perils Part or Special Perils Part applies; or

    d. coverage that may be provided by endorsement to this policy for spoilage of **perishable stock**.

4. The **terms** of this coverage do not apply to loss or damage to covered property that is not caused, in total or in part, by **fungus or related perils** except

to the extent that **fungus or related perils** increase the amount of loss. When **fungus or related perils** increase the amount of loss, that increased amount is subject to the **terms** of this coverage.

5. Restoration of Limits under the Commercial Property Coverage Conditions is deleted and replaced by the following with respect to Limited Fungus and Related Perils Coverage:

    **Restoration of Limits** -- Except for payments made under Limited Fungus and Related Perils Coverage, any loss **we** pay under the Commercial Property Coverage does not reduce the **limits** applying to a later loss.

6. Coverage provided under any Earnings Coverage Part, Extra Expense Coverage Part, or Income Coverage Part attached to this policy is amended by the following provision.

    **We** extend **your** coverage for loss of earnings and or extra expense to cover loss caused by the existence of or any activity of **fungus or related perils** when the existence of or any activity of the **fungus or related perils** is the direct result of a covered peril, other than fire or lightning.

    Unless otherwise indicated on the Schedule, this extension of coverage is provided for a cumulative period of time not exceeding 30 days. If a different number of days is shown on the Schedule, this coverage is provided for a cumulative period of time not exceeding the number of days shown.

    This coverage does not increase the applicable **limit**.

CP 0640 07 03

Copyright, American Association of Insurance Services, Inc., 2003

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
CP 0643 01 08
## EXCLUSION – WAR AND MILITARY ACTION

The policy is amended as follows:

### PERILS EXCLUDED

The War exclusion, wherever it appears, is deleted and replaced by the following:

**War And Military Action --**

**We** do not cover loss or damage caused directly or indirectly by the following:

1) war, including undeclared or civil war; or

2) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or

3) insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

With respect to any action that comes within the **terms** of this exclusion and involves nuclear reaction or radiation or radioactive contamination, this War And Military Action Exclusion supersedes the Nuclear Hazard Exclusion.

CP 0643 01 08      Copyright, American Association of Insurance Services, Inc., 2008     

# BADGER MUTUAL INSURANCE COMPANY
CP-1 Ed. 1.0
## TABLE OF CONTENTS

The following Table of Contents shows how the Commercial Property Coverage is organized. It will help you locate particular sections of the policy.

Endorsements may also apply. They are identified on the **declarations**.

**Declarations Pages**

(Additional information may be shown on a separate schedule or supplemental **declarations**.)

Company information
Insured information
Policy Period
Description of Premises
Coverages and Forms
Limit of Insurance
Coinsurance Percentage
Deductible
Valuation
Premium
Mortgagee
Other

**Common Policy Conditions**

Assignment
Cancellation
Change, Modification, or
  Waiver of Policy Terms
Inspections
Examination of Books
  and Records

**Commercial Property
  Coverage Conditions**

Agreement
Definitions
Conditions

**Coverage Parts**

Additional Definitions
Property Covered/Coverage
  Options/Coverage
Property Excluded and
  Limitations/Exclusions and
  Limitations
Additional Coverages
Supplemental Coverages
What Must Be Done
  In Case of Loss
Valuation
How Much We Pay
Loss Payment
Other Conditions

**Perils Parts**

Additional Definitions
Perils Covered
Perils Excluded
Additional Property Excluded
  and Limitations
Additional Coverages
How Much We Pay (CP-89)

CP-1 Ed 1.0

Copyright MCMXCIV, American Association of Insurance Services

# BADGER MUTUAL INSURANCE COMPANY
## CP-100 Ed. 1.0
## COMMERCIAL PROPERTY COVERAGE CONDITIONS

FILED DATE: 4/23/2026 11:10 AM 2026CH03888

## AGREEMENT

In return for **your** payment of the required premium, **we** provide the coverage described herein subject to all the **terms** of the Commercial Property Coverage. This coverage is also subject to the **declarations** and additional conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements may also apply. They are identified on the **declarations**. Certain words have special meaning. These words are shown in **"bold type"**.

## DEFINITIONS

1. The words **you** and **your** mean the persons or organizations named as the insured on the **declarations.**

2. The words **we**, **us**, and **our** mean the company providing Commercial Property Coverage.

3. **Declarations** means all pages labeled "Declarations," "Supplemental Declarations," or "Schedules," which pertain to this policy.

4. **Limit** means the amount of coverage that applies.

5. **Pollutant** means:

   a.  any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be disposed of as well as recycled, reclaimed, or reconditioned.

   b.  electrical or magnetic emissions, whether visible or invisible, and sound emissions.

6. **Terms** means all provisions, limitations, exclusions, conditions, and definitions that apply.

## CONDITIONS

1. **Benefit to Others** -- Insurance under the Commercial Property Coverage shall not directly or indirectly benefit anyone having custody of **your** property.

2. **Conformity With Statute** -- **Terms** of the Commercial Property Coverage, in conflict with the statutes of the state where the described premises are located, are amended to conform to such statutes.

3. **Control of Property** -- The Commercial Property Coverage is not affected by any act or neglect beyond **your** control.

4. **Death of an Individual Named Insured** -- If **you** die, **your** rights and duties under the Commercial Property Coverage pass to **your** legal representative or other person having proper temporary custody of **your** property.

5. **Liberalization** -- If **we** adopt a revision of forms during a policy period which broadens the Commercial Property Coverage without additional premium, the broadened coverage will automatically apply to this policy. This also applies if **we** adopt the revision within 60 days before or during the policy period.

6. **Misrepresentation, Concealment, or Fraud** -- The Commercial Property Coverage is void as to **you** and any other insured if, before or after a loss:

   a.  **you** have or any other insured has willfully concealed or misrepresented:

      1)  a material fact or circumstance that relates to this insurance or the subject thereof; or

      2)  **your** interest herein;

   b.  there has been fraud or false swearing by **you** or any other insured with regard to a matter that relates to this insurance or the subject thereof.

7. **Policy Period** -- **We** cover loss during the policy period shown on the **declarations.**

8. **Restoration of Limits** -- Any loss **we** pay under the Commercial Property Coverage does not reduce the **limits** applying to a later loss.

9. **Subrogation** -- If **we** pay for a loss under the Commercial Property Coverage **we** may require that **you** assign to **us** any right of recovery against others up to the amount **we** paid.

   **You** may waive **your** right to recover, in writing, before the loss takes place without voiding coverage.

   **We** are not liable for a loss if, after the loss, **you** impair **our** right to recover. But, **you** may waive **your** right to recover in writing after a loss only as to the following parties:

   a.  someone insured under the Commercial Property Coverage;

   b.  **your** tenant;

# BADGER MUTUAL INSURANCE COMPANY

c. a business firm owned or controlled by **you**; or

d. a business firm which owns or controls **your** business.

10. **Suit Against Us** – No suit to recover any loss may be brought against **us** unless:

a. the **terms** of the Commercial Property Coverage have been fully complied with; and

b. the suit is commenced within two years after the loss.

If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by the law.

11. **Territorial Limits** – **We** only cover loss within the United States of America, its territories and possessions, Canada, and Puerto Rico.

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

# BADGER MUTUAL INSURANCE COMPANY
## CP-12 Ed. 1.0
## BUILDING AND PERSONAL PROPERTY COVERAGE PART

We cover direct physical loss to covered property at the premises described on the **declarations** caused by a covered peril.

## PROPERTY COVERED

We cover the following types of property for which a limit is shown on the **declarations**.

### BUILDING PROPERTY

This means buildings and structures described on the **declarations**, including:

1. completed additions;

2. fixtures, machinery, and equipment which are a permanent part of the described building or structure;

3. outdoor fixtures;

4. personal property owned by **you** and used to maintain or service the described building or structure or its premises, including air-conditioning equipment; fire extinguishing apparatus; floor coverings; and appliances for refrigerating, cooking, dish washing, and laundering;

5. if not covered by other insurance:

   a. additions under construction, alterations, and repairs to the building or structure; and

   b. materials, equipment, supplies, and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations, or repairs to the building or structure.

### BUSINESS PERSONAL PROPERTY

This means **your** business personal property in the buildings and structures described on the **declarations** or in the open (or in vehicles) on or within 100 feet of the described premises. Unless otherwise specified on the **declarations**, this includes:

1. **your** interest in personal property of others to the extent of **your** labor, material, and services;

2. **your** use interest as tenant in improvements to the described building or structure. Improvements are fixtures, alterations, installations, or additions:

   a. to a building or structure **you** occupy but do not own; and

   b. made or acquired at **your** expense and which cannot be legally removed by **you**; and

3. leased personal property which **you** have a contractual responsibility to insure, unless otherwise insured by the Commercial Property Coverage under Personal Property of Others.

## PERSONAL PROPERTY OF OTHERS

This means personal property of others:

1. that is in **your** care, custody, or control; and

2. located in the buildings and structures described on the **declarations** or in the open (or in vehicles) on or within 100 feet of the described premises.

However, **our** payment for loss to personal property of others is only for the benefit of the owners of the personal property.

## PROPERTY EXCLUDED AND LIMITATIONS

1. **Animals — We** do not cover animals, including birds and fish, unless owned by others and boarded by **you. We** do cover animals **you** own and hold for sale.

2. **Antennas, Awnings, Canopies, Fences, and Signs —** Except as provided under Supplemental Coverages, **we** do not cover outdoor:

   a. radio, television, satellite, dish-type, or other antennas including their masts, towers, and lead-in wiring;

   b. awnings or canopies of fabric or slat construction or their supports;

   c. fences; or

   d. signs, other than signs attached to buildings.

3. **Contraband — We** do not cover contraband or property in the course of illegal transportation or trade.

4. **Foundations, Retaining Walls, Piling, Piers, Wharves, or Docks — We** do not cover foundations which are below the lowest basement floor or below ground level if there is no basement; retaining walls that are not part of buildings or structures; or pilings, piers, wharves, or docks.

5. **Land; Water; Growing Crops or Lawns; Cost of Excavation, Grading, or Filling; Paved Surfaces; or Underground Pipes, Flues, or Drains — We** do not cover:

   a. land, including land on which the property is located;

   b. underground or surface water;

# BADGER MUTUAL INSURANCE COMPANY

c. growing crops or lawns;

d. cost of excavations, grading, or filling;

e. paved outdoor surfaces, including driveways, parking lots, roads, bridges, and walks; or

f. underground pipes, flues, and drains.

6. **Money and Securities – We** do not cover accounts, bills, currency, food stamps, or other evidences of debt, lottery tickets not held for sale, money, notes, or securities.

7. **Property More Specifically Insured – We** do not cover property which is more specifically insured in whole or in part by any other insurance. **We** do cover the amount in excess of the amount due from the more specific insurance.

8. **Trees, Shrubs, and Plants** – Except as provided under Supplemental Coverages, **we** do not cover trees; shrubs; plants; and grain, hay, straw, or other crops, when outdoors. However, **we** do cover trees, shrubs, and plants **you** own and hold for sale.

9. **Valuable Papers and Records – Research Cost–** Except as provided under Supplemental Coverages, **we** do not cover the cost to research, replace, or restore the information on valuable papers and records, including those which exist on electronic or magnetic media.

10. **Vehicles, Aircraft, and Watercraft – We** do not cover vehicles or self-propelled machines (including aircraft or watercraft and their motors, equipment, and accessories) that are:

a. required to be licensed for use on public roads; or

b. operated principally away from the described premises.

**We** do cover vehicles or self-propelled machines **you** manufacture, process, warehouse, or hold for sale. However, this does not include autos **you** hold for sale. **We** also cover rowboats or canoes out of water at the described premises.

## ADDITIONAL COVERAGES

1. **Debris Removal – We** cover the cost to remove the debris of covered property that is caused by a covered peril. This coverage does not include costs to:

a. extract **pollutants** from land or water; or

b. remove, restore, or replace polluted land or water.

**We** do not pay any more under this coverage than 25 percent of the amount **we** pay for the direct physical loss. **We** do not pay more for loss to property and debris removal combined than the **limit** for the damaged property.

However, **we** pay an additional amount of debris removal expense up to $5,000 when the debris removal expense exceeds 25 percent of the amount **we** pay for direct physical loss or when the loss to property and debris removal combined exceeds the **limit** for the damaged property.

**We** do not pay any expenses unless they are reported to **us** in writing within 180 days from the date of direct physical loss to covered property.

2. **Emergency Removal – We** cover loss to covered property while moved or being moved from the described premises for preservation from loss caused by a covered peril. **We** pay for any direct physical loss to that property. This coverage applies for up to 10 days after the property is first moved. This does not increase the **limit**.

3. **Fire Department Service Charges – We** pay up to $1,000 to cover **your** liability, assumed by contract or agreement prior to the loss, for fire department service charges.

This coverage is limited to charges incurred when the fire department is called to save or protect covered property from a covered peril.

No deductible applies.

This is an additional **limit**.

4. **Pollutant Clean Up and Removal – We** pay **your** expense to extract **pollutants** from land or water at the described premises if the discharge, dispersal, seepage, migration, release, or escape of the **pollutants** is caused by a covered peril that occurs during the policy period.

**We** pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of **pollutants** only when the expense of extracting the **pollutants** is covered by this Additional Coverage.

The most **we** pay for each described premises is $10,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12 month period of this policy. The expenses are paid only if they are reported to **us** in writing within 180 days from the date the covered peril occurs.

This is an additional **limit**.

## PERILS COVERED

See the applicable Perils Part shown on the **declarations**.

# BADGER MUTUAL INSURANCE COMPANY

FILED DATE: 4/23/2026 11:10 AM 2026CH03888

## SUPPLEMENTAL COVERAGES

If a Coinsurance percentage of 80% or more is shown on the **declarations**, **we** provide the following supplemental coverages.

Unless otherwise stated, each supplemental coverage:

a. applies for loss caused by a covered peril;

b. applies to property in or on buildings or structures described on the **declarations** or in the open (or in vehicles) within 100 feet of the described premises;

c. is an additional amount of coverage; and

d. is not subject to and not considered in applying coinsurance.

1. The following supplemental coverages apply when a **limit** is shown on the **declarations** for either Building Property or Business Personal Property.

   a. **Antennas, Awnings, Canopies, Fences, and Signs — We** pay up to $1,000 for **your** outdoor:

      1) radio, television, satellite, dish-type, or other antennas including their masts, towers, and lead-in wiring;

      2) awnings or canopies of fabric or slat construction or their supports;

      3) fences; or

      4) signs.

      **We** only cover direct physical loss caused by aircraft, civil commotion, explosion, fire, lightning, or riot, including debris removal expense.

   b. **Property Off Premises — We** pay up to $5,000 for covered property while temporarily at a location that **you** do not own, control, rent, or lease.

      This coverage does not include property:

      1) in or on a vehicle;

      2) in the care, custody, or control of **your** salesperson; or

      3) at any fair or exhibition.

2. The following supplemental coverages apply only when a **limit** is shown on the **declarations** for Building Property.

   a. **Increased Costs — Ordinance or Law — We** pay up to $5,000 for each described premises to cover the increased costs of a covered loss, including debris removal expense, resulting from the enforcement of any ordinance, law, or decree that regulates or requires:

1) the construction, use, or repair of any property; or

2) the demolition of any property, in part or in whole, not damaged by a covered peril.

The ordinance, law, or decree must be in force at the time of loss.

Under Perils Excluded, Ordinance or Law does not apply to this Supplemental Coverage.

   b. **Newly Acquired Buildings — We** cover **your** buildings or structures being built or that **you** acquire during the policy period.

      This coverage applies for 30 days after construction is started or for 30 days from the date **you** acquire the building or structure; or until **you** report the newly acquired property to **us**; whichever occurs first. This coverage does not extend beyond the end of the policy period.

      **You** must pay any additional premium due from the date construction is started or the date **you** acquire the property.

      **We** pay up to 25 percent of the **limit** shown on the **declarations** for Building Property but not exceeding $250,000 for each building or structure.

   c. **Trees, Shrubs, and Plants — We** pay up to $1,000 for **your** outdoor trees, shrubs, and plants not held for sale. **We** only cover loss caused by aircraft, civil commotion, explosion, fire, lightning, or riot. This coverage is limited to $250 on any one tree, shrub, or plant, including debris removal.

3. The following supplemental coverages apply only when a **limit** is shown on the **declarations** for Business Personal Property.

   a. **Condominium Units — If** the described premises is a condominium unit that **you** own, **we** cover the fixtures, improvements, and alterations within **your** unit.

      **We** pay up to 10 percent of the **limit** shown on the **declarations** for Business Personal Property but not exceeding $20,000 for each building or structure.

      This is not an additional amount of coverage.

   b. **Extra Expenses — We** pay up to $1,000 for the necessary extra expenses that **you** incur in order to continue as nearly as practical **your** normal business following loss by a covered peril. This applies when the damage is to property in the described buildings or structures or in the open (or in vehicles) on or within 100 feet of the described premises.

# BADGER MUTUAL INSURANCE COMPANY

We cover **your** extra expenses for the time it should reasonably take to resume **your** normal business, but not longer than the time it should reasonably take to rebuild, repair, or replace the property that has incurred the loss.

We do not cover the normal cost of repair, replacement, or restoration of property. **We** cover expenses in excess of normal that **you** necessarily incur to reduce loss, but only to the extent they reduce the loss under this coverage.

We do not cover the cost of research or other extra expense necessary to reproduce, replace, or restore lost information on lost or damaged valuable papers and records, including those which exist on electronic or magnetic media.

We cover expenses in excess of normal that **you** necessarily incur to reduce loss, but only to the extent that they reduce the loss under this coverage.

c. **Personal Effects** -- We pay up to $500, at each described premises, for personal effects owned by **you**, **your** officers, **your** partners, or **your** employees. This coverage is limited to $100 on property owned by any one person.

d. **Personal Property -- Acquired Locations --** We cover **your** business personal property at locations that **you** acquire, other than fairs or exhibitions.

This coverage applies for 30 days from the date **you** acquire the location or until **you** report the acquired location to **us**, whichever occurs first. This coverage does not extend beyond the end of the policy period.

**You** must pay any additional premium due from that date **you** acquire the location.

We pay up to 10 percent of the **limit** shown on the **declarations** for Business Personal Property but not exceeding $100,000 for each location.

e. **Personal Property of Others --** We pay up to $2,500, at each described premises, for personal property of others in **your** care, custody, or control. This coverage is only for the benefit of the owners of the personal property.

f. **Property in Transit --** We pay up to $1,000 for covered business personal property (other than property in the care, custody, or control of **your** salesperson) in transit more than 100 feet from the described premises in vehicles **you** own, lease, or operate.

We only cover direct physical loss caused by civil commotion; collision with another vehicle or object, other than the road bed; explosion, fire; hail; lightning; overturn or upset of the vehicle; riot; vandalism; or windstorm.

This coverage also includes loss of an entire package, case, or bale from within a locked part of **your** vehicle caused by theft. Theft must be proven by visible marks of forced entry.

g. **Valuable Papers and Records -- Research Cost --** We pay up to $1,000 for the cost of research or other expenses necessary to reproduce, replace, or restore lost information on lost or damaged valuable papers and records, including those which exist on electronic or magnetic media, for which duplicates do not exist.

## WHAT MUST BE DONE IN CASE OF LOSS

1.  **Notice --** In case of a loss, **you** must:

    a.  give **us** or **our** agent prompt notice including a description of the property involved (**we** may request written notice);

    b.  give notice to the police when the act that causes the loss is a crime; and

    c.  give notice to the credit card company if the loss involves a credit card.

2.  **Protect Property --** You must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss. We pay the reasonable costs incurred by **you** for necessary repairs or emergency measures performed solely to protect covered property from further damage by a covered peril if a covered peril has already caused a loss to covered property. However, **we** do not pay for such repairs or emergency measures performed on property which has not been damaged by a covered peril. This does not increase **our** limit.

3.  **Proof of Loss --** You must send **us**, within 60 days after **our** request, a signed, sworn proof of loss. This must include the following information:

    a.  the time, place, and circumstances of the loss;

    b.  other policies of insurance that may cover the loss;

    c.  **your** interest and the interests of all others in the property involved, including all mortgages and liens;

    d.  changes in title or occupancy of the covered property during the policy period;

    e.  detailed estimates for repair or replacement of covered property;

    f.  available plans and specifications of buildings or structures;

# BADGER MUTUAL INSURANCE COMPANY

g. detailed estimates of any covered loss of income and expenses; and

h. an inventory of damaged and undamaged covered personal property showing in detail the quantity, description, cost, actual cash value, and amount of the loss. **You** must attach to the inventory copies of all bills, receipts, and related documents that substantiate the inventory. An inventory of undamaged personal property is not required if the total claim for a loss is less than $10,000 and less than five percent of the total limit.

4. **Examination Under Oath — You** must submit to examination under oath in matters connected with the loss as often as **we** reasonably request and give **us** sworn statements of the answers. If more than one person is examined, **we** have the right to examine and receive statements separately and not in the presence of the others.

5. **Records — You** must produce records, including tax returns and bank microfilms of all cancelled checks, relating to value, loss, and expense and permit copies and extracts to be made of them as often as **we** reasonably request.

6. **Damaged Property — You** must exhibit the damaged and undamaged property as often as **we** reasonably request and allow **us** to inspect or take samples of the property.

7. **Volunteer Payments — You** must not, except at **your** own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

8. **Abandonment — We** do not have to accept any abandonment of property.

9. **Cooperation — You** must cooperate in performing all acts required by the Commercial Property Coverage.

## VALUATION

1. **Actual Cash Value** — When replacement cost is not shown on the **declarations** for covered property, the value is based on the actual cash value at the time of the loss (with a deduction for depreciation), except as provided in paragraphs 2. through 9. below.

2. **Limited Replacement Cost** — When the **limit** for Building Property satisfies the coinsurance requirement, **we** pay up to $2,500 to cover the cost to repair or replace **your** buildings or structures. This applies only when the total loss does not exceed $2,500. This provision does not apply to awnings; canopies; floor coverings; appliances for refrigerating, ventilating, cooking, dishwashing, or laundering; or outdoor equipment or furniture.

3. **Glass** — The value of glass is based on the cost of safety glazing material where required by code, ordinance, or law.

4. **Merchandise Sold** — The value of merchandise that **you** have sold but not delivered is based on the selling price less all discounts and unincurred expenses.

5. **Valuable Papers and Records** — The value of valuable papers and records, including those which exist on electronic or magnetic media (other than prepackaged software programs) is based on the cost of blank materials, and the labor to transcribe or copy the records when there is a duplicate.

6. **Tenant's Improvements** — The value of tenant's improvements losses is based on the actual cash value if repaired or replaced at **your** expense within a reasonable time.

The value of tenant's improvements losses is based on a portion of **your** original cost if not repaired or replaced within a reasonable time. This portion is determined as follows:

a. Divide the number of days from the date of the loss to the expiration date of the lease by the number of days from the date of installation to the expiration date of the lease; and

b. Multiply the figure determined in 6.a. above by the original cost.

If **your** lease contains a renewal option, the expiration of the lease in this procedure is replaced by the expiration of the renewal option period.

Tenant's improvements losses are not covered if repaired or replaced at another's expense.

7. **Pair or Set** — The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

8. **Loss to Parts** — The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

9. **Replacement Cost** — When replacement cost is shown on the **declarations** for covered property, the value is based on replacement cost without any deduction for depreciation.

This replacement cost provision does not apply to objects of art, rarity, or antiquity; property of others; or paragraphs 3. through 8. above.

# BADGER MUTUAL INSURANCE COMPANY

The replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment shall not exceed the amount **you** spend to repair or replace the damaged or destroyed property.

Except as provided under Limited Replacement Cost, replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced. **You** may make a claim for actual cash value before repair or replacement takes place, and later for the replacement cost if **you** notify **us** of **your** intent within 180 days after the loss.

## HOW MUCH WE PAY

1. **Insurable Interest -- We** do not cover more than **your** insurable interest in any property.

2. **Deductible -- We** pay only that part of **your** loss over the deductible amount stated on the **declarations** in any one occurrence. The deductible applies to the loss before application of any coinsurance or reporting provision.

3. **Loss Settlement Terms --** Subject to paragraphs 1., 2., 4., 5., and 6. under How Much We Pay, **we** pay the lesser of:

   a. the amount determined under Valuation;

   b. the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

   c. the **limit** that applies to covered property.

4. **Coinsurance --** When a coinsurance percentage is shown on the **declarations, we** only pay a part of the loss if the **limit** is less than the value of the covered property at the time of the loss multiplied by the coinsurance percentage shown for it on the **declarations. Our** part of the loss is determined using the following steps:

   a. Multiply the value of the covered property at the time of the loss by the coinsurance percentage;

   b. Divide the **limit** for covered property by the figure determined in 4.a. above; and

   c. Multiply the total amount of loss, after the application of any deductible, by the figure determined in 4.b. above.

   The most **we** pay is the amount determined in 4.c. above or the **limit**, whichever is less. **We** do not pay any remaining part of the loss.

   If there is more than one **limit** shown on the **declarations** for this Coverage Part, this procedure applies separately to each **limit.**

   If there is only one **limit** shown on the **declarations** for this Coverage Part, this procedure applies to the total of all covered property to which the **limit** applies.

### Example -- Underinsurance

| | |
|---|---|
| Value of covered property | $100,000 |
| Coinsurance | 80% |
| **Limit** | $60,000 |
| Loss | $21,000 |
| Deductible | $1,000 |

| | |
|---|---|
| Step a.: | $100,000 x 80% = $80,000 (minimum **limit** needed to meet coinsurance requirements) |
| Step b.: | $60,000 ÷ $80,000 = .75 |
| Step c.: | $21,000 - $1,000 = $20,000<br>$20,000 x .75 = $15,000 |

**We** pay no more than $15,000. **We** do not pay the remaining $6,000.

### Example -- Sufficient Insurance

| | |
|---|---|
| Value of covered property | $100,000 |
| Coinsurance | 80% |
| **Limit** | $80,000 |
| Loss | $21,000 |
| Deductible | $1,000 |

| | |
|---|---|
| Step a.: | $100,000 x 80% = $80,000 (minimum **limit** needed to meet coinsurance requirements) |
| Step b.: | $80,000 ÷ $80,000 = 1.00 |
| Step c.: | $21,000 - $1,000 = $20,000<br>$20,000 x 1.00 = $20,000 |

**We** pay no more than $20,000 in excess of the deductible. No penalty applies.

### Example -- Blanket Limit

| | |
|---|---|
| Value of covered property | |
|    Building at Location 1. | $75,000 |
|    Building at Location 2. | $75,000 |
|    Personal Property at | |
|       Location 2. | $50,000 |
| Total Value of covered property | $200,000 |
| Coinsurance | 80% |
| **Limit** | $128,000 |
| Loss | |
|    Building at Location 2. | $20,000 |
|    Personal Property at | |
|       Location 2. | $11,000 |
| Total Loss | $31,000 |
| Deductible | $1,000 |

# BADGER MUTUAL INSURANCE COMPANY

Step a.: $200,000 x 80% = $160,000 (minimum limit needed to meet coinsurance requirements)

Step b.: $128,000 ÷ $160,000 = .80

Step c.: $31,000 - $1,000 = $30,000
$30,000 x .80 = $24,000

We pay no more than $24,000. We do not pay the remaining $7,000.

5. **Insurance Under More Than One Coverage --** If more than one coverage of this policy insures the same loss, we pay no more than the actual claim or loss sustained.

6. **Insurance Under More Than One Policy -- You** may have another policy subject to the same plan, terms, conditions, and provisions as this policy. If **you** do, **we** pay **our** share of the covered loss. **Our** share is the proportion that the applicable **limit** under this policy bears to the **limit** of all policies covering on the same basis.

If there is another policy covering the same loss, other than that described above, **we** pay only for the amount of covered loss in excess of the amount due from that other policy, whether **you** can collect on it or not. But **we** do not pay more than the applicable **limit**.

## LOSS PAYMENT

1. **Our Options -- We** may:

   a. pay the value of the loss;

   b. pay the cost of repairing or replacing the loss;

   c. rebuild, repair, or replace with property of equivalent kind and quality, to the extent practicable; or

   d. take all or any part of the damaged property at the agreed or appraised value.

   **We** must give **you** notice of **our** intentions within 30 days after we have received a satisfactory proof of loss.

2. **Your Losses -- We** adjust all losses with **you**. Payment is made to **you** unless another loss payee is named in the policy. A covered loss is payable 30 days after a satisfactory proof of loss is received, and:

   a. the amount of the loss has been agreed to in writing;

   b. an appraisal award has been filed with **us**; or

   c. a final judgment has been entered.

3. **Property of Others --** Losses to property of others may be adjusted with and paid to:

   a. **you** on behalf of the owner; or

   b. the owner.

If **we** pay the owner, **we** do not have to pay **you**. **We** may also choose to defend any suits arising from the owners at **our** expense.

## OTHER CONDITIONS

In addition to the policy **terms** which are contained in other sections of the Commercial Property Coverage, the following conditions apply.

1. **Appraisal -- If you** and **we** do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determined by appraisal.

   If either makes a written demand for appraisal, each selects a competent, independent appraiser and notifies the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the property is located to select an umpire.

   The appraisers then determine and state separately the amount of each loss.

   The appraisers also determine the actual cash value of covered property items at the time of the loss, if requested.

   A written agreement is binding on all parties. If the appraisers fail to agree within a reasonable time, they submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three is binding on all parties.

   Each appraiser is paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire is paid equally by **you** and **us.**

   If there is an appraisal, **we** retain **our** right to deny the claim.

2. **Mortgage Provisions --** If a mortgagee (mortgage holder) is named in this policy, loss to Building Property shall be paid to the mortgagee and **you** as their interest appears. If more than one mortgagee is named, they shall be paid in order of precedence.

   The insurance for the mortgagee continues in effect even when **your** insurance may be void because of **your** acts, neglect, or failure to comply with the coverage **terms**. The insurance for the mortgagee does not continue in effect if the mortgagee is aware of changes in ownership or substantial increase in risk and does not notify **us.**

# BADGER MUTUAL INSURANCE COMPANY

If we cancel this policy, we notify the mortgagee at least 10 days before the effective date of cancellation if we cancel for your nonpayment of premium, or 30 days before the effective date of cancellation if we cancel for any other reason.

We may request payment of the premium from the mortgagee, if you fail to pay the premium.

If we pay the mortgagee for a loss where your insurance may be void, the mortgagee's right to collect that portion of the mortgage debt from you then belongs to us. This does not affect the mortgagee's right to collect the remainder of the mortgage debt from you. As an alternative, we may pay the mortgagee the remaining principal and accrued interest in return for a full assignment of the mortgagee's interest and any instruments given as security for the mortgage debt.

If we choose not to renew this policy, we give written notice to the mortgagee at least 10 days before the expiration date of this policy.

3. **Recoveries** – If we pay you for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a. **You** must notify us promptly if you recover property or receive payment.

   b. **We** must notify you promptly if we recover property, or receive payment.

   c. Any recovery expenses incurred by either are reimbursed first.

   d. **You** may keep the recovered property but you must refund to us the amount of the claim paid, or any lesser amount to which we agree.

   e. If the claim paid is less than the agreed loss due to a deductible or other limiting **term** of this policy any recovery is pro rated between **you** and **us** based on **our** respective interest in the loss.

4. **Vacancy – Unoccupancy** – We do not pay for loss caused by attempted theft, breakage of building glass, sprinkler leakage (unless you have protected the system against freezing), theft, vandalism, or water damage occurring while the building or structure has been:

   a. vacant for more than 60 consecutive days; or

   b. unoccupied for more than

      1) 60 consecutive days; or

      2) the usual or incidental unoccupancy period for the described premises

   whichever is longer.

The amount we pay for any loss that is not otherwise excluded is reduced by 15%.

Unoccupied means that the customary activities or operations of the described occupancy are suspended, but business personal property has not been removed. The building or structure shall be considered vacant and not unoccupied when the occupants have moved, leaving the building or structure empty or containing only limited business personal property. Buildings or structures under construction are not considered vacant or unoccupied.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
CP-601 Ed. 2.0
## SPOILAGE COVERAGE

### SCHEDULE

| Prem. No. | Bldg. No. | Description of Covered Property | Limit | PERILS COVERED | | Refrigerated Maintenance or Service Agreement |
| | | | | Breakdown and Contamination | Power Disruption | |
|---|---|---|---|---|---|---|
| | | | | | | |

### ADDITIONAL DEFINITIONS

**Perishable Stock** means personal property preserved and maintained under controlled conditions and susceptible to loss if the controlled conditions change.

### PROPERTY COVERED

We cover **perishable stock** owned by **you** or by others that is in **your** care, custody, or control as described on the schedule. We insure against loss caused by the covered perils. **Perishable stock** is covered only while at the premises described on the schedule.

### PERILS COVERED

We cover loss to covered **perishable stock** caused by the following events only when indicated by an "X" on the schedule.

1. **Breakdown** -- This means a change in temperature or humidity resulting from:
   a. mechanical breakdown;
   b. malfunction; or
   c. failure

of the refrigeration system, or the equipment or apparatus controlling the refrigeration system, while at the described premises.

2. **Contamination** -- This means contamination by the refrigerant of the refrigeration system.

3. **Power Disruption** -- This means a change in temperature or humidity resulting from:
   a. complete or partial lack of electrical power; or
   b. fluctuation of electrical current

due to conditions beyond **your** control.

### PERILS EXCLUDED

1. The following Perils Excluded in this policy apply to Spoilage Coverage:
   a. Civil Authority.
   b. Earth Movement or Volcanic Eruption.
   c. Nuclear Hazard.
   d. War.
   e. Water.

2. The following "Perils Excluded" are added:

CP-601 Ed. 2.0          Copyright MCMXCIV, American Association of Insurance Services          Page 1 of 2

FILED DATE: 4/23/2026 11:10 AM  2026CH03888

# BADGER MUTUAL INSURANCE COMPANY

We do not pay for loss if one or more of the following exclusions apply to the loss.

a.   **Disconnection** or **Deactivation** -- This means the disconnection of the refrigeration system from the source of power, or the deactivation of electrical power caused by turning off a switch or other device used to control the electrical current or power.

b.   **Glass Breakage** -- This means the breakage of any glass that is a permanent part of the refrigeration system.

c.   **Inability to Provide Sufficient Power** — This means:

1)   the inability of an electrical utility company or other power source to provide sufficient power due to governmental order or lack of fuel; or

2)   the lack of generating capacity at the described premises to meet demand.

## OTHER CONDITIONS

**Refrigeration Maintenance or Service Agreement —** We do not cover losses occurring at the described premises if **you** do not notify **us** as soon as reasonably possible when **you** know of any suspension, termination, cancellation, or impairment of an applicable refrigeration maintenance or service agreement. This condition applies only when a refrigeration maintenance or service agreement is indicated by an "X" on the schedule for the described premises. This condition does not apply when factors away from the described premises result in the complete or partial lack of electrical power or fluctuation of electrical current at the described premises.

CP-601 Ed. 2.0     Copyright MCMXCIV, American Association of Insurance Services    

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
CP-614 Ed. 1.0
### PROTECTIVE DEVICES

**SCHEDULE**

| Loc. No. | Bldg. No. | Protective Device or Service |
|----------|-----------|------------------------------|
|          |           |                              |

## OTHER CONDITIONS

**Protective Devices -- You** are required to maintain the protective devices and services shown on the schedule above.

## PERILS EXCLUDED

1.  The following is added to the Fire, Basic, Broad, and Special Perils Part of this policy and applies only to devices or services providing fire protection:

    We do not pay for loss caused by fire if, prior to the fire, **you:**

    a.  had knowledge of any suspension or impairment in any protective device or service shown on the schedule above and did not notify **us;** or

    b.  failed to maintain in complete working order, any protective device or service shown on the schedule above which **you** control.

If part of an automatic sprinkler system is shut off and **you** restore full protection within 48 hours, notification to **us** is not necessary.

2.  The following is added to the Special Perils Part of this policy and applies only to devices or services providing theft protection:

    We do not pay for loss caused by theft if, prior to the theft, **you:**

    a.  had knowledge of any suspension or impairment in any protective device or service shown on the schedule above and did not notify **us;** or

    b.  failed to maintain in complete working order, any protective device or service shown on the schedule above which **you** control.

CP-614 Ed 1.0      Copyright MCMXCIV, American Association of Insurance Services      Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
CP-70D Ed. 1-01
## BUSINESS INCOME AND EXTRA EXPENSE
(ACTUAL LOSS SUSTAINED) 12 MONTH

The following amends Supplemental Coverages 3.b. of the Building and Personal Property Coverage Part.

1. **We** will pay for the actual loss of Business Income **you** sustain due to the necessary suspension of **your operations** during the **period of restoration**. The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

   With respect to the requirements set forth in the preceding paragraph, **if you** occupy only part of the site at which the described premises are located, **your** premises means:

   a. The portion of the building which **you** rent, lease or occupy; and

   b. Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

   **We** will pay for loss of Business Income that occurs within 12 consecutive months after the date of direct physical loss or damage.

2. **Business Income** means the:

   a. Net income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred; but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

   b. Continuing normal operating expenses incurred, including payroll; or

   c. Rental income of the described premises as furnished or equipped less any expenses that do not continue; the rental value of any part of the described premises that **you** occupy less any expenses that do not continue; and other charges for which a tenant is legally obligated and for which **you** would otherwise be obligated.

3. **We** will pay necessary Extra Expense **you** incur during the **period of restoration** that **you** would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

   With respect to the requirements set forth in the preceding paragraph, if **you** occupy only part of the site at which the described premises are located, **your** premises means:

   a. The portion of the building which **you** rent, lease or occupy; and

   b. Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

4. **Extra Expense** means expense incurred:

   a. To avoid or minimize the suspension of business and to continue **operations**:

      1) At the described premises; or

      2) At replacement premises or at temporary locations, including relocation expenses and costs to equip and operate the replacement or temporary locations.

   b. To minimize the suspension of business if **you** cannot continue **operations**;

   c. To repair or replace any property or to research, replace or restore the lost information on damaged **valuable papers** and records;

   to the extent it reduces the amount of loss that otherwise would have been payable under this Supplemental Coverage;

5. **We** will only pay for loss of Business Income or Extra Expense that you sustain during the **period of restoration** and that occurs within 12 consecutive months after the date of direct physical loss or damage. Items 1 through 5 of this Supplemental Coverage are not subject to the Limits of Insurance.

CP-70D Ed. 1-01

# BADGER MUTUAL INSURANCE COMPANY

6. Extended Business Income. If the necessary suspension of your **operations** produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during that period that:

   a. Begins on the date property, except finished stock, is actually repaired, rebuilt or replaced and **operations** are resumed; and

   b. Ends on the earlier of:

      1) The date **you** could restore **your operations**, with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

      2) 30 consecutive days after the date determined in (a) above.

   However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

   Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from a Covered Cause of Loss.

7. **Business Income and Extra Expense Exclusions**

   In addition to the Limitations and Exclusions in the Causes of Loss—Special Form, **we** will not pay for:

   a. Any Extra Expense or increase of Business Income loss, caused by or resulting from:

      1) Delay in rebuilding, repairing or replacing the property or resuming **operations** due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

      2) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lease or cancellation is directly caused by the suspension of **operations**, **we** will cover such loss that affects your Business Income during the **period of restoration**.

   b. Any other consequential loss.

8. **We** will not pay for any loss of Business Income caused by direct physical loss of or damage to Electronic Media and Records after the longer of:

   a. 60 consecutive days from the date of direct physical loss of or damage; or

   b. The period, beginning with the date of direct physical loss or damage, necessary to rebuild, repair or replace with reasonable speed and similar quality, other property at the described premises due to loss or damage caused by the same occurrence.

   Electronic Media and Record are:

   a. Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

   b. Data stored on such media; or

   c. Programming records used for electronic data processing or electronically controlled equipment.

9. **Loss determination**

   a. The amount of Business Income loss will be determined based on:

      1) The Net Income of the business before the direct physical loss or damage occurred;

      2) The likely Net Income of the Business if no loss or damage occurred but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

      3) The operating expenses, including payroll expenses, necessary to resume **operations** with the same quality of service that existed just before the direct physical loss or damage; and

      4) Other relevant sources of information including:

         a) **Your** financial records and accounting procedures;

         b) Bills, invoices and other vouchers; and

         c) Deeds, liens or contracts.

   b. The amount of Extra Expense will be determined based on:

      1) All expenses that exceed the normal operating expenses that would have been incurred by **operations** during the period of restoration if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

         a) The salvage value that remains of any property bought for temporary use during the period of restoration once **operations** are resumed; and

# BADGER MUTUAL INSURANCE COMPANY

b) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

c) All necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

c. **Resumption of operations**

We will reduce the amount of your:

1) Business Income loss, other than Extra Expense to the extent you can resume your **operations**, in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

2) Extra Expense loss to the extent **you** can return **operations** to normal and discontinue such Extra Expense.

d. If **you** do not resume **operations**, or do not resume **operations** as quickly as possible, **we** will pay based on the length of time it would have taken to resume **operations** as quickly as possible.

10. **Loss payment**

**We** will pay for covered loss within 30 days after **we** receive the sworn proof of loss, if **you** have complied with all of the terms of this Coverage Part and:

a. **We** have reached agreement with you on the amount of loss; or

b. An appraisal award has been made.

This Supplemental Coverage is not subject to the Limits of Insurance.

CP-70D Ed. 1-01

# BADGER MUTUAL INSURANCE COMPANY
## CP-85 Ed. 1.0
## SPECIALS PERILS PART

## ADDITIONAL DEFINITIONS

1. **Sinkhole Collapse** — This means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation. It does not include the value of the land or the cost of filling sinkholes.

2. **Specified Perils** — This means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; **sinkhole collapse**; smoke; sonic boom; vandalism; vehicles; **volcanic action**; water damage; weight of ice, snow, or sleet; and windstorm.

   Falling objects does not include loss to personal property in the open or to the interior of buildings or structures or personal property inside buildings or structures unless the exterior of the roof or walls are first damaged by a falling object.

   Water damage means the sudden or accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

3. **Volcanic Action** — This means airborne volcanic blast or airborne shock waves; ash, dust, or particulate matter; or lava flow. It does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss to the covered property.

## PERILS COVERED

When "Special Perils" is shown on the **declarations**, **we** cover risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

## PERILS EXCLUDED

1. **We** do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

   a. **Ordinance or Law** — **We** do not cover loss or increased cost caused by enforcement of any code, ordinance, or law regulating the use, construction, or repair of any building or structure; or requiring the demolition of any building or structure including the cost of removing its debris.

   b. **Earth Movement or Volcanic Eruption** — **We** do not cover loss caused by any earth movement (other than **sinkhole collapse**) or caused by eruption, explosion, or effusion of a volcano. Earth movement includes, but is not limited to earthquake; landslide; mudflow; mudslide; mine subsidence; or sinking, rising, or shifting of earth.

      **We** cover direct physical loss by fire, explosion, or **volcanic action** resulting from either earth movement or eruption, explosion, or effusion of a volcano.

      All volcanic eruptions that occur within a 168 hour period shall be considered a single loss.

   c. **Civil Authority** — **We** do not cover loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

      **We** cover loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this policy.

   d. **Nuclear Hazard** — **We** do not cover loss caused by a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by, contributed to or aggravated by a covered peril; and whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. Direct physical loss by fire resulting from the nuclear hazard is covered.

   e. **Utility Failure** — **We** do not cover loss caused by interruption of power or other utility services resulting from any cause if the interruption takes place away from the described premises. Interruption includes reduced or increased voltage, low or high pressure, or other interruptions of normal services.

      **We** cover the direct physical loss by a covered peril which occurs on the described premises as a result of any power interruption.

Copyright MCMXCIV, American Association of Insurance Services

# BADGER MUTUAL INSURANCE COMPANY

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

f.  **War – We** do not cover loss caused by war. This means:

1)  declared war, undeclared war, civil war, insurrection, rebellion, or revolution;

2)  a warlike act by a military force or by military personnel;

3)  the destruction, seizure, or use of the property for a military purpose; or

4)  the discharge of a nuclear weapon, even if it is accidental.

g.  **Water – We** do not cover loss caused by water. This means:

1)  flood, surface water, waves, tidal water, or the overflow of a body of water. This includes spray that results from these whether driven by wind or not;

2)  water that backs up through a sewer or drain; and

3)  water below the surface of the ground. This includes water that exerts pressure on or flows, seeps, or leaks through or into a building or structure, sidewalk, driveway, foundation, swimming pool, or other structure.

If fire, explosion, or sprinkler leakage results, **we** do cover the resulting loss.

2.  **We** do not pay for loss if one or more of the following exclusions apply to the loss:

a.  **Animals – We** do not cover loss caused by animals, including birds, insects, or vermin. **We** cover any resulting loss caused by a **specified peril** or breakage of building glass.

b.  **Collapse – We** do not cover loss caused by collapse, except as provided in the Additional Coverage for Collapse. If loss caused by a covered peril results at the described premises, **we** pay for that resulting loss.

c.  **Contamination or Deterioration – We** do not cover loss caused by contamination or deterioration including corrosion, decay, fungus, mildew, mold, rot, rust or any quality, fault, or weakness in property that causes it to damage or destroy itself. **We** cover any resulting loss caused by a **specified peril** or breakage of building glass.

d.  **Criminal, Fraudulent, or Dishonest Acts – We** do not cover loss caused by criminal, fraudulent, dishonest, or illegal acts, alone or in collusion with another, by:

1)  **you**;

2)  others who have an interest in the property;

3)  others to whom **you** entrust the property;

4)  **your** partners, officers, directors, trustees, joint adventurers; or

5)  the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work.

e.  **Defects, Errors, and Omissions – We** do not cover loss which results from one or more of the following:

1)  an act, error, or omission (negligent or not) relating to:

a)  land use;

b)  the design, specification, construction, workmanship, installation, or maintenance of property;

c)  planning, zoning, development, siting, surveying, grading, or compaction; or

d)  maintenance of property (including land, structures, or improvements);

whether on or off the described premises;

2)  a defect, a weakness, the inadequacy, a fault, or unsoundness in materials used in construction or repair, whether on or off the described premises;

3)  the cost to make good an error in design; or

4)  a data processing error or omission in programming or giving improper instructions.

In addition, **we** do not cover loss to Business Personal Property caused by deficiency or defects in design, specifications, materials, or workmanship, or caused by latent or inherent defects.

**We** cover any resulting loss caused by a covered peril unless the resulting loss itself is excluded.

f.  **Electrical Currents – We** do not cover loss caused by arcing or by electrical currents other than lightning. If a fire results, **we** cover only the loss caused by fire.

g.  **Explosion – We** do not cover loss caused by explosion of steam boilers, steam pipes, steam turbines, or steam engines that **you** own or lease or that are operated under **your** control. If a fire or combustion explosion results, **we** cover the resulting loss. **We** also cover loss caused by the explosion of gas or fuel in a firebox, combustion chamber, or flue.

   Copyright MCMXCIV, American Association of Insurance Services

# BADGER MUTUAL INSURANCE COMPANY

h. **Freezing** – We do not cover loss caused by water, other liquids, powder, or molten material that leaks or flows from plumbing, heating, air-conditioning systems or appliances (other than fire protective systems) as a result of freezing. This does not apply if **you** use reasonable care to maintain heat in the building or structure; or **you** drain the equipment and turn off the supply if the heat is not maintained.

i. **Increased Hazard** – We do not cover loss occurring while the hazard has been materially increased by any means within **your** knowledge or **your** control.

j. **Loss of Use** – We do not cover loss caused by loss of use, business interruption, delay, or loss of market.

k. **Mechanical Breakdown** – We do not cover loss caused by mechanical breakdown or rupturing or bursting of moving parts of machinery caused by centrifugal force. We cover any resulting loss caused by a **specified peril**, breakage of building glass, or elevator collision.

l. **Neglect** – We do not cover loss caused by **your** neglect to use all reasonable means to save covered property at and after the time of loss.

   We do not cover loss caused by **your** neglect to use all reasonable means to save and preserve covered property when endangered by a covered peril.

m. **Pollutants** – We do not cover loss caused by release, discharge, seepage, migration, dispersal, or escape of **pollutants** unless the release, discharge, seepage, migration, dispersal, or escape is caused by a **specified peril**. We cover any resulting loss caused by a **specified peril**.

n. **Seepage** – We do not cover loss caused by continuous or repeated seepage or leakage of water or steam that occurs over a period of 14 days or more.

o. **Settling, Cracking, Shrinking, Bulging, or Expanding** – We do not cover loss caused by settling, cracking, shrinking, bulging, or expanding of pavements, footings, foundations, walls, ceilings, or roofs. We cover any resulting loss caused by a **specified peril** or breakage of building glass.

p. **Smog, Smoke, Vapor, or Gas** – We do not cover loss caused by smog, smoke, vapor, or gas from agricultural smudging or industrial operations.

q. **Temperature/Humidity** – We do not cover loss to personal property caused by dampness, dryness, or changes in or extremes of temperature. We cover any resulting loss caused by **specified perils** or breakage of building glass.

r. **Voluntary Parting** – We do not cover loss caused by voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

s. **Wear and Tear** – We do not cover loss caused by wear and tear, marring, or scratching. We cover any resulting loss caused by a **specified peril** or breakage of building glass.

t. **Weather** – We do not pay for loss caused by weather conditions if the weather conditions contribute in any way with a cause or event excluded in paragraph 1. above.

   We cover any resulting loss caused by a covered peril unless the resulting loss itself is excluded.

## ADDITIONAL PROPERTY EXCLUDED AND LIMITATIONS

1. **Animals** – We do not cover loss to animals, including birds and fish, except death or destruction of animals caused by **specified perils** or breakage of building glass.

2. **Boilers** – We do not cover loss to steam boilers, steam pipes, steam turbines, or steam engines caused by any condition or occurrence within such equipment. We do cover loss to such equipment caused by the explosion of gas or fuel in a firebox, combustion chamber, or flue.

   We do not cover loss to hot water boilers or heaters caused by any condition or occurrence within such equipment other than explosion. This exclusion includes bursting, cracking, exploding, or rupturing.

3. **Building Materials** – We do not cover loss to building materials and supplies that are not attached to buildings or structures, unless held for sale by **you**, caused by theft.

   We cover loss caused by looting and pillaging at the time and place of a riot or civil commotion.

4. **Furs** – We do not cover furs or fur garments for loss by theft for more than $2,500 total in any one occurrence.

5. **Glass Breakage** – We do not cover building glass breakage loss for more than $100 for any plate, pane, multiple plate insulating unit, heating pane, jalousie, louver, or shutter, or more than $500 in any one occurrence. These **limits** do not apply to loss by **specified perils** other than vandalism.

 Copyright MCMXCIV, American Association of Insurance Services

FILED DATE: 4/23/2026 11:10 AM 2026CH03888

# BADGER MUTUAL INSURANCE COMPANY

6. **Glassware/Fragile Articles — We** do not cover breakage of fragile articles such as glassware, statuary, porcelains, and bric-a-brac, except as a result of **specified perils** or breakage of building glass. This does not apply to glass that is a part of a building or structure; bottles or other containers held for sale; or lenses of photographic and scientific instruments.

7. **Gutters and Downspouts — We** do not cover loss to gutters and downspouts caused by the weight of ice, sleet, or snow.

8. **Interior of Buildings — We** do not cover loss to the interior of buildings or structures or to personal property in the buildings or structures caused by rain, snow, sleet, ice, sand, or dust, unless:

    a. entering through openings made by a **specified peril;** or

    b. the loss is caused by the thawing of snow, sleet, or ice on the building or structure.

9. **Jewelry, Watches, Jewels, Pearls, Precious Stones, and Metals — We** do not cover more than $2,500 total in any one occurrence for loss by theft of jewelry; watches; watch movements; jewels; pearls; precious or semi-precious stones; gold, silver, or other precious metals; or items consisting primarily of precious metals. This limitation does not apply to items of jewelry or watches worth $100 or less.

10. **Machinery, Tools, and Equipment — We** do not cover builders' machinery, tools, and equipment owned by **you** or in **your** care, while away from the described premises except as a result of **specified perils** or breakage of building glass.

11. **Missing Property — We** do not cover missing property where the only proof of loss is unexplained or mysterious disappearance, or shortage discovered on taking inventory, or other instance where there is no physical evidence to show what happened to the property.

12. **Patterns, Dies, Molds, Models, and Forms — We** do not cover more than $2,500 total in one occurrence for loss by theft to patterns, dies, molds, models, or forms.

13. **Personal Property in the Open — We** do not cover loss to personal property in the open caused by rain, snow, ice, or sleet.

14. **Stamps, Tickets, Letters of Credit — We** do not cover more than $250 total in any one occurrence for loss by theft to stamps, tickets (including lottery tickets held for sale), or letters of credit.

15. **Transferred Property — We** do not cover loss to property that has been transferred to a person or to a place away from the described premises on the basis of unauthorized instructions.

16. **Valuable Papers and Records — We** do not cover loss to valuable papers or records except by **specified perils** or breakage of building glass. This applies to account books, bills, card index systems, electronic data processing media and the information on such media, deeds, drawings, evidence of debt, manuscripts, and other records.

## ADDITIONAL COVERAGES

1. **Collapse — We** pay for loss caused by direct physical loss involving collapse of a building or structure or any part of a building or structure caused only by one or more of the following:

    a. **specified perils;** all only as covered in the Commercial Property Coverage;

    b. hidden decay;

    c. hidden insect or vermin damage;

    d. weight of people or business personal property;

    e. weight of rain that collects on a roof; or

    f. the use of defective material or methods in construction, remodeling, or renovation if the collapse occurs during the course of the construction, remodeling, or renovation.

   If otherwise covered under the Commercial Property Coverage, under items a. through f. above, **we** do not pay for loss to the following types of property unless the loss is a direct result of the collapse of a building or structure:

   outdoor radio, television, satellite, dish-type, or other antennas including their masts, towers, and lead-in wiring; outdoor awnings or canopies or their supports; fences; gutters and downspouts; yard fixtures; outdoor swimming pools; piers, wharves, and docks; beach or diving platforms or appurtenances; retaining walls; foundations; walks, roadways, and other paved surfaces.

   Collapse does not include settling, cracking, shrinking, bulging, or expanding.

   This does not increase the **limit.**

2. **Tearing Out and Replacing —** When loss caused by:

    a. water;

    b. other liquids;

    c. powder; or

    d. molten material

# BADGER MUTUAL INSURANCE COMPANY

is covered, **we** also pay the cost of tearing out and replacing any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

**We** do not pay for damage to the system or appliance from which the water or other substance escapes. However, **we** pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage results in discharge of any substance from an automatic fire protection system; or is directly caused by freezing.

Copyright MCMXCIV, American Association of Insurance Services

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
CP-998 Ed. 10/99
## EQUIPMENT BREAKDOWN COVERAGE

This endorsement modifies insurance provided under the following:

**BUILDING AND PERSONAL PROPERTY COVERAGE PART**

**CONDOMINIUM UNIT COVERAGE PART**

**CONDOMINIUM BUILDING COVERAGE PART**

**BASIC PERILS PART**

**BROAD PERILS PART**

**SPECIAL PERILS PART**

A. The **BUILDING AND PERSONAL PROPERTY COVERAGE PART, CONDOMINIUM UNIT COVERAGE PART** and **CONDOMINIUM BUILDING COVERAGE PART** are modified as follows:

ADDITIONAL COVERAGES
The following is added to ADDITIONAL COVERAGES:

### EQUIPMENT BREAKDOWN

1. We pay for loss caused by or resulting from an **Accident** to **covered equipment**. As used in this Additional Coverage, an **Accident** means direct physical loss as follows:

   a. mechanical breakdown or rupturing or bursting of moving parts of machinery caused by centrifugal force;

   b. arcing or by electrical currents other than lightning;

   c. explosion of steam boilers, steam pipes, steam turbines or steam engines that **you** own or lease or that are operated under **your** control;

   d. loss to steam boilers, steam pipes, steam turbines or steam engines caused by any condition or occurrence within such equipment; or

   e. loss to hot water boilers or water heaters caused by any condition or occurrence within such equipment.

   If an initial **Accident** causes other **Accidents**, all will be considered one **Accident**. All **Accidents** that are the result of the same event will be considered one **Accident**.

   **Covered equipment** means covered property built to operate under vacuum or pressure, other than weight of contents, or used for the generation, transmission or utilization of energy.

2. The following coverages also apply to loss caused by or resulting from an **Accident** to **covered equipment**. These coverages do not provide additional amounts of insurance.

   a. **Expediting Expenses**

      With respect to **your** damaged covered property, we pay, up to $25,000, the reasonable extra cost to:

      1) expedite permanent repairs or permanent replacement; and

      2) make temporary repairs.

   b. **Pollutants**

      We pay for the additional cost to repair or replace covered property because of contamination by a **pollutant**. This includes the additional costs to clean up or dispose of such property.

      **Pollutant** means any substance other than ammonia that has been declared to be hazardous to health by a governmental agency.

      Additional costs mean those beyond what would have been required had no **pollutants** been involved.

      The most we will pay for loss or damage under this coverage, including actual loss under Earnings, Extra Expense and Perishable Stock coverage, is $25,000.

   c. **Perishable Stock**

      1) We pay for **your** loss of **perishable stock** due to spoilage.

      2) We also pay for **your loss of perishable stock** due to contamination from the release of refrigerant, including but not limited to ammonia.

      3) We also pay any necessary expenses **you** incur to reduce the amount of loss under this coverage. **We** pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

# BADGER MUTUAL INSURANCE COMPANY

4) If **you** are unable to replace the **perishable stock** before its anticipated sale, the amount of our payment is determined on the basis of the sales price of the **perishable stock** at the time of the **Accident**, less discounts and expenses **you** otherwise would have had. Otherwise our payment will be determined in accordance with the Valuation condition.

5) Additional Definition. For the purpose of this coverage, **perishable stock** means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

   The most **we** pay for loss or damage under this coverage is $25,000.

d. **Computer Equipment**

   **We** pay for loss or damage caused by or resulting from an **Accident** to **computer equipment**.

   **Computer equipment** means covered property that is electronic computer or other data processing equipment, including **media** and peripherals used in conjunction with such equipment.

   **Media** means all forms of electronic, magnetic and optical tapes and discs for use in any electronic computer or electronic data processing equipment.

   The most **we** pay for loss or damage under this coverage, including loss under Earnings and Extra Expense coverages is $25,000.

e. **Data Restoration**

   **We** pay for **your** cost to research, replace and restore data, including programs and operating systems, that is lost or corrupted due to an **Accident**. The most **we** pay for loss or damage under this coverage, is $25,000.

f. **CFC Refrigerants**

   **We** pay for the additional cost to repair or replace covered property because of the use or presence of a refrigerant containing CFC (chlorofluorocarbon) substances. This means the additional expense to do the least expensive of the following:

   1) Repair the damaged property and replace any lost CFC refrigerant;

   2) Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or

3) Replace the system with one using a non-CFC refrigerant.

   Additional costs mean those beyond what would have been required had no CFC refrigerant been involved.

   The most **we** pay for loss or damage under this coverage, including loss under Earnings, Extra Expense and Perishable Stock coverage, is $25,000.

g. **Service Interruption**

   The insurance provided for Earnings, Extra Expense and Perishable Stock is extended to apply to loss caused by or resulting from an **Accident** to equipment that is owned by a utility, landlord, or other supplier with whom **you** have a contract to provide **you** with any of the following services: electrical power, communications, waste disposal, air conditioning, refrigeration, heating, gas, air, water or steam.

3. **Conditions**

a. **Suspension**

   When any **covered equipment** is discovered to be in, or exposed to a dangerous situation or condition, any representative of ours may immediately suspend the insurance against loss from an **Accident** to that **covered equipment**. **We** can do this by mailing or delivering a written notice of suspension to **your** address as shown in the **declarations**, or at the address where the equipment is located. Once so suspended, **your** insurance can be reinstated only by written notice from us. If **we** suspend **your** insurance, **you** will get a pro rata premium refund. But the suspension will be effective even if **we** have not yet offered or made a refund.

b. **Jurisdictional Inspections**

   If any property that is **covered equipment** under this endorsement requires inspection to comply with state or municipal boiler and pressure vessel regulations, **we** agree to perform such inspection on **your** behalf.

c. **Environmental, Safety and Efficiency Improvements**

   If **covered equipment** requires replacement due to an **Accident**, **we** pay **your** additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

# BADGER MUTUAL INSURANCE COMPANY

However, **we** will not pay more than 125% of what the cost would have been to repair or replace with like kind and quality. This condition does not increase any of the applicable **limits**. This condition does not apply to any property to which actual cash value applies.

B. The **SPECIAL PERILS PART, BASIC PERILS PART,** or **BROAD PERILS PART** is modified as follows:

As respects Equipment Breakdown Coverage, all Perils Excluded, Additional Property Excluded and Limitations apply except:

a. In the Special Perils Part, Perils Excluded is amended as follows:

Electrical Currents 2.f.; Explosion 2.g.; and Mechanical Breakdown 2.k. do not apply;

b. As respects this endorsement only,

1) Animals 2.a. is deleted and replaced with the following:

Animals-- **We** do not cover loss caused by animals, including birds, insects, or vermin. **We** do cover any resulting loss caused by an **Accident**;

2) Contamination or Deterioration 2.c. is deleted and replaced with the following:

Contamination or Deterioration-- **We** do not cover loss caused by contamination or deterioration including corrosion, decay, fungus, mildew, mold, rot, rust or any quality, fault, or weakness in property that causes it to damage or destroy itself. **We** do cover any resulting loss caused by an **Accident**;

3) Wear and Tear 2.s. is deleted and replaced with the following:

Wear and Tear-- **We** do not cover loss caused by wear and tear, marring, or scratching. **We** do cover any resulting loss caused by an **Accident**; and

4) Settling, Cracking, Shrinking, Bulging, or Expanding 2.o. is deleted and replaced with the following:

Settling, Cracking, Shrinking, Bulging or Expanding-- **We** do not cover loss caused by settling, cracking, shrinking, bulging, or expanding of pavements, footings, foundations, walls, ceilings, or roofs. **We** do cover any resulting loss caused by an **Accident**.

c. In the Special Perils Part, Additional Property Excluded and Limitations, Boilers 2. does not apply.

d. As respects this endorsement only, the Broad Perils Part and Basic Perils Part, Perils Excluded is amended as follows:

1) Electrical Currents 2.c.; Boiler Explosion 2.a.; and Mechanical Breakdown 2.e. do not apply;

2) Contamination or Deterioration 2.b. is deleted and replaced with the following:

Contamination or Deterioration-- **We** do not cover loss caused by contamination or deterioration including corrosion, decay, fungus, mildew, mold, rot, rust or any quality, fault, or weakness in property that causes it to damage or destroy itself. **We** do cover any resulting loss caused by an **Accident**;

3) Water 1.g. is modified by adding the following:

However, if electrical **covered equipment** requires drying out because of the above, **we** cover the direct expenses of such drying out subject to the applicable Limit of Insurance and deductible for Buildings or Business Personal Property, whichever applies;

e. In the Broad and Basic Perils Part, Perils Excluded Wear and Tear 2.h. and 2.j., respectively, are amended as follows:

1) Wear and Tear 2.h. is deleted and replaced with the following:

Wear and Tear-- **We** do not cover loss caused by wear and tear, marring, or scratching. **We** do cover any resulting loss caused by an **Accident**;

f. None of the following is **covered equipment**:

1) structure, foundation, cabinet, compartment or air supported structure or building;

2) insulating or refractory material;

3) sewer piping, underground vessels or piping, or piping forming a part of a sprinkler system;

4) water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

5) dragline, excavation or construction equipment;

# BADGER MUTUAL INSURANCE COMPANY

6) vehicle, aircraft, floating vessel or any equipment mounted on such vehicle, aircraft or floating vessel. However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power supplier will not be considered a vehicle, aircraft or floating vessel; or

7) equipment manufactured by **you** for sale.

g. **We** do not pay under this endorsement for loss or damage caused by or resulting from:

1) **your** failure to use all reasonable means to protect the **perishable stock** from damage following an **Accident**;

2) any defect, virus, loss of data or other situation within **media**. But if loss or damage from an **Accident** results, **we** pay for that resulting loss or damage;

3) any of the following tests:

a hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel; or

an insulation breakdown test of any type of electrical equipment; or

h. With respect to Service Interruption coverage and Perishable Stock coverage, **we** also do not pay for loss or damage caused by or resulting from: fire; lightning; windstorm or hail; explosion (except for steam or centrifugal explosion); smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice or sleet; freezing or collapse.

I. With respect to Service Interruption coverage and, if shown as covered, Earnings and Extra Expense coverages, **we** also do not pay for delay in resuming operations due to the need to reconstruct or reinput data or programs on **media**.

The most **we** pay for loss or damage under this endorsement is the applicable **limit** of insurance shown in the **declarations**. Coverage provided under this endorsement does not provide an additional amount of insurance.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
## CP-999 (Ed. 07-97)
## RESTAURANT EXTENSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

> Building and Personal Property Coverage Part (CP-12)
>
> Special Perils Part (CP-85)

The **Extensions** and **Special Coverages** provided by this endorsement are added to the Building and Personal Property Coverage Part. They are subject to all of the terms, exclusions and conditions applicable to this policy, except where otherwise provided herein.

**Deductible:** $250 per occurrence.

If this deductible and one or more of the deductibles listed in the policy apply on the same occurrence, the total to be deducted shall not exceed the largest deductible applicable.

## EXTENSIONS

Form CP-12 is amended as follows: These changes are made to the section entitled Supplemental Coverages:

1. **Antennas, Awnings, Canopies, Fences, and Signs.** The limit under item 1.a. is increased to $2,500. Coverage is expanded to include the Causes of Loss indicated in form CP-85.

2. **Property Off Premises.** The limit shown under item 1.b. is increased to $10,000.

3. **Increased Costs - Ordinance or Law.** The limit shown under item 2.a. is increased to $10,000.

4. **Personal Effects.** The limit shown under item 3.c. is increased to $1,000.

5. **Personal Property of Others.** The limit shown under item 3.e. is increased to $10,000.

6. **Property In Transit.** The limit shown under item 3.f. is increased to $5,000.

7. **Valuable Papers.** The limit shown under item 3.g. is increased to $10,000.

## SPECIAL COVERAGES

The following are added:

1. **Accounts Receivable**

   In the event of a loss to **your** accounts receivable records caused by a covered peril, **we** cover:

   a. The sums that are due from **your** customers which **you** cannot collect.

   b. The interest charge on a loan if that loan is used to offset those sums that cannot be collected.

   c. Collection costs that result from a loss which are above **your** normal collection costs.

   d. The reasonable cost to reconstruct **your** accounts receivable records.

   The most **we** will pay in any one occurrence is $10,000.

2. **Food Spoilage**

   **We** cover **perishable stock** owned by **you** or by others that is in **your** care, custody, or control. **Perishable stock** is covered only while at the premises described in the declarations. **We** only insure against loss caused by the following perils:

   a. Breakdown - This means a change in temperature or humidity resulting from: mechanical breakdown, malfunctioning or failure of the refrigeration system or the equipment or apparatus controlling the refrigeration system.

   b. Contamination - This means contamination by the refrigerant of the refrigeration system.

   c. Power Disruption - This means a change in temperature or humidity resulting from a complete or partial lack of electrical power or a fluctuation of electrical current due to conditions beyond **your** control. However, this does not include loss resulting from the inability of an electrical utility company to provide sufficient power due to governmental order or lack of fuel or the lack of generating capacity to meet demand.

   The most **we** will pay for loss in any one occurrence is $2,500.

3. **Money and Securities**

   a. **We** will pay for the theft, disappearance or destruction of money and securities **you** use in **your** business as shown by **your** records.

   b. **We** will not pay for any loss caused by or resulting from accounting or arithmetical errors or omissions; dishonest or criminal acts of employees, directors, trustees, or representatives; the giving or surrendering of money or checks in exchange of purchase; or damage resulting from fire, however caused.

   The most **we** will pay for loss in any one occurrence is $2,500.

FILED DATE: 4/23/2026 11:10 AM 2026CH03888

# BADGER MUTUAL INSURANCE COMPANY

4. **Back Up of Sewers and Drains**

We will pay for loss resulting from water which backs up through sewers or drains or water which enters into and overflows from within a sump pump well or other type of system designed to remove subsurface water which is drained from the foundation area.

The most we will pay for loss in any one occurrence is $2,500.

5. **Recharging of Extinguishing System**

We will pay up to $250 to recharge **your** automatic fire extinguishing system if the system was activated to extinguish a fire and did so effectively.

No deductible applies to this coverage.

## ADDITIONAL DEFINITIONS

1. **Money** means:

   a. Currency, coins, and bank notes in current use and having a face value; and,

   b. Travelers checks, register checks and money orders held for sale to the public.

2. **Securities** means negotiable and non-negotiable instruments or contracts representing either **money** or other property and includes:

   a. Tokens, tickets, revenue and other stamps in current use; and

   b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by **you**; but does not include **money**.

3. **Perishable Stock** means personal property preserved and maintained under controlled conditions and susceptible to loss if the controlled conditions change.

CP-999 (Ed. 07-97)

Page 2 of 2

# BADGER MUTUAL INSURANCE COMPANY
## CR 0100 06 99
## GENERAL CONDITIONS PART
### CRIME COVERAGE

Unless stated otherwise in any Crime Coverage Part, **declarations**, or endorsement, the following General Conditions apply to all Crime Coverage forms forming a part of this policy.

## DEFINITIONS

The defined words and phrases have special meanings. These words and phrases are shown in quotation marks.

1. **You** and **your** mean the persons or organizations named as the insured on the **declarations**.

2. **We, us**, and **our** mean the company providing this coverage.

3. **Basic territory** means the United States of America, its territories and possessions, Canada, and Puerto Rico.

4. **Declarations** means all pages labeled Declarations, Supplemental Declarations, or Schedules, which pertain to this coverage.

5. **Limit** means the amount of coverage that applies.

6. **Money** means currency, coins, and bank notes in current use; travelers checks; registered checks; and money orders held for sale to the public.

7. **Property other than money and securities** means any tangible property other than **money** and **securities** that has intrinsic value and is not otherwise excluded.

8. **Securities** means negotiable and nonnegotiable instruments or contracts representing either **money** or other property. This includes tokens, tickets, revenue, or other stamps (whether represented by actual stamps or unused value in a meter) in current use and evidences of debt used in connection with credit cards (which are not issued by **you**), but does not include **money**.

9. **Terms** means all provisions, limitations, exclusions, conditions, and definitions that apply.

## COVERAGES

See the Crime Coverage Parts sections for Property Covered, Property Not Covered, and Perils Covered.

## EXCLUSIONS

See the Exclusions section in the Coverage Parts.

## VALUATION

The following provisions apply:

1. **Money** -- The value of **money** is based on its face value.

2. **Property Other Than Money and Securities** -- The value of **property other than money and securities** is based on its actual cash value at the time the loss is discovered, with a deduction for depreciation. The valuation is limited to the cost to repair or replace with property of equivalent kind and quality, to the extent practicable.

3. **Securities** -- The value of **securities** is based on their actual cash value at the close of business on the business day immediately preceding the day on which the loss is discovered.

## WHAT YOU MUST DO IN CASE OF LOSS

1. **Abandonment of Property** -- In case of loss, **we** do not have to accept any abandonment of property.

2. **Cooperation** -- In case of loss, **you** must cooperate in performing all acts required by this coverage.

3. **Damaged Property** -- In case of loss, **you** must exhibit the damaged property as often as **we** reasonably request.

4. **Examination** -- Any insured must submit to examination under oath in matters connected with the loss as often as **we** reasonably request and give **us** sworn statements of the answers. If more than one person is examined, **we** have the right to examine and receive statements separately and not in the presence of others.

5. **Notice** -- In case of loss, **you** must promptly notify **us** or **our** agent (in writing if requested). **You** must notify the police if the loss is a result of a violation of the law.

6. **Proof of Loss** -- In case of loss, **you** must send **us** a signed proof of loss (under oath, if requested) containing the information that **we** request, within 120 days after the loss.

7. **Protect Property** -- In case of loss, **you** must take all reasonable steps to protect the covered property from further damage.

8. **Records** -- In case of loss, **you** must produce records, including tax returns and bank microfilms of all cancelled checks, relating to value, loss and expense; and permit copies and extracts to be made of them as often as **we** reasonably request.

---

CR 0100 06 99      Copyright, American Association of Insurance Services, 1998      Page 1 of 4

# BADGER MUTUAL INSURANCE COMPANY

9. **Volunteer Payments** -- In case of loss, **you** must not, except at **your** own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

## LOSS PAYMENT

The Loss payment is determined based upon the Valuation **terms** and all of the following provisions, subject to all of the **terms** of Crime Coverage Parts.

1. **Benefit To Others** -- Insurance provided by this coverage will not directly or indirectly benefit anyone having custody of **your** property.

2. **Deductible** -- In any one **occurrence**, **we** pay only that part of **your** loss over the deductible amount stated on the **declarations**. If more than one deductible could apply, only the largest deductible amount will apply.

3. **Insurable Interest** -- **We** cover property owned by **you** or for which **you** are legally liable. **We** do not cover more than **your** insurable interest in any property.

4. **Insurance Under More Than One Coverage** -- If more than one coverage of this policy applies to the same loss, **we** pay no more than the lesser of:

   a. the actual loss or damage; or

   b. the sum of the **limits** that apply to those coverages.

5. **Limit of Insurance** -- The most **we** will pay for loss in any one **occurrence** is the applicable **limit** shown on the **declarations**.

   The applicable **limit** does not accumulate from year to year or from policy period to policy period, regardless of the number of years or policy periods during which coverage has been in effect or the number of premiums that are payable or have been paid.

6. **Notice** -- **We** must give **you** notice of **our** intent to repair or replace the lost or damaged property within 30 days after receipt of a duly executed proof of loss.

7. **Other Insurance** -- **We** do not cover loss that can be collected under any other insurance or other type of coverage. However, if the loss exceeds the **limit** that applies under the other insurance or other type of coverage, this coverage will apply to the portion of the loss that exceeds the **limit** under the other insurance or other type of coverage.

   The coverage provided by this condition cannot be applied to cover any deductible amount that applies under the other insurance or other type of coverage.

We will not pay more under this condition than the applicable **limit** for this coverage.

8. **Our Options** -- **We** have the following options:

   a. For loss to **money** issued in a country other than the United States of America, **we** pay the face value in **money** issued by that country or in an equivalent amount in United States dollars as determined by the rate of exchange at the close of business on the business day immediately preceding the day on which the loss is discovered.

   b. For the loss of **securities**, **we** may pay:

      1) the value of such **securities** or replace them with the same kind of **securities**. If **we** do so, **you** must assign to **us** all **your** rights, titles, and interest in and to the lost or damaged **securities**; or

      2) the cost of any Lost Securities Bond required for issuing duplicates of the lost or damaged **securities**. **We** will not pay more for the cost of the bond than the cost of the bond with a penalty that does not exceed:

         a) the value of the **securities** at the close of business on the business day immediately preceding the day on which the loss is discovered; or

         b) the applicable **limit**,

         whichever is less.

   c. **We** pay for loss or damage to **property other than money and securities**, including building damage, at the actual cash value of the property or **we** pay the cost to repair or replace it.

      If **you** and **we** do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determined by arbitration.

      **We** may take all or any part of the damaged property at the agreed or arbitrated value.

      Any property paid for or replaced will become **our** property.

   d. **We** pay for loss or damage to **property other than money and securities** in the **money** issued by the country where the loss occurred or in an equivalent amount in United States dollars as determined by the rate of exchange at the close of business on the day immediately preceding the day on which the loss is discovered.

# BADGER MUTUAL INSURANCE COMPANY

9. **Property of Others** -- Losses to property of others may be adjusted with **you**. **We** reserve the right to adjust with and pay to the owners. Payment to the owners satisfies **our** obligation to **you** for loss to this property. **We** may also choose to defend any suits arising from the owners.

10. **Your Losses** -- **We** adjust all losses with **you**. Payment is made to **you** unless another loss payee is named in the policy. An insured loss will be payable 30 days after a satisfactory proof of loss is received, and the amount of the loss has been established either by written agreement with **you** or by the filing of an arbitration award with **us**.

## OTHER CRIME COVERAGE CONDITIONS

In addition to the **terms** which are contained in the other Crime Coverage Parts, the following conditions apply:

1. **Conformity With Statute** -- **Terms** of this coverage in conflict with the statutes of the state where the premises described are located are amended to conform to such statutes.

2. **Death of an Individual Named Insured** -- If **you** die, **your** rights and duties pass to **your** legal representative or other person having proper temporary custody of **your** property.

3. **Discovery Period** -- **We** do not cover any loss that is not discovered within one year of the end of the policy period.

4. **Extension for Previous Coverage** -- If a loss is discovered during this policy period, or within one year from the end of this policy period, and the period of time allowed for the discovery of loss under the previous coverage has expired; we will pay the loss subject to the following:

   a. the acts or events that caused the loss would have been covered under the coverage that was in effect at the time of the **occurrence** and **you** or another party that previously held the same interest could have recovered the loss under the previous coverage, had the period of time permitted for discovery not expired;

   b. the acts or events that caused the loss would have been covered under this coverage, had this coverage been in effect when the loss occurred; and

   c. the effective time and date of this coverage coincides with the time and date of cancellation or termination of the previous coverage.

   d. The most we pay under this condition is the lesser of:

      1) the **limit** of the coverage that was in effect at the time of the **occurrence**; or

      2) the **limit** that applied to this coverage on the effective date of this coverage.

The coverage provided by this condition does not increase the applicable **limit** shown on the **declarations**.

5. **Joint Insureds** --

   a. If more than one insured is named on the **declarations**, the first person or organization named as the insured will act for all persons or organizations named as insureds. If the first person or organization named as the insured is no longer an insured, the next person or organization named as the insured will take on the duties of the first person or organization named as the insured.

   b. With regard to matters that apply to this insurance, **your** knowledge and the knowledge of **your** partners or officers is considered to be the knowledge of all insureds.

   c. **Your** employee is considered to be an employee of every insured.

   d. **We** will pay for a loss suffered by an insured for whom these coverages have been canceled or terminated only if the loss is discovered within one year of the corresponding cancellation or termination date.

   e. The amount **we** pay for a covered loss will not be increased by the number of insureds who may suffer the loss.

6. **Liberalization** -- If **we** adopt a revision of forms during a policy period which broadens the Crime Coverage without additional premium, the broadened coverage will automatically apply to this coverage. This also applies if **we** adopt the revision within 60 days before this coverage is effective.

7. **Loss Under Previous Coverage Provided by Us** -- The most **we** will pay for a loss that is covered under both:

   a. this coverage; and

   b. coverage that has been canceled or terminated, but was issued by **us** or by another insurer that is associated with **us** to **you** or to another party that previously held the same interest,

is the larger of the amounts payable under this coverage or the previous coverage.

8. **Misrepresentation, Concealment, or Fraud** -- This coverage is void as to **you** and any other insured if, before or after a loss:

   a. **you** have or any other insured has willfully concealed or misrepresented:

# BADGER MUTUAL INSURANCE COMPANY

1) a material fact or circumstance that relates to this insurance or the subject thereof; or

2) the insured's interest herein; or

b. there has been fraud or false swearing by **you** or any other insured with regard to a matter that relates to this insurance or the subject thereof.

9. **Newly Acquired Property or Employees** -- If **you** acquire additional buildings or additional **employees** by means of a merger or consolidation, or by acquiring the assets of another entity, **we** will extend the coverage provided for buildings and **employees** to the newly acquired buildings or **employees**.

   However, this coverage applies only if **you** give **us** written notice of the merger, consolidation, or other acquisition within 30 days after it takes place, and pay **us** any additional premium charge that may be due.

10. **Policy Period** -- The Policy Period is shown on the **declarations**. **We** pay only for loss that **you** sustain through acts committed or events occurring during the Policy Period, subject to the provisions of the Extension of Previous Coverage Condition.

11. **Records** -- **You** must keep records of property covered so that **we** can verify the amount of loss.

12. **Recoveries** --

   a. If **we** pay **you** for loss under this coverage and lost or damaged property is recovered or payment is made by those responsible for the loss:

      1) **you** must notify **us** promptly if **you** recover property or receive payment; and

      2) **we** must notify **you** promptly if **we** recover property or receive payment.

   b. When property is recovered or a recovery payment is made, the distribution will be made in the following order:

      1) recovery expenses, including expenses to repair property, incurred by either party will be reimbursed first;

      2) any loss sustained by **you** which exceeded the **limit** and exceeded any deductible amount will be paid to **you**;

      3) loss paid by **us**; and

      4) loss sustained by **you** for any deductible amount.

   c. However, the following will not be included in any recovery amount:

      1) recovery from any insurance, reinsurance, or other coverage in **our** benefit; or

      2) any original **securities** after duplicates have been issued.

13. **Subrogation** -- If **we** pay for a loss under this coverage, **we** may require that **you** assign to **us** **your** right of recovery against others up to the amount **we** paid. **You** must do everything necessary to make this assignment and secure **our** rights.

14. **Suit Against Us** -- No suit to recover any loss may be brought against **us** unless:

   a. the **terms** of this coverage have been fully complied with; and

   b. the suit is commenced within two years after the loss.

   If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by the law.

FILED DATE: 4/23/2026 11:10 AM    2026CH03888

# BADGER MUTUAL INSURANCE COMPANY
CR 0304 06 99
## MONEY AND SECURITIES COVERAGE
INSIDE AND OUTSIDE OF PREMISES

## AGREEMENT

In return for **your** payment of the required premium, **we** provide the **theft**, disappearance, or destruction coverage described below, subject to the **terms** of the General Conditions Part -- Crime Coverage.

This coverage is also subject to the **declarations** and additional conditions that relate to assignment, cancellation, change, modification or waiver of policy **terms**, inspections, and examination of books and records.

## ADDITIONAL DEFINITIONS

The following additional definitions apply to the coverage provided by this coverage part:

1. **Banking location** means the interior of any building or part of a building occupied by a banking institution or similar safe depository.

2. **Messenger** means **you**, any of **your** partners, or any of **your** employees while having care and custody of the property outside the described building.

3. **Occurrence** means an act or a series of related acts involving one or more persons.

4. **Theft** means an act of stealing, including burglary and robbery.

## PROPERTY COVERED

We cover **your** bullion, lottery tickets, **money** and **securities** for loss caused by the perils covered while:

1. inside a building described on the **declarations** or while inside a **banking location**; or

2. in the care and custody of either a **messenger** or an armored motor vehicle company outside a building described on the **declarations** or outside a **banking location**.

This coverage is limited to property that **you** own, hold, or for which **you** are legally liable.

## EXTENSION OF COVERAGE

The following extension of coverage does not increase the **limit** shown on the **declarations** for **money** and **securities**.

We will also cover loss of, and loss from damage to a locked safe, vault, cash register, cash box, or cash drawer resulting directly from an actual or attempted theft of or unlawful entry into such containers located inside a building described on the **declarations**.

## PERILS COVERED

We cover loss of or damage to covered property caused by **theft**, disappearance, or destruction.

## PERILS EXCLUDED

1. **We** do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

   a. **Civil Authority** -- **We** do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

   b. **Nuclear Hazard** -- **We** do not pay for loss caused by a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by, contributed to, or aggravated by a covered peril; and whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke.

   c. **War** -- **We** do not pay for loss caused by war. This means:

      1) declared war, undeclared war, civil war, insurrection, rebellion, or revolution;

      2) a warlike act by a military force or by military personnel;

      3) the destruction, seizure, or use of the property for a military purpose; or

      4) the discharge of a nuclear weapon, even if it is accidental.

2. **We** do not pay for loss if one or more of the following exclusions apply to the loss:

   a. **Accounting or Arithmetical Errors or Omissions** -- **We** do not pay for loss resulting from accounting or arithmetical errors or omissions.

   b. **Criminal, Fraudulent, or Dishonest Acts** -- **We** do not pay for loss caused by criminal, fraudulent, dishonest, or illegal acts, alone or in collusion with another, by:

CR 0304 06 99    Copyright, American Association of Insurance Services, 1998    Page 1 of 2

# BADGER MUTUAL INSURANCE COMPANY

1) **you**;

2) others to whom **you** entrust the property;

3) **your** partners, officers, directors, trustees, joint venturers; or

4) the employees or agents of 1), 2), or 3) above, whether or not they are at work.

c. **Fire** -- We do not pay for loss to the described building resulting from fire, however caused.

d. **Increased Hazard** -- We do not pay for loss that occurs while the hazard has been materially increased by any means within **your** knowledge or **your** control.

e. **Money Operated Devices** -- We do not pay for loss of **money** that is taken from a **money** operated device, unless the **money** deposited is recorded by a continuous recording instrument in the device.

f. **Protective Safeguards** -- We do not pay for losses that occur while protective safeguards that **you** control are not in working condition. This exclusion applies only to protective safeguards shown on the **declarations** and to the property, premises, and perils affected by the safeguards. This suspension lasts until the safeguards are back in working order. However, this exclusion will not apply if **you** maintain at least one watchperson while the premises described on the **declarations** is closed for business.

g. **Transfer** -- We do not pay for loss of **money** or **securities** after they have been transferred or surrendered to a person or place outside the premises based upon unauthorized instructions or as a result of a threat to do bodily harm or damage property.

However, this exclusion does not apply to property outside the premises in the care and custody of a **messenger** if **you** had no knowledge of any directly related threat at the time the **messenger** left the described building.

h. **Unattended Vehicles** -- We do not pay for loss of property from unattended vehicles while in the care and custody of a **messenger**, unless the loss results from forced entry into the vehicle or forced entry of a securely locked compartment. There must be visible evidence that entry was forced.

i. **Vandalism** -- We do not pay for loss caused by willful or malicious damage, or destruction of any property.

j. **Voluntary Parting** -- We do not pay for loss caused by or resulting from voluntary parting with title or possession of any property because of any fraudulent scheme, trick, or false pretense.

## LOSS PAYMENT

The following provisions are added:

1. **Loss Inside The Premises** -- The most **we** will pay for a loss occurring inside of a building described on the **declarations** or within a **banking location**, is the **limit** shown for inside the premises shown on the **declarations**.

2. **Loss Outside The Premises** -- The most **we** will pay for a loss outside of a building described on the **declarations** or outside a **banking location** is the **limit** shown for outside the premises on the **declarations** at any location within the **basic territory**.

FILED
4/23/2026 11:10 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH03888
Calendar, 11
37731804

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

## BADGER MUTUAL INSURANCE COMPANY
CR 0308 06 99

## EMPLOYEE DISHONESTY COVERAGE

### AGREEMENT

In return for **your** payment of the required premium, **we** provide the Employee Dishonesty Coverage described below, subject to the **terms** of the General Conditions Part -- Crime Coverage. This coverage is also subject to the **declarations** and additional conditions that relate to assignment, cancellation, change, modification or waiver of policy **terms**, inspections, and examination of books and records.

### ADDITIONAL DEFINITIONS

The following additional definitions apply to the coverage provided by this coverage part:

1. **Employee** means any natural person:

   a. **you** have the right to direct and control while performing services, whom **you** compensate directly by salary, wages, or commissions; or

   b. employed by an employment contractor while that person is subject to **your** direction and control and performing services for **you**; however such a person is not an **employee** while such a person has care and custody of property outside a described building.

   c. who is a trustee, an officer, an employee, an administrator, or a manager who is an independent contractor, of any **employee benefit plan**; or

   d. who is **your** director or trustee while that person is handling funds or other property of any **employee benefit plan**.

   Any person who is an **employee**, as described in a. through d. above, is an **employee** for 30 days after termination of service.

   **Employee** does not mean any agent, broker, contractor, commission merchant, consignee, independent contractor, or representative of the same general character; or any director or trustee, except while performing acts falling within the scope of the usual duties of an **employee** or while performing duties in the management of any **employee benefit plan**.

2. **Employee benefit plan** means any employee welfare or pension benefit plan that is:

   a. subject to the provisions of the Employee Retirement Income Security Act (ERISA); and

   b. named on the **declarations** as an insured under this coverage.

3. **Employee Dishonesty** means dishonest or fraudulent acts committed with the apparent intent to cause **you** to sustain loss or damage and to obtain financial benefit for the **employee** or for any other **employee**, person, or organization.

   The financial benefit does not include salaries, commissions, bonuses, fees, profit sharing, or other **employee** benefits.

4. **Occurrence** means all loss caused by, or involving one or more **employees**, whether the loss is the result of an act or series of related acts.

### PROPERTY COVERED

**We** cover **your** business personal property, except as limited below, for loss caused by the perils covered while in a building described on the **declarations**. This coverage is limited to property that **you** own, hold, or for which **you** are legally liable.

**We** also cover loss to the described building caused by a peril covered, if **you** own the building or are liable for the damage caused by a peril covered.

### PROPERTY NOT COVERED AND LIMITATIONS

The following exclusions and limitations apply to the coverage provided by this form:

1. **Furs -- We** do not cover more than $5,000 total in any one **occurrence** for loss of or damage to furs or fur garments.

2. **Jewelry, Watches, Jewels, Pearls, Precious Stones, and Metals -- We** do not cover more than $5,000 total in any one **occurrence** for loss of or damage to jewelry; watches; watch movements; jewels; pearls; precious, or semiprecious stones; gold, silver, or other precious metals; or items consisting primarily of precious metals. This limitation does not apply to items of jewelry or watches worth $100 or less.

3. **Valuable Papers and Records - Research Cost --** When loss of or damage to valuable papers is caused by a peril covered, **we** pay up to $5,000 at each location described on the **declarations**. This includes the cost of research or other expenses necessary to reproduce, replace, or restore lost information on lost or damaged valuable papers and records, including those which exist on electronic or magnetic media, for which duplicates do not exist.

 Copyright, American Association of Insurance Services, 1998

# BADGER MUTUAL INSURANCE COMPANY

4. **Vehicles and Aircraft -- We** do not cover:

   a. aircraft, or

   b. vehicles required to be licensed for use on public roads.

## EXTENSION OF COVERAGE

The following extension of coverage does not increase the limit shown on the **declarations** for **Employee Dishonesty**.

**Out of Territory -- We** will cover loss caused by an **employee** who is temporarily out of the **basic territory** for not more than 90 days.

## PERILS COVERED

We cover loss of or damage to covered property resulting from **Employee Dishonesty**.

## PERILS EXCLUDED

1. **We** do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

   a. **Civil Authority -- We** do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

   b. **Nuclear Hazard -- We** do not pay for loss caused by a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by, contributed to, or aggravated by a covered peril; and whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke.

   c. **War -- We** do not pay for loss caused by war. This means:

      1) declared war, undeclared war, civil war, insurrection, rebellion, or revolution;

      2) a warlike act by a military force or by military personnel;

      3) the destruction, seizure, or use of the property for a military purpose; or

      4) the discharge of a nuclear weapon, even if it is accidental.

2. **We** do not pay for loss if one or more of the following exclusions apply to the loss:

   a. **Increased Hazard -- We** do not pay for loss that occurs while the hazard has been materially increased by any means within **your** knowledge or **your** control.

   b. **Protective Safeguards -- We** do not pay for losses that occur while protective safeguards that **you** control are not in working condition. This exclusion applies only to protective safeguards shown on the **declarations** and to the property, premises, and perils affected by the safeguards. This suspension lasts until the safeguards are back in working order. However, this exclusion will not apply if **you** maintain at least one watchperson while the premises described on the **declarations** is closed for business.

3. In addition to the above exclusions, **we** do not pay for loss or damage:

   a. resulting from an act that **you** or any of **your** partners commit, whether acting alone or in collusion with any **employees** or other persons;

   b. where the only proof of the loss or amount of the loss is dependent upon an inventory or a profit and loss computation;

   c. caused by any **employee** of **yours**, or any predecessor of interest of **yours**, for whom similar prior insurance has been cancelled and not reinstated since the last such cancellation;

   d. occurring outside of the **basic territory**, except as provided in the Extensions of Coverage; or

   e. legal expenses or any indirect loss.

## ADDITIONAL CONDITIONS

1. **Employee Cancellation -- The** coverage provided by this form is cancelled as to any **employee** under the following conditions:

   a. immediately upon discovery by **you** or any of **your** partners, officers, directors, trustees, or joint venturers not in collusion with any **employee** of any dishonest act committed by that **employee**, whether before or after becoming employed by **you**; or

   b. upon notice by **us**, by mailing such notice to **you** at the last mailing address known to **us**, which will be sufficient proof of notice. The effective date of this **employee** cancellation will be specified in the notice. The effective date will be at least 30 days after the date of mailing. Delivery of notice will be the same as mailing.

2. **Employee Benefit Plans --**

   a. The deductible provision does not apply to any loss sustained by an **employee benefit plan**.

## BADGER MUTUAL INSURANCE COMPANY

b. If both an **employee benefit plan** and another entity are named on the **declarations** as insureds, any payment we make to an entity other than an **employee benefit plan** for loss sustained by an **employee benefit plan** must be held by the other entity for use by the **employee benefit plan** or **employee benefit plans** that sustain the loss.

c. If **money, securities, or property other than money or securities** are commingled for two or more **employee benefit plans**, any payment for loss to such property will be shared by each **employee benefit plan** on a pro rata basis in accordance with the amount of coverage each plan is required to carry by the Employee Retirement Income Security Act.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
CR 0429 06 99
## AMENDATORY ENDORSEMENT – ILLINOIS

1. Under Other Crime Coverage Conditions, the Misrepresentation, Concealment, or Fraud condition is deleted and replaced by:

   **Misrepresentation, Concealment, or Fraud – We** do not provide coverage for **you** and any other insured if, before or after a loss:

   a. **you** have or any other insured has willfully concealed or misrepresented:

      1) a material fact or circumstance that relates to this insurance or the subject thereof; or

      2) the insured's interest herein; or

   b. there has been fraud or false swearing by **you** or any other insured with regard to a matter that relates to this insurance or the subject thereof.

2. Under Other Crime Coverage Conditions, the Suit Against Us condition is deleted and replaced by:

   **Suit Against Us** – No suit to recover any loss may be brought against **us** unless:

   a. the **terms** of this coverage have been fully complied with; and

   b. the suit is commenced within two years after the loss. However, this period is extended by the number of days between the date proof of loss is submitted and the claim is denied in whole or in part.

If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by the law.

3. Under the Crime Coverage Part, Perils Excluded, the following addition amends Criminal, Fraudulent, or Dishonest Acts, if applicable:

   However, if the loss is caused by an act of domestic violence committed by or at the direction of an insured that:

   a. arose out of a pattern of criminal domestic violence; and

   b. the perpetrator of the loss is criminally prosecuted for the act causing the loss;

   this exclusion will not apply to an otherwise covered loss suffered by another insured who did not cooperate in or contribute to the act that caused the loss.

   **Our** payment may be limited to the claimant's insurable interest less payments made to a mortgagee or other party with a legal secured interest in the property. **We** retain all rights set forth in the Subrogation condition of this policy with regard to action against the perpetrator of the act that caused the loss.

CR 0429 06 99      Copyright, American Association of Insurance Services, 1998      Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
### CU-100 Ed. 2-95
## COMMERCIAL EXCESS LIABILITY POLICY

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

THIS POLICY IS NOT DESIGNED FOR USE WITH CLAIMS MADE UNDERLYING POLICIES. PLEASE READ THIS POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES, COVERAGE AND COVERAGE RESTRICTIONS. WE HAVE NO DUTY TO PROVIDE COVERAGE UNLESS THERE HAS BEEN FULL COMPLIANCE WITH ALL THE CONDITIONS - SECTION V - OF THIS POLICY.

The words **you** and **your** in this policy refer to the **named insured** shown in the Declarations and all other persons or organizations qualifying as **named insureds** under this policy. The words **we, us,** and **our** refer to the company providing this insurance. The word **insured** means any person or organization qualifying as such under SECTION III - WHO IS AN INSURED, beginning on page 7.

All highlighted words and phrases have special meaning. Refer to SECTION VI - DEFINITIONS, beginning on page 14.

### SECTION I - INSURING AGREEMENTS

In consideration of the payment of premium and in reliance upon representations **you** made to **us** during the process of obtaining this insurance and subject to the Limit of insurance shown in Item 4 of the Declarations, and all the exclusions, terms and conditions of this policy, **we** agree with **you** as follows:

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. **We** will indemnify the **insured** for **ultimate net loss** in excess of the **retained limit** because of **bodily injury** or **property damage** to which this insurance applies. **We** will have the right to associate with the **underlying insurer** and the **insured** to defend any **claim** or **suit** seeking damages for **bodily injury** or **property damage** to which this insurance applies. But:

      (1) The amount **we** will indemnify for **ultimate net loss** is limited as described in SECTION IV - LIMIT OF INSURANCE;

      (2) At **our** discretion, **we** may investigate any **occurrence** and settle any **claim** or **suit**;

      (3) **We** have a duty to defend any **claims** or **suits** to which this insurance applies:

      (a) But which are not covered by any **underlying insurance** shown in the Declarations; or

      (b) If the applicable limit of **underlying insurance** is exhausted; and

      (4) Both **our** right and duty to defend any existing or future **suits** end when **we** have exhausted the applicable Limit of Insurance in indemnification of judgments or settlements under Coverages A and B.

      No other obligation or liability to indemnify or perform acts or services is Covered unless explicitly provided for under SECTION II - DEFENSE.

   b. It is agreed that:

      (1) The **bodily injury** or **property damage** must occur during the policy period of this policy;

      (2) With respect to **your** liability (other than under a contract or agreement) for **bodily injury** to **your** employees arising out of and in the course of their employment by **you**:

      (a) **Bodily injury** by disease must be caused or aggravated by the conditions of that employment; and

      (b) An employee's last day of last exposure to conditions causing or aggravating such a disease must occur during the policy period of this policy;

      (3) Damages because of **bodily injury** include damages sought by any person or organization for care or loss of services resulting at any time from the **bodily injury**;

      (4) The **bodily injury** or **property damage** must be caused by an **occurrence**; and

      (5) The **occurrence** must take place in the **coverage territory**.

2. **Exclusions**

   This insurance does not apply to:

   a. **Bodily injury** or **property damage** for which coverage is provided by **underlying insurance** written on a **claims** made basis, including any renewal or replacement of such policy.

CU-100 Ed. 2-95

# BADGER MUTUAL INSURANCE COMPANY

b. **Bodily injury** or **property damage** either expected or intended from the standpoint of the **insured**. This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

c. **Bodily injury** or **property damage** for which the **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    (1) Assumed in a contract or agreement that is an **insured contract** provided the **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement; or

    (2) That the **insured** would have in the absence of the contract or agreement.

d. Liability imposed on the **insured** or the **insured's** insurer, under any of the following laws:

    (1) Employees' Retirement Income Security Act of 1974 (E.R.I.S.A.) as now or hereafter amended or any similar state or other governmental law;

    (2) Any uninsured motorists, underinsured motorists, or automobile no-fault or first party **bodily injury** or **property damage** law; or

    (3) Any workers' compensation, unemployment compensation or disability benefits law or any similar law.

e. Punitive or exemplary damages because of **bodily injury** to any employee of the **insured** when such employee is:

    (1) Injured within the scope of employment; and

    (2) Employed in violation of law.

f. **Bodily injury** to an employee of **yours** while employed by **you** in violation of law with **your** actual knowledge or the actual knowledge of any of **your** executive officers.

g. **Bodily injury** arising out of any:

    (1) Refusal to employ;

    (2) Termination of employment;

    (3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

    (4) Consequential **bodily injury** as a result of (1) through (3) above.

This exclusion applies whether the **insured** may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of such **bodily injury**.

h. (1) **Bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, seepage, migration, dispersal, release or escape of **pollutants**:

    (a) That are, or that are contained in any property that is:

        (i) Being moved from the place where such property or **pollutants** are accepted by the **insured** for movement into or onto an **auto**;

        (ii) Being transported or towed by an **auto**;

        (iii) Otherwise in the course of transit by **anyone**;

        (iv) Being stored, disposed of, treated or processed in or upon an **auto**; or

        (v) Being moved from an **auto** to the place where such property or **pollutants** are finally delivered, disposed of or abandoned by the **insured**;

    (b) At or from any premises, site or location which is or was at any time, owned or occupied by, or rented or loaned to, any **insured**;

    (c) At or from any premises, site or location which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of **waste**;

    (d) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as **waste** by or for any **insured** or any person or organization for whom any **insured** may be legally responsible; or

    (e) At or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations:

        (i) If the **pollutants** are brought on or to the premises, site or location in connection with such operations by such **insured**, contractor or subcontractor; or

CU-100 Ed. 2-95

# BADGER MUTUAL INSURANCE COMPANY

(ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of **pollutants**.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

(b) **Claim** or **suit** by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. **Waste** includes materials to be recycled, reconditioned or reclaimed.

Paragraphs (1)(a) through (1)(e) do not apply to fuels, lubricants, fluids, exhaust gases or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of a covered **auto**, or its parts, if the **pollutants** escape or are discharged, dispersed or released directly from an **auto** part designed by its manufacturer to hold, store, receive or dispose of such **pollutants**.

Paragraphs (1)(c) through (1)(e) do not apply to **pollutants** if:

(1) The **pollutants**, or any property in which the **pollutants** are contained, are upset, overturned or damaged as a result of the maintenance or use of an **auto** covered by **underlying insurance**;

(2) The discharge, dispersal, release or escape of the **pollutants** is caused directly by such upset, overturn or damage; and

(3) The **bodily injury** or **property damage** is not otherwise excluded under paragraph (1)(a) of this exclusion.

Paragraphs (1)(b) and (1)(e)(i) of this exclusion do not apply to **bodily injury** or **property damage** arising out of heat, smoke or fumes

from a **hostile fire**. As used herein, a **hostile fire** means one which becomes uncontrollable or breaks out from where it was intended to be.

i. **Bodily injury** or **property damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or, rented or loaned to any **insured**. Use includes operation and **loading** or **unloading**.

This exclusion does not apply to:

(1) Watercraft while ashore on premises **you** own or rent;

(2) Watercraft **you** do not own that are:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge; or

(3) Liability assumed under any **insured contract** for the ownership, maintenance or use of aircraft or watercraft.

j. **Bodily injury** or **property damage** arising out of the use of any **mobile equipment** in, or while practicing or being prepared for a prearranged racing, speed or demolition contest or in any stunting activity.

k. Liability assumed under any **insured contract** for **bodily injury** or **property damage** due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion, revolution, or acts of terrorism.

l. **Property damage** to:

(1) Property **you** own;

(2) Premises **you** sell, give away or abandon, if the **property damage** arises out of any part of those premises;

(3) That particular part of real property on which **you** or any contractor or subcontractor working directly or indirectly on **your** behalf is performing operations, if the **property damage** arises out of those operations; or

(4) That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are **your work** and were never occupied, rented or held for rental by **you**.

Paragraphs (3) and (4) of this exclusion do not apply to liability assumed under a railroad sidetrack agreement.

CU-100 Ed. 2-95

# BADGER MUTUAL INSURANCE COMPANY

Paragraph (4) of this exclusion does not apply to **property damage** included in the **products-completed operations hazard**.

m. **Property damage** to **your product** arising out of it or any part of it.

n. **Property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on **your** behalf by a subcontractor.

o. **Property damage** to **impaired property** or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**; or

(2) A delay or failure by **you** or anyone acting on **your** behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

p. Damages claimed for any loss, cost or expense incurred by **you** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) **Your product**;

(2) **Your work**; or

(3) **Impaired property**;

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

q. **Bodily injury** or **property damage**:

(1) With respect to which an **insured** under this policy is also an **insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an **insured** under any such policy but for its termination upon exhaustion of its limit of liability;

(2) Resulting from the **hazardous properties** of **nuclear material** and with respect to which:

(a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or

(b) The **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

(3) Resulting from the **hazardous properties** of **nuclear material**, if:

(a) The **nuclear material**:

(i) Is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured**; or

(ii) Has been discharged or dispersed therefrom;

(b) The **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured**; or

(c) The **bodily injury** or **property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this subparagraph (c) applies only to **property damage** to such **nuclear facility** and any property thereat.

As used in this exclusion:

(1) **Hazardous properties** include radioactive, toxic or explosive properties;

(2) **Nuclear material** means **source material**, **special nuclear material** or **by-product material**;

(3) **Source material**, **special nuclear material**, and **by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

CU-100 Ed. 2-95

# BADGER MUTUAL INSURANCE COMPANY

(4) **Spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor;**

(5) **Waste** means any waste material:

(a) Containing **by-product material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content, and

(b) Resulting from the operation by any person or organization of any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility.**

(6) **Nuclear facility** means:

(a) Any **nuclear reactor;**

(b) Any equipment or device designed or used for:

(i) Separating the isotopes of uranium or plutonium,

(ii) Processing or utilizing **spent fuel**, or

(iii) Handling, processing or packaging **waste;**

(c) Any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste;** and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

7) **Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(8) **Property damage** includes all forms of radioactive contamination of property.

With respect to **your** liability (other than under a contract or agreement) for **bodily injury** to **your**

employees arising out of and in the course of their employment by **you**, exclusions h., i., and j. do not apply.

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1. **Insuring Agreement**

a. **We** will indemnify the **insured** for **ultimate net loss** in excess of the **retained limit** because of **personal injury** or **advertising injury** to which this insurance applies. **We** will have the right to associate with the **underlying insurer** and the **insured** to defend any **claim** or **suit** seeking damages for **personal injury** or **advertising injury** to which this insurance applies. But:

(1) The amount **we** will indemnify for **ultimate net loss** is limited as described in SECTION IV - LIMIT OF INSURANCE;

(2) At **our** discretion, **we** may investigate any **offense** and settle any **claim** or **suit;**

(3) **We** have a duty to defend any **claims** or **suits** to which this insurance applies:

(a) But which are not covered by any **underlying insurance** shown in the Declarations; or

(b) If the applicable limit of **underlying insurance** is exhausted; and

(4) Both **our** right and duty to defend any existing or future **suits** end when **we** have exhausted the applicable Limit of Insurance in indemnification of judgments or settlements under Coverages A and B.

No other obligation or liability to indemnify or perform acts or services is covered unless explicitly provided for under SECTION II - DEFENSE.

b. This insurance applies to:

(1) **Personal injury** caused by an **offense** arising out of **your** business, excluding advertising, publishing, broadcasting or telecasting done by or for **you;**

(2) **Advertising injury** caused by an **offense** committed in the course of advertising **your** goods, products or services;

but only if the **offense** was committed in the **coverage territory** during the policy period.

2. **Exclusions**

This insurance does not apply to:

a. **Personal injury** or **advertising injury:**

# BADGER MUTUAL INSURANCE COMPANY

(1) For which coverage is provided by **underlying insurance** written on a claims made basis, including any renewal or replacement of such policy;

(2) Arising out of oral or written publication of material, if done by or at the direction of the **insured** with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the **insured**; or

(5) For which the **insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **insured** would have in the absence of the contract or agreement.

b. **Advertising injury** arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An **offense** committed by an **insured** whose business is advertising, broadcasting, publishing or telecasting.

c. **Personal injury** arising out of any:

(1) Refusal to employ;

(2) Termination of employment;

(3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

(4) Consequential **personal injury** as a result of (1) through (3) above.

## SECTION II - DEFENSE

When **we** have the duty to defend, **we** will indemnify the **insured** for:

1. Up to $250 for cost of bail bonds required because of accidents or traffic law violations related to an accident arising out of the use of any vehicle to which this policy applies. **We** do not have to furnish these bonds.

2. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. **We** do not have to furnish these bonds.

3. All reasonable expenses incurred by the **insured** at **our** request to assist **us** in the investigation or defense of any **claim** or **suit**, including actual loss of earnings up to $250 a day because of time off from work.

4. All costs taxed against the **insured** in any **suit we** defend.

5. **Pre-judgment interest** awarded against the **insured** on that part of any judgment covered under this policy. If **we** offer the applicable Limit of Insurance in settlement of a **claim** or **suit**, **we** will not indemnify the **insured** for any **pre-judgment interest** imposed or earned after the date of such offer.

6. All interest earned on that part of any judgment within the Limit of Insurance after entry of the judgment and before **we** have indemnified the insured, offered to indemnify, or deposited in court that part of any judgment that is within the applicable Limit of Insurance.

Payments under this section of the policy, as well as payments for all expenses **we** incur, will not reduce the Limit of Insurance.

## SECTION III - WHO IS AN INSURED

1. If **you** are designated in the Declarations as:

a. An individual, **you** and **your** spouse are **insureds**, but only with respect to the conduct of a business of which **you** are the sole owner.

b. A partnership or joint venture, **you** are an **insured. Your** members, **your** partners, and their spouses are also **insureds**, but only with respect to the conduct of **your** business.

c. An organization other than a partnership or joint venture, **you** are an **insured. Your** executive officers and directors are **insureds**, but only with respect to their duties as **your** officers or directors. **Your** stockholders are also **insureds**, but only with respect to their liability as stockholders.

2. Except with respect to:

a. Any **auto**; or

b. **Mobile equipment** registered in **your** name under any motor vehicle registration law;

each of the following is also an **insured:**

# BADGER MUTUAL INSURANCE COMPANY

a. Your employees, other than **your** executive officers, but only for acts within the scope of their employment by **you**. However, no employee is an **insured** for:

   (1) **Bodily injury** or **personal injury** to **you** or to a co-employee while in the course of his or her employment, or the spouse, child, parent, brother or sister of that co-employee as a consequence of such **bodily injury** or **personal injury**, or for any obligation to share damages with or repay someone else who must pay damages because of the injury; or

   (2) **Bodily injury** or **personal injury** arising out of his or her providing or failing to provide professional health care services; or

   (3) **Property damage** to property owned or occupied by or rented or loaned to that employee, any of **your** other employees, or any of **your** partners or members (if **you** are a partnership or joint venture).

b. Any person (other than **your** employee) or any organization while acting as **your** real estate manager.

c. Any person or organization having proper temporary custody of **your** property if **you** die, but only:

   (1) With respect to liability arising out of the maintenance or use of that property; and

   (2) Until **your** legal representative has been appointed.

d. **Your** legal representative if **you** die, but only with respect to duties as such. That representative will have all **your** rights and duties under this policy.

e. Any person or organization qualifying as an **insured** under any policy of **underlying insurance**. Coverage afforded such **insureds** under this policy applies only to injury or damage:

   (1) Which is covered by this policy; and

   (2) Which is covered by the **underlying insurance** or would be covered but for the exhaustion of such policy's limits of insurance.

This policy shall not afford such person or organization limits of insurance in excess of:

   (1) The minimum limit of insurance **you** agreed to provide; or

   (2) The limit of insurance under this policy

whichever is less.

f. Any person or organization for whom **you** have agreed in writing prior to any **occurrence** or **offense** to provide insurance such as is afforded by this policy, but only with respect to operations performed by **you** or on **your** behalf, or facilities owned or used by **you**. This policy shall not afford such person or organization limits of insurance in excess of:

   (1) The minimum limit of insurance **you** agreed to provide; or

   (2) The limit of insurance under this policy

whichever is less.

3. With respect to:

a. Any **auto**; or

b. **Mobile equipment** registered in **your** name under any motor vehicle registration law;

any person is an **insured** while driving such **auto** or **mobile equipment** with **your** permission. Any other person or organization responsible for the conduct of such person is also an **insured**, but only with respect to liability arising out of the operation of the **auto** or registered **mobile equipment**.

However, except with respect to **your** partners, employees, or members of their households, the owner or anyone else from whom **you** hire or borrow an **auto** is an **insured** only if that **auto** is a trailer connected to an **auto you** own.

But no person or organization is an **insured** under this paragraph 3 for:

a. **Bodily injury** to a co-employee of the person driving the **auto** or **mobile equipment**;

b. **Property damage** to property owned by the employer of any person who is an **insured** under this provision;

c. Any **auto you** hire or borrow from one of **your** partners, employees or members of their households, if they are the owner of such **auto**, unless:

   (1) Insurance is afforded for such **auto** by **underlying insurance**, or would be afforded under such **underlying insurance** but for exhaustion of such policy's limits of liability; or

   (2) Such **auto** is a trailer connected to an **auto you** own;

# BADGER MUTUAL INSURANCE COMPANY

d. Any **auto** being used by a person employed in the business of selling, servicing, repairing, or parking **autos** unless they are **your** employee; or

e. The movement of property to or from an **auto** except **your** employees or partners, or the lessees or borrowers of such **auto**, and any employees of such lessees or borrowers.

4. Any organization **you** newly acquire or form, other than a partnership or joint venture, and over which **you** maintain ownership or majority interest, will qualify as a named **insured** if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after **you** acquire or form the organization or the end of the policy period set forth in Item 3 of the Declarations, whichever is earlier;

b. Coverage is applicable only in excess of the Limits of **underlying insurance** as shown in Item 5 of the Declarations, and **you** must add such organization to **your underlying insurance** as soon as practicable, advising **us** of such additions. **We** may then make adjustment of premium charges as called for in Condition 9 - Maintenance of **Underlying insurance**;

c. Coverage A does not apply to **bodily injury** or **property damage** that occurred before **you** acquired or formed the organization; and

d. Coverage B does not apply to **personal injury** or advertising injury arising out of an **offense** committed before **you** acquired or formed the organization.

No person or organization is an **insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a **named insured** in the Declarations.

## SECTION IV - LIMIT OF INSURANCE

1. The Policy Aggregate Limit shown in Item 4 of the Declarations and the rules below fix the most **we** will indemnify regardless of the number of:

a. **Insureds**;

b. **Claims** made or **suits** brought; or

c. Persons or organizations making **claims** or bringing **suits**.

2. The Policy Aggregate Limit is the most **we** will indemnify for:

a. All **ultimate net loss** under Coverage A and Coverage B combined, except **ultimate net loss** because of injury or damage arising from the **automobile hazard**.

b. Each **occurrence** with regard to **ultimate net loss** because of injury and damage arising from the **automobile hazard**.

3. If the Policy Aggregate Limit is paid prior to this policy's termination date for losses other than losses arising from the **automobile hazard**, this policy's premium is fully earned.

4. The Policy Aggregate Limit applies separately to each consecutive annual period, and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Insurance.

## SECTION V - CONDITIONS

### 1. Appeals

In the event the **insured** or any **underlying insurer** elects not to appeal a judgment which exceeds the **retained limit**, **we** may elect to do so. **We** shall be liable, in addition to the Limit of Insurance, for all costs, taxes, expenses incurred and interest on judgments incidental to such an appeal and for all such costs, expenses and interest on appeals in connection with **our** right and duty to defend the **insured** under this policy.

### 2. Bankruptcy

Bankruptcy, insolvency, or receivership of the **insured**, the **insured's** estate or of any **underlying insurer** will not relieve **us** of **our** obligations under this policy. With regard to bankruptcy, insolvency, or receivership of any **underlying insurer**, this policy shall not apply as a replacement of such bankrupt or insolvent insurer and **our** Limits of Insurance will apply only in excess of the required Limit(s) of Insurance stated in Item 5 of the Declarations of this policy.

### 3. Cancellation

a. The first **named insured** shown in the Declarations may cancel this policy by delivering it to **us** or any of **our** authorized agents or by sending **us** written notice stating when the future cancellation will take effect. Cancellation will become effective the date of delivery of the policy to **us** or upon such future date requested by the first **named insured**.

# BADGER MUTUAL INSURANCE COMPANY

b. **We** may cancel this policy by mailing or delivering to the first **named insured** written notice of cancellation at least:

(1) Ten (10) days before the effective date of cancellation if **we** cancel because of nonpayment of premium whether payable directly to **us** or payable to **our** agents or others under any installment payment plan, premium finance plan, extension of credit or other payment plan; or

(2) Thirty (30) days before the effective date of cancellation if **we** cancel for any other reason.

c. **We** will mail or deliver **our** notice to the first **named insured's** last mailing address known to **us**.

d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

e. If this policy is cancelled, **we** will send the first **named insured** any premium refund due. If **we** cancel, the refund will be pro rata. If the first **named insured** cancels, the refund may be less than pro rata. The cancellation will be effective even if **we** have not made or offered any refund of unearned premium.

f. If notice is mailed, proof of mailing will be sufficient proof of notice.

## 4. Changes

This policy contains all the agreements between **you** and **us** concerning the insurance afforded. The first **named insured** shown in the Declarations is authorized to make changes in the terms of this policy upon **our** giving written consent. This policy's terms can be amended or waived only by endorsement to this policy issued by **us**.

**We** shall not be bound by any assignment of interest by any **insured** unless **our** consent to such assignment is endorsed onto this policy.

## 5. Duties In The Event Of Occurrence, Claim Or Suit

a. **You** must see to it that **we** or **our** authorized representative are notified as soon as practicable of an **occurrence** or an **offense** which may result in a **claim**. To the extent possible, notice should include:

(1) How, when, and where the **occurrence** or alleged **offense** took place;

(2) The **insured's** name and address;

(3) The names and addresses of any injured persons or witnesses; and

(4) The nature and location of any injury or damage arising out of the **occurrence** or **offense**.

Notice of an **occurrence** or an **offense** is not notice of a claim.

b. If a **claim** is made or **suit** is brought against any **insured**, **you** must:

(1) Immediately record the specifics of the **claim** or **suit** and the date received; and

(2) Notify **us** as soon as practicable.

**You** must see to it that **we** also receive written notice of the **claim** or **suit** as soon as practicable.

c. **You** and any other **insured** involved in such **claim** or **suit** must:

(1) Immediately send **us** copies of any demands, notices, summonses or legal papers received in connection with the **claim** or **suit**;

(2) Authorize **us** to obtain records and other information;

(3) Cooperate with **us** in the investigation, settlement or defense of the **claim** or **suit**; and

(4) Assist us, upon **our** request, in the enforcement of any right against any person or organization which may be liable to the **insured** because of injury or damage to which this insurance may also apply.

d. No **Insureds** will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without **our** consent.

e. No **insureds** shall in any way jeopardize **our** rights after an **occurrence** or **offense**.

## 6. Examination of Your Books and Records

**We** may examine and audit **your** books and records as they relate to this policy at any time during the policy period set forth in Item 3 of the Declarations and up to three years afterward.

## 7. Inspection and Surveys

**We** have the right but are not obligated to:

a. Make inspections and surveys at any time;

b. Give **you** reports on the conditions **we** find; and

c. Recommend changes to such conditions.

# BADGER MUTUAL INSURANCE COMPANY

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. **We** do not make safety inspections. **We** do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. **We** also do not warrant that conditions:

a. Are safe or healthful; or

b. Comply with laws, regulations, codes or standards.

This condition applies not only to **us**, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on **our** behalf.

8. **Legal Action Against Us**

No person or organization has a right under this policy:

a. To join **us** as a party or otherwise bring **us** into a **suit** asking for damages from an **insured**; or

b. To sue **us** under this policy unless all of its terms have been fully complied with.

A person or organization may sue **us** to recover on an agreed settlement or on a final judgment against an **Insured** obtained after an actual trial; but **we** will not be liable for damages that are not indemnifiable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by **us**, the **Insured** and the claimant or the claimant's legal representative.

9. **Maintenance of Underlying Insurance**

a. **You** must keep the **underlying insurance** described in Item 5 of the Declarations, or renewal or replacement policies not more restrictive in their terms and conditions, in full force and effect during the policy period of this policy. The Limits of Insurance must be maintained without reduction other than by payment of losses covered thereunder. **You** must also inform us within 30 days of any cancellation of any policy of **underlying insurance**, or replacement of any policy of **underlying insurance**.

b. **You** must notify **us** immediately of any changes to the terms of any **underlying insurance** policies. **We** may adjust premium charges under this policy from the effective date of such changes to the terms of any **underlying insurance**.

c. **Your** failure to comply with the foregoing paragraphs a. and b. will not invalidate this policy, but in the event of such failure, **we** shall be liable under this policy only to the extent that **we** would have been liable had **you** complied with these obligations.

10. **Other Insurance**

If other valid and collectible insurance is available to the **Insured** for **ultimate net loss we** cover under this policy, **our** obligations under this policy are limited as follows:

a. As this insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, except such insurance as is specifically purchased to apply in excess of this policy's Limit of Insurance, **we** will indemnify only **our** share of the amount of **ultimate net loss**, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under this or any other insurance.

b. **We** will have no duty under Coverages A or B to defend any **claim** or **suit** that any other insurer has a duty to defend. If no other insurer defends, **we** may undertake to do so, but **we** will be entitled to the **insured's** rights against all other insurers.

11. **Premium Audit**

a. **We** will compute all premiums for this policy in accordance with **our** rules and rates.

b. Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first **named Insured**. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, **we** will return the excess to the first **named Insured**, but not if such audit premium is less than the Minimum Premium shown in the Declarations.

c. The first **named Insured** must keep records of the information we need for premium computation, and send **us** copies at such times as **we** may request.

12. **Premiums**

The first **named insured** shown in the Declarations:

a. Is responsible for the payment of all premiums; and

CU-100 Ed. 2-95

Page 10 of 14

# BADGER MUTUAL INSURANCE COMPANY

b. Will be the payee for any return premiums **we** pay.

**13. Representations**

By accepting this policy, **you** agree that:

a. The information shown on the Declarations is accurate and complete;

b. The information is based upon representations **you** made to **us** in **your** application(s) for this policy;

c. **We** have issued this policy in reliance upon **your** representations; and

d. Except as otherwise provided in this policy or by law, this policy is void in any case of fraud or if **you** intentionally conceal or misrepresent any material facts concerning this policy, in **your** application for this policy or otherwise.

**14. Separation of Insureds**

Except with respect to the Limit of Insurance, and any rights or duties specifically assigned to the first **named Insured**, this insurance applies:

a. As if each **named Insured** were the only **named Insured**; and

b. Separately to each **Insured** against whom **claim** is made or **suit** is brought.

**15. Sole Agent**

The **named insured** first shown in Item 1 of the Declarations is authorized to act on behalf of all **Insureds** with respect to giving or receiving notice of cancellation or nonrenewal, receiving refunds, and agreeing to any changes in this policy.

**16. Transfer Of Rights Of Recovery Against Others To Us**

If the **insured** has rights to recover all or part of any indemnification **we** have made under this policy, those rights are transferred to **us**. The **insured** must do nothing after loss to impair them. At **our** request, the **insured** will bring **suit** or transfer those rights to **us** and help **us** enforce them.

Any recoveries shall be applied first to reimburse any interests (including the **Insured**) that may have paid any amounts in excess of **our** liability under this policy; then to reimburse **us** for any indemnity hereunder and lastly to reimburse such interests (including the **insured**) as to which this policy is excess, as are entitled to the residue, if any.

When **we** assist in pursuit of the **insured's** rights of recovery, reasonable expenses resulting therefrom shall be apportioned among all interests in the ratio of their respective recoveries.

If there should be no recovery as a result of proceedings instituted solely at **our** request, **we** shall bear all expenses of such proceedings.

**17. Transfer of Your Rights and Duties Under This Policy**

**Your** rights and duties under this policy may not be transferred without **our** written consent except in the case of death of an individual **named insured**.

If **you** die, **your** rights and duties will be transferred to **your** legal representative but only while acting within the scope of duties as **your** legal representative. Until **your** legal representative is appointed, anyone having proper temporary custody of **your** property will have **your** rights and duties but only with respect to that property.

**18. When Loss Payable**

**Our** liability for any portion of **ultimate net loss** shall not apply until the **insured** or any **underlying insurer** shall be obligated to actually pay the full and complete amount of the **retained limit**. When **ultimate net loss** has been finally determined, the **insured** may make **claim** for indemnity under this policy as soon as practicable thereafter. Such **insured's** obligation to pay any amount of **ultimate net loss** must have been finally determined either by judgment against the **insured** after actual trial or by written agreement of the **insured**, the claimant or the claimant's legal representative and **us**.

**19. When We Do not Renew**

If **we** decide not to renew this policy, **we** will mail or deliver to the first **named insured** shown in the Declarations written notice of the non-renewal not less than 30 days before the expiration date or such other period as may be required by law.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION VI - DEFINITIONS

1. **Advertising injury** means injury arising out of one or more of the following **offenses**:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

CU-100 Ed. 2-95

# BADGER MUTUAL INSURANCE COMPANY

2. **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. However, **auto** does not include **mobile equipment**.

3. **Automobile hazard** means liability arising out of the ownership, maintenance, use or entrustment of any **auto**. Use includes operation and **loading or unloading**.

4. **Bodily injury** means bodily injury, sickness, or disease sustained by a natural person. This includes death, shock, fright, mental anguish, mental injury, or disability which results from any of these at any time.

5. **Claim** means any demand upon the **insured** for damages or services alleging liability of the **insured** as the result of an **occurrence** or **offense**.

6. **Coverage territory** means anywhere in the world if the **insured's** responsibility to pay damages is determined in a **suit** on the merits, in the United States of America (including its territories and possessions), Puerto Rico or Canada, or in a settlement **we** agree to.

7. **Impaired property** means tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:

   a. It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. **You** have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of **your product** or **your work**; or

   b. **Your** fulfilling the terms of the contract or agreement.

8. **Insured contract** means:

   a. A lease of premises;

   b. A railroad sidetrack agreement;

   c. Any easement or license agreement except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement; or

   f. That part of any other contract or agreement pertaining to **your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the tort liability of another party to pay for **bodily injury** or **property damage** to a third person or organization. Tort liability means a liability that would be imposed by law for injury to persons or property in the absence of any contract or agreement.

An **insured contract** does not include that part of any contract or agreement:

   a. That indemnifies any person or organization for **bodily injury** or **property damage** arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

   b. That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (1) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

      (2) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

   c. Under which the **insured**, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the **insured's** rendering or failure to render professional services, including those listed in (b) above and supervisory, inspection or engineering services; or

   d. That indemnifies any person or organization for damage by fire to premises rented or loaned to **you**.

9. **Loading or unloading** means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or **auto**;

   b. While it is in or on an aircraft, watercraft or **auto**; or

   c. While it is being moved from an aircraft, watercraft or **auto** to the place where it is finally delivered;

   but **loading or unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or **auto**.

10. **Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

FILED DATE: 4/23/2026 11:10 AM 2026CH03888

# BADGER MUTUAL INSURANCE COMPANY

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises **you** own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, on which are permanently mounted:

  (1) Power cranes, shovels, loaders, diggers or drills; or

  (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c., or d. immediately preceding that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

  (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

  (2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c., or d. of this section maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

  (1) Equipment designed primarily for:

    (a) Snow removal;

    (b) Road maintenance, but not construction or resurfacing; or

    (c) Street cleaning;

  (2) Cherry pickers and similar devices mounted on automobiles or truck chassis and used to raise or lower workers; and

  (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical. exploration, lighting or well servicing equipment.

11. **Occurrence** means

a. With respect to **bodily injury** or **property damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. This does not apply to **your** liability (other than under a contract or agreement) for **bodily injury** to **your** employees arising out of and in the course of employment by **you**; or

b. With respect to **your** liability (other than under a contract or agreement) for **bodily injury** to **your** employees arising out of and in the course of employment by **you**, **bodily injury** caused by accident or disease.

12. **Offense** means any of the **offenses** included in the definitions of **advertising injury** or **personal injury**.

13. **Personal injury** means injury, other than **bodily injury**, arising out of one or more of the following **offenses**:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. **Pre-judgment interest** means interest added to a settlement, verdict, award or judgment based on the amount of time prior to the settlement, verdict, award or judgment whether or not made part of the settlement, verdict, award or judgment.

15. a. **Products-completed operations hazard** includes all **bodily injury** and **property damage** occurring away from premises **you** own or rent and arising out of **your product** or **your work** except:

  (1) Products that are still in **your** physical possession; or

  (2) Work that has not yet been completed or abandoned.

b. **Your work** will be deemed completed at the earliest of the following times:

  (1) When all of the work called for in **your** contract has been completed.

  (2) When all of the work to be done at the site has been completed if **your** contract calls for work at more than one site.

CU-100 Ed. 2-95

# BADGER MUTUAL INSURANCE COMPANY

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include **bodily injury** or **property damage** arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the **loading or unloading** of it; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

16. **Property damage** means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

17. **Retained limit** means the greater of:

a. The sum of amounts applicable to any **claim** or **suit** from:

(1) **Underlying insurance**, whether such **underlying insurance** is collectible or not; and

(2) Other collectible primary insurance; or

b. The **self-insured retention**.

18. **Self-insured retention** means the amount in Item 4 of the Declarations.

19. **Suit** means a civil proceeding in which damages because of **advertising injury, bodily injury, personal injury** or **property damage** to which this insurance applies are alleged. **Suit** includes:

a. An arbitration proceeding in which such damages are claimed and to which the **insured** must submit or submits with **our** consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the **insured** submits with **our** consent.

20. **Ultimate net loss** means the total amount of damages for which the **insured** is legally liable in payment of **bodily injury, property damage, personal injury,** or **advertising injury. Ultimate net loss** must be fully determined as shown in Condition 18. - When Loss Payable. **Ultimate net loss** shall be reduced by any recoveries or salvages which have been paid or will be collected, but the amount of **ultimate net loss** shall not include any expenses incurred by any **insured, by us** or by any **underlying insurer.**

21. **Underlying insurance** means the coverage(s) afforded under insurance policies designated in Item 5 of the Declarations and any renewals or replacements of those policies.

22. **Underlying insurer** means any company issuing any policy of **underlying insurance.**

23. **Your product** means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) **You;**

(2) Others trading under **your** name; or

(3) A person or organization whose business or assets **you** have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your product** includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product;** and

b. The providing of or failure to provide warnings or instructions.

**Your product** does not include vending machines or other property rented to or located for the use of others but not sold.

24. **Your work** means:

a. Work or operations performed by **you** or on **your** behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

**Your work** includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your work;** and

b. The providing of or failure to provide warnings or instructions.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
CU-110 Ed. 2-95
## ILLINOIS CHANGES – CANCELLATION AND NONRENEWAL

Condition 3 and 19 of SECTION V–CONDITIONS are replaced by the following:

**3. Cancellation**

a. The first **named insured** shown in the Declarations may cancel this policy by delivering it to **us** or any of **our** authorized agents or by sending **us** written notice stating when the future cancellation will take effect. Cancellation will become effective the date of delivery of the policy to **us** or upon such future date requested by the first **named insured**.

b. **We** may cancel this policy by mailing to the first **named insured** written notice of cancellation at least:

(1) Ten (10) days before the effective date of cancellation if **we** cancel because of nonpayment of premium whether payable directly to **us** or payable to **our** agents or others under any installment payment plan, premium finance plan, extension of credit or other payment plan; or

(2) Thirty (30) days before the effective date of cancellation if **we** cancel for any other reason and only if this policy has been in effect for less than 60 days; or

(3) Sixty (60) days (10 days of nonpayment of premium) before the effective date of cancellation if this policy has been in effect for 60 days or more or is a renewal of a policy issued by **us**, and only if cancellation is for one or more of the following reasons:

(a) Nonpayment of premium;

(b) The policy was obtained through a material misrepresentation;

(c) Any **insured** has violated any of the terms and conditions of the policy;

(d) The risk originally accepted has measurably increased;

(e) Certification to the Director of Insurance of the loss of **our** reinsurance for all or a substantial part of the risk insured;

(f) Determination by the Director of Insurance that continuation of coverage could place **us** in violation of state insurance laws.

c. **We** will mail our notice to the first **named insured's** last mailing address known to **us**.

d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

e. If this policy is cancelled, **we** will send the first **named insured** any premium refund due. If **we** cancel, the refund will be pro rata. If the first **named insured** cancels, the refund may be less than pro rata. The cancellation will be effective even if **we** have not made or offered any refund or unearned premium.

**19. When We Do Not Renew**

a. If **we** decide not to renew this policy, **we** will mail to the first **named insured** shown in the Declarations written notice of the non-renewal not less than 60 days before the expiration date:

(1) **We** will mail **our** notice to the first **named insured's** last mailing address known to **us**.

(2) Proof of mailing will be sufficient proof of notice.

b. Whether or not **we** provide notice as stated in a., above, this policy will terminate:

(1) On the expiration date if:

(a) **You** fail to pay when due the premium or any installment of the premium that is payable directly to **us** or **our** agent; or

(b) **We** have indicated directly to **you our** willingness to renew this policy; or

(c) **You** have notified **us** or **our** agent that **you** do not wish to renew this policy; or

(2) On the effective date of any other insurance policy which **you** obtain as a replacement for this policy.

All other terms remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
CU-117 Ed. 2-95
### ASBESTOS EXCLUSION

This insurance does not apply to:

1. **Bodily injury, property damage, personal injury or advertising injury** arising out of, resulting from, caused or contributed to by asbestos or exposure to asbestos; or

2. The costs of abatement, mitigation, removal or disposal of asbestos.

This exclusion also includes:

a. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

b. Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

CU-117 Ed. 2-95

Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
CU-119 Ed. 2-95
## ATHLETIC PARTICIPANTS EXCLUSION

This insurance does not apply to **bodily injury** to any person engaged in:

1. Any athletic, exercise or sports activity; or

2. Managing, coaching, or supervising such activity

which **you** sponsor or which is conducted on premises **you** own, rent or control.

"Activity" as used herein includes travel or activity in the course of travel to or from any destination for the purpose of practicing for or participating in any such athletic, exercise or sports activity.

CU-119 Ed. 2-95

Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
CU-121 Ed. 2-95
## AUTO LIABILITY EXCLUSION

This insurance does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance, use, or entrustment to others of any **auto**:

1. While away from premises **you** own, rent, or occupy; or

2. Owned by or rented or loaned to any **insured**.

"Use" includes operation and **loading or unloading**.

CU-121 Ed. 2-95

Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
### CU-125 Ed. 2-95
## CARE, CUSTODY OR CONTROL EXCLUSION

This insurance does not apply to **property damage** to:

1. Property rented or occupied by any **insured**;

2. Property loaned to any **insured**; or

3. Personal property in the care, custody or control of any **insured**.

CU-125 Ed. 2-95                                                                    Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
CU-142 Ed. 2-95
## LIQUOR LAW LIABILITY FOLLOWING FORM

Except to the extent coverage is provided in **underlying insurance**, this insurance does not apply to **bodily injury** or **property damage** for which any **insured** or the **insured's** indemnitee may be held liable by reason of:

1. Causing or contributing to the intoxication of any person;

2. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if **you**:

1. Manufacture, sell or distribute alcoholic beverages;

2. Serve or furnish alcoholic beverages for a charge whether or not such activity;

   a. Requires a license; or

   b. Is for the purpose of financial gain or livelihood; or

3. Serve or furnish alcoholic beverages without a charge, if a license is required for such activity.

CU-142 Ed. 2-95

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
CU-148 Ed. 2-95
## OWNED AUTO EXCLUSION

This insurance does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, **loading or unloading** or entrustment to others of any **auto** owned by **you**.

CU-148 Ed. 2-95

Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
CU-150 Ed. 2-95
## PERSONAL INJURY FOLLOW FORM

Except to the extent coverage is provided in **underlying insurance**, this insurance does not apply to **personal injury**.

CU-150 Ed. 2-95

Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
CU-151 Ed. 2-95
## POLLUTION EXCLUSION

This insurance does not apply to:

1. **Bodily injury, personal injury or property damage** which arises out of or would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

2. Any loss, cost or expense arising out of any:

   a. Request, demand, or order that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

   b. **Claim or suit** by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion applies whether or not such injury or damage may be included within the **products/completed operations hazard**.

CU-151 Ed. 2-95

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
CU-164 Ed. 2-95
## EMPLOYERS LIABILITY – FOLLOWING FORM

This policy shall not apply to **bodily injury** to any employee of the **named insured** arising out of and in the course of his employment by or on behalf of the **insured** unless such liability is covered by valid and collectible **underlying insurance** at the limits shown in the schedule of **underlying insurance**, but only for such hazards for which coverage is afforded by said **underlying insurance**.

CU-164 Ed. 2-95                                                              Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
CU-167 Ed. 2-95
## ILLINOIS AMENDATORY ENDORSEMENT

**Section I -- Insuring Agreements**

Item 2.     **Exclusions** is changed as follows:

Exclusion (a.) is deleted in its entirety.

**Section V -- Conditions**

Item 5.     **Duties In The Event of Occurrence, Claim or Suit** is changed as follows:

Under section (a) the statement, "Notice of an occurrence or an offense is not notice of a claim," is deleted in its entirety.

Item 15.    **Sole Agent** is deleted.

CU-167 Ed. 2-95

Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
CU 998 01 05
## EXCLUSION – LOSS BY WET ROT, DRY ROT, BACTERIA, FUNGI, OR PROTISTS

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY POLICY
(or OCCURRENCE EXCESS POLICY)

1.  The following exclusion is added to Item 2., Exclusions of Section I – Coverage A – **Bodily Injury** and Property Damage Liability and Item 2., Exclusions of Section I – Coverage B – Personal and **Advertising Injury**:

    a.  This insurance does not apply to actual or alleged **bodily injury** or property damage or personal or **advertising injury**, that results directly or indirectly from ingestion of, inhalation of, physical contact with, or exposure to:

        1)  wet rot; dry rot; a bacterium; a fungus, including but not limited to mildew and mold; or a protist, including but not limited to algae and slime mold; or

        2)  a chemical, matter, or a compound produced or released by wet rot, dry rot, a bacterium, a fungus, or a protist, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

    b.  This insurance does not apply to any loss, cost, or expense arising out of any request, demand, or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of:

        1)  wet rot; dry rot; a bacterium; a fungus, including but not limited to mildew and mold; or a protist, including but not limited to algae and slime mold; or

        2)  a chemical, matter, or a compound produced or released by wet rot, dry rot, a bacterium, a fungus, or a protist, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

    c.  This insurance does not apply to any loss, cost, or expense arising out of any claim or suit by or on behalf of any governmental authority relating to testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of:

        1)  wet rot; dry rot; a bacterium; a fungus, including but not limited to mildew and mold; or a protist, including but not limited to algae and slime mold; or

        2)  a chemical, matter, or a compound produced or released by wet rot, dry rot, a bacterium, a fungus, or a protist, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

2.  However, exclusion 1.a. above does not apply to **bodily injury** that results from a fungus cultivated or harvested for human consumption or a food-borne or beverage-borne bacterium that causes illness commonly known as food poisoning (Food-borne or beverage-borne bacteria that cause illness commonly known as food poisoning include but are not limited to Staphylococcus aureus, Salmonella, Clostridium perfringens, Campylobacter, Listeria monocytogenes, Vibro parahaemolyticus, Bacillus cereus, and Escherichia coli.)

CU 998 01 05

Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
CU 999 01 05
### LEAD EXCLUSION

This insurance does not apply to:

1.  **Bodily Injury, property damage** or **personal and advertising injury** arising out of, resulting from, caused by or contributed to by the toxic or pathological properties of lead, lead compounds or lead contained in any materials;

2.  Any cost or expense to abate, mitigate, remove or dispose of lead, lead compounds or materials containing lead;

3.  Any supervision, instruction, recommendations, warnings or advice given or which should have been given in connection with paragraphs 1 or 2 above; or

4.  Any obligation to share damages with or repay someone else who must pay damages in connection with injury or damage as described in any subsection above.

CU 999 01 05

Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
## GL 0163 01 08
## EXCLUSION – WAR AND MILITARY ACTION

The Commercial Liability Coverage is amended as follows:

## EXCLUSIONS

The exclusion relating to injury or damage that arises out of war is deleted and replaced by the following:

We do not pay for **bodily injury** or **property damage** (or **personal injury** or **advertising injury**, if provided by the Commercial Liability Coverage) caused directly or indirectly by the following:

a.  war, including undeclared or civil war; or

b.  warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or

c.  insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
## GL 0209 10 05
## ASBESTOS EXCLUSION

The Commercial Liability Coverage is amended as follows:

### EXCLUSIONS

The following exclusions are added:

We do not pay for:

1. **bodily injury** arising out of the actual, alleged, or threatened ingestion, inhalation, or absorption of asbestos, asbestos products, asbestos fibers, or asbestos dust;

2. **property damage** arising out of the actual, alleged, or threatened contact with, existence of, exposure to, or presence of asbestos, asbestos products, asbestos fibers, or asbestos dust;

3. **personal injury** or **advertising injury**, if provided by the Commercial Liability Coverage, arising out of the actual, alleged, or threatened ingestion of, inhalation of, absorption of, contact with, existence of, exposure to, or presence of asbestos, asbestos products, asbestos fibers, or asbestos dust; or

4. any loss, cost, or expense arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of asbestos, asbestos products, asbestos fibers, or asbestos dust by any **insured** or any other person or organization.

GL 0209 10 05      Copyright, American Association of Insurance Services, Inc., 2005      Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
### GL 0215 10 05
## SILICA EXCLUSION

The Commercial Liability Coverage is amended as follows:

### DEFINITIONS

The following definition is added:

**Silica** means silicon dioxide ($SiO_2$) including:

1. crystalline silica, silica dust, industrial sand, silica sand, quartz, quartz dust, cristobalite, tridymite, tripoli, and silica mixed with other compounds;

2. amorphous silica and silica gel; and

3. silica dust mixed with other dust particles.

### EXCLUSIONS

The following exclusions are added:

**We** do not pay for:

1. **bodily injury** arising out of the actual, alleged, or threatened ingestion, inhalation, or absorption of **silica**;

2. **property damage** arising out of the actual, alleged, or threatened contact with, existence of, exposure to, or presence of **silica**;

3. **personal injury** or **advertising injury**, if provided by the Commercial Liability Coverage, arising out of the actual, alleged, or threatened ingestion of, inhalation of, absorption of, contact with, existence of, exposure to, or presence of **silica**; or

4. any loss, cost, or expense arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of **silica** by any **insured** or any other person or organization.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
## GL 0250 01 08
## CERTIFIED TERRORISM LOSS

1. The following definitions are added.

   a. **Certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:

      1) to be an act of terrorism;

      2) to be a violent act or an act that is dangerous to human life, property, or infrastructure;

      3) to have resulted in damage:

         a) within the United States; or

         b) to an air carrier (as defined in section 40102 of title 49, United States Code); to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or at the premises of any United States mission;

      4) to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion; and

      5) to have resulted in insured losses in excess of five million dollars in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act, as amended.

   b. **Certified terrorism loss** means loss that results from a **certified act of terrorism**.

2. The **terms** of any terrorism exclusion that is part of or that is attached to this Coverage Part are amended by the following provision:

   This exclusion does not apply to **certified terrorism loss**.

3. The following provision is added.

   If the Secretary of the Treasury determines that the aggregate amount of **certified terrorism loss** has exceeded one hundred billion dollars in a Program Year (January 1 through December 31), and **we** have met **our** insurer deductible under the Terrorism Risk Insurance Act, as amended, **we** will not pay for any portion of **certified terrorism loss** that exceeds one hundred billion dollars. If the **certified terrorism loss** exceeds one hundred billion dollars in a Program Year (January 1 through December 31), losses up to one hundred billion dollars are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury under the Terrorism Risk Insurance Act, as amended.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
## GL 0348 06 02
## EXCLUSION – WET ROT, DRY ROT, BACTERIA, FUNGI, OR PROTISTS

The Commercial Liability Coverage is amended as follows:

1. The following exclusions are added:

   a. We do not pay for actual or alleged **bodily injury** or **property damage** (or **personal injury** or **advertising injury**, when provided by this policy) that results directly or indirectly from ingestion of, inhalation of, physical contact with, or exposure to:

      1) wet rot; dry rot; a bacterium; a fungus, including but not limited to mildew and mold; or a protist, including but not limited to algae and slime mold; or

      2) a chemical, matter, or a compound produced or released by wet rot, dry rot, a bacterium, a fungus, or a protist, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

   b. We do not pay for any loss, cost, or expense arising out of any request, demand, or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of:

      1) wet rot; dry rot; a bacterium; a fungus, including but not limited to mildew and mold; or a protist, including but not limited to algae and slime mold; or

      2) a chemical, matter, or a compound produced or released by wet rot, dry rot, a bacterium, a fungus, or a protist, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

   c. We do not pay for any loss, cost, or expense arising out of any claim or suit by or on behalf of any governmental authority relating to testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of:

      1) wet rot; dry rot; a bacterium; a fungus, including but not limited to mildew and mold; or a protist, including but not limited to algae and slime mold; or

      2) a chemical, matter, or a compound produced or released by wet rot, dry rot, a bacterium, a fungus, or a protist, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

2. However, exclusion 1.a. above does not apply to:

   a. **bodily injury** that results from a fungus cultivated or harvested for human consumption or a food-borne or beverage-borne bacterium that causes illness commonly known as food poisoning (Food-borne or beverage-borne bacteria that cause illness commonly known as food poisoning include but are not limited to Staphylococcus aureus, Salmonella, Clostridium perfringens, Campylobacter, Listeria monocytogenes, Vibro parahaemolyticus, Bacillus cereus, and Escherichia coli.); or

   b. **bodily injury** suffered by an **employee** of an **insured** while performing duties in connection with the **insured's** farming operations, but only to the extent that **bodily injury** to an **insured's** **employees** is covered by this policy.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
GL 0349 06 02
# EXCLUSION – WET ROT, DRY ROT, BACTERIA, FUNGI, OR PROTISTS
CONTRACTING OPERATIONS

The Commercial Liability Coverage is amended as follows:

The following exclusions are added:

1. **We** do not pay for actual or alleged **bodily injury** or **property damage** (or **personal injury** or **advertising injury**, when provided by this policy) that arises out of **your work** and that results directly or indirectly from ingestion of, inhalation of, physical contact with, or exposure to:

   a. wet rot; dry rot; a bacterium; a fungus, including but not limited to mildew and mold; or a protist, including but not limited to algae and slime mold; or

   b. a chemical, matter, or a compound produced or released by wet rot, dry rot, a bacterium, a fungus, or a protist, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

2. **We** do not pay for actual or alleged **bodily injury** or **property damage** included in the **products/completed work hazard** and that results directly or indirectly from ingestion of, inhalation of, physical contact with, or exposure to:

   a. wet rot; dry rot; a bacterium; a fungus, including but not limited to mildew and mold; or a protist, including but not limited to algae and slime mold; or

   b. a chemical, matter, or a compound produced or released by wet rot, dry rot, a bacterium, a fungus, or a protist, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

3. **We** do not pay for **bodily injury** or **property damage** liability assumed by an **Insured** under a contract or agreement and that results directly or indirectly from ingestion of, inhalation of, physical contact with, or exposure to:

   a. wet rot; dry rot; a bacterium; a fungus, including but not limited to mildew and mold; or a protist, including but not limited to algae and slime mold; or

   b. a chemical, matter, or a compound produced or released by wet rot, dry rot, a bacterium, a fungus, or a protist, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

4. **We** do not pay for any loss, cost, or expense arising out of any request, demand, or order that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of:

   a. wet rot; dry rot; a bacterium; a fungus, including but not limited to mildew and mold; or a protist, including but not limited to algae and slime mold; or

   b. a chemical, matter, or a compound produced or released by wet rot, dry rot, a bacterium, a fungus, or a protist, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

5. **We** do not pay for any loss, cost, or expense arising out of any claim or suit by or on behalf of any governmental authority relating to testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of:

   a. wet rot; dry rot; a bacterium; a fungus, including but not limited to mildew and mold; or a protist, including but not limited to algae and slime mold; or

   b. a chemical, matter, or a compound produced or released by wet rot, dry rot, a bacterium, a fungus, or a protist, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
GL 0439 10 08
## AMENDATORY ENDORSEMENT – ILLINOIS

1. In forms GL-100 and GL-600 only, under Exclusions, Exclusions That Apply To Bodily Injury And Property Damage, exclusion 9. is amended to delete item b. of the definition of Pollutants.

2. In form GL-200 only, under Exclusions, Exclusions That Apply To Bodily Injury, Property Damage, Personal Injury, And/Or Advertising Injury, exclusion 10. is amended to delete item b. of the definition of Pollutants.

3. Under Conditions, Misrepresentation, Concealment or Fraud is deleted and replaced by the following:

**Misrepresentation, Concealment or Fraud -- We** do not provide coverage for an **Insured** who has:

a. willfully concealed or misrepresented:

   1) a material fact or circumstance with respect to this insurance; or

   2) an **Insured's** interest herein.

b. engaged in fraudulent conduct or sworn falsely with respect to this insurance or the subject thereof.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
## GL 0904 10 08
# PERSONAL AND ADVERTISING INJURY LIABILITY COVERAGE

## LIMIT

Coverage P --

Personal and Advertising Injury

$ _____

any one person or organization

The Commercial Liability Coverage is amended as follows:

### DEFINITIONS

The following definitions are added:

1.  **Advertising injury** means injury (other than **bodily injury, property damage,** or **personal injury**) arising out of one or more of the following offenses:

    a.  oral or written publication of material:

        1) that slanders or libels a person or organization;

        2) that disparages a person's or organization's goods, products, or services; or

        3) that violates a person's right of privacy;

    b.  misappropriation of advertising ideas or style of doing business; or

    c.  infringement of copyright, title, slogan, trademark, or trade name.

2.  **Personal injury** means injury (other than **bodily injury, property damage,** or **advertising injury**) arising out of one or more of the following offenses:

    a.  oral or written publication of material:

        1) that slanders or libels a person or organization;

        2) that disparages a person's or an organization's goods, products, or services; or

        3) that violates a person's right of privacy;

    b.  false arrest, detention, or imprisonment;

    c.  malicious prosecution; or

    d.  wrongful entry into, wrongful eviction from, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies. This offense must be committed by or on behalf of the owner, landlord, or lessor of the room, dwelling, or premises.

### PRINCIPAL COVERAGES

The following is added:

### COVERAGE P -- PERSONAL INJURY LIABILITY AND ADVERTISING INJURY LIABILITY

We pay all sums which an **insured** becomes legally obligated to pay as **damages** due to **personal injury** or **advertising injury** to which this insurance applies.

1.  We cover:

    a.  **personal injury** arising out of an offense committed in the course of **your** business, excluding advertising, publishing, broadcasting, or telecasting done by **you** or on **your** behalf; and

    b.  **advertising injury** arising out of an offense committed in the course of advertising **your** goods, products, or services.

2.  The **personal injury** or **advertising injury** offense must be committed:

    a.  within the **coverage territory**; and

    b.  during the policy period.

### DEFENSE COVERAGE

The paragraph defining suit is deleted and replaced by the following:Suit includes any alternative dispute resolution proceeding involving **bodily injury, property damage, personal injury,** or **advertising injury** to which:

1.  **you** must submit; or

2.  **you** submit with **our** consent.

### EXCLUSIONS

The following exclusions are added:

1.  We do not pay for **personal injury** or **advertising injury** liability which is assumed by the **insured** under a contract or an agreement. This exclusion does not apply to liability that an **insured** would have in the absence of the contract or agreement.

GL 0904 10 08          Copyright, American Association of Insurance Services, Inc., 2008          Page 1 of 3

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

# BADGER MUTUAL INSURANCE COMPANY

2. We do not pay for **personal injury** or **advertising injury** that arises out of the rendering or the failure to render a professional service.

3. We do not pay for **personal injury** or **advertising injury** that arises out of the ownership, operation, maintenance, use, occupancy, renting, loaning, entrusting, supervision, **loading or unloading** of an **auto**, aircraft, watercraft, mobile equipment, or other vehicle.

4. We do not pay for **personal injury** or **advertising injury** for which any **insured** may be held liable by reason of:

   a. causing or contributing to the intoxication of a person;

   b. the furnishing of alcoholic beverages to a person under the influence of alcohol or under the legal drinking age; or

   c. a law or regulation relating to the sale, gift, distribution, or use of alcoholic beverages.

   This exclusion applies if **you** are in the business of manufacturing, distributing, selling, or serving alcoholic beverages.

5. We do not pay for **personal injury** or **advertising injury** that arises out of war. War includes undeclared war, civil war, insurrection, rebellion or revolution, or an act or a condition of war.

6. We do not pay for:

   a. **personal injury** to an **employee** of an **insured** if it occurs in the course of employment by the **insured**; or

   b. consequential injury to a spouse, child, parent, brother, or sister of such injured **employee**.

   This exclusion applies where:

   a. the **insured** is liable either as an employer or in any other capacity; or

   b. there is an obligation to fully or partially reimburse a third party for **damages** arising out of paragraph 6.a. or 6.b. above.

   This exclusion does not apply to liability assumed by the **insured** under a contract covered under Contractual Liability Coverage.

7. We do not pay for **personal injury** if benefits are provided or are required to be provided by the **insured** under a workers' compensation, disability benefits, occupational disease, unemployment compensation, or like law.

8. We do not pay for **personal injury** or **advertising injury** arising out of willful violation of an ordinance, statute, or regulation by an **insured** or with the **insured's** consent.

9. We do not pay for **personal injury** or **advertising injury** arising out of:

   a. oral or written publication of material done by or at the direction of an **insured** who knew it was false; or

   b. oral or written publication of the same or similar material by or on behalf of an **insured** that took place prior to the policy.

10. We do not pay for **advertising injury** arising out of breach of contract, other than misappropriation of advertising ideas under an implied contract.

11. We do not pay for **advertising injury** arising out of the failure of goods, products, or services to conform with advertised quality or performance.

12. We do not pay for **advertising injury** arising from an offense committed by an **insured** whose business is advertising, broadcasting, publishing, or telecasting.

13. We do not pay for **advertising injury** arising out of wrong descriptions of the price of an **insured's** goods, products, or services.

14. We do not pay for:

    a. **personal injury** or **advertising injury** arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants at any time unless the **personal injury** or **advertising injury** arises from the heat, smoke, or fumes of a fire which becomes uncontrollable or breaks out from where it was intended to be located; or

    b. any loss, cost, or expense arising out of any:

       1) request, demand, or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of pollutants; or2)    claim or suit by or on behalf of any governmental authority relating to testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of pollutants.

    Pollutants mean any solid, liquid, gaseous, thermal or radioactive irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be disposed of as well as recycled, reclaimed, or reconditioned.

## HOW MUCH WE PAY

1. The provision describing the General Aggregate Limit is replaced by the following:

   The General Aggregate Limit is the most we will pay during a policy period for the sum of:

# BADGER MUTUAL INSURANCE COMPANY

a. all **damages** under Coverage L, except **damages** due to **bodily injury** or **property damage** included under Coverage N;

b. all medical expenses under Coverage M;

c. all **damages** under Coverage O; and

d. all **damages** under Coverage P.

2. The following provision is added:

The Coverage P Limit, subject to the General Aggregate Limit, is the most **we** pay due to all **personal injury** and **advertising injury** sustained by one person or organization.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
GL 0940 07 09
## AMENDATORY ENDORSEMENT
### DEFENSE COSTS REIMBURSEMENT – ILLINOIS

The Commercial Liability Coverage is amended as follows. All other **terms** of the policy apply, except as amended by this endorsement.

## DEFENSE COVERAGE

If **we** defend against a suit or **we** pay for an **Insured's** defense, and **we** later determine that the suit is not covered, **we** have the right to be reimbursed for the defense costs **we** have incurred.

However, under this provision, **our** right to be reimbursed for defense costs applies only to such costs that **we** incur after **we** give **you** written notice that the suit may not be covered and that **we** are reserving **our** rights to end the defense coverage and to seek reimbursement for defense costs.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
GL 0950 05 00
## KNOWN INJURY OR DAMAGE AMENDMENTS

The Commercial Liability Coverage is amended as follows:

1. Under Definitions, the following definition is added:

   **Designated insured** means:

   a. **you** and **your** spouse, but only with respect to the conduct of a business of which **you** are the sole owner, if **you** are shown on the **declarations** as an individual;

   b. **you** and all **your** partners or members and their spouses, but only with respect to the conduct of **your** business, if **you** are shown on the **declarations** as a partnership or a joint venture;

   c. **you** and all **your** members and managers, but only while acting within the scope of their duties, if **you** are shown on the **declarations** as a limited liability company; and

   d. **you** and all **your** executive officers and directors, but only while acting within the scope of their duties, if **you** are shown on the **declarations** as an organization (other than a partnership, joint venture, or limited liability company). It also includes **your** stockholders, but only for their liability as such; or

   e. any **employee** who is authorized to give or receive notice of an **occurrence** or a claim.

2. Under Principal Coverages, Coverage L and, if applicable, Coverage N are amended by the addition of the following:

   This insurance applies only to:

   a. **Bodily injury** or **property damage** which is not a continuation of **bodily injury** or **property damage** that was known by a **designated insured** prior to the inception date of the policy period. If a **designated insured** knew, as stated under the Knowledge of Bodily Injury or Property Damage Condition, prior to the inception date of the policy period, that **bodily injury** or **property damage** had occurred, any continuation of such **bodily injury** or **property damage** will be deemed to have been known by the **designated insured** prior to the inception date of the policy period.

   b. **Bodily injury** or **property damage** that occurs during the policy period and which is not a continuation of **bodily injury** or **property damage** which was known by a **designated insured**, as stated under the Knowledge of Bodily Injury or Property Damage Condition, to have occurred prior to the inception date of this policy period, will include any continuation of such **bodily injury** or **property damage** after the end of this policy period.

3. Under Defense Coverage, the following is added:

   **We** have no duty to defend a suit or claim seeking **damages** because of **bodily injury** or **property damage** which was known by a **designated insured**, as stated under the Knowledge of Bodily Injury or Property Damage Condition, prior to the inception date of the policy period.

4. Under Conditions, the following condition is added:

   **Knowledge of Bodily Injury or Property Damage -** - Knowledge of **bodily injury** or **property damage** will be deemed to have occurred at the earliest of the following times:

   a. when a suit, claim, or demand for **damages** alleging **bodily injury** or **property damage** is received by any **designated insured**;

   b. when any **designated insured** reports the **bodily injury** or **property damage** to **us** or any other insurer; or

   c. when any **designated insured** becomes aware of anything that indicates that **bodily injury** or **property damage** may have occurred or is occurring.

GL 0950 05 00                    Copyright, American Association of Insurance Services, 2000                    Page 1 of 1

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
### GL 1280 06 06
## CONDITIONAL NUCLEAR, BIOLOGICAL, AND CHEMICAL TERRORISM EXCLUSION

### NOTICE

**The Terrorism Risk Insurance Program (the Program), as established under federal law, is scheduled to terminate while your policy is in effect.**

**The Terrorism Exclusion found in this endorsement will apply only if the federal government does not renew, extend, or otherwise replace the Program or if the conditions, definitions, or requirements of the Program are changed by the federal government and federal law no longer requires that we make Terrorism Coverage available to you.**

1. The Terrorism Exclusion set forth by this endorsement becomes effective on the earliest of the following:

   a. the date that the federal Terrorism Risk Insurance Program (the Program) established by the Terrorism Risk Insurance Act has terminated with respect to the type of insurance provided by the Coverage Part to which this endorsement applies; or

   b. the effective date of a renewal, extension, or replacement of the Program, if federal law no longer requires that **we** make terrorism coverage available to **you** and the Program has been renewed, extended, or replaced subject to changes that:

      1) redefine terrorism; or

      2) increase **our** financial exposure under the Program; or

      3) impose requirements on insurance coverage for terrorism that differ from the terms, amounts, or other limitations that otherwise govern coverage for injury or damage under the **terms** of the Coverage Part to which this endorsement applies.

   If a condition described above under items 1.a. and 1.b. occurs prior to the effective date of the policy period to which this endorsement applies, the Terrorism Exclusion set forth by this endorsement applies as of the effective date of that policy period.

2. If the Terrorism Exclusion set forth by this endorsement becomes effective, this Terrorism Exclusion:

   a. supersedes any other endorsements that address **certified acts of terrorism, certified terrorism loss, non-certified acts of terrorism, and or non-certified terrorism loss** that also apply to the Coverage Part to which this endorsement applies, but only with respect to one or more incidents of terrorism which result in injury or damage that occurs on or after the effective date of this Terrorism Exclusion; and

   b. remains in effect unless **we** notify **you** of changes to this Terrorism Exclusion.

3. If none of the conditions described above under items 1.a. and 1.b. occur, any other endorsements that address **certified acts of terrorism, certified terrorism loss, non-certified acts of terrorism, and or non-certified terrorism loss** that also apply to the Coverage Part to which this endorsement applies continue to apply until **we** notify **you** of changes to such other endorsements.

4. The word terrorism, when shown in this endorsement in quotation marks, has the following meaning:

   **Terrorism** means activities against persons, organizations, or property of any nature:

   a. that involve the following or preparation for the following:

      1) use or threat of force or violence; or

      2) commission or threat of a dangerous act; or

      3) commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. when one or both of the following applies:

      1) the effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or2) it appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social, or economic objectives, or to express (or express opposition to) a philosophy or ideology.

# BADGER MUTUAL INSURANCE COMPANY

5. The following exclusion is added:

## TERRORISM EXCLUSION

**We** will not pay for injury or damage caused directly or indirectly by **terrorism**, including action in hindering or defending against an actual or expected incident of **terrorism**. Such injury or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

This exclusion applies only when one or more of the following are attributed to an incident of **terrorism**:

a. the **terrorism** is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation, or radioactive contamination; or

b. radioactive material is released, and it appears that one purpose of the **terrorism** was to release such material; or

c. the **terrorism** is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

d. pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the **terrorism** was to release such materials.

When this Terrorism Exclusion applies to an incident of **terrorism**, there is no coverage under the Coverage Part to which this endorsement applies.

6. The following provision is added.

In the event of any incident of **terrorism** that is not subject to the Terrorism Exclusion set forth by this endorsement, coverage does not apply to injury or damage that is otherwise excluded under the Coverage Part to which this endorsement applies.

# BADGER MUTUAL INSURANCE COMPANY
## GL-100 Ed. 1.0
## COMMERCIAL LIABILITY COVERAGE

The following Table of Contents shows how this Commercial Liability Coverage is organized. It will help **you** locate particular sections of this form.

## TABLE OF CONTENTS

Page

Agreement .......................................................................................................................... 1

Definitions ......................................................................................................................... 2

Principal Coverages
    Coverage L -- Bodily Injury/Property Damage ........................................... 4
    Coverage M -- Medical Payments ............................................................... 4
    Coverage N -- Products/Completed Work .................................................. 4
    Coverage O -- Fire Legal Liability .............................................................. 4

Supplemental Coverages ................................................................................................ 5

Defense Coverage ........................................................................................................... 6

Exclusions
    Exclusions That Apply To Bodily Injury and Property Damage ................. 6
    Additional Exclusions That Apply Only To Property Damage .................... 8
    Additional Exclusions That Apply Only To Medical Payments .................. 8

What Must Be Done In Case Of Loss ............................................................................. 9

How Much We Pay ........................................................................................................... 9

Conditions ...................................................................................................................... 10

Nuclear Energy Liability Exclusion ............................................................................... 11

Nuclear Energy Liability Exclusion Definitions ............................................................ 12

Common Policy Conditions -- These are shown on a separate form.

Endorsements may also apply. They are identified on the **declarations.**

Refer to the Definitions for words that have special meanings. These words are shown in "**bold type.**"

## AGREEMENT

Subject to all the **terms,** and in return for **your** payment of the required premium, **we** provide the Commercial Liability Coverage described in this policy.

Policy **terms** that relate to cancellation, changes made to the policy, examination of books and records, inspections and surveys, and assignment or transfer of rights or duties also apply.

# BADGER MUTUAL INSURANCE COMPANY

## DEFINITIONS

1. The words **you** and **your** mean the person, persons, or organization named as the insured on the **declarations**.

2. The words **we**, **us**, and **our** mean the company providing this coverage.

3. **Auto** means a land motor vehicle, a trailer, or a semi-trailer which is designed for use on public roads.

   **Auto** includes attached machinery and equipment.

4. **Basic territory** means the United States of America, its territories and possessions, Canada, and Puerto Rico.

5. **Bodily injury** means bodily harm, sickness or disease sustained by a person and includes required care and loss of services. **Bodily injury** includes death that results from bodily harm, sickness, or disease. **Bodily injury** does not include mental or emotional injury, suffering, or distress that does not result from a physical injury.

6. **Coverage territory** means:

   a. the **basic territory**;

   b. international waters and airspace, only if the **bodily injury** or **property damage** occurs in the course of travel to or from the **basic territory**;

   c. the world, if the injury or damage arises out of:

      1) products **you** have made or sold in the **basic territory**; or

      2) the activities of a person who normally resides in the **basic territory**, but is away for a short time on **your** business; and

      provided that **your** liability to pay **damages** has been determined in a suit on the merits in the **basic territory**, or in a settlement that **we** have agreed to.

7. **Damages** means compensation in the form of money for a person who claims to have suffered an injury.

8. **Declarations** means all pages labeled "Declarations," "Supplemental Declarations," or "Schedules," which pertain to this policy.

9. **Employee** includes a **leased worker**. **Employee** does not include a **temporary worker**.

10. **Impaired property** means tangible property (other than **products** or **your work**):

    a. whose value has been decreased:

       1) because it includes **products** or **your work** that is, or is believed to be, deficient or dangerous; or

       2) because **you** failed to carry out the terms of a contract; and

    b. whose value can be restored:

       1) by the repair, replacement, adjustment, or removal of **products** or **your work**; or

       2) by **your** fulfilling the terms of the contract.

11. **Insured** means:

    a. **you** and **your** spouse, but only with respect to the conduct of a business of which **you** are the sole owner, if shown on the **declarations** as an individual;

    b. **you** and all **your** partners or members and their spouses, but only with respect to the conduct of **your** business, if shown on the **declarations** as a partnership or a joint venture; or

    c. **you** and all of **your** executive officers and directors, but only while acting within the scope of their duties, if shown on the **declarations** as an organization (other than a partnership or a joint venture). It also includes **your** stockholders, but only for their liability as such.

    **Insured** also includes:

    a. any person or organization, except **your** employees, while acting as **your** real estate manager;

    b. if **you** die during the policy period, **your** legal representative while acting within the scope of those duties as such, or a person who has custody of **your** property with respect to liability arising out of the maintenance or use of that property until **your** legal representative is appointed. **Your** legal representative has all **your** rights and duties under this coverage;

    c. with respect to the operation, with **your** permission, of mobile equipment:

       1) **your employee** in the course of employment. This does not apply to a fellow **employee** injured in the course of employment;

       2) any other person; including another person or an organization legally liable for the conduct of such person, but only:

          a) for liability arising out of the operation of the equipment; and

          b) if there is no other insurance covering the liability available to them;

# BADGER MUTUAL INSURANCE COMPANY

3) no person or organization is an **insured** for **property damage** to property owned by, rented to, in the charge of, or occupied by **you**, or an employer of any person who is an **insured** under paragraph c.

d. **your employees**, for acts within the scope of their employment by **you** (this does not include **your** executive officers). None of these **employees** are **insureds** for:

1) **bodily injury** to **you** or to a fellow **employee**; or

2) **property damage** to property owned by, rented to, or loaned to **employees**, or any of **your** partners or members and their spouses (if **you** are a joint venture or a partnership).

e. any organization (other than a joint venture or a partnership) newly acquired or formed by **you**, and in which **you** have a majority interest.

Such an organization is not an **insured**:

1) if there is other similar insurance available to it;

2) after 90 days immediately following that acquisition or formation or the end of the policy period, whichever is earlier; or

3) for **bodily injury** or **property damage** that occurred prior to the acquisition or formation.

No person or organization is an **insured** with respect to the conduct of a current or past partnership or joint venture that is not named on the **declarations** as an **insured**.

12. **Leased worker** means a person whom **you** lease from a labor leasing firm under a contract or agreement to perform duties related to the conduct of **your** business. **Leased worker** does not include a **temporary worker**.

13. **Limit** means the amount of coverage that applies.

14. **Loading or unloading** means the movement of property:

a. starting with after it is removed from the point where it has been accepted for transit by **auto**, aircraft, or watercraft;

b. continuing while it is in or on such vehicle; and

c. ending when it has been removed from the vehicle at its point of destination.

**Loading or unloading** includes movement by:

a. a hand truck; or

b. any mechanical device only when attached to the vehicle.

15. **Occurrence** means an accident and includes repeated exposure to similar conditions.

16. **Products/completed work hazard** -

a. **Products hazard** means **bodily injury** or **property damage** occurring away from premises **you** own or rent and arising out of **products** after physical possession of the **products** has been relinquished to others.

b. **Completed work hazard** means **bodily injury** or **property damage** occurring away from premises **you** own or rent and arising out of **your work**. It does not include work that has not been completed, or that has not been abandoned.

**Your work** is deemed completed at the earliest of the following times:

1) when all work specified in **your** contract has been done;

2) when all **your work** to be done at a job site has been completed if **your** contract includes work at more than one site; or

3) when **your work** at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same job site.

Work which requires further service, maintenance, correction, repair, or replacement because of defect or deficiency, but which is otherwise complete, shall be deemed completed.

c. Neither of these hazards include **bodily injury** or **property damage** arising out of:

1) the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle, created by **loading or unloading**;

2) the presence of tools, uninstalled equipment, or abandoned or unused materials; or

3) products or work for which the classification on the **declarations** specifies "including Products/Completed Work."

17. **Products** means goods or products manufactured, sold, handled, distributed, or disposed of by **you**, others trading under **your** name, or a person or organization whose business or assets **you** have acquired.

# BADGER MUTUAL INSURANCE COMPANY

Products includes:

a. warranties or representations made at any time with respect to the fitness, quality, durability, or performance of **products**;

b. containers (other than vehicles), materials, parts, or equipment furnished in connection with such **products**; and

c. providing or failing to provide warnings or instructions.

Products does not include:

a. vending machines or other property that is rented to or placed for the use of others, but not sold; or

b. real property.

18. **Property damage** means:

a. physical injury or destruction of tangible property; or

b. the loss of use of tangible property whether or not it is physically damaged. Loss of use is deemed to occur at the time of the **occurrence** that caused it.

19. **Temporary worker** means a person who is furnished to **you** as a temporary substitute for an **employee**.

20. **Terms** are all provisions, limitations, exclusions, conditions, and definitions that apply to the Commercial Liability Coverage.

21. **Your work** means:

a. work or operations performed by **you** or on **your** behalf;

b. materials, parts, and equipment supplied for such work or operations;

c. written warranties or representations made at any time regarding quality, fitness, durability, or performance of any of the foregoing; and

d. providing or failing to provide warnings or instructions.

## PRINCIPAL COVERAGES

**We** provide insurance for the following coverages indicated by a specific **limit** or premium charge on the **declarations**.

### COVERAGE L – BODILY INJURY LIABILITY PROPERTY DAMAGE LIABILITY

**We** pay all sums which an **insured** becomes legally obligated to pay as **damages** due to **bodily injury** or **property damage** to which this insurance applies. The **bodily injury** or **property damage** must be caused by an **occurrence** which takes place in the **coverage**

territory, and the **bodily injury** or **property damage** must occur during the policy period.

### COVERAGE M – MEDICAL PAYMENTS

1. **We** pay the medical expenses defined below for **bodily injury** caused by an accident:

a. on premises **you** own or rent;

b. on ways adjacent or next to premises **you** own or rent; or

c. arising out of **your** operations.

2. **We** pay such expenses regardless of fault but only if:

a. they arise out of an accident that occurred in the **coverage territory** and during the policy period; and

b. they are incurred and reported within one year of the accident.

3. Medical expenses means the reasonable and necessary expenses for:

a. medical, surgical, x-ray, and dental services, including prosthetic devices and eye glasses;

b. ambulance, hospital, professional nursing, and funeral services; and

c. first aid at the time of an accident.

### COVERAGE N – PRODUCTS/COMPLETED WORK

**We** pay all sums which an **insured** becomes legally obligated to pay as **damages** due to **bodily injury** or **property damage** arising out of the **products/completed work hazard** to which this insurance applies. The **bodily injury** or **property damage** must be caused by an **occurrence** which takes place in the **coverage territory**, and the **bodily injury** or **property damage** must occur during the policy period.

### COVERAGE O – FIRE LEGAL LIABILITY

**We** pay for **property damage** to buildings, or parts thereof, which **you** rent from another, or which are loaned to **you**, if the **property damage** is caused by fire for which **you** are legally liable. Buildings include fixtures permanently attached thereto.

All of the exclusions otherwise applicable to **property damage** do not apply to this coverage. However, **we** do not cover:

1. liability arising under any contract or agreement to indemnify any person or organization for damage by fire to the premises; or

2. liability arising out of **property damage**:

a. which is expected by, directed by, or intended by the **insured**; or

# BADGER MUTUAL INSURANCE COMPANY

b. that is the result of intentional and malicious acts of the **insured**.

## SUPPLEMENTAL COVERAGES

Subject to all the **terms** of the Principal Coverages, **we** provide the following supplemental coverages. They do not increase the **limits** stated for the Principal Coverages.

### INCIDENTAL CONTRACTUAL LIABILITY

1. **We** cover **bodily injury** or **property damage** liability which is assumed under the following contracts or agreements:

   a. lease of premises;

   b. easement or license agreement (this does not include an agreement in connection with any construction or demolition operation within 50 feet of a railroad);

   c. promise to indemnify a municipality if required by an ordinance (this does not apply in connection with work done for the municipality);

   d. sidetrack agreement; or

   e. elevator maintenance agreement.

2. This coverage does not apply to that part of any contract or agreement that indemnifies any person or organization for damage by fire to premises rented or loaned to **you**.

### INCIDENTAL MEDICAL MALPRACTICE INJURY

1. **We** cover **bodily injury** arising out of the rendering or failure to render the following services:

   a. medical, surgical, dental, x-ray, or nursing services or treatment, or the furnishing of food or beverages in connection therewith; or

   b. the furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances.

2. This coverage does not apply to:

   a. expenses incurred by an **insured** for first aid to others at the time of an accident;

   b. an **insured** or an **employee** engaged in the business or occupation of providing any of the services described under 1.a. and 1.b. above; or

   c. injury caused by an indemnitee if such indemnitee is engaged in the business or occupation of providing any of the services described in 1.a. and 1.b. above.

### MOBILE EQUIPMENT

**We** pay all sums for which an **insured** is legally liable for **bodily injury** or **property damage** resulting from mobile equipment, including attached equipment and machinery.

1. This coverage applies only to land motor vehicles that meet one or more of the following criteria:

   a. Those which are used only on premises owned by or rented to **you** (premises includes adjoining ways).

   b. Those which are designed primarily for use off public roads.

   c. Those which travel on crawler treads.

   d. Those which are self-propelled and designed or used only to afford mobility to the following types of equipment, which must be a part of or be permanently attached to such vehicle:

      1) power cranes, shovels, loaders, diggers, or drills;

      2) concrete mixers (this does not include the mix-in-transit type); and

      3) graders, scrapers, rollers, and other road construction or repair equipment.

   e. Those which are not self-propelled, but are used primarily to afford mobility to the following types of equipment permanently attached thereto:

      1) air compressors, pumps, and generators (this includes spraying, welding, and building cleaning equipment);

      2) geophysical exploration, lighting, and well servicing equipment; and

      3) cherry pickers and similar devices used to raise or lower workers.

2. This coverage does not apply to self-propelled vehicles with the following types of permanently attached equipment:

   a. equipment designed primarily for snow removal, street cleaning, road maintenance other than road construction or resurfacing;

   b. cherry pickers and similar devices used to raise or lower workers;

   c. air compressors, pumps, and generators (this includes spraying, welding, and building cleaning equipment); or

   d. geophysical exploration, lighting, and well servicing equipment.

**We** cover **bodily injury** or **property damage** arising out of the operation of any of the equipment listed in paragraphs 2.b., 2.c., and 2.d. above.

**We** will provide any liability, uninsured motorists, no fault, or other coverages required by any motor vehicle insurance law. **We** will provide the required **limits** for such required coverage.

# BADGER MUTUAL INSURANCE COMPANY

## DEFENSE COVERAGE

Payments under this coverage are in addition to the limits for the Commercial Liability Coverage.

1. We have the right and duty to defend a suit seeking **damages** which may be covered under the Commercial Liability Coverage. **We** may make investigations and settle claims or suits **we** decide are appropriate.

   Suit includes any alternative dispute resolution proceeding involving **bodily injury** or **property damage** to which:

   a. **you** must submit; or

   b. **you** submit with **our** consent.

2. We do not have to provide defense after **we** have paid an amount equal to the **limit** as the result of:

   a. a judgment; or

   b. a written settlement agreed to by **us.**

3. If we defend a suit, we will pay:

   a. The costs taxed to the **insured.**

   b. The expenses incurred by **us.**

   c. The actual loss of earnings by an **insured** for the time spent away from work at **our** request. We pay up to $100 per day.

   d. The necessary expenses incurred by an **insured** at **our** request.

   e. Pre-judgment interest awarded against any **insured** on that part of the judgment **we** pay. If **we** offer to pay the **limit**, we will not pay any pre-judgment interest based on that period of time after the offer.

   f. The interest which accrues beginning with entry of a judgment and ending when **we** tender, deposit in court, or pay up to **our limit.**

   g. The cost of appeal bonds or bonds for the release of attachments up to **our limit. We** are not required to apply for or furnish such bonds.

   h. The cost, up to $500, for bail bonds required of an **insured** because of an accident or traffic violation arising out of the use of a vehicle to which Coverage L applies. We are not required to apply for or furnish such bonds.

## EXCLUSIONS

We do not pay for a loss if one or more of the following excluded events apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded event.

## EXCLUSIONS THAT APPLY TO BODILY INJURY AND PROPERTY DAMAGE

1. We do not pay for **bodily injury** or **property damage:**

   a. which is expected by, directed by, or intended by the **insured;** or

   b. that is the result of intentional and malicious acts of the **insured.**

   This exclusion does not apply to **bodily injury** that arises out of the use of reasonable force to protect people or property.

2. We do not pay for **bodily injury** or **property damage** liability which is assumed by the **insured** under a contract or an agreement.

   This exclusion does not apply to:

   a. liability that an **insured** would have had in the absence of the contract or agreement; or

   b. **bodily injury** or **property damage** covered under Incidental Contractual Liability Coverage, provided that the **bodily injury** or **property damage** occurs after the effective date of the contract or agreement.

3. We do not pay for **bodily injury** or **property damage** that arises out of the rendering or the failure to render a professional service, except as covered under Incidental Medical Malpractice Injury Coverage.

4. We do not pay for **bodily injury** or **property damage** that arises out of the use of mobile equipment in, or in the practice or preparation for, racing, speed, pulling or pushing, demolition or stunt activities or contests.

5. We do not pay for **bodily injury** or **property damage** that arises out of transporting mobile equipment by an **auto** owned by, operated by, rented to, or loaned to any **insured.**

6. We do not pay for **bodily injury** or **property damage** that arises out of the ownership, operation, occupancy, renting, loaning, supervision, maintenance, use, entrusting, **loading or unloading** of an **auto**, aircraft, watercraft, or mobile equipment owned by, operated by, rented to, or loaned to any **insured.**

   This exclusion does not apply to:

   a. **bodily injury** or **property damage** that arises out of **autos** or mobile equipment covered under Mobile Equipment Coverage;

 Copyright MCMXCIV, American Association of Insurance Services

# BADGER MUTUAL INSURANCE COMPANY

b. the parking of an **auto** on premises owned by, rented to, or controlled by **you** or on the ways immediately adjoining if the **auto** is not owned by or rented to or loaned to **you** or the **insured**;

c. liability assumed under a contract covered under Incidental Contractual Liability Coverage for the ownership, maintenance, or use of an aircraft or a watercraft;

d. watercraft, if it is on shore on premises owned by, rented to, or controlled by **you**; or

e. watercraft, if it is not owned by **you** and is:

1) less than 26 feet in length; and

2) not being used to carry persons or property for a charge.

7. **We** do not pay for **bodily injury** or **property damage** for which any **insured** may be held liable by reason of:

a. causing or contributing to the intoxication of a person;

b. the furnishing of alcoholic beverages to a person under the influence of alcohol or under the legal drinking age; or

c. a law or regulation relating to the sale, gift, distribution, or use of alcoholic beverages.

This exclusion applies if **you** are in the business of manufacturing, distributing, selling, or serving alcoholic beverages.

8. **We** do not pay for:

a. **bodily injury** to an **employee** of the **insured** if it occurs in the course of employment by the **insured**; or

b. consequential injury to a spouse, child, parent, brother, or sister of such injured **employee**.

This exclusion applies where the **insured** is liable either as an employer or in any other capacity; or there is an obligation to fully or partially reimburse a third person for **damages** arising out of paragraph 8.a. or 8.b. above.

This exclusion does not apply to liability assumed by the **insured** under a contract covered under Incidental Contractual Liability Coverage.

9. **We** do not pay for:

a. **bodily injury** or **property damage** arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants:

1) at or from any premises, site, or location which is, or was at any time, owned by, occupied by, rented to, or loaned to any insured, unless the **bodily injury** or **property damage** arises from the heat, smoke, or fumes of a fire which becomes uncontrollable or breaks out from where it was intended to be located;

2) at or from any premises, site, or location which is or was at any time used by or for any **insured** or others, for the handling, storage, disposal, processing, or treatment of waste;

3) which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **insured** or any person or organization for whom any **insured** may be legally responsible; or

4) at or from any premises, site, or location where any **insured** or any contractor or subcontractor, directly or indirectly under **your** control, is working:

a) if the pollutants are brought on or to the premises, site, or location in connection with such work by such **insured**, unless the **bodily injury** or **property damage** arises from the heat, smoke, or fumes of a fire which becomes uncontrollable or breaks out from where it was intended to be located; or

b) if the work is to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of pollutants.

b. any loss, cost or expense arising out of any:

1) request, demand, or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of pollutants; or

2) claim or suit by or on behalf of any governmental authority relating to testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of pollutants.

Pollutants means:

a. any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be disposed of as well as recycled, reclaimed, or reconditioned.

b. electrical or magnetic emissions, whether visible or invisible, and sound emissions.

FILED DATE: 4/23/2026 11:10 AM 2026CH03888

# BADGER MUTUAL INSURANCE COMPANY

10. We do not pay for **bodily injury** if benefits are provided or are required to be provided by the **insured** under a workers' compensation, disability benefits, occupational disease, unemployment compensation, or like law.

11. We do not pay for **bodily injury** or **property damage** that arises out of war. War includes undeclared war, civil war, insurrection, rebellion or revolution, or an act or a condition of war.

12. We do not pay for **bodily injury** that arises out of any:

    a. refusal to employ;

    b. termination of employment;

    c. coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, sexual misconduct, or other employment-related practices, policies, acts, or omissions; or

    d. consequential **bodily injury** as a result of 12.a., 12.b. and 12.c. above.

    This exclusion applies where the **insured** is liable either as an employer or in any other capacity; or there is an obligation to fully or partially reimburse a third person for **damages** arising out of paragraph 12.a., 12.b., 12.c., or 12.d. above.

13. We do not pay for **bodily injury** or **property damage** included within the **products/completed work hazard** except as covered under Coverage N.

## ADDITIONAL EXCLUSIONS THAT APPLY ONLY TO PROPERTY DAMAGE

1. We do not pay for **property damage** to property owned by, occupied by, or rented to **you**, except as covered under Coverage O.

2. We do not pay for **property damage** to premises **you** sell, give away, or abandon, if the **property damage** arises out of any part of those premises. This exclusion does not apply if the premises are **your work** and were not occupied, rented, or held for rental by **you.**

3. We do not pay for **property damage** to property used by or loaned to **you**. This exclusion does not apply with respect to liability assumed under a sidetrack agreement.

4. We do not pay for **property damage** to either business or non-business personal property in the care, custody, or control of the **insured**. This exclusion does not apply with respect to liability assumed under a sidetrack agreement.

5. We do not pay for **property damage** to that specific part of real property on which work is being performed by:

    a. **you**; or

    b. a contractor or subcontractor working directly or indirectly on **your** behalf,

    if the **property damage** arises out of such work. This exclusion does not apply with respect to liability assumed under a sidetrack agreement.

6. We do not pay for **property damage** to that specific part of any property that must be restored, repaired, or replaced because of faults in **your work**. This exclusion does not apply to:

    a. **property damage** covered under the **products/completed work hazard**; or

    b. liability assumed under a sidetrack agreement.

7. We do not pay for **property damage** to **products** if the damage arises out of the **products** or their parts.

8. We do not pay for **property damage** to **your work** if the **property damage** arises out of **your work** and is included in the **products/completed work hazard**. This exclusion does not apply if damage to the work or the part of the work out of which the damage arises is performed by a subcontractor on **your** behalf.

9. We do not pay for **property damage** to property that has not been physically injured or destroyed, or to **impaired property**, that arises out of:

    a. a delay or failure to perform a contract by **you** or one acting on **your** behalf; or

    b. a defect, deficiency, inadequacy, or unsafe condition in **your work** or **products**.

    This exclusion does not apply to the loss of use of other property resulting from sudden and accidental physical injury to or destruction of **your work** or **products** after having been put to its intended use.

10. We do not pay for any loss or expense incurred by **you** or anyone else arising out of the loss of use, disposal, withdrawal, recall, inspection, repair, replacement, adjustment, or removal of (including any expenses involved in the withdrawal or recall) of **your work**, **products**, or **impaired property**. This applies when the loss of use, disposal, withdrawal, recall, inspection, repair, replacement, adjustment, or removal was because of a known or suspected defect, deficiency, or unsafe condition.

## ADDITIONAL EXCLUSIONS THAT APPLY ONLY TO MEDICAL PAYMENTS

These exclusions apply in addition to the other exclusions that apply to **bodily injury**.

# BADGER MUTUAL INSURANCE COMPANY

1. We do not pay for medical expenses for **bodily injury** to an **insured.**

2. We do not pay for medical expenses for **bodily injury** to a person hired by or on behalf of any **insured** to do work for:

   a. an **Insured**; or

   b. a tenant of an **Insured.**

3. We do not pay for medical expenses for **bodily injury** to a person injured on that part of the premises owned by or rented to **you** that the person normally occupies.

4. We do not pay for medical expenses for **bodily injury** to a person injured while taking part in athletic activities.

5. We do not pay for medical expenses for **bodily Injury** included in the **products/completed work hazard.**

6. We do not pay for medical expenses for **bodily Injury** to **your** members if **you** are a club.

7. We do not pay for medical expenses for **bodily injury** to a guest of a hotel, motel, or tourist court owned or operated by **you** or on **your** behalf.

8. We do not pay for medical expenses for **bodily injury** to a person if benefits are provided or required to be provided under any workers' compensation, nonoccupational disability, occupational disease or like law.

9. We do not pay for medical expenses for **bodily injury** to a:

   a. student or camper enrolled in a program of any facility owned or operated by **you** or on **your** behalf; or

   b. patient or inmate being treated or detained in a facility owned or operated by **you** or on **your** behalf.

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Notice -**

   a. In the case of an **occurrence**, or if an **insured** becomes aware of anything that indicates that there might be a claim under the Commercial Liability Coverage, **you** must arrange for prompt notice to be given to **us** or **our** agent. Notice to **our** agent is notice to **us.**

   b. The notice to **us** must state:

      1) the **insured's** name;

      2) the policy number;

      3) the time, the place, and the circumstances of the **occurrence**, or the situation that indicates that there might be a claim; and

      4) the names and addresses of all known potential claimants and witnesses.

2. **Cooperation --** All **insureds** involved with an **occurrence** or an offense must cooperate with **us** in performing all acts required by the Commercial Liability Coverage.

3. **Volunteer Payments --** An **Insured** must not make payments or assume obligations or other costs except at the **Insured's** own cost. This does not apply to first aid to others at the time of **bodily Injury.**

4. **Other Duties -**

   a. If a claim is made or suit is brought, the **insured** must:

      1) promptly send to **us** copies of all legal papers, demands, and notices; and

      2) at **our** request, assist in:

         a) a settlement;

         b) the conduct of suits. This includes the attendance at trials or hearings;

         c) the enforcing of rights against all parties who may be liable to an **insured** for the injury or damage;

         d) the securing of and giving of evidence; and

         e) obtaining the attendance of all witnesses.

   b. In the case of a medical payments loss:

      1) the injured person (or one acting on such person's behalf) must:

         a) give **us** written proof of claim (under oath if requested) as soon as practicable; and

         b) give **us** permission to get copies of the medical records;

      2) the injured person must submit to medical exams by doctors chosen by **us** when and as often as **we** may reasonably require.

## HOW MUCH WE PAY

1. The **limits**, shown on the **declarations** and subject to the following conditions, are the most **we** pay regardless of the number of:

   a. **insureds** under the Commercial Liability Coverage;

# BADGER MUTUAL INSURANCE COMPANY

b. persons or organizations who sustain injury or damage; or

c. claims made or suits brought.

The payment of a claim under Coverage M does not mean that **we** admit **we** are liable under other coverages.

2. The General Aggregate Limit is the most **we** will pay during a policy period for the sum of:

a. all **damages** under Coverage L, except **damages** due to **bodily injury** or **property damage** included under Coverage N.

b. all medical expenses under Coverage M; and

c. all **damages** under Coverage O.

3. The Products/Completed Work Hazard Aggregate **Limit** is the most **we** will pay during a policy period for **damages** due to **bodily injury** or **property damage** included under Coverage N.

4. The Each Occurrence Limit, subject to the General Aggregate **Limit** and the Products/Completed Work Hazard Aggregate Limit, is the most **we** will pay for the total of:

a. **damages** under Coverages L, N, and O; and

b. medical expenses under Coverage M.

due to all **bodily injury** and **property damage** arising out of a single **occurrence.**

5. Subject to the Each Occurrence Limit and the General Aggregate Limit, **our** limit for **property damage** covered under Coverage O is $50,000 for each **occurrence** unless otherwise shown on the **declarations.**

6. Subject to the General Aggregate Limit and the Each Occurrence Limit, the Coverage M Limit is the most that **we** will pay under Coverage M for all medical expenses because of **bodily injury** sustained by any one person.

7. The General Aggregate Limit and the Products/ Completed Work Hazard Aggregate Limit apply separately to each consecutive 12-month period beginning with the inception date of the Commercial Liability Coverage shown on the **declarations.** They also apply separately to any remaining policy period of less than 12 months, unless the Commercial Liability Coverage has been extended after it was written. In that case, the additional period will be considered part of the last preceding period for the purpose of determining **limits.**

## CONDITIONS

1. **Bankruptcy** — Bankruptcy or insolvency of an **insured** does not relieve **us** of **our** obligations under Commercial Liability Coverage.

2. **Insurance Under More Than One Policy** -- (Applies to all coverages except Coverage M -- Medical Payments.)

a. Insurance under this Commercial Liability Coverage is primary except as provided under paragraph 2.c. below, or unless otherwise stated. The amount of **our** liability is not reduced because of other insurance which applies to the loss on other than a primary basis.

b. If the other insurance is also primary, **we** will share in the loss as follows:

1) If the other insurance provides for contribution by equal shares, **we** will pay equal amounts with other insurers until:

a) the lowest applicable **limit** under any one policy is reached; or

b) the full amount of the loss is paid.

If part of the loss remains unpaid, **we** will pay an equal share with the other insurers until the full amount of the loss is paid, or until **we** have paid **our limit** in full.

2) If the other insurance does not provide for contribution by equal shares, **we** will pay, up to **our limit,** no more than that proportion of the loss to which the applicable **limit** under this policy for such loss bears to the total applicable **limit** for all insurance against the loss.

c. Insurance under this Commercial Liability Coverage is excess over any other insurance:

1) if the other insurance, whether primary, excess, contingent, or on any other basis, provides:

a) fire, extended coverage, builders' risk, installation risk, or similar coverage for **your work;** or

b) fire insurance for premises rented to **you;** or

2) if the other insurance applies to any loss arising out of the maintenance or use of aircraft, **autos,** or watercraft which may be covered by this policy.

d. When this insurance is excess over any other insurance:

# BADGER MUTUAL INSURANCE COMPANY

1) we will have no duty to defend any claim or suit that any other insurer has a duty to defend. If no other insurer defends, **we** will do so. However, **we** will be entitled to the **insured's** rights against all those other insurers.

2) we will pay **our** share of the amount of loss, if any, that exceeds the sum of:

a) the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

b) the total of all deductibles and self-insured amounts required by such other insurance.

**We** will share the remaining loss with any other insurance that is not described in this excess insurance provision and was not bought specifically to apply in excess of the **limits** shown on the **declarations** of this Commercial Liability Coverage.

3. **Misrepresentation, Concealment or Fraud** -- This coverage is void as to **you** and any other **insured** if before or after a loss:

a. **you** have or any **insured** has willfully concealed or misrepresented:

1) a material fact or circumstance that relates to this insurance or the subject thereof; or

2) the **insured's** interest herein;

b. there has been fraud or false swearing by **you** or any other **insured** with regard to a matter that relates to this insurance or the subject thereof.

4. **Motor Vehicle Financial Responsibility Certification** -- When Commercial Liability Coverage is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided for **bodily injury** liability or **property damage** liability will comply with the provisions of the law to the extent of the coverage and **limits** of insurance required by that law.

5. **Premium** -- If the premium is shown on the **declarations** as a deposit premium, **we** will compute the final earned premium at the end of each audit period shown on the **declarations**. If it is more than the deposit premium paid by **you**, **we** will bill **you** for the difference. If the final earned premium is less than the deposit premium paid by **you**, **we** will return the difference to **you**. **You** must maintain records of the information that is necessary for computing the premium. Copies of the records must be sent to **us** at the end of the audit period or when requested by **us**.

6. **Separate Insureds** -- Coverage provided under the Commercial Liability Coverage applies separately to each **insured** against whom claim is made or suit is brought. This does not affect the **limits** stated under How Much We Pay.

7. **Subrogation** -- If **we** pay under the Commercial Liability Coverage, **we** may require from an **Insured** an assignment of any right of recovery. **We** are not liable under the Commercial Liability Coverage if any **insured** has impaired **our** right to recover. An **Insured** may waive the right to recover, in writing, before an **occurrence** takes place.

8. **Suit Against Us** -- No suit may be brought against **us** unless:

a. all the **terms** of the Commercial Liability Coverage have been complied with; and

b. the amount of the **insured's** liability has been determined by:

1) a final judgment against an **insured** as a result of a trial; or

2) a written agreement by the **insured**, the claimant, and **us**.

No person has a right under the Commercial Liability Coverage to join **us** or implead **us** in actions that are brought to determine an **Insured's** liability.

## NUCLEAR ENERGY LIABILITY EXCLUSION

This insurance does not apply:

1. under any liability coverage, to **bodily injury** or **property damage**:

a. with respect to which an **Insured** under the policy is also an **insured** under a Nuclear Energy Liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an **Insured** under any such policy but for its termination upon exhaustion of its **limit** of liability; or

b. resulting from the **hazardous properties of nuclear material** and with respect to which:

1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereto; or

## BADGER MUTUAL INSURANCE COMPANY

2) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

2. under any Medical Payments coverage, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

3. under any liability coverage, to **bodily injury** or **property damage** resulting from the **hazardous properties** of **nuclear material**, if:

   a. the **nuclear material**:

      1) is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured**; or

      2) has been discharged or dispersed therefrom;

   b. the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, stored, processed, transported, or disposed of by or on behalf of an **insured**; or

   c. the **bodily injury** or **property damage** arises out of the furnishing by an **insured** of services, materials, parts, or equipment in connection with the planning, construction, maintenance, operation, or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (c.) applies only to **property damage** to such **nuclear facility** and any property thereat.

### DEFINITIONS

The following definitions apply to the Nuclear Energy Liability Exclusion:

1. **Hazardous Properties** — These include radioactive, toxic, or explosive properties.

2. **Nuclear Material** — This means **source material**, **special nuclear material**, or **by-product material**.

3. **Source Material, Special Nuclear Material, By-product Material** — These have the meanings given them in the Atomic Energy Act of 1954, or in any law amendatory thereof.

4. **Spent Fuel** — This means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**.

5. **Waste** -- This means any **waste** material:

   a. containing **by-product material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content; and

   b. resulting from the operation by any person or organization of any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility**.

6. **Nuclear Facility** -- This means:

   a. any **nuclear reactor**.

   b. any equipment or device designed or used for:

      1) separating the isotopes of uranium or plutonium;

      2) processing or utilizing **spent fuel**; or

      3) handling, processing, or packaging **waste**.

   c. any equipment or device used for the processing, fabricating, or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium-233 or any combination thereof, or more than 250 grams of uranium-235.

   d. any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of **waste**;

   and includes the site on which any of the foregoing is located, all operations conducted on such sites, and all premises used for such operations.

7. **Nuclear Reactor** -- This means any apparatus designed or used:

   a. to sustain nuclear fission in a self-supporting chain reaction; or

   b. to contain a critical mass of fissionable material.

8. **Property Damage** — This includes all forms of radioactive contamination of property.

 Copyright MCMXCIV, American Association of Insurance Services

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
### GL-130 Ed. 1.0
## PRODUCTS/COMPLETED WORK HAZARD
### EXPANDED DEFINITION

### SCHEDULE

Description of Premises:

Description of Operations:

The Commercial Liability Coverage is amended as follows:

## DEFINITIONS

With respect to **bodily injury** or **property damage** arising out of **products** in connection with the use of any premises described on the schedule, or with the conduct of any operation described on the schedule, the first paragraph of the definition of **products/ completed work hazard** is replaced by:

**Products hazard** means **bodily injury** or **property damage** arising out of **products** after physical possession of the **products** has been relinquished to others.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
GL-202 Ed. 1.0
## EXCLUSION – ATHLETIC OR SPORTS PARTICIPANTS

### SCHEDULE

Description of Operations:  Insured's Operations or Sponsored Activities

The Commercial Liability Coverage is amended as follows:

### EXCLUSIONS

**EXCLUSIONS THAT APPLY TO BODILY INJURY, PROPERTY DAMAGE, PERSONAL INJURY, AND/OR ADVERTISING INJURY**

The following exclusion is added:

**We** do not pay for **bodily injury** (or **personal injury**, if provided by the Commercial Liability Coverage) to any person while practicing for or participating in any sports or athletic contest or exhibition that **you** sponsor with respect to any operations shown on the Schedule.

GL-202 Ed. 1.0              Copyright MCMXCIV, American Association of Insurance Services              Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
## GL-224 Ed. 1.0
## LIABILITY COVERAGE – DESIGNATED PREMISES

### SCHEDULE

Premises:

## EXCLUSIONS

**EXCLUSIONS THAT APPLY TO BODILY INJURY, PROPERTY DAMAGE, PERSONAL INJURY, AND/OR ADVERTISING INJURY**

The following exclusions are added:

**We** do not pay for **bodily injury** or **property damage** (or **personal injury** or **advertising injury**, if provided by the Commercial Liability Coverage):

1. that arises out of the ownership, maintenance, or use of the premises other than those described above; or

2. that arises out of operations that are necessary or incidental to the ownership, maintenance, or use of premises other than those described above.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
### GL-349 (Ed. 6/02)
## EXCLUSION – WET ROT, DRY ROT, BACTERIA, FUNGI, OR PROTISTS
CONTRACTING OPERATIONS

The Commercial Liability Coverage is amended as follows:

The following exclusions are added:

1. **We** do not pay for actual or alleged **bodily injury** or **property damage** (or **personal injury** or **advertising injury**, when provided by this policy) that arises out of **your work** and that results directly or indirectly from ingestion of, inhalation of, physical contact with, or exposure to:

    a. wet rot; dry rot; a bacterium; a fungus, including but not limited to mildew and mold; or a protist, including but not limited to algae and slime mold; or

    b. a chemical, matter, or a compound produced or released by wet rot, dry rot, a bacterium, a fungus, or a protist, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

2. **We** do not pay for actual or alleged **bodily injury** or **property damage** included in the **products/completed work hazard** and that results directly or indirectly from ingestion of, inhalation of, physical contact with, or exposure to:

    a. wet rot; dry rot; a bacterium; a fungus, including but not limited to mildew and mold; or a protist, including but not limited to algae and slime mold; or

    b. a chemical, matter, or a compound produced or released by wet rot, dry rot, a bacterium, a fungus, or a protist, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

3. **We** do not pay for **bodily injury** or **property damage** liability assumed by an **insured** under a contract or agreement and that results directly or indirectly from ingestion of, inhalation of, physical contact with, or exposure to:

    a. wet rot; dry rot; a bacterium; a fungus, including but not limited to mildew and mold; or a protist, including but not limited to algae and slime mold; or

    b. a chemical, matter, or a compound produced or released by wet rot, dry rot, a bacterium, a fungus, or a protist, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

4. **We** do not pay for any loss, cost, or expense arising out of any request, demand, or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of:

    a. wet rot; dry rot; a bacterium; a fungus, including but not limited to mildew and mold; or a protist, including but not limited to algae and slime mold; or

    b. a chemical, matter, or a compound produced or released by wet rot, dry rot, a bacterium, a fungus, or a protist, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

5. **We** do not pay for any loss, cost, or expense arising out of any claim or suit by or on behalf of any governmental authority relating to testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of:

    a. wet rot; dry rot; a bacterium; a fungus, including but not limited to mildew and mold; or a protist, including but not limited to algae and slime mold; or

    b. a chemical, matter, or a compound produced or released by wet rot, dry rot, a bacterium, a fungus, or a protist, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
## GL-890 Ed. 1.0
## LEAD LIABILITY EXCLUSION

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

The Commercial Liability Coverage is amended as follows:

## EXCLUSIONS THAT APPLY TO ALL COVERAGES

The following are added:

**We** do not pay for:

1. actual or alleged **bodily injury** arising out of the ingestion, inhalation or absorption of lead in any form;

2. actual or alleged **property damage** (or **personal injury** or **advertising injury**, if provided by the Commercial Liability Coverage) arising out of any form of lead;

3. any loss, cost or expense arising out of any request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of lead; or

4. any loss, cost or expense arising out of any claim or suit by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of lead.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
GL-894 Ed. 1.1
## PUNITIVE DAMAGES EXCLUSION
ILLINOIS

The Commercial Liability Coverage is amended as follows:

## EXCLUSIONS

The following exclusion is added:

**We** do not pay for punitive, exemplary, or vindictive **damages**, except if a suit is brought against the **insured** regarding a claim for acts or alleged acts falling within the Commercial Liability Coverage, seeking both compensatory and punitive or exemplary **damages**, then **we** will provide a defense without liability for such punitive or exemplary **damages**.

GL-894 Ed 1.1                    Copyright MCMXCIV, American Association of Insurance Services                    Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
## GL-914 Ed. 1.0
## LIMITED LIABILITY COMPANY

The Commercial Liability Coverage is amended as follows:

## DEFINITIONS

1. The definition of **insured** is deleted and replaced with the following:

**Insured** means:

a. **you** and **your** spouse, but only with respect to the conduct of a business of which **you** are the sole owner, if shown on the **declarations** as an individual;

b. **you** and all **your** partners or members and their spouses, but only with respect to the conduct of **your** business, if shown on the **declarations** as a partnership or a joint venture;

c. **you** and all **your** members and managers, but only while acting within the scope of their duties, if shown on the **declarations** as a limited liability company; and

d. **you** and all **your** executive officers and directors, but only while acting within the scope of their duties, if shown on the **declarations** as an organization (other than a partnership, joint venture, or limited liability company). It also includes **your** stockholders, but only for their liability as such;

**Insured** also includes:

a. any person or organization, except **your** **employees**, while acting as **your** real estate manager;

b. if **you** die during the policy period, **your** legal representative while acting within the scope of those duties as such, or a person who has custody of **your** property with respect to liability arising out of the maintenance or use of that property until **your** legal representative is appointed. **Your** legal representative has all **your** rights and duties under this coverage;

c. with respect to the operation, with **your** permission, of mobile equipment:

   1) **your employee** in the course of employment. This does not apply to a fellow **employee** injured in the course of employment;

   2) any other person, including another person or an organization legally liable for the conduct of such person, but only:

   a) for liability arising out of the operation of the equipment; and

   b) if there is no other insurance covering the liability available to them;

   3) no person or organization is an **insured** for **property damage** to property owned by, rented to, in the charge of, or occupied by **you**, or an employer of any person who is an **insured** under paragraph c.

d. **your** employees, for acts within the scope of their employment by **you** (this does not include **your** managers if **you** are a limited liability company or **your** executive officers if **you** are an organization other than a limited liability company). None of these **employees** are **insureds** for:

   1) **bodily injury, personal injury, and advertising injury** to **you** or to a fellow **employee**; or

   2) **property damage** to property owned by, rented to, or loaned to **employees**, or any of **your** partners or members and their spouses (if **you** are a partnership or joint venture), or any of **your** members (if **you** are a limited liability company); and

e. any organization (other than a joint venture, partnership, or limited liability company) newly acquired or formed by **you**, and in which **you** have a majority interest.

Such an organization is not an **insured**:

   1) if there is other similar insurance available to it;

   2) after 90 days immediately following the acquisition or formation or the end of the policy period, whichever is earlier;

   3) for **bodily injury** or **property damage** that occurred prior to the acquisition or formation; or

   4) for **personal injury** or **advertising injury** arising out of an offense committed prior to the acquisition or formation.

No person or organization is an **insured** with respect to the conduct of a current or past partnership, joint venture, or limited liability company that is not named on the **declarations** as an **insured**.

GL-914 Ed. 1.0          Copyright MCMXCIV, American Association of Insurance Services          Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
GS 0348 01 08
## EXCLUSION – WAR AND MILITARY ACTION

The policy is amended as follows:

### EXCLUSIONS

Exclusion 2. is deleted and replaced by the following:

**War And Military Action --**

We do not pay for loss or damage caused directly or indirectly by the following:

a.  war, including undeclared or civil war; or

b.  warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or

c.  insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

With respect to any action that comes within the terms of this exclusion and involves nuclear reaction or radiation or radioactive contamination, this War And Military Action Exclusion supersedes the Nuclear Hazard Exclusion.

Copyright, American Association of Insurance Services, Inc., 2008

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
GS 1660 06 06
## CONDITIONAL NUCLEAR, BIOLOGICAL, AND CHEMICAL TERRORISM EXCLUSION
(WITH LIMITED EXCEPTION)

### NOTICE

The Terrorism Risk Insurance Program (the Program), as established under federal law, is scheduled to terminate while your policy is in effect.

The Terrorism Exclusion found in this endorsement will apply only if the federal government does not renew, extend, or otherwise replace the Program or if the conditions, definitions, or requirements of the Program are changed by the federal government and federal law no longer requires that we make Terrorism Coverage available to you.

1. The Terrorism Exclusion set forth by this endorsement becomes effective on the earliest of the following:

   a. the date that the federal Terrorism Risk Insurance Program (the Program) established by the Terrorism Risk Insurance Act has terminated with respect to the type of insurance provided by the Glass Coverage Part; or

   b. the effective date of a renewal, extension, or replacement of the Program, if federal law no longer requires that we make terrorism coverage available to you and the Program has been renewed, extended, or replaced subject to changes that:

      1) redefine terrorism; or

      2) increase our financial exposure under the Program; or

      3) impose requirements on insurance coverage for terrorism that differ from the terms, amounts, or other limitations that otherwise govern coverage for loss or damage under the terms of the Glass Coverage Part.

   If a condition described above under items 1.a. and 1.b. occurs prior to the effective date of the policy period to which this endorsement applies, the Terrorism Exclusion set forth by this endorsement applies as of the effective date of that policy period.

2. If the Terrorism Exclusion set forth by this endorsement becomes effective, this Terrorism Exclusion:

   a. supersedes any other endorsements that address certified acts of terrorism, certified terrorism loss, non-certified acts of terrorism, and or non-certified terrorism loss that also apply to the Glass Coverage Part, but only with respect to loss or damage caused by one or more incidents of terrorism that occur on or after the effective date of this Terrorism Exclusion; and

   b. remains in effect unless we notify you of changes to this Terrorism Exclusion.

3. If none of the conditions described above under items 1.a. and 1.b. occur, any other endorsements that address certified acts of terrorism, certified terrorism loss, non-certified acts of terrorism, and or non-certified terrorism loss that also apply to the Glass Coverage Part continue to apply until we notify you of changes to such other endorsements.

4. The word terrorism, when shown in this endorsement in quotation marks, has the following meaning:

   Terrorism means activities against persons, organizations, or property of any nature:

   a. that involve the following or preparation for the following:

      1) use or threat of force or violence; or

      2) commission or threat of a dangerous act; or

      3) commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. when one or both of the following applies:

# BADGER MUTUAL INSURANCE COMPANY

1) the effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

2) it appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social, or economic objectives, or to express (or express opposition to) a philosophy or ideology.

5. The following exclusion is added:

## TERRORISM EXCLUSION

Subject to the Fire Exception, when applicable, **we** will not pay for loss or damage caused directly or indirectly by **terrorism**, including action in hindering or defending against an actual or expected incident of **terrorism**. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

This exclusion applies only when one or more of the following are attributed to an incident of **terrorism**:

a. the **terrorism** is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation, or radioactive contamination; or

b. radioactive material is released, and it appears that one purpose of the **terrorism** was to release such material; or

c. the **terrorism** is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

d. pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the **terrorism** was to release such materials.

**Fire Exception** -- This exception applies only when the Glass Coverage Part has been endorsed to delete the exclusion for loss caused by fire.

If **terrorism** results in fire, **we** will pay for the loss or damage caused by that fire, subject to the **limit** and all **terms** that apply to the affected property. This Fire Exception applies only to direct loss or damage by fire to covered property. Therefore, for example, this Fire Exception does not apply to insurance provided under Income, Earnings, Extra Expense, or Legal Liability coverages, endorsements, coverage parts, or policy forms.

6. When the Terrorism Exclusion set forth by this endorsement applies due to an incident of **terrorism** described above under items 5.a. or 5.b., that Terrorism Exclusion supersedes the Nuclear Hazard Exclusion in the Glass Coverage Part.

7. The following provisions are added.

a. Neither the **terms** of this endorsement nor the **terms** of any other terrorism endorsement attached to the Glass Coverage Part provide coverage for any loss or damage that would otherwise be excluded by the Glass Coverage Part under:

1) exclusions that address war, military action, or nuclear hazard; or

2) any other exclusion.

b. The absence of any other terrorism endorsement does not imply coverage for any loss or damage that would otherwise be excluded by the Glass Coverage Part under:

1) exclusions that address war, military action, or nuclear hazard; or

2) any other exclusion.

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
GS-169 Ed. 1.0
### AMENDATORY ENDORSEMENT
ILLINOIS

1. Under Other Conditions, the Misrepresentation, Concealment, or Fraud condition is deleted and replaced by:

   **Misrepresentation, Concealment, or Fraud -- We** do not provide coverage for an insured who has:

   a. willfully concealed or misrepresented:

      1) a material fact or circumstance with respect to this insurance; or

      2) an insured's interest herein.

   b. engaged in fraudulent conduct or sworn falsely with respect to this insurance or the subject thereof.

2. Under Other Conditions, the Suit Against Us condition is deleted and replaced by:

**Suit Against Us** -- No suit to recover any loss may be brought against **us** unless:

a. the **terms** of the Glass Coverage have been fully complied with; and

b. the suit is commenced within two years after the loss. However, this period is extended by the number of days between the date proof of loss is submitted and the claim is denied in whole or in part.

   If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by the law.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
## GS-200 Ed. 3.0
## GLASS COVERAGE PART

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

The following Table of Contents shows how the coverage is organized. It will help "you" to locate particular sections of the coverage.

## TABLE OF CONTENTS

|  | Page |
|---|---|
| Agreement | 1 |
| Definitions | 2 |
| Principal Coverages | 2 |
| Supplemental Coverages | 2 |
| Exclusions | 2 |
| Deductible | 3 |
| What You Must Do In Case of Loss | 3 |
| Valuation | 3 |
| How Much We Pay for Loss | 3 |
| Loss Payment | 4 |
| Other Conditions | 4 |

Endorsements may also apply. They are identified on the "declarations" page. Refer to the Definitions for words that have special meanings. These words are shown in quotation marks or bold type.

## AGREEMENT

Subject to all the "terms" that apply, and in return for "your" payment of the required premium, "we" provide the coverages described herein during the policy period.

Copyright MCMXCVIII, American Association of Insurance Services

# BADGER MUTUAL INSURANCE COMPANY

## DEFINITIONS

1. "You" and "your" mean the persons or organizations named as the insured on the "declarations".

2. "We", "us", and "our" mean the company providing this coverage.

3. "Basic territory" means the United States of America, its territories and possessions, Canada, and Puerto Rico.

4. "Declarations" means all pages labeled declarations, supplemental declarations, or schedules which pertain to this coverage.

5. "Limit" means the amount of coverage that applies.

6. "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply.

## PRINCIPAL COVERAGES

"We" cover direct physical loss of or damage to glass described on the "declarations" that is caused by:

1. breakage, rupture, or fracture that penetrates the inside and outside surfaces of the glass; or

2. sudden and accidental or malicious application of a chemical or caustic substance to the glass.

When a "limit" is shown on the "declarations" for lettering, designs, alarm tape, reflective foil, spray tint, ornamentation, or other applications to glass, "we" also cover direct physical loss of or damage to such application that occurs as a result of a covered glass loss.

## SUPPLEMENTAL COVERAGES

The following Supplemental Coverages are subject to all of the "terms" of the Glass Coverage, including the Deductible provision:

1. Coverage for damaged glass includes:

   a. replacing or repairing the frames which hold the glass if the frames have been damaged by the loss or the process of repairing the damage;

   b. boarding up openings or installing temporary glass if there is a delay that cannot be avoided in replacing the damaged glass;

   c. removing the debris of the damaged glass; and

   d. removing or replacing obstructions that prohibit the replacement of damaged glass. This does not include removing, replacing, or setting up window displays.

Unless otherwise stated, these coverages apply in addition to any applicable "limit" shown on the "declarations".

2. **Newly Acquired Glass** -- The coverage provided for glass described on the "declarations" is extended to apply to new or additional glass of the same type described on the "declarations" at:

   a. any location shown on the "declarations"; or

   b. any location that "you" acquire within the "basic territory".

Direct physical loss of or damage to lettering, designs, alarm tape, reflective foil, spray tint, ornamentation, or other applications to new or additional glass that occurs as a result of a covered glass loss is also covered if a similar type of application is described on the "declarations".

This coverage applies for 30 days after "you" acquire the glass or until "you" report the newly acquired glass to "us", whichever occurs first. This coverage does not extend beyond the expiration of the policy period.

"You" must pay any additional premium due for all newly acquired glass from the date that "you" acquire it.

## EXCLUSIONS

"We" do not pay for a loss if one or more of the following excluded events apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded event:

1. **Fire** -- "We" do not pay for loss caused by fire.

2. **War** -- "We" do not pay for loss caused by war. This means declared war, undeclared war, civil war, insurrection, rebellion, or revolution; a warlike act by a military force or by military personnel; the destruction, seizure, or use of the property for a military purpose; or the discharge of a nuclear weapon, even if it is accidental.

3. **Nuclear Hazard** -- "We" do not pay for loss caused by a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by, contributed to, or aggravated by a covered peril; and whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. Direct physical loss by fire resulting from the nuclear hazard is not covered.

# BADGER MUTUAL INSURANCE COMPANY

## DEDUCTIBLE

"We" pay only that part of "your" covered loss that exceeds the glass deductible shown on the "declarations", subject to any "limit" that may apply.

1. **Annual Retention** -- If an Annual Retention glass deductible is shown on the "declarations", "you" pay for each covered loss until "your" total payment equals the Annual Retention. The Annual Retention is equal to the annual glass premium charged for this coverage. "We" pay all remaining covered losses through the end of the annual policy period. Each loss "we" pay is subject to the applicable "limit", if any.

2. **Percentage of Loss Deductible** -- If a Percentage of Loss glass deductible is shown on the "declarations", "you" pay the deductible percentage shown on the "declarations" for each covered loss and "we" pay the remainder. If a covered loss is subject to a "limit", "we" pay only the part of the "limit" that exceeds the deductible percentage.

3. **Stated Amount Deductible** -- If a Stated Amount glass deductible is shown on the "declarations", "you" pay the deductible amount shown on the "declarations" for each covered loss and "we" pay the remainder, subject to the applicable "limit", if any.

## WHAT YOU MUST DO IN CASE OF LOSS

1. **Notice** -- In case of a loss, "you" must:
   a. give notice to the police when the act that causes the loss may be a crime;
   b. give "us" or "our" agent prompt notice;
   c. give "us" sole and complete charge of the repair or replacement of damaged glass unless "we" agree otherwise; and
   d. provide "us" with a description of the property involved as soon as possible.

   "We" may request that the notice be in writing.

2. **Proof of Loss** -- "You" must send "us", within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:
   a. the time, place, and circumstances of the loss;
   b. other policies of insurance that may cover the loss;
   c. "your" interest and the interests of all others in the property involved, including all mortgages and liens;
   d. changes in title or occupancy of the covered property during the policy period;

   e. detailed estimates for repair or replacement of covered property; and
   f. available plans and specifications of buildings or structures.

3. **Examination Under Oath** -- "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of the others.

4. **Records** -- "You" must produce records, including tax returns and bank microfilms of all canceled checks relating to value, loss, and expense and permit copies and extracts to be made of them as often as "we" reasonably request.

5. **Damaged Property** -- "You" must exhibit the damaged and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

6. **Volunteer Payments** -- "You" must not, except at "your" own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage, unless "you" and "we" have agreed otherwise.

7. **Abandonment** -- "We" do not have to accept any abandoned property.

8. **Cooperation** -- "You" must cooperate in performing all acts required by the Glass Coverage.

## VALUATION

The value of covered property will be based on its actual cash value at the time of loss.

However, if the enforcement of an ordinance, law, or decree requires the use of safety glazing material, the value of covered property will not be less than the minimum cost of replacement with the required material. The governing ordinance, law, or decree must be in force at the time of loss.

## HOW MUCH WE PAY FOR LOSS

1. **Insurable Interest** -- "We" do not cover more than "your" insurable interest in any property.

2. **Limit** -- The most "we" pay for loss or damage to covered property in any one occurrence is the applicable "limit" shown on the "declarations", if any.

3. **Our Options** -- Subject to paragraphs 1., 2., 4., and 5. and the Deductible provision under How Much We Pay For Loss, at "our" option "we" may:
   a. pay the amount determined under Valuation;
   b. pay the cost of repairing or replacing the loss; or

FILED DATE: 4/23/2026 11:10 AM 2026CH03888

# BADGER MUTUAL INSURANCE COMPANY

c. rebuild, repair, or replace property with material of like kind and quality, to the extent practicable.

"We" must give "you" notice of "our" intent within 30 days after "we" have received a satisfactory proof of loss.

"We" may take all or any part of the damaged property at the agreed or appraised value.

4. **Insurance Under More Than One Coverage** -- If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim or loss sustained.

5. **Insurance Under More Than One Policy** -- "You" may have another policy subject to the same plan, "terms", conditions, and provisions as this policy. If "you" do, "we" pay "our" share of the covered loss. "Our" share is the proportion that any applicable "limit" under this policy bears to the total "limit" of all policies covering on the same basis.

If there is another policy covering the same loss, other than that described above, "we" pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect it or not. But "we" do not pay more than the applicable "limit", if any.

## LOSS PAYMENT

"We" adjust all losses with "you". Payment is made to "you" unless another loss payee is named in the policy. A covered loss is payable 30 days after a satisfactory proof of loss is received, and:

1. the amount of the loss has been agreed to in writing;

2. an appraisal award has been filed with "us"; or

3. a final judgment has been entered.

## OTHER CONDITIONS

1. **Benefit to Others** -- Insurance under the Glass Coverage will not directly or indirectly benefit anyone having custody of "your" property.

2. **Conformity With Statute** -- "Terms" of the Glass Coverage in conflict with the statutes of the state where the described premises are located are amended to conform to such statutes.

3. **Control of Property** -- The Glass Coverage is not affected by any act or neglect beyond "your" control.

4. **Death of an Individual Named Insured** -- If "you" die, "your" rights and duties under the Glass Coverage pass to "your" legal representative or other person having proper temporary custody of "your" property.

5. **Liberalization** -- If "we" adopt a revision of forms during a policy period which broadens the Glass Coverage without additional premium, the

broadened coverage will automatically apply to this policy. This also applies if "we" adopt the revision within 60 days before this coverage is effective.

6. **Misrepresentation, Concealment, or Fraud** -- The Glass Coverage is void as to "you" and any other insured if, before or after a loss:

a. "you" have or any other insured has willfully concealed or misrepresented:

1) a material fact or circumstance that relates to this insurance or the subject thereof; or

2) "your" interest herein; or

b. there has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

7. **Policy Period** -- "We" cover loss during the policy period shown on the "declarations".

8. **Restoration of Limits** -- Any loss "we" pay under the Glass Coverage does not reduce the "limits" applying to a later loss.

9. **Subrogation** -- If "we" pay for a loss under the Glass Coverage, "we" may require that "you" assign to "us" any right of recovery against others up to the amount "we" paid.

"You" may waive "your" right to recover, in writing, before the loss takes place without voiding coverage.

"We" are not liable for a loss if, after the loss, "you" impair "our" right to recover. But "you" may waive "your" right to recover in writing after a loss only as to the following parties:

a. someone insured under the Glass Coverage;

b. "your" tenant;

c. a business firm owned or controlled by "you"; or

d. a business firm which owns or controls "your" business.

10. **Suit Against Us** -- No suit to recover any loss may be brought against "us" unless:

a. the "terms" of the Glass Coverage have been fully complied with; and

b. the suit is commenced within two years after the loss.

If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by the law.

11. **Territorial Limits** -- "We" only cover loss within the "basic territory".

GS-200 Ed. 3.0     Copyright MCMXCVIII, American Association of Insurance Services    

## BADGER MUTUAL INSURANCE COMPANY

12. **Vacancy or Unoccupancy** -- "We" do not pay for loss that occurs at a building or structure that has been:

a. vacant for more than 60 consecutive days; or

b. unoccupied for more than:

   1) 60 consecutive days; or

   2) the usual or incidental unoccupancy period for the described premises,

   whichever is longer.

Unoccupied means that the customary activities or operations of the described occupancy have been suspended, but business personal property has not been removed.

The building or structure will be considered vacant rather than unoccupied when the occupants have moved, leaving the building or structure empty or containing only limited business personal property.

If "you" are the owner of the building or structure where the loss occurs, that building or structure is considered vacant or unoccupied only when less than 30% of its total square footage is occupied as intended.

If the building or structure where the loss occurs is rented to "you", building or structure refers only to that space rented to "you".

Buildings or structures that are under construction or being renovated are not considered vacant or unoccupied.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
## IM 1450 01 05
## SIGN COVERAGE

## AGREEMENT

In return for **your** payment of the required premium, **we** provide the coverage described herein subject to all the **terms** of the Sign Coverage. This coverage is also subject to the **schedule of coverages** and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the **schedule of coverages**.

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

## DEFINITIONS

1. The words **you** and **your** mean the persons or organizations named as the insured on the declarations.

2. The words **we, us,** and **our** mean the company providing this coverage.

3. **Limit** means the amount of coverage that applies.

4. **Pollutant** means:

   a. any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including but not limited to acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be recycled, reclaimed, or reconditioned, as well as disposed of; and

   b. electrical or magnetic emissions, whether visible or invisible, and sound emissions.

5. **Schedule of coverages** means:

   a. all pages labeled schedule of coverages or schedules which pertain to this coverage; and

   b. declarations or supplemental declarations which pertain to this coverage.

6. **Sinkhole collapse** means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation. It does not include the value of the land or the cost of filling sinkholes.

7. **Specified perils** means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; **sinkhole collapse**; smoke; sonic boom; vandalism; vehicles;

volcanic action; water damage; weight of ice, snow, or sleet; and windstorm.

Falling objects does not include loss to:

a. personal property in the open; or

b. the interior of buildings or structures or to personal property inside buildings or structures unless the exterior of the roofs or walls are first damaged by a falling object.

Water damage means the sudden or accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

8. **Terms** means all provisions, limitations, exclusions, conditions, and definitions that apply.

9. **Volcanic action** means airborne volcanic blast or airborne shock waves; ash, dust, or particulate matter; or lava flow.

   Volcanic action does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss to the covered property.

## PROPERTY COVERED

**We** cover the following property unless the property is excluded or subject to limitations.

1. **Scheduled Signs -**

   a. **Coverage -** We cover direct physical loss caused by a covered peril to signs described on the **schedule of coverages**.

   b. **Coverage Limitations -** We only cover described signs:

      1) when a **limit** for Scheduled Signs is indicated on the **schedule of coverages**; and

      2) while at a location described on the **schedule of coverages** or while in transit between locations described on the **schedule of coverages**.

2. **Unscheduled Signs -**

   a. **Coverage -** We cover direct physical loss caused by a covered peril to **your** unscheduled signs and similar property of others in **your** care, custody, or control.

   b. **Coverage Limitations -** We only cover unscheduled signs:

# BADGER MUTUAL INSURANCE COMPANY

1) when a **limit** for Unscheduled Signs is indicated on the **schedule of coverages**; and

2) while at a location described on the **schedule of coverages** or while in transit between locations described on the **schedule of coverages**.

3) consisting of:

   a) automatic, electric, fluorescent, mechanical, or neon signs;

   b) lamps and street clocks; and

   c) data processing equipment used in connection with the signs.

## PROPERTY NOT COVERED

**Contraband** - **We** do not cover contraband or property in the course of illegal transportation or trade.

## PERILS COVERED

**We** cover risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

## OTHER COVERAGES – COLLAPSE

**Collapse** -

1. **Coverage** - **We** pay for loss to covered property caused by direct physical loss involving collapse of a building or structure or any part of a building or structure that holds covered property.

2. **Covered Perils** - **We** only pay for loss to covered property caused by collapse of a building or structure or any part of a building or structure that holds covered property caused by one or more of the following:

   a. **specified perils** or breakage of building glass all only as insured against in this coverage form;

   b. hidden decay, unless **you** know of the presence of the decay prior to the collapse;

   c. hidden insect or vermin damage, unless **you** know of the damage prior to collapse;

   d. weight of people or personal property;

   e. weight of rain that collects on a roof; or

   f. the use of defective material or methods in construction, remodeling, or renovation if the collapse occurs during the course of the construction, remodeling, or renovation.

   However, if the collapse occurs after construction, remodeling, or renovation is complete and is caused in part by a peril listed in a. through f. above, **we** will pay for the loss or damage even if the use of defective material or

methods in construction, remodeling, or renovation contributes to the collapse.

3. **Collapse Means** - Collapse means a sudden and unexpected falling in or caving in of a building or structure or any portion of a building or structure with the result that the building or portion of the building cannot be occupied for its intended purpose.

4. **Collapse Does Not Mean** - The following are not considered to be in a state of collapse:

   a. a building or structure that is standing or any portion of a building that is standing even if it displays evidence of bending, bulging, cracking, expansion, leaning, sagging, settling, or shrinkage.

   b. a building or structure or any portion of a building or structure in danger of falling in or caving; and

   c. a portion of a building or structure that is standing even if it has separated from another portion of the building or structure.

5. **Coverage Limitation** - This coverage does not increase the **limit** for covered property.

## PERILS EXCLUDED

1. **We** do not pay for loss or damage caused directly or indirectly by one or more of the following excluded causes or events. Such loss or damage is excluded regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

   a. **Civil Authority** - **We** do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

   **We** do cover loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

   b. **Nuclear Hazard** - **We** do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. Direct loss by fire resulting from the nuclear hazard is covered.

   c. **War And Military Action** - **We** do not pay for loss caused by:

      1) war, including undeclared war or civil war; or

# BADGER MUTUAL INSURANCE COMPANY

2) a warlike action by a military force, including action taken to prevent or defend against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or

3) insurrection, rebellion, revolution, or unlawful seizure of power including action taken by governmental authority to prevent or defend against any of these.

With regard to any action that comes within the terms of this exclusion and involves nuclear reaction, nuclear radiation, or radioactive contamination, this War and Military Action Exclusion will apply in place of the Nuclear Hazard Exclusion.

2. **We** do not pay for loss or damage that is caused by or results from one or more of the following:

   a. **Acts Or Decisions - We** do not pay for loss caused by or resulting from the act or decision of any person, group, organization, or governmental body. This includes the failure to act or decide.

   But if an act or decision results in a covered peril, **we** do cover the loss or damage caused by that covered peril.

   b. **Breakage - We** do not pay for loss caused by breakage while the property is being installed, dismantled, repaired, or in transit.

   **We** do pay for breakage if it is caused by **specified perils**.

   c. **Collapse -** Except as provided under Other Coverages - Collapse, **we** do not pay for loss caused by collapse.

   But if collapse results in a covered peril, **we** do cover the loss or damage caused by that covered peril.

   d. **Contamination Or Deterioration - We** do not pay for loss caused by contamination or deterioration including corrosion; decay; fungus; mildew; mold; rot; rust; or any quality, fault, or weakness in the covered property that causes it to damage or destroy itself.

   But if contamination or deterioration results in a covered peril, **we** do cover the loss or damage caused by that covered peril.

   e. **Criminal, Fraudulent, Dishonest, Or Illegal Acts - We** do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts committed alone or in collusion with another by:

   1) **you;**

2) others who have an interest in the property;

3) others to whom **you** entrust the property;

4) **your** partners, officers, directors, trustees, joint venturers, or **your** members or managers if **you** are a limited liability company; or

5) the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work.

This exclusion does not apply to acts of destruction by **your** employees, but **we** do not pay for theft by employees.

This exclusion does not apply to covered property in the custody of a carrier for hire.

   f. **Electrical Currents - We** do not pay for loss caused by artificially generated electrical currents that damage electrical apparatus or wiring within the covered property.

   But if electrical currents result in fire or explosion, **we** do cover the loss or damage caused by the fire or explosion.

   This exclusion applies only to the property artificially generating the current.

   g. **Fault, Defect, Or Error - We** do not pay for loss caused by or resulting from a fault, defect, or error, negligent or not, in:

   1) planning, zoning, surveying, siting, grading, compacting, land use, or development; or

   2) the design, blueprint, specification, workmanship, construction, maintenance, installation, renovation, remodeling, or repair of property, including the materials used in the construction, remodeling, or repair.

   These apply whether or not the property is covered by this policy.

   But if a fault, defect, or error results in a covered peril, **we** do cover the loss or damage caused by that covered peril.

   h. **Loss Of Use - We** do not pay for loss caused by or resulting from loss of use, delay, or loss of market.

   i. **Mechanical Breakdown - We** do not pay for loss caused by mechanical breakdown or failure of covered property. This includes rupture or bursting by centrifugal force.

   But if a mechanical breakdown results in a covered peril, **we** do cover the loss or damage caused by that covered peril.

# BADGER MUTUAL INSURANCE COMPANY

j.   **Pollutants** - **We** do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of **pollutants** unless the release, discharge, seepage, migration, dispersal, or escape is caused by a **specified peril**.

   We do cover any resulting loss caused by a **specified peril**.

k.   **Temperature Or Humidity** - **We** do not pay for loss caused by dryness, dampness, humidity, or changes in or extremes of temperature.

   But if dryness, dampness, humidity, or changes in or extremes of temperature result in a covered peril, **we** do cover the loss or damage caused by that covered peril.

l.   **Unauthorized Instructions** - **We** do not pay for loss caused by an unauthorized instruction to transfer property to any person or place.

m.   **Voluntary Parting** - **We** do not pay for loss caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

n.   **Wear And Tear** - **We** do not pay for loss caused by wear and tear, marring, or scratching.

   But if wear and tear results in a covered peril, **we** do cover the loss or damage caused by that covered peril.

o.   **Weather** - **We** do not pay for loss caused by weather conditions if the weather conditions contribute in any way with a cause or event excluded in item **1.** above.

   But if weather conditions result in a covered peril, **we** do cover the loss or damage caused by that covered peril.

## WHAT MUST BE DONE IN CASE OF LOSS

1.   **Notice** - In case of a loss, **you** must:

   a.   give **us** or **our** agent prompt notice including a description of the property involved (**we** may request written notice); and

   b.   give notice to the police when the act that causes the loss is a crime.

2.   **You Must Protect Property** - **You** must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss.

   a.   **Payment Of Reasonable Costs** - **We** do pay the reasonable costs incurred by **you** for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if

a peril insured against has already caused a loss to covered property. **You** must keep an accurate record of such costs. **Our** payment of reasonable costs does not increase the **limit**.

   b.   **We Do Not Pay** - **We** do not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against.

3.   **Proof Of Loss** - **You** must send **us**, within 60 days after **our** request, a signed, sworn proof of loss. This must include the following information:

   a.   the time, place, and circumstances of the loss;

   b.   other policies of insurance that may cover the loss;

   c.   **your** interest and the interests of all others in the property involved, including all mortgages and liens;

   d.   changes in title of the covered property during the policy period; and

   e.   estimates, specifications, inventories, and other reasonable information that **we** may require to settle the loss.

4.   **Examination** - **You** must submit to examination under oath in matters connected with the loss as often as **we** reasonably request and give **us** sworn statements of the answers. If more than one person is examined, **we** have the right to examine and receive statements separately and not in the presence of others.

5.   **Records** - **You** must produce records, including tax returns and bank microfilms of all canceled checks relating to value, loss, and expense and permit copies and extracts to be made of them as often as we reasonably request.

6.   **Damaged Property** - **You** must exhibit the damaged and undamaged property as often as **we** reasonably request and allow **us** to inspect or take samples of the property.

7.   **Volunteer Payments** - **You** must not, except at **your** own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

8.   **Abandonment** - **You** may not abandon the property to **us** without **our** written consent.

9.   **Cooperation** - **You** must cooperate with **us** in performing all acts required by this policy.

# BADGER MUTUAL INSURANCE COMPANY

## VALUATION

1. **Actual Cash Value** - The value of covered property is based on the actual cash value at the time of loss (with a deduction for depreciation), subject to items 2. through 4. under Valuation.

2. **Scheduled Property** - Covered property scheduled on the **schedule of coverages** will be valued at the **limit** shown for that item on the **schedule of coverages**.

3. **Pair Or Set** - The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

4. **Loss To Parts** - The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

## HOW MUCH WE PAY

1. **Insurable Interest** - **We** do not cover more than **your** insurable interest in any property.

2. **Deductible** - **We** pay only that part of **your** loss over the deductible amount shown on the **schedule of coverages** in any one occurrence.

3. **Loss Settlement Terms** - Subject to paragraphs 1., 2., 4., and 5. under How Much We Pay:

    a. **We Pay The Lesser Of** - **We** pay the lesser of:

        1) the amount determined under Valuation;

        2) the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

        3) the **limit** that applies to the covered property.

    b. **Catastrophe Limit** - If a Catastrophe Limit is shown on the **schedule of coverages** and a covered peril causes loss at more than one premises described on the **schedule of coverages**, the most **we** pay for all loss in any one occurrence is:

        1) the sum of the **limits** for covered property at all premises where the loss occurred; or

        2) the Catastrophe Limit,

        whichever is less.

4. **Coinsurance** - The following provisions apply only to property that is covered on an unscheduled basis, while at a premises described on the **schedule of coverages**.

    a. **When Coinsurance Applies** - **We** only pay a part of the loss if the **limit** is less than 100% of the value of all covered property (except property in transit) at the time of the loss.

    b. **How We Determine Our Part Of The Loss** - **Our** part of the loss is determined using the following steps:

        1) calculate, as of the time of loss, 100% of the value of all covered property at the premises where the loss occurred;

        2) divide the **limit** for covered property at the premises where the loss occurred by the result of b.1), above;

        3) multiply the total amount of loss by the result of b.2), above.

        The most **we** pay is the amount determined in b.3), or the applicable **limit**, whichever is less. **We** do not pay any remaining part of the loss.

5. **Insurance Under More Than One Coverage** - If more than one coverage of this policy insures the same loss, **we** pay no more than the actual claim, loss, or damage sustained.

6. **Insurance Under More Than One Policy** -

    a. **Proportional Share** - **You** may have another policy subject to the same **terms** as this policy. If **you** do, **we** will pay **our** share of the covered loss. **Our** share is the proportion that the applicable **limit** under this policy bears to the **limit** of all policies covering on the same basis.

    b. **Excess Amount** - If there is another policy covering the same loss, other than that described above, **we** pay only for the amount of covered loss in excess of the amount due from that other policy, whether **you** can collect on it or not. But **we** do not pay more than the applicable **limit**.

## LOSS PAYMENT

1. **Loss Payment Options** -

    a. **Our Options** - In the event of loss covered by this coverage form, **we** have the following options:

        1) pay the value of the lost or damaged property;

        2) pay the cost of repairing or replacing the lost or damaged property;

        3) rebuild, repair, or replace the property with other property of equivalent kind and quality, to the extent practicable, within a reasonable time; or

---

IM 1450 01 05       Copyright, American Association of Insurance Services, Inc., 2005      

# BADGER MUTUAL INSURANCE COMPANY

4) take all or any part of the property at the agreed or appraised value.

b. **Notice Of Our Intent To Rebuild, Repair, Or Replace - We** must give **you** notice of **our** intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

2. **Your Losses -**

a. **Adjustment And Payment Of Loss - We** adjust all losses with **you**. Payment will be made to **you** unless another loss payee is named in the policy.

b. **Conditions For Payment Of Loss** – An insured loss will be payable 30 days after:

1) a satisfactory proof of loss is received, and

2) the amount of the loss has been established either by written agreement with **you** or the filing of an appraisal award with **us**.

3. **Property Of Others -**

a. **Adjustment And Payment Of Loss To Property Of Others -** Losses to property of others may be adjusted with and paid to:

1) **you** on behalf of the owner; or

2) the owner.

b. **We Do Not Have To Pay You If We Pay The Owner - If we** pay the owner, **we** do not have to pay **you**. **We** may also choose to defend any suits brought by the owners at **our** expense.

## OTHER CONDITIONS

1. **Appraisal - If you** and **we** do not agree on the amount of the loss or the value of covered property, either party may demand that these amounts be determined by appraisal.

If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the property is located to select an umpire.

The appraisers will then determine and state separately the amount of each loss.

The appraisers will also determine the value of covered property items at the time of the loss, if requested.

If the appraisers submit a written report of any agreement to **us**, the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three, sets the amount of the loss.

Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by **you** and **us**.

2. **Benefit To Others -** Insurance under this coverage shall not directly or indirectly benefit anyone having custody of **your** property.

3. **Conformity With Statute -** When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

4. **Estates -** This provision applies only if the insured is an individual.

a. **Your Death -** On **your** death, **we** cover the following as an insured:

1) the person who has custody of **your** property until a legal representative is qualified and appointed; or

2) **your** legal representative.

This person or organization is an insured only with respect to property covered by this coverage.

b. **Policy Period Is Not Extended -** This coverage does not extend past the policy period indicated on the declarations.

5. **Liberalization -** If a revision of a form or endorsement which would broaden this coverage without an additional premium is adopted during the policy period or within six months before this coverage is effective, the broadened coverage will apply.

6. **Misrepresentation, Concealment, Or Fraud -** This coverage is void as to **you** and any other insured if, before or after a loss:

a. **you** have or any other insured has willfully concealed or misrepresented:

1) a material fact or circumstance that relates to this insurance or the subject thereof; or

2) **your** interest herein; or

b. there has been fraud or false swearing by **you** or any other insured with regard to a matter that relates to this insurance or the subject thereof.

7. **Policy Period - We** pay for a covered loss that occurs during the policy period.

# BADGER MUTUAL INSURANCE COMPANY

8. **Recoveries** – If **we** pay **you** for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a. **you** must notify **us** promptly if **you** recover property or receive payment;

   b. **we** must notify **you** promptly if **we** recover property or receive payment;

   c. any recovery expenses incurred by either are reimbursed first;

   d. **you** may keep the recovered property but **you** must refund to **us** the amount of the claim paid or any lesser amount to which **we** agree; and

   e. if the claim paid is less than the agreed loss due to a deductible or other limiting **terms** of this policy, any recovery will be prorated between **you** and **us** based on our respective interest in the loss.

9. **Restoration Of Limits** – A loss **we** pay under this coverage does not reduce the applicable **limit** unless it is a total loss to a scheduled item. In the event of a total loss to a scheduled item, **we** refund the unearned premium on that item.

10. **Subrogation** – If **we** pay for a loss, **we** may require **you** to assign to **us** **your** right of recovery against others. **You** must do all that is necessary to secure **our** rights. **We** do not pay for a loss if **you** impair this right to recover.

    **You** may waive **your** right to recover from others in writing before a loss occurs.

11. **Suit Against Us** – No one may bring a legal action against **us** under this coverage unless:

    a. all of the **terms** of this coverage have been complied with; and

    b. the suit has been brought within two years after **you** first have knowledge of the loss.

       If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by law.

12. **Territorial Limits** – **We** cover property while it is in the United States of America, its territories and possessions, Canada, and Puerto Rico.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
IM 2027 08 08
## AMENDATORY ENDORSEMENT – ILLINOIS

1. Under Definitions, item b. of Pollutants is deleted.

2. Under Coverage Extensions, Defense Costs, if applicable, is amended as follows:

   a. Paragraph a. Coverage is deleted and replaced by the following:

      a. **Coverage – We** have the right and duty to defend any **suit** brought against **you** as a result of damage to covered property caused by a covered loss. **We** may investigate and settle a claim or **suit**.

   b. Under paragraph d., item 4) is deleted and replaced by the following:

      4) expenses that **you** incur for expert testimony or court-ordered arbitration or mediation;

   c. The following paragraph is added:

      The expenses **we** incur under Defense Costs will not reduce the applicable limit for coverage described under Property Covered.

3. Under Perils Excluded, Criminal, Fraudulent, Dishonest, Or Illegal Acts is amended to include the following:

   However, if the loss is caused by an act arising out of a pattern of criminal domestic violence and the perpetrator of the loss is criminally prosecuted for the act causing the loss, this exclusion does not apply to an otherwise covered loss suffered by another insured who did not cooperate in or contribute to the act that caused the loss.

   Subject to the **terms** under How Much We Pay and all other **terms** of this policy, **our** payment to an insured who did not cooperate in or contribute to the act that caused the loss may be limited to the claimant's insurable interest less payments made to a mortgagee or other party with a legal secured interest in the property.

4. Under Other Conditions, Misrepresentation, Concealment, Or Fraud is deleted and replaced by the following:

   **Misrepresentation, Concealment, Or Fraud – We** do not provide coverage for an insured who has:

   a. willfully concealed or misrepresented:

      1) a material fact or circumstance with respect to this insurance; or

      2) an insured's interest herein; or

   b. engaged in fraudulent conduct or sworn falsely with respect to this insurance or the subject thereof.

5. Under Other Conditions, Subrogation is amended to include the following:

   An innocent insured who is the subject of criminal domestic violence by another insured cannot waive his or her right to recover. **We** retain all rights set forth by this Subrogation condition with regard to **our** right to recover, up to the amount **we** pay, for loss caused by an act of criminal domestic violence.

6. In all coverage forms except Motor Truck Cargo Legal Liability Coverage, Riggers' Legal Liability Coverage, and Warehouse Legal Liability Coverage, under Other Conditions, Suit Against Us is amended to include the following:

   However, this period is extended by the number of days between the date proof of loss is submitted and the claim is denied in whole or in part.

IM 2027 08 08      Copyright, American Association of Insurance Services, Inc., 2008      Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
## IM 2027 08 08
## AMENDATORY ENDORSEMENT – ILLINOIS

1. Under Definitions, item b. of Pollutants is deleted.

2. Under Coverage Extensions, Defense Costs, if applicable, is amended as follows:

   a. Paragraph a. Coverage is deleted and replaced by the following:

      a. **Coverage – We** have the right and duty to defend any **suit** brought against **you** as a result of damage to covered property caused by a covered loss. **We** may investigate and settle a claim or **suit**.

   b. Under paragraph d., item 4) is deleted and replaced by the following:

      4) expenses that **you** incur for expert testimony or court-ordered arbitration or mediation;

   c. The following paragraph is added:

      The expenses **we** incur under Defense Costs will not reduce the applicable **limit** for coverage described under Property Covered.

3. Under Perils Excluded, Criminal, Fraudulent, Dishonest, Or Illegal Acts is amended to include the following:

   However, if the loss is caused by an act arising out of a pattern of criminal domestic violence and the perpetrator of the loss is criminally prosecuted for the act causing the loss, this exclusion does not apply to an otherwise covered loss suffered by another insured who did not cooperate in or contribute to the act that caused the loss.

   Subject to the **terms** under How Much We Pay and all other **terms** of this policy, **our** payment to an insured who did not cooperate in or contribute to the act that caused the loss may be limited to the claimant's insurable interest less payments made to a mortgagee or other party with a legal secured interest in the property.

4. Under Other Conditions, Misrepresentation, Concealment, Or Fraud is deleted and replaced by the following:

   **Misrepresentation, Concealment, Or Fraud -- We** do not provide coverage for an insured who has:

   a. willfully concealed or misrepresented:

      1) a material fact or circumstance with respect to this insurance; or

      2) an insured's interest herein; or

   b. engaged in fraudulent conduct or sworn falsely with respect to this insurance or the subject thereof.

5. Under Other Conditions, Subrogation is amended to include the following:

   An innocent insured who is the subject of criminal domestic violence by another insured cannot waive his or her right to recover. **We** retain all rights set forth by this Subrogation condition with regard to **our** right to recover, up to the amount we pay, for loss caused by an act of criminal domestic violence.

6. In all coverage forms except Motor Truck Cargo Legal Liability Coverage, Riggers' Legal Liability Coverage, and Warehouse Legal Liability Coverage, under Other Conditions, Suit Against Us is amended to include the following:

   However, this period is extended by the number of days between the date proof of loss is submitted and the claim is denied in whole or in part.

IM 2027 08 08      Copyright, American Association of Insurance Services, Inc., 2008      Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
IM 7400 04 04
## FINE ARTS FLOATER

## AGREEMENT

In return for **your** payment of the required premium, **we** provide the coverage described herein subject to all the **terms** of the Fine Arts Floater Coverage. This coverage is also subject to the **schedule of coverages** and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the **schedule of coverages**.

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

## DEFINITIONS

1. The words **you** and **your** mean the persons or organizations named as the insured on the declarations.

2. The words **we, us,** and **our** mean the company providing this coverage.

3. **Antique** means an object having value because its:

    a. craftsmanship is in the style or fashion of former times; and

    b. age is 100 years old or older.

4. **Earth movement** means any movement or vibration of the earth's surface (other than **sinkhole collapse**) including but not limited to earthquake; landslide; mudflow; mudslide; mine subsidence; or sinking, rising, or shifting of earth.

5. **Fine arts** means paintings; etchings; pictures; tapestries; rare or art glass; art glass windows; valuable rugs; statuary; sculptures; **antique** furniture; **antique** jewelry; bric-a-brac; porcelains; and similar property of rarity, historical value, or artistic merit.

6. **Flood** means flood, surface water, waves, tidal water, or the overflow of a body of water all whether driven by wind or not. This includes spray that results from these whether driven by wind or not.

7. **Limit** means the amount of coverage that applies.

8. **Pollutant** means:

    a. any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be recycled, reclaimed, or reconditioned, as well as disposed of; and.

    b. electrical or magnetic emissions, whether visible or invisible, and sound emissions.

9. **Schedule of coverages** means:

    a. all pages labeled schedule of coverages or schedules that pertain to this coverage; and

    b. declarations or supplemental declarations that pertain to this coverage.

10. **Sinkhole collapse** means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation. It does not include the value of the land or the cost of filling sinkholes.

11. **Specified perils** means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; **sinkhole collapse**; smoke; sonic boom; vandalism; vehicles; **volcanic action**; water damage; weight of ice, snow, or sleet; and windstorm.

    Falling objects does not include loss to:

    a. personal property in the open; or

    b. the interior of buildings or structures or to personal property inside buildings or structures unless the exterior of the roofs or walls are first damaged by a falling object.

    Water damage means the sudden or accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

12. **Terms** means all provisions, limitations, exclusions, conditions, and definitions that apply.

13. **Volcanic action** means airborne volcanic blast or airborne shock waves; ash, dust, or particulate matter; or lava flow.

    Volcanic action does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss to the covered property.

## PROPERTY COVERED

We cover the following property unless the property is excluded or subject to limitations.

**Fine Arts –**

# BADGER MUTUAL INSURANCE COMPANY

1. **Coverage** – **We** cover direct physical loss caused by a covered peril to **fine arts**.

2. **Coverage Limitation** – **We** only cover **fine arts**:

   a. that are described on the Fine Arts Schedule; and

   b. while at a premises that is described on the Fine Arts Schedule.

   **We** only cover a described **fine arts** item while the item is at the premises that is described on the same schedule as the item.

## PROPERTY NOT COVERED

1. **Coins And Stamps** – **We** do not cover numismatic or philatelic objects or collections.

2. **Contraband** – **We** do not cover contraband or property in the course of illegal transportation or trade.

3. **Furs** – **We** do not cover furs or fur trimmed garments.

4. **Jewelry, Stones And Metals** – **We** do not cover jewelry, precious or semi-precious stones, gold, silver, platinum, or other precious metals or alloys. However, this exclusion does not apply to **antique** jewelry.

5. **Money And Securities** – **We** do not cover accounts, bills, currency, food stamps, or other evidences of debt, lottery tickets not held for sale, money, notes, or securities.

6. **Vehicles** – **We** do not cover automobiles or any self-propelled vehicles that are designed for highway use.

7. **Waterborne Property** – **We** do not cover property while waterborne except while in transit in the custody of a carrier for hire.

## COVERAGE EXTENSIONS

**Provisions That Apply To Coverage Extensions** – The following Coverage Extensions indicate an applicable **limit**. This **limit** may also be shown on the **schedule of coverages**.

If a different **limit** is indicated on the **schedule of coverages**, that **limit** will apply instead of the **limit** shown below.

However, if no **limit** is indicated for a Coverage Extension, coverage is provided up to the full **limit** for the applicable covered property unless a different **limit** is indicated on the **schedule of coverages**.

Unless otherwise indicated, the coverages provided below is part of and not in addition to the applicable **limit** for coverage described under Property Covered.

The **limit** provided under a Coverage Extension cannot be combined or added to the **limit** for any other Coverage Extension or Supplemental Coverage including a Coverage Extension or Supplemental Coverage that is added to this policy by endorsement.

If coinsurance provisions are part of this policy, the following coverage extensions are not subject to and not considered in applying coinsurance conditions.

**Emergency Removal** –

1. **Coverage** – **We** cover any direct physical loss to covered property while it is being moved or being stored to prevent a loss caused by a covered peril.

2. **Time Limitation** – This coverage applies for up to ten days after the property is first moved. Also, this coverage does not extend past the date on which this policy expires.

## SUPPLEMENTAL COVERAGES

**Provisions That Apply To Supplemental Coverages** – The following Supplemental Coverages indicate an applicable **limit**. This **limit** may also be shown on the **schedule of coverages**.

If a different **limit** is indicated on the **schedule of coverages**, that **limit** will apply instead of the **limit** shown below.

However, if no **limit** is indicated for a Supplemental Coverage, coverage is provided up to the full **limit** for the applicable covered property unless a different **limit** is indicated on the **schedule of coverages**.

Unless otherwise indicated, a **limit** for a Supplemental Coverage provided below is separate from, and not part of, the applicable **limit** for coverage described under Property Covered.

The **limit** available for coverage described under a Supplemental Coverage:

a. is the only **limit** available for the described coverage; and

b. is not the sum of the **limit** indicated for a Supplemental Coverage and the **limit** for coverage described under Property Covered.

The **limit** provided under a Supplemental Coverage cannot be combined or added to the **limit** for any other Supplemental Coverage or Coverage Extension including a Supplemental Coverage or Coverage Extension that is added to this policy by endorsement.

If coinsurance provisions are part of this policy, the following supplemental coverages are not subject to and not considered in applying coinsurance conditions.

1. **Newly Purchased Property** –

# BADGER MUTUAL INSURANCE COMPANY

a. **Coverage – We** cover direct physical loss caused by a covered peril to **fine arts** that **you** purchase during the policy period.

b. **Coverage Limitation – We** only cover **fine arts** that **you** purchase while at a premises that is described on the **schedule of coverages**.

c. **Limit** – The most **we** pay in any one occurrence for newly purchased **fine arts** is $5,000.

d. **Time Limitation** – This coverage applies for up to 60 days from the date **you** purchase the **fine arts** or until **you** report the purchased **fine arts** to **us**, whichever occurs first.

   However, this coverage does not go beyond the end of the policy period.

e. **Additional Premium – You** must pay any additional premium due from the date **you** purchase the **fine arts**.

2. **Property On Exhibit –**

a. **Coverage – We** cover direct physical loss caused by a covered peril to covered property while temporarily on exhibit in a premises not owned or occupied by **you**.

b. **Limit** – The most **we** pay in any one occurrence for loss to property on exhibition is $1,000.

3. **Property Off Premises For Framing, Renovating, Packing, Or Appraising –**

a. **Coverage – We** cover direct physical loss caused by a covered peril to covered property while temporarily in a premises not owned, occupied, or operated by **you** for framing, renovating, packing, or appraising.

b. **Limit** – The most **we** pay in any one occurrence for loss to property off premises for framing, renovating, packing, or appraising is $1,000.

4. **Transit –**

a. **Coverage – We** cover direct physical loss caused by a covered peril to covered property while in transit.

b. **Limit** – The most **we** pay in any one occurrence for loss to property in transit is $1,000.

## PERILS COVERED

**We** cover risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

## PERILS EXCLUDED

1. **We** do not pay for loss or damage caused directly or indirectly by one or more of the following excluded causes or events. Such loss or damage is excluded regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

a. **Civil Authority – We** do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

   **We** do cover loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

b. **Earth Movement Or Volcanic Eruption – We** do not pay for loss caused by any **earth movement** (other than **sinkhole collapse**) or caused by eruption, explosion, or effusion of a volcano.

   **We** do cover direct loss by fire, explosion, or **volcanic action** resulting from either **earth movement** or eruption, explosion, or effusion of a volcano.

   This exclusion does not apply to covered property while in transit.

c. **Flood – We** do not pay for loss caused by **flood**.

   **We** do cover direct loss by fire, explosion, or sprinkler leakage resulting from **flood**.

   This exclusion does not apply to covered property while in transit.

d. **Nuclear Hazard – We** do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. Direct loss by fire resulting from the nuclear hazard is covered.

e. **Sewer Backup And Water Below the Surface – We** do not pay for loss caused by:

   1) water that backs up through a sewer or drain; or

   2) water below the surface of the ground, including but not limited to water that exerts pressure on or flows, seeps, or leaks through or into a covered building or structure.

   **We** do cover direct loss by fire, explosion, or theft resulting from either water that backs up through a sewer or drain or water below the surface of the ground.

---

IM 7400 04 04      Copyright, American Association of Insurance Services, Inc., 2004      Page 3 of 7

# BADGER MUTUAL INSURANCE COMPANY

This exclusion does not apply to covered property while in transit.

f. **War And Military Action – We** do not pay for loss caused by:

   1) war, including undeclared war or civil war; or

   2) a warlike action by a military force, including action taken to prevent or defend against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or

   3) insurrection, rebellion, revolution, or unlawful seizure of power including action taken by governmental authority to prevent or defend against any of these.

   With regard to any action that comes within the **terms** of this exclusion and involves nuclear reaction, nuclear radiation, or radioactive contamination, this War and Military Action Exclusion will apply in place of the Nuclear Hazard Exclusion.

2. **We** do not pay for loss or damage that is caused by or results from one or more of the following:

   a. **Breakage, Marring, And Scratching – We** do not pay for loss caused by breakage, marring, or scratching of covered property.

      But if breakage, marring, or scratching results in a **specified peril, we** do cover the loss or damage caused by that **specified peril.**

   b. **Contamination Or Deterioration – We** do not pay for loss caused by contamination or deterioration including corrosion; decay; fungus; mildew; mold; rot; rust; or any quality, fault, or weakness in the covered property that causes it to damage or destroy itself.

   c. **Criminal, Fraudulent, Dishonest Or Illegal Acts – We** do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts committed alone or in collusion with another by:

      1) **you;**

      2) others who have an interest in the property;

      3) others to whom **you** entrust the property,

      4) **your** partners, officers, directors, trustees, or joint venturers, or **your** members or managers if **you** are a limited liability company; or

      5) the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work.

This exclusion does not apply to acts of destruction by **your** employees, but **we** do not pay for theft by employees.

This exclusion does not apply to covered property in the custody of a carrier for hire.

d. **Diminished Value – We** do not pay for any reduction in the value of damaged property after the damage has been repaired.

e. **Loss Of Use – We** do not pay for loss caused by or resulting from loss of use, delay, or loss of market.

f. **Missing Property – We** do not pay for missing property where the only proof of loss is unexplained or mysterious disappearance of covered property, or shortage of property discovered on taking inventory, or any other instance where there is no physical evidence to show what happened to the covered property.

   This exclusion does not apply to covered property in the custody of a carrier for hire.

g. **Pollutants – We** do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of pollutants unless the release, discharge, seepage, migration, dispersal, or escape of **pollutants** unless the release, discharge, seepage, migration, dispersal, or escape is caused by a **specified peril.**

   **We** do cover any resulting loss caused by a **specified peril.**

h. **Processing And Work – We** do not pay for loss caused by processing of or work upon the covered property including repairs or restoration.

i. **Temperature And Humidity – We** do not pay for loss caused by dryness, dampness, humidity, or changes in or extremes of temperature.

   But if dryness, dampness, humidity, or changes in or extremes of temperature results in a **specified peril, we** do cover the loss or damage caused by that **specified peril.**

j. **Theft From An Unattended Vehicle – We** do not pay for theft from an unattended vehicle except when it is securely locked, its windows are fully closed, and there is visible evidence that entry into the vehicle was forced.

   This exclusion does not apply to covered property in the custody of a carrier for hire.

## BADGER MUTUAL INSURANCE COMPANY

k. **Voluntary Parting – We** do not pay for loss caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

l. **Wear And Tear – We** do not pay for loss caused by wear and tear.

### WHAT MUST BE DONE IN CASE OF LOSS

1. **Notice –** In case of a loss, **you** must:

   a. give **us** or **our** agent prompt notice including a description of the property involved (**we** may request written notice); and

   b. give notice to the police when the act that causes the loss is a crime.

2. **You Must Protect Property – You** must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss.

   a. **Payment Of Reasonable Costs – We** do pay the reasonable costs incurred by **you** for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property. **You** must keep an accurate record of such costs. **Our** payment of reasonable costs does not increase the **limit**.

   b. **We Do Not Pay – We** do not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against.

3. **Proof Of Loss – You** must send **us**, within 60 days after **our** request, a signed, sworn proof of loss. This must include the following information:

   a. the time, place, and circumstances of the loss;

   b. other policies of insurance that may cover the loss;

   c. **your** interest and the interests of all others in the property involved, including all mortgages and liens;

   d. changes in title of the covered property during the policy period; and

   e. estimates, specifications, inventories, and other reasonable information that **we** may require to settle the loss.

4. **Examination – You** must submit to examination under oath in matters connected with the loss as often as **we** reasonably request and give **us** sworn statements of the answers. If more than one person is examined, **we** have the right to examine and

receive statements separately and not in the presence of others.

5. **Records – You** must produce records, including tax returns and bank microfilms of all cancelled checks relating to value, loss, and expense and permit copies and extracts to be made of them as often as **we** reasonably request.

6. **Damaged Property – You** must exhibit the damaged and undamaged property as often as **we** reasonably request and allow **us** to inspect or take samples of the property.

7. **Volunteer Payments – You** must not, except at **your** own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

8. **Abandonment – You** may not abandon the property to **us** without **our** written consent.

9. **Cooperation – You** must cooperate with **us** in performing all acts required by this policy.

### VALUATION

1. **Scheduled Amount –** The value of covered property is based on the **limit** indicated for each item described on the **schedule of coverages**.

2. **Pair Or Set –** The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

3. **Loss To Parts –** The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

### HOW MUCH WE PAY

1. **Insurable Interest – We** do not cover more than **your** insurable interest in any property.

2. **Deductible – We** pay only that part of **your** loss over the deductible amount indicated on the **schedule of coverages** in any one occurrence.

3. **Loss Settlement Terms –** Subject to paragraphs 1., 2., 4., and 5. under How Much We Pay, we pay the lesser of:

   a. the amount determined under Valuation;

   b. the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

   c. the **limit** that applies to the covered property.

# BADGER MUTUAL INSURANCE COMPANY

4. **Insurance Under More Than One Coverage** – If more than one coverage of this policy insures the same loss, we pay no more than the actual claim, loss, or damage sustained.

5. **Insurance Under More Than One Policy** –

   a. **Proportional Share** – **You** may have another policy subject to the same **terms** as this policy. If **you** do, **we** will pay **our** share of the covered loss. **Our** share is the proportion that the applicable limit under this policy bears to the limit of all policies covering on the same basis.

   b. **Excess Amount** – If there is another policy covering the same loss, other than that described above, **we** pay only for the amount of covered loss in excess of the amount due from that other policy, whether **you** can collect on it or not. But **we** do not pay more than the applicable limit.

## LOSS PAYMENT

1. **Loss Payment Options** –

   a. **Our Options** – In the event of loss covered by this coverage form, **we** have the following options:

      1) pay the value of the lost or damaged property;

      2) pay the cost of repairing or replacing the lost or damaged property;

      3) rebuild, repair, or replace the property with other property of equivalent kind and quality, to the extent practicable, within a reasonable time; or

      4) take all or any part of the property at the agreed or appraised value.

   b. **Notice Of Our Intent To Rebuild, Repair, Or Replace** – **We** must give **you** notice of **our** intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

2. **Your Losses** –

   a. **Adjustment And Payment Of Loss** – **We** adjust all losses with **you**. Payment will be made to **you** unless another loss payee is named in the policy.

   b. **Conditions For Payment Of Loss** – An insured loss will be payable 30 days after:

      1) a satisfactory proof of loss is received; and

      2) the amount of the loss has been established either by written agreement with **you** or the filing of an appraisal award with **us**.

3. **Property of Others** –

   a. **Adjustment And Payment Of Loss To Property Of Others** – Losses to property of others may be adjusted with and paid to:

      1) **you** on behalf of the owner; or

      2) the owner.

   b. **We Do Not Have To Pay You If We Pay The Owner** – If **we** pay the owner, **we** do not have to pay **you**. **We** may also choose to defend any suits brought by the owners at **our** expense.

## OTHER CONDITIONS

1. **Appraisal** – If **you** and **we** do not agree on the amount of the loss or the value of covered property, either party may demand that these amounts be determined by appraisal.

   If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the property is located to select an umpire.

   The appraisers will then determine and state separately the amount of each loss.

   The appraisers will also determine the value of covered property items at the time of the loss, if requested.

   If the appraisers submit a written report of any agreement to **us**, the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three, sets the amount of the loss.

   Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by **you** and **us**.

2. **Benefit To Others** – Insurance under this coverage will not directly or indirectly benefit anyone having custody of **your** property.

3. **Conformity With Statute** – When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

4. **Estates** – This provision applies only if the insured is an individual.

   a. **Your Death** – On **your** death, **we** cover the following as an insured:

# BADGER MUTUAL INSURANCE COMPANY

1) the person who has custody of **your** property until a legal representative is qualified and appointed; or

2) **your** legal representative.

This person or organization is an insured only with respect to property covered by this coverage.

b. **Policy Period Is Not Extended** – This coverage does not extend past the policy period indicated on the declarations.

5. **Misrepresentation, Concealment, Or Fraud** – This coverage is void as to **you** and any other insured if, before or after a loss:

a. **you** or any other insured have willfully concealed or misrepresented:

1) a material fact or circumstance that relates to this insurance or the subject thereof; or

2) **your** interest herein; or

b. there has been fraud or false swearing by **you** or any other insured with regard to a matter that relates to this insurance or the subject thereof.

6. **Policy Period** – **We** pay for a covered loss that occurs during the policy period.

7. **Recoveries** – If **we** pay **you** for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

a. **you** must notify **us** promptly if **you** recover property or receive payment;

b. **we** must notify **you** promptly if **we** recover property or receive payment;

c. any recovery expenses incurred by either are reimbursed first;

d. **you** may keep the recovered property but **you** must refund to **us** the amount of the claim paid, or any lesser amount to which **we** agree; and

e. if the claim paid is less than the agreed loss due to a deductible or other limiting **terms** of this policy, any recovery will be pro rated between **you** and **us** based on **our** respective interest in the loss.

8. **Restoration Of Limits** – A loss **we** pay under this coverage does not reduce the applicable **limits**.

9. **Subrogation** – If **we** pay for a loss, **we** may require **you** to assign to **us your** right of recovery against others. **You** must do all that is necessary to secure **our** rights. **We** do not pay for a loss if **you** impair this right to recover.

**You** may waive **your** right to recover from others in writing before a loss occurs.

10. **Suit Against Us** – No one may bring a legal action against **us** under this coverage unless:

a. all of the **terms** of this coverage have been complied with; and

b. the suit has been brought within two years after **you** first have knowledge of the loss.

If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by law.

11. **Territorial Limits** – **We** cover property while it is in the United States of America, its territories and possessions, Canada, and Puerto Rico.

12. **Carriers For Hire** – **You** may accept bills of lading or shipping receipts issued by carriers for hire that **limit** their liability to less than the actual cash value of the covered property.

 Copyright, American Association of Insurance Services, Inc., 2004

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
LL-300 Ed. 9-98
## LIQUOR LIABILITY COVERAGE FORM

Various provisions in this form restrict coverage. Read the entire form carefully to determine rights, duties and what is and is not covered.

Throughout this form the words **you** and **your** refer to the Named **Insured** shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words **we**, **us**, and **our** refer to the Company providing this insurance.

The word **Insured** means any person or organization qualifying as such under WHO IS AN INSURED (Section II).

Other words and phrases that appear in bold print have special meaning. Refer to DEFINITIONS (Section V).

## SECTION I - LIQUOR LIABILITY COVERAGE

1. **Insuring Agreement**

   a. We will pay those sums that the **insured** becomes legally obligated to pay as damages because of **injury** to which this insurance applies if liability for such **injury** is imposed on the **insured** by reason of the selling, serving, or furnishing of alcoholic beverages. **We** will have the right and duty to defend the **Insured** against any suit seeking those damages. However, **we** will have no duty to defend the **insured** against any suit seeking damages for **injury** to which this insurance does not apply. **We** may, at **our** discretion, investigate any **injury** and settle any claim or suit that may result. But:

      (1) The amount **we** will pay for damages is limited as described in LIMITS OF INSURANCE (Section III); and

      (2) **Our** right and duty to defend end when **we** have used up the applicable limit of insurance in the payment of judgments or settlements, or after such limit of insurance has been tendered for settlements.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS.

   b. This insurance applies to **injury** which occurs during the policy period in the **coverage territory**.

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected or Intended Injury**

      **Injury** expected or intended from the standpoint of the **insured**. This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

   b. **Workers Compensation and Similar Laws**

      Any obligation of the **Insured** under a workers compensation, disability benefits or unemployment compensation law or any similar law.

   c. **Employer's Liability**

      **Bodily injury** to:

      (1) an **employee** of the **insured** arising out of and in the course of:

         (a) Employment by the **insured**; or

         (b) Performing duties related to the conduct of the **insured's** business; or

      (2) The spouse, child, parent, brother or sister of that **employee** as a consequence of paragraph (1) above.

      This exclusion applies:

      (1) Whether the **Insured** may be liable as an employer or in any other capacity; and

      (2) To any obligation to share damages with or repay someone else who must pay damages because of the **Injury**.

   d. **Liquor License Not in Effect**

      **Injury** arising out of any alcoholic beverage sold, served, or furnished while any required license is suspended or after such license expires, is cancelled or revoked.

   e. **Your Product**

      **Injury** arising out of **your product**. This exclusion does not apply to **injury** for which the **insured** or the **insured's** indemnities may be liable by reason of:

      (1) Causing or contributing to the intoxication of any person;

      (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

      (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

LL-300 Ed. 9-98

# BADGER MUTUAL INSURANCE COMPANY

**f.  Other Insurance**

Any **injury** with respect to which other insurance is afforded, or would be afforded but for the exhaustion of the limits of insurance.

This exclusion does not apply if the other insurance responds to liability for **injury** imposed on the **insured** by reason of the selling, serving, or furnishing of any alcoholic beverage.

## SUPPLEMENTARY PAYMENTS

**We** will pay, with respect to any claim **we** investigate or settle, or any suit against an **insured we** defend:

1.  All expenses **we** incur.

2.  The cost of bonds to release attachment, but only for bond amounts within the applicable limit of insurance. **We** do not have to furnish these bonds.

3.  All reasonable expenses incurred by the **insured** at **our** request to assist **us** in the investigation or defense of the claim or suit, including actual loss of earnings up to $250 a day because of time off from work.

4.  All costs taxed against the **insured** in the suit.

5.  Prejudgment interest awarded against the **insured** on that part of the judgment **we** pay. If **we** make an offer to pay the applicable limit of insurance, **we** will not pay any prejudgment interest based on that period of time after the offer.

6.  All interest on the full amount of any judgment that accrues on that part of the judgment and before **we** have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

7.  Expenses incurred by the **insured** for first aid administered to others at the time of an event to which this insurance applies.

These payments will not reduce the limits of insurance.

## SECTION II - WHO IS AN INSURED

1.  If **you** are designated in the Declarations as:

    a. An individual, **you** and **your** spouse are **insureds**.

    b.  A partnership or joint venture, **you** are an **insured**. **Your** members, **your** partners, and their spouses are also **insureds**, but only with respect to the conduct of business.

    c.  A limited liability company, **you** are an **insured**. **Your** members are also **insureds**, but only with respect to the conduct of **your** business. **Your** managers are **insureds**, but only with respect to their duties as **your** managers.

    d.  An organization other than a partnership, joint venture, or limited liability company, **you** are an **insured**. **Your** executive officers and directors are **insureds**, but only with respect to their duties as **your** officers or directors. **Your** stockholders are also **insureds**, but only with respect to their liability as stockholders.

2.  Each of the following is also an **insured**:

    a.  **Your employees**, or other than either **your executive officers** (if **you** are an organization other than a partnership, joint venture or limited liability company) or **your** managers (if **you** are a limited liability company), but only for acts within the scope of their employment by **you** or while performing duties related to the conduct of **your** business. However, none of these **employees** is an **insured** for:

        (1)  **Injury**:

            (a)  To **you**, to **your** partners or members (if **you** are a partnership or joint venture), to **your** members (if **you** are a limited liability company), or a co-employee while that co-employee is either in the course of his or her employment or performing duties related to the conduct of **your** business;

            (b)  To the spouse, child, parent, brother or sister of that co-employee as a consequence of paragraph (1)(a) above; or

            (c)  For which there is an obligation to share damages with or repay someone else who must pay damages because of the **injury** described in paragraphs (1)(a) or (b) above.

        (2)  **Property damage** to property:

            (a)  Owned or occupied by, or

            (b)  Rented or loaned

            to that **employee**, any of **your** other **employees**, by any of **your** partners or members (if **you** are a partnership or joint venture), or by any of **your** members (if **you** are a limited liability company).

    b.  Any person or organization having proper temporary custody of **your** property if **you** die, but only:

        (1)  With respect to liability arising out of the maintenance or use of that property; and

        (2)  Until **your** legal representative has been appointed.

LL-300 Ed. 9-98

Page 2 of 5

# BADGER MUTUAL INSURANCE COMPANY

c. **Your** legal representative if **you** die, but only with respect to duties as such. That representative will have all **your** rights and duties under this Coverage Part.

3. Any organization **you** newly acquire or form, other than a partnership, joint venture or limited liability company, and over which **you** maintain ownership or majority interest, will qualify as a Named **Insured** if there is no other similar insurance available to the organization. However:

a. Coverage under this provision is afforded only until the 90th day after **you** acquire or form the organization or the end of the policy period, whichever is earlier; and

b. Coverage does not apply to **injury** that occurred before **you** acquired or formed the organization.

No person or organization is an **insured** with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named **Insured** in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most **we** will pay regardless of the number of:

a. **Insureds;**

b. Claims made or suits brought; or

c. Persons or organizations making claims or bringing suits.

d. The limit is the most **we** will pay for all **injury** sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance of an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - LIQUOR LIABILITY CONDITIONS

1. **Bankruptcy**

Bankruptcy or insolvency of the **insured** or of the **insured's** estate will not relieve **us** of **our** obligations under this Coverage Part.

2. **Duties In The Event Of Injury, Claim Or Suit**

a. **You** must see to it that **we** are notified as soon as practicable of any **injury** which may result in

a claim. To the extent possible, notice should include:

(1) How, when and where the **injury** took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any **injury** arising out of an occurrence.

b. If a claim is made or suit is brought against any **Insured, you** must:

(1) Immediately record the specifics of the claim or suit and the date received; and

(2) Notify **us** as soon as practicable.

c. **You** and any other involved **Insured** must:

(1) Immediately send **us** copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

(2) Authorize **us** to obtain records and other information;

(3) Cooperate with **us** in the investigation or settlement of the claim or defense against the suit; and

(4) Assist us, upon **our** request, in the enforcement of any right against any person or organization which may be liable to the **insured** because of **injury** to which this insurance may also apply.

d. No **insured** will, except at that **Insured's** own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without **our** consent.

3. **Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join **us** as a party or otherwise bring **us** into a suit asking for damages from the **Insured;** or

b. To sue **us** on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue **us** to recover on an agreed settlement or on a final judgment against an **insured** obtained after an actual trial; but **we** will not be liable for damages that are not payable under the terms of this Coverage part or that are in excess of the applicable limits of insurance. An agreed settlement means a settlement and release of liability signed by **us,** the **Insured** and the claimant or the claimant's legal representative.

LL-300 Ed. 9-98

# BADGER MUTUAL INSURANCE COMPANY

### 4. Other Insurance

If other valid and collectible insurance is available to the **insured** for a loss **we** cover under this Coverage Part, **our** obligations are limited as follows:

#### a. Primary Insurance

This insurance is primary. **Our** obligations are not affected unless any of the other insurance is also primary. Then, **we** will share with all that other insurance by the method described in **b.** below.

#### b. Method of Sharing

If all of the other insurance permits contribution by equal shares, **we** will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution, by equal shares, **we** will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

### 5. Premium Audit

a. **We** will compute all premiums for this Coverage part in accordance with **our** rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period **we** will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named **Insured**. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, **we** will return the excess to the first Named **Insured**.

c. The first Named **Insured** must keep records of the information **we** need for premium computation, and send **us** copies at such times as **we** may request.

### 6. Representations

By accepting this policy, **you** agree:

a. The statements in the Declarations are accurate and complete.

b. Those statements are based upon representations **you** made to **us**; and

c. **We** have issued this policy in reliance upon **your** representations.

### 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named **Insured**, this insurance applies:

a. As if each Named **Insured** were the only Named **Insured**; and

b. Separately to each **insured** against whom claim is made or suit is brought.

### 8. Transfer of Rights Of Recovery Against Others To Us

If the **insured** has rights to recover all or part of any payment **we** have made under this Coverage Part, those rights are transferred to **us**. The **insured** must do nothing after loss to impair them. At **our** request, the **insured** will bring suit or transfer those rights to **us** and help **us** enforce them.

### 9. When We Do Not Renew

If **we** decide not to renew this Coverage part, **we** will mail or deliver to the first Named **Insured** shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

1. **Bodily Injury** means **bodily injury**, sickness or disease sustained by a person, including death resulting from any of these at any time.

2. **Coverage territory** means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the **injury** does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

c. All parts of the world if:

(1) The **injury** arises out of

(a) Goods or products made or sold by **you** in the territory described in **a.** above; or

(b) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on **your** business; and

(2) The **Insured's** responsibility to pay damages is determined in a suit on the merits, in the territory described in **a.** above or in a settlement **we** agree to.

LL-300 Ed. 9-98

# BADGER MUTUAL INSURANCE COMPANY

3. **Employee** includes a leased workers. **Employee** does not include a temporary worker.

4. **Executive Officer** means a person holding any of the officer positions created by **your** charter, constitution, by-laws or any other similar governing document.

5. **Injury** means all damages, including damages because of **bodily injury** and **property damage**, and including damages for care, loss of services or loss of support.

6. **Leased worker** means a person leased to **you** by a labor leasing firm under an agreement between **you** and the labor leasing firm, to perform duties related to the conduct of **your** business. Leased worker does not include a temporary worker.

7. **Property damage** means:

   a. Physical **injury** to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical damage that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

8. **Suit** means a civil proceeding in which damages because of **injury** to which this insurance applies are alleged. **Suit** includes:

   a. An arbitration proceeding in which such damages are claimed and to which the **insured** must submit or does submit with **our** consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the **insured** submits with **our** consent.

9. **Temporary worker** means a person who is furnished to **you** to substitute for a permanent **employee** on leave or to meet season or short-term workload conditions.

10. **Your product** means:

    a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

       (1) **You**;

       (2) Others trading under **your** name; or

       (3) A person or organization whose business or assets **you** have acquired; and

    b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **Your product** includes:

    a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and

    b. The providing of or failure to provide warnings or instructions.

    **Your product** does not include vending machines or other property rented to or located for the use of others but not sold.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BADGER MUTUAL INSURANCE COMPANY
### LL-301 Ed. 9-98
## AMENDATORY ENDORSEMENT ILLINOIS
#### LIQUOR LIABILITY

Under the Conditions section of the Liquor Liability Policy, the Cancellation condition is deleted and replaced by:

**Cancellation — You** may cancel this policy by returning the policy to **us** or by giving **us** written notice and stating at what future date coverage is to stop.

**We** may cancel this policy by mailing **our** written notice of cancellation to **you** and any mortgagee or lienholder at the last mailing address known to **us.**

**We** will mail the notice to **you** and any mortgagee or lienholder at least ten days before the effective date of the cancellation when cancellation is for nonpayment of premium. For any other reason, **we** will mail the notice of cancellation to **you** and any mortgagee or lienholder at least 30 days prior to the effective date of the cancellation if the coverage has been in effect for more than 60 days.

If this policy has been in effect 60 days or more, or if it is a renewal of a policy issued by **us** effective immediately, **we** may cancel this policy only if one or more of the following reasons apply:

a.  nonpayment of premium;

b.  the policy was obtained through a material misrepresentation;

c.  any **insured** has violated any of the **terms** and conditions of the policy;

d.  the risk originally accepted has measurably increased;

e.  certification of the Director of the loss of reinsurance by the insurer which provided coverage to **us** for all or a substantial part of the underlying risk insured; or

f.  a determination by the Director that the continuation of the policy could place **us** in violation of the insurance laws of this state.

**Our** notice will include the reason or reasons for cancellation. **We** will also mail a copy of the notice to **your** broker, if known, or to the agent of record. Proof of mailing is sufficient proof of notice.

**Your** return premium, if any, will be calculated according to **our** rules. It will be refunded to **you** with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

**Nonrenewal — If we** decide not to renew this policy, **we** will mail **our** notice of nonrenewal to **you** at least 60 days before the end of the policy period or anniversary date.

**Our** notice will include the reasons for nonrenewal. **We** will also mail a copy of the notice to **your** broker, if known, or to the agent of record and any mortgagee or lienholder at the last mailing address known to **us.** Proof of mailing is sufficient proof of notice.

**Renewal — If we** decide to renew this policy with premium increases of 30% or higher, or impose changes in deductible or coverage that materially alter the policy, **we** will mail or deliver to **you** written notice of such increase or change in deductible or coverage at least 60 days prior to the renewal or anniversary date. Notification because of premium increase is not necessary where increases exceeding 30% are due to changed conditions or increased or broadened coverage.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BADGER MUTUAL INSURANCE COMPANY
LL-302 Ed. 9-98
## ILLINOIS LIQUOR LIABILITY ENDORSEMENT

The Liquor Liability Coverage Form LL-300 is revised as follows:

### Section I - Liquor Liability Coverage

1. Insuring Agreement

The following is added:

    c. This insurance applies to legal liability imposed by the Illinois Liquor Control Act. It covers **your** interest as shown in the declarations should **you** become legally liable to any person who is injured during the policy period in person, or property damage or means of support by any intoxicated person or in consequence of the intoxication of any person, provided the licensee named in the declarations shall have caused the intoxication in whole or in part of such person by the selling or serving of alcohol.

    d. In the event of a transfer of the ownership of the premises by **you** after the termination date of this insurance the coverage provided is hereby extended to such transferee to the extent that such transferee's interest of said premises may become legally liable under the Illinois Liquor Control Act.

2. Exclusions

    The following are added:

    g. to Owner - **We** will not indemnify **you** (as owner) against sums for the payment of which **you** may become liable to pay:

        (1) To the licensee;

        (2) As a result of injury to property belonging to, or leased to, or in the care, custody or control of **you** or the licensee.

    h. Exceptions to Licensee - **We** will not indemnify **you** (as licensee) against sums **you** may become liable to pay:

        (1) To any employee of or person acting on behalf of the Licensee who shall be injured in person or property or means of support as a result of his or her consumption of alcoholic liquor while engaged in the business of the Licensee; or

        (2) To any one as a result of injury or property belonging to, or leased to, or in the care, custody or control of **you** (as Licensee) or the Owner.

### Section III - Limits of Insurance

This section is replaced in its entirety by the following:

The combined single limit of liability shown in the declarations is the most **we** will pay in total for any one occurrence, or any one accident, or series of accidents or occurrences arising out of any one event or any one case of intoxication. The following items are covered within this combined single limit:

A. Bodily Injury - meaning physical injury sustained to ones person.

B. Loss of Means of Support or society for any person who shall be injured in means of support or loss of society on account of any one person's death, disability or failure to support or to provide society for any such persons.

C. Property Damage to any person who shall incur loss to property.

D. Loss involving any claim resulting from the selling or giving of alcoholic liquor prior to the inception of this policy. However, liability shall be limited to an amount no greater than this policy's limit, nor greater than the amount of liability carried under **your** policy in force at the time of such selling or giving.

If any other insurance is in force at the time of loss, covering any of the above items A, B, C or **our** liability is limited to our ratable proportions of such loss.

### Section V – Definitions

The following are added:

11. **Owner** means any person owning, renting, leasing or permitting the occupation of the premises either in their own right or in any fiduciary capacity, or having charge thereof as agent, general lessee, or receiver, but does not include any person engaged in the sale of alcoholic liquors. The provisions and exceptions contained in this policy, applicable to a Licensee, shall apply to an **Insured** engaged in selling or giving alcoholic liquors in premises owned by them.

12. **Licensee** means any person, firm, or corporation duly licensed to carry on the business of selling alcoholic liquors in the premises, in accordance with all laws and ordinances in force where such premises are located.

FILED DATE: 4/23/2026 11:10 AM  2026CH03888

Hearing Date: 6/23/2026 10:00 AM
Location: Court Room 2305
Judge: Jackson, Doretha Renee

FILED
4/23/2026 11:10 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH03888
Calendar, 11
37731804

FILED DATE: 4/23/2026 11:10 AM 2026CH03888

# EXHIBIT B

FILED DATE: 4/23/2026 11:10 AM  2026CH03888

# ADDENDUM

**Some internal notes, stamps or typing on the Declaration sheet may appear.  The intended use for these is internal only and may not have been a part of the policy received by the insured.**

**Policy fees, inspection fees or taxes, or additional instructional stamps may have appeared on the policy received by the insured but may not appear on this copy.**

**SCOTTSDALE INSURANCE COMPANY**®

Home Office:
One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office:
8877 North Gainey Center Drive • Scottsdale, Arizona 85258
1-800-423-7675
A STOCK COMPANY

In Witness Whereof, the Company has caused this policy to be executed and attested.

Secretary                                    President

The information contained herein replaces any similar information contained elsewhere in the policy.

UTS-COVPG (7-09)

FILED DATE: 4/23/2026 11:10 AM   2026CH03888



## SCOTTSDALE INSURANCE COMPANY®

## National Casualty Company

### Scottsdale Indemnity Company

## SCOTTSDALE
SURPLUS LINES INSURANCE COMPANY

## NOTICE TO POLICYHOLDERS
## RESTRICTIONS OF COVERAGE

This notice has been prepared in conjunction with the implementation of changes to your policy on the following form. It contains a brief synopsis of any significant broadenings, restrictions and clarifications of coverage that were made in the policy form and endorsement.

Please read your policy, and the endorsements attached to your policy, carefully.

**XL-1502 (4-02) [XLS-1502 (4-02), XLI-1502 (4-02), XLH-1502 (4-02)]—War Or Terrorism Exclusion**

**XL-1502-AK (5-02) [XLS-1502-AK (5-02)]—War Or Terrorism Exclusion—Alaska**

When this endorsement is attached to your policy:

- Coverage for injury or damages arising out of war, warlike action and similar events is excluded.

- Coverage for injury or damages arising out of terrorism is excluded only if:

  - The total of all damage to all types of property (including business interruption losses sustained by owners or occupants of damaged property), from a terrorism incident exceeds $25 million. The $25 million property damage threshold is based on losses sustained by all persons and entities who are affected by an incident of terrorism, and who are insured for the damage, or who would be insured but for a terrorism exclusion; or

  - Fifty or more persons sustain death or serious physical injury; or

    *(In applying the thresholds for property damage [$25 million] and death or serious physical injury [50 or more persons], multiple incidents of terrorism which occur within a seventy-two hour period and appear to be linked together or have a related purpose or common leadership behind them shall be considered to be one incident of terrorism.)*

  - The terrorism event involves nuclear materials or results in nuclear reaction or radiation or radioactive contamination; or

  - The terrorism event is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

  - The terrorism event involves the release of pathogenic or poisonous biological or chemical materials, and it appears that one purpose of the terrorism was to release such materials.

- In forms **XL-1502-AK** and **XLS-1502-AK** (Alaska), if "bodily injury" or "property damage" is caused by a chain of events, and the dominant cause of such "bodily injury" or "property damage" is not otherwise excluded, we will not deny coverage on the basis that a secondary cause of the "bodily injury" or "property damage" is excluded under this insurance.

See the definition of "terrorism" for purposes of the "terrorism" exclusion.

NOTX0145CW (5-02)

FILED DATE: 4/23/2026 11:10 AM 2026CH03888



# SCOTTSDALE INSURANCE COMPANY®

## National Casualty Company

### Scottsdale Indemnity Company



## SCOTTSDALE
**SURPLUS LINES INSURANCE COMPANY**

## NOTICE TO POLICYHOLDERS
## RESTRICTIONS OF COVERAGE

This notice has been prepared in conjunction with the implementation of changes to your policy on the following forms. It contains a brief synopsis of any significant restrictions and clarifications of coverage that were made in each policy form and endorsement.

Please read your policy, and the endorsements attached to your policy, carefully.

**CU 21 27—Fungi or Bacteria Exclusion (Commercial Liability Umbrella)**

When this endorsement is attached to your policy:

- Coverage is restricted to exclude bodily injury or property damage arising, directly or indirectly, out of any fungi, including but not limited to mold, or bacteria on or in a building or structure. This exclusion applies whether or not any other cause, event, material or product contributed in any sequence to the injury or damage.

- Coverage is clarified to exclude personal and advertising injury arising, directly or indirectly, out of any fungi, including but not limited to mold, or bacteria on or in a building or structure. This exclusion applies whether or not any other cause, event, material or product contributed in any sequence to the injury or damage.

- Coverage is restricted to exclude clean-up costs associated with fungi or bacteria.

The exclusion does not apply to fungi or bacteria intended for consumption, such as mushrooms.

**XL-1503—Fungi or Bacteria Exclusion (Excess Liability)**

When this endorsement is attached to your policy:

- Coverage is restricted to exclude injury or damages arising, directly or indirectly, out of any fungi, including but not limited to mold, or bacteria on or in a building or structure. This exclusion applies whether or not any other cause, event, material or product contributed in any sequence to the injury or damage.

- Coverage is restricted to exclude clean-up costs associated with fungi or bacteria.

The exclusion does not apply to fungi or bacteria intended for consumption, such as mushrooms.

NOTX0146CW (5-02)

FILED DATE: 4/23/2026 11:10 AM 2026CH03888



**National Casualty Company**

Scottsdale Indemnity Company



SURPLUS LINES INSURANCE COMPANY

## CLAIM REPORTING
## INFORMATION

Your insurance policy has been placed with the Scottsdale Insurance Group, a subsidiary of the Nationwide Insurance Company. The Scottsdale Insurance Group is a reliable, service-oriented group of companies that will help protect you against certain losses.

Our commitment to you is to provide fast, fair claim service. Promptly reporting an event that could lead to a claim, as required by your policy, helps us fulfill this commitment to you. Please refer to your policy for this and all other terms and conditions.

To report a claim, you may contact the Scottsdale Insurance Group 24 hours a day, 7 days a week, by calling 1-800-423-7675 or via our Web site at www.scottsdaleins.com.

Thank you for your business and as always, we appreciate the opportunity to serve you.

| HOW TO REPORT A CLAIM |
| --- |
| Call **1-800-423-7675** or visit our Web site at **www.scottsdaleins.com** |
| In order to expedite this process, please be prepared to furnish as much of the following information as possible:<br><br>• Your policy number<br><br>• Date, time and location of the loss/accident<br><br>• Details of the loss/accident<br><br>• Name, address and phone number of any involved parties<br><br>• If applicable, name of law enforcement agency or fire department along with the incident number<br><br>**Please refer to your policy for specific claim reporting requirements.** |

NOTX0178CW (2-06)

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

==== DECLARATIONS ====
**COMMERCIAL EXCESS LIABILITY POLICY**

NEW
Renewal of Number

**SCOTTSDALE INSURANCE COMPANY®**
Home Office:
One Nationwide Plaza Columbus, Ohio 43215
Administrative Office:
8877 North Gainey Center DriveScottsdale, Arizona 85258
1-800-423-7675
A STOCK COMPANY

**Policy Number**
XLS0065165

**ITEM 1.** NAMED INSURED AND MAILING ADDRESS:

BENNY'S PRIME CHOPHOUSE, LLC
444 N WABASH AVE
CHICAGO IL 60611

AGENT NAME AND ADDRESS:

BLISS & CLENNON MIDWEST
1100 JORIE BLVD STE 126
OAK BROOK IL 60523-2243

Agent No. 12728      Program No. NONE

**ITEM 2.** POLICY PERIOD      From: 02-17-2010      To: 02-17-2011

12:01 A.M. Standard Time at your mailing address.

In return for the payment of the premium, and subject to all the terms of this policy, we agree to provide you with the insurance as stated in this policy.

**ITEM 3.** THE NAMED INSURED IS: ☐ Individual  ☐ Partnership  ☐ Corporation  ☐ Joint Venture  ☒ Other

**ITEM 4.** LIMIT OF INSURANCE:

    A.   Each Occurrence        $ 3,000,000

    B.   Aggregate        $ 3,000,000

**ITEM 5.** SCHEDULE OF CONTROLLING UNDERLYING INSURANCE:

See Schedule of Controlling Underlying Insurance

**ITEM 6.** PREMIUM COMPUTATION:

Flat Premium        $ 3,000

Subject to Adjustment:

Estimated Deposit Premium        $

Estimated Exposure Base:

Rate:        Per:

Policy Minimum Premium        $

Audit Period: ☐ Annual  ☒ Other: WAIVED

**ITEM 7.** ENDORSEMENTS ATTACHED TO THE POLICY AT INCEPTION:

See Schedule of Forms and Endorsements

THIS COMMERCIAL EXCESS LIABILITY DECLARATIONS WITH THE COVERAGE FORM AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE-NUMBERED POLICY.

XLS-D-1 (11-08)

Home Office Copy

(Page 5 of 12)

# SCHEDULE OF FORMS AND ENDORSEMENTS

Policy No. XLS0065165

Effective Date: 02-17-10

12:01 A.M., Standard Time

Named Insured BENNY'S PRIME CHOPHOUSE, LLC

Agent No. 12728

## UMBRELLA/EXCESS FORMS AND ENDORSEMENTS

```
UTS-COVPG          07-09    COVER PAGE
NOTX0145CW         05-02    NOTICE/RESTRICTION OF COVERAGE
NOTX0146CW         05-02    NOTICE TO POLICYHOLDERS
NOTX0178CW         02-06    CLAIM REPORTING INFORMATION
XLS-D-1            11-08    EXCESS LIABILITY DECLARATION
UTS-SP-2L          12-95    SCHEDULE OF FORMS AND ENDORSEMENTS
XLS-SP-3           11-08    COMML EXCESS SCHED CONTROLNG UNDERLYING
CX 00 01           09-08    COMM EXCESS LIAB COVG FORM
CX 01 22           09-08    ILLINOIS CHANGES - DEFENSE COSTS
CX 02 14           09-08    IL CHANGES - CANC AND NON RENL
CX 21 01           09-08    NUCLEAR ENERGY LIAB EXCL BROAD FM
CX 21 02           09-08    TOTAL POLLUTION EXCLUSION
CX 21 33           09-08    EXCL CERTIFIED ACTS OF TERRORISM
UTS-119G           01-00    MINIMUM EARNED CANCELLATION PREMIUM
UTS-74G            08-95    PUNITIVE OR EXEMPLARY DAMAGE EXCL
XLS-0160           11-08    ASBESTOS EXCL
XLS-0270           11-08    CARE, CUSTODY, OR CONTROL EXCL
XLS-0380           11-08    CROSS LIAB EXCL
XLS-0410           11-08    DESIGNATED PREMISES ENDT
XLS-0432           11-08    DESIGNATED WORK EXCL - EXT INS & FIN SYS
XLS-0520           11-08    EMPLOYMENT-RELATED PRACTICES EXCL
XLS-0530           11-08    EMPLOYEES' RET INCOME SECURITY ACT EXCL
XLS-0795           11-08    KNOWN INJURY OR DAMAGE EXCLUSION
XLS-0821           11-08    LEAD CONTAMINATION EXCL.
XLS-1160           11-08    PROFESSIONAL LIABILITY EXCL.
XLS-1502           11-08    WAR LIABILITY EXCLUSION
XLS-1503           11-08    FUNGI OR BACTERIA EXCLUSION
XLS-2318           11-08    VIOLATION OF STATUTES THAT GOVERN E-MAIL
XLS-2322           11-08    UNDERLYING SUBLIMIT COVERAGE EXCLUSION
XLS-2339           11-08    AUTO LIABILITY EXCLUSION
XLS-2341           11-08    SILICA OR SILICA RELATED DUST EXCLUSION
UTS-9G             05-96    SERVICE OF SUIT CLAUSE
```

UTS-SP-2L (12-95)

Home Office Copy

2026CH03888   FILED DATE: 4/23/2026 11:10 AM



## SCOTTSDALE INSURANCE COMPANY®

### COMMERCIAL EXCESS LIABILITY
### SCHEDULE OF CONTROLLING UNDERLYING INSURANCE

Policy No.: XLS0065165          Effective Date: 02-17-10

12:01 A.M. Standard Time

Named Insured: BENNY'S PRIME CHOPHOUSE, LLC     Agent No.: 12728

---

**Type of Coverage:** UMBRELLA LIABILITY          **Applicable Limits:**

$2,000,000 EACH OCCURRENCE
$2,000,000 ANNUAL AGGREGATE
EXCESS OF PRIMARY

**Insurer:**
TRAVELERS
**Policy Number:**
ON FILE WITH COMPANY
**Policy Period:** 02/17/10 to 02/17/11     [X] Occurrence     [ ] Claims-Made

---

**Type of Coverage:** UMBRELLA LIABILITY          **Applicable Limits:**

**Insurer:**
NOT APPLICABLE
**Policy Number:**

**Policy Period:** _____ to _____     [ ] Occurrence     [ ] Claims-Made

---

**Type of Coverage:** UMBRELLA LIABILITY          **Applicable Limits:**

**Insurer:**
NOT APPLICABLE
**Policy Number:**

**Policy Period:** _____ to _____     [ ] Occurrence     [ ] Claims-Made

---

**Type of Coverage:** UMBRELLA LIABILITY          **Applicable Limits:**

**Insurer:**
NOT APPLICABLE
**Policy Number:**

**Policy Period:** _____ to _____     [ ] Occurrence     [ ] Claims-Made

XLS-SP-3 (11-08)

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

# COMMERCIAL EXCESS LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance. The word "insured" means any person or organization qualifying as such under the "controlling underlying insurance".

Other words and phrases that appear in quotation marks in this Coverage Part have special meaning. Refer to Section **IV** – Definitions. Other words and phrases that are not defined under this Coverage Part but defined in the "controlling underlying insurance" will have the meaning described in the policy of "controlling underlying insurance".

The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance", unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Coverage Part will apply. However, the coverage provided under this Coverage Part will not be broader than that provided by the applicable "controlling underlying insurance".

There may be more than one "controlling underlying insurance" listed in the Declarations and provisions in those policies conflict, and which are not superseded by the provisions of this Coverage Part. In such a case, the provisions, exclusions and limitations of the "controlling underlying insurance" applicable to the particular "event" for which a claim is made or suit is brought will apply.

## SECTION I – COVERAGES

**1. Insuring Agreement**

   **a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which insurance provided under this Coverage Part applies.

   We will have the right and duty to defend the insured against any suit seeking damages for such "injury or damage" when the applicable limits of "controlling underlying insurance" have been exhausted in accordance with the provisions of such "controlling underlying insurance".

When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other suit seeking damages for "injury or damage".

However, we will have no duty to defend the insured against any suit seeking damages for which insurance under this policy does not apply.

At our discretion, we may investigate any "event" that may involve this insurance and settle any resultant claim or suit, for which we have the duty to defend.

But:

   **(1)** The amount we will pay for "ultimate net loss" is limited as described in Section **II** – Limits Of Insurance; and

   **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under this Coverage Part. However, if the policy of "controlling underlying insurance" specifies that limits are reduced by defense expenses, our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of defense expenses, judgments or settlements under this Coverage Part.

   **b.** This insurance applies to "injury or damage" that is subject to an applicable "retained limit". If any other limit, such as, a sublimit, is specified in the "controlling underlying insurance", this insurance does not apply to "injury or damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "controlling underlying insurance".

   **c.** If the "controlling underlying insurance" requires, for a particular claim, that the "injury or damage" occur during its policy period in order for that coverage to apply, then this insurance will only apply to that "injury or damage" if it occurs during the policy period of this Coverage Part. If the "controlling underlying insurance" requires that the "event" causing the particular "injury or damage" takes place during its policy period in order for that coverage to apply, then this insurance will apply to the claim only if the "event" causing that "injury or damage" takes place during the policy period of this Coverage Part.

© ISO Properties, Inc., 2007

FILED DATE: 4/23/2026 11:10 AM 2026CH03888

**d.** Any additional insured under any policy of "controlling underlying insurance" will automatically be an additional insured under this insurance. If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance required by the contract, less any amounts payable by any "controlling underlying insurance".

Additional insured coverage provided by this insurance will not be broader than coverage provided by the "controlling underlying insurance".

## 2. Exclusions

The following exclusions, and any other exclusions added by endorsement, apply to this Coverage Part. In addition, the exclusions applicable to any "controlling underlying insurance" apply to this insurance unless superseded by the following exclusions, or superseded by any other exclusions added by endorsement to this Coverage Part.

Insurance provided under this Coverage Part does not apply to:

**a. Medical Payments**

Medical payments coverage or expenses that are provided without regard to fault, whether or not provided by the applicable "controlling underlying insurance".

**b. Auto**

Any loss, cost or expense payable under or resulting from any of the following auto coverages:

**(1)** First-party physical damage coverage;

**(2)** No-fault coverage;

**(3)** Personal injury protection or auto medical payments coverage; or

**(4)** Uninsured or underinsured motorists coverage.

**c. Pollution**

**(1)** "Injury or damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, pollutants.

This exclusion does not apply to the extent that valid "controlling underlying insurance" for the pollution liability risks described above exists or would have existed but for the exhaustion of underlying limits for "injury or damage".

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

## SECTION II – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations, and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or suits brought, or number of vehicles involved;

**c.** Persons or organizations making claims or bringing suits; or

**d.** Limits available under any "controlling underlying insurance".

**2.** The Limits of Insurance of this Coverage Part will apply as follows:

**a.** This insurance only applies in excess of the "retained limit".

**b.** The Aggregate Limit is the most we will pay for the sum of all "ultimate net loss", for all "injury or damage" covered under this Coverage Part.

However, this Aggregate Limit only applies to "injury or damage" that is subject to an aggregate limit of insurance under the "controlling underlying insurance".

**c.** Subject to Paragraph **2.b.** above, the Each Occurrence Limit is the most we will pay for the sum of all "ultimate net loss" under this insurance because of all "injury or damage" arising out of any one "event".

**d.** If the Limits of Insurance of the "controlling underlying insurance" are reduced by defense expenses by the terms of that policy, any payments for defense expenses we make will reduce our applicable Limits of Insurance in the same manner.

 © ISO Properties, Inc., 2007 CX 00 01 09 08 ☐

FILED DATE: 4/23/2026 11:10 AM  2026CH03888

3. If any "controlling underlying insurance" has a policy period that is different from the policy period of this Coverage Part then, for the purposes of this insurance, the "retained limit" will only be reduced or exhausted by payments made for "injury or damage" covered under this insurance.

The Aggregate Limit of this Coverage Part applies separately to each consecutive annual period of this Coverage Part and to any remaining period of this Coverage Part of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

### SECTION III – CONDITIONS

The following Conditions apply. In addition, the Conditions applicable to any "controlling underlying insurance" are also applicable to the coverage provided under this insurance unless superseded by the following conditions.

1. **Appeals**

   If the "controlling underlying insurer" or insured elects not to appeal a judgment in excess of the amount of the "retained limit", we may do so at our own expense. We will also pay for taxable court costs, pre- and postjudgment interest and disbursements associated with such appeal. In no event will this provision increase our liability beyond the applicable Limits of Insurance described in Section **II** – Limits Of Insurance.

2. **Bankruptcy**

   a. **Bankruptcy Of Insured**

      Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

   b. **Bankruptcy Of Controlling Underlying Insurer**

      Bankruptcy of the "controlling underlying insurer" will not relieve us of our obligations under this Coverage Part.

   However, insurance provided under this Coverage Part will not replace any "controlling underlying insurance" in the event of bankruptcy or insolvency of the "controlling underlying insurer". The insurance provided under this Coverage Part will apply as if the "controlling underlying insurance" were in full effect and recoverable.

3. **Duties In The Event Of An Event, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "event", regardless of the amount, which may result in a claim under this insurance. To the extent possible, notice should include:

      (1) How, when and where the "event" took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any "injury or damage" arising out of the "event".

   b. If a claim is made or suit is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or suit and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or suit as soon as practicable.

   c. You and any other insured involved must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the suit; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury or damage" to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

4. **First Named Insured Duties**

   The first Named Insured is the person or organization first named in the Declarations and is responsible for the payment of all premiums. The first Named Insured will act on behalf of all other Named Insureds for giving and receiving of notice of cancellation or the receipt of any return premium that may become payable.

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

At our request, the first Named Insured will furnish us, as soon as practicable, with a complete copy of any "controlling underlying insurance" and any subsequently issued endorsements or policies which may in any way affect the insurance provided under this Coverage Part.

**5. Cancellation**

  **a.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

  **b.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

  **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

  **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

  **c.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

  **d.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

  **e.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

  **f.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**6. Changes**

This Coverage Part contains all the agreements between you and us concerning the insurance afforded. The first Named Insured is authorized by all other insureds to make changes in the terms of this Coverage Part with our consent. This Coverage Part's terms can be amended or waived only by endorsement.

**7. Maintenance Of/Changes To Controlling Underlying Insurance**

Any "controlling underlying insurance" must be maintained in full effect without reduction of coverage or limits except for the reduction of aggregate limits in accordance with the provisions of such "controlling underlying insurance" that results from "injury or damage" to which this insurance applies.

Such exhaustion or reduction is not a failure to maintain "controlling underlying insurance". Failure to maintain "controlling underlying insurance" will not invalidate insurance provided under this Coverage Part, but insurance provided under this Coverage Part will apply as if the "controlling underlying insurance" were in full effect.

The first Named Insured must notify us in writing, as soon as practicable, if any "controlling underlying insurance" is cancelled, not renewed, replaced or otherwise terminated, or if the limits or scope of coverage of any "controlling underlying insurance" is changed.

**8. Other Insurance**

  **a.** This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

  When this insurance is excess, if no other insurer defends, we may undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

  **b.** When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

  **(1)** The total amount that all such other insurance would pay for the loss in the absence of the insurance provided under this Coverage Part; and

  **(2)** The total of all deductible and self-insured amounts under all that other insurance.

**9. Premium Audit**

  **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

  **b.** If this policy is auditable, the premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premium is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

  **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

   © ISO Properties, Inc., 2007   **CX 00 01 09 08**   ☐

10. **Loss Payable**

Liability under this Coverage Part does not apply to a given claim unless and until:

**a.** The insured or insured's "controlling underlying insurer" has become obligated to pay the "retained limit"; and

**b.** The obligation of the insured to pay the "ultimate net loss" in excess of the "retained limit" has been determined by a final settlement or judgment or written agreement among the insured, claimant, "controlling underlying insurer" (or a representative of one or more of these) and us.

11. **Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a suit asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured, "controlling underlying insurer" and the claimant or the claimant's legal representative.

12. **Transfer Of Defense**

**a. Defense Transferred To Us**

When the limits of "controlling underlying insurance" have been exhausted, in accordance with the provisions of "controlling underlying insurance", we may elect to have the defense transferred to us. We will cooperate in the transfer of control to us of any outstanding claims or suits seeking damages to which this insurance applies and which would have been covered by the "controlling underlying insurance" had the applicable limit not been exhausted.

**b. Defense Transferred By Us**

When our limits of insurance have been exhausted our duty to provide a defense will cease.

We will cooperate in the transfer of control of defense to any insurer specifically written as excess over this Coverage Part of any outstanding claims or suits seeking damages to which this insurance applies and which would have been covered by the "controlling underlying insurance" had the applicable limit not been exhausted.

In the event that there is no insurance written as excess over this Coverage Part, we will cooperate in the transfer of control to the insured and its designated representative.

13. **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION IV – DEFINITIONS

The definitions applicable to any "controlling underlying insurance" also apply to this insurance. In addition, the following Definitions apply.

1. "Controlling underlying insurance" means any policy of insurance or self-insurance listed in the Declarations under the Schedule of "controlling underlying insurance".

2. "Controlling underlying insurer" means any insurer who provides any policy of insurance listed in the Declarations under the Schedule of "controlling underlying insurance".

3. "Event" means an "occurrence", offense, accident, act, or other event, to which the applicable "controlling underlying insurance" applies.

4. "Injury or damage" means any injury or damage, covered in the applicable "controlling underlying insurance" arising from an "event".

5. "Retained limit" means the available limits of "controlling underlying insurance" applicable to the claim.

6. "Ultimate net loss" means the total sum, after reduction for recoveries, or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of:

   **a.** Settlements, judgments, binding arbitration; or

   **b.** Other binding alternate dispute resolution proceeding entered into with our consent.

"Ultimate net loss" includes defense expenses if the "controlling underlying insurance" specifies that limits are reduced by defense expenses.

FILED DATE: 4/23/2026 11:10 AM 2026CH03888

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

**COMMERCIAL EXCESS LIABILITY**
**CX 01 22 09 08**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE PART

The following is added to the Insuring Agreement of **Section I – Coverages:**

If we initially defend an insured or pay for an insured's defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

COMMERCIAL EXCESS LIABILITY
CX 02 14 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE PART

**A.** Paragraph **5. Cancellation** of **Section III – Conditions** is replaced by the following:

**CANCELLATION**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing to you written notice stating the reason for cancellation. If we cancel:

   **a.** For nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   **b.** For a reason other than nonpayment of premium, we will mail the notice at least:

   **(1)** 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

   **(2)** 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

**3.** If this policy has been in effect for more than 60 days or is a renewal or continuation policy, we may cancel only for one or more of the following reasons:

   **a.** Nonpayment of premium;

   **b.** The policy was obtained through a material misrepresentation;

   **c.** Any insured has violated any of the terms and conditions of the policy;

   **d.** The risk originally accepted has measurably increased;

   **e.** Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   **f.** A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** Paragraph **13. When We Do Not Renew** of **Section III – Conditions** is replaced by the following:

If we decide not to renew or continue this policy, we will mail you and your agent or broker written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

**C. Mailing Of Notices**

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

**CX 02 14 09 08**      © ISO Properties, Inc., 2007      **Page 1 of 1**

COMMERCIAL EXCESS LIABILITY
CX 21 01 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (BROAD FORM)

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2.**, **Exclusions:**

**2. Exclusions**

**NUCLEAR ENERGY LIABILITY**

**a.** Under any Liability Coverage, to "injury or damage":

  **(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

  **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**b.** Under any Liability Coverage, to "injury or damage" resulting from "hazardous properties" of "nuclear material", if:

  **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or **(b)** has been discharged or dispersed therefrom;

  **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

  **(3)** The "injury or damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to property damage to such "nuclear facility" and any property thereat.

**c.** As used in this endorsement:

  "Hazardous properties" includes radioactive, toxic or explosive properties.

  "Nuclear material" means "source material", "special nuclear material" or "by-product material".

  "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

  "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

  "Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

  "Nuclear facility" means:

  **(a)** Any "nuclear reactor";

  **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**CX 21 01 09 08**                    © ISO Properties, Inc., 2007                    **Page 1 of 2**

FILED DATE: 4/23/2026 11:10 AM 2026CH03888

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Injury or damage" includes all forms of radioactive contamination of property.

  © ISO Properties, Inc., 2007  CX 21 01 09 08  ☐

COMMERCIAL EXCESS LIABILITY
CX 21 02 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE PART

Exclusion **c.** under Paragraph **2. Exclusions** of **Section I – Coverages** is replaced by the following:

This insurance does not apply to:

**c. Pollution**

**(1)** "Injury or damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time; or

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, pollutants.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE PART

Any endorsement addressing acts of terrorism (however defined) in any "controlling underlying insurance" does not apply to this excess insurance. The following provisions addressing acts of terrorism apply with respect to this excess insurance:

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

© Insurance Services Office, Inc., 2008

SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

Attached to and forming a part of

Policy No. XLS0065165

Named Insured BENNY'S PRIME CHOPHOUSE, LLC

Endorsement Effective Date 02-17-10

12:01 A.M., Standard Time

Agent No. 12728

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MINIMUM EARNED CANCELLATION PREMIUM

The following provision is added to the Cancellation Condition:

If You request cancellation of this policy, We will retain not less than 25% of the original premium.

_____                    ___/_____

AUTHORIZED REPRESENTATIVE                                       DATE

UTS-119g (1-00)

Home Office Copy

SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION

In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.

Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action; however, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

_____ / _____

AUTHORIZED REPRESENTATIVE                DATE

UTS-74g (8-95)

FILED DATE: 4/23/2026 11:10 AM    2026CH03888

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS LIABILITY COVERAGE FORM**

The following exclusion is added to paragraph **2. Exclusions:**

Insurance provided under this Coverage Part does not apply to:

**Asbestos**

a. "Injury or damage" in any way or to any extent arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

b. Any economic loss, diminution of property value, abatement costs, or any other loss, cost or expense including equitable relief, in any way or to any extent arising out of or involving asbestos, asbestos fibers or any product containing asbestos or asbestos fibers.

c. Any fees, fines, costs, or expenses of any nature whatsoever in the investigation or defense of any claim or suit arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

AUTHORIZED REPRESENTATIVE                    DATE

XLS-0160 (11-08)

Page 1 of 1

SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CARE, CUSTODY OR CONTROL EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS LIABILITY COVERAGE FORM**

The following exclusion is added to paragraph **2. Exclusions:**

Insurance provided under this Coverage Part does not apply to:

**Care, Custody Or Control**

Any "injury or damage" for property damage to any property:

1. You own, rent, lease, occupy or use;

2. In your care, custody or control; or

3. As to which you are for any purpose exercising physical control.

AUTHORIZED REPRESENTATIVE                          DATE

XLS-0270 (11-08)                          Page 1 of 1

**SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CROSS LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS LIABILITY COVERAGE FORM**

The following exclusion is added to paragraph **2. Exclusions:**

Insurance provided under this Coverage Part does not apply to:

**Cross Liability**

Any "injury or damage" arising out of any claim or suit brought by any insured against another insured.

AUTHORIZED REPRESENTATIVE                    DATE

XLS-0380 (11-08)                    Page 1 of 1



| | ENDORSEMENT |
|---|---|
| SCOTTSDALE INSURANCE COMPANY® | NO. _____ |

| Attached to and forming a part of | Endorsement Effective Date 02-17-10 |
|---|---|
| Policy No.  XLS0065165 | 12:01 A.M., Standard Time |
| Named Insured  BENNY'S PRIME CHOPHOUSE, LLC | Agent No.  12728 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## DESIGNATED PREMISES ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL EXCESS LIABILITY COVERAGE FORM

Coverage applies only to "injury or damage" arising out of the ownership, maintenance or use of premises shown in the **Schedule** below and operations necessary or incidental to those premises.

### SCHEDULE

**Description and Location of Premises:**

444 N WABASH AVE, CHICAGO, IL  60611

XLS-0410 (11-08)                                          Page 1 of 1

Home Office Copy

FILED DATE: 4/23/2026 11:10 AM  2026CH03888

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## DESIGNATED WORK EXCLUSION—EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS LIABILITY COVERAGE FORM**

The following is added to paragraph **2. Exclusions:**

Insurance provided under this Coverage Part does not apply to:

**Designated Work—Exterior Insulation And Finish Systems**

"Injury or damage" included in the products-completed operations hazard as defined in the "controlling underlying insurance" and arising out of your work or operations or liability assumed by any insured under any contract, agreement or warranty described as:

**1.** The design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction or replacement of an "exterior insulation and finish system" (commonly referred to as synthetic stucco) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a system.

**2.** Any work or operation with respect to any exterior component, fixture or feature of any structure if any "exterior insulation and finish system" is used on any part of that structure.

For purposes of this endorsement, "exterior insulation and finish system" means an exterior cladding or finish system used on any part of any structure, and consisting of:

**1.** A rigid or semi-rigid insulation board made of expanded polystyrene or other materials;

**2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**3.** A reinforced base coat; and

**4.** A finish coat providing surface texture and color.

AUTHORIZED REPRESENTATIVE                    DATE

XLS-0432 (11-08)                    Page 1 of 1


SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
|  |  |  |  |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

### COMMERCIAL EXCESS LIABILITY COVERAGE FORM

Insurance provided under Coverage Part does not apply to:

**Employment-Related Practices**

"Injury or damage" to:

**a.** A person arising out of any:

**(1)** Refusal to employ that person;

**(2)** Termination of that person's employment; or

**(3)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**b.** The spouse, child, parent, brother or sister of that person as a consequence of "injury or damage" to

that person at whom any of the employment-related practices described in paragraphs **(1), (2)** or **(3)** above is directed.

This exclusion applies whether the injury-causing event described in paragraphs **(1), (2)** or **(3)** above occurs before employment, during employment or after employment of that person.

This exclusion applies:

**1.** Whether the insured may be liable as an employer or in any other capacity; and

**2.** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

AUTHORIZED REPRESENTATIVE                    DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1992

XLS-0520 (11-08)                    Page 1 of 1



SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYEES' RETIREMENT INCOME SECURITY ACT EXCLUSION (E.R.I.S.A.)

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS LIABILITY COVERAGE FORM**

The following exclusion is added to paragraph **2. Exclusions:**

Insurance provided under this Coverage Part does not apply to:

**Employees' Retirement Income Security Act**

Any obligation of the insured under the Employees' Retirement Income Security Act (E.R.I.S.A.), and any amendments thereto or any similar federal, state or local statute.

AUTHORIZED REPRESENTATIVE                    DATE

XLS-0530 (11-08)                    Page 1 of 1

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
|  |  |  |  |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## KNOWN INJURY OR DAMAGE EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS LIABILITY COVERAGE FORM**

The following exclusion is added to paragraph **2. Exclusions:**

Insurance provided under this Coverage Part does not apply to:

**Known Injury Or Damage**

"Injury or damage" arising out of an occurrence, offense or accident which was known to any insured prior to the policy period.

For the purposes of this exclusion, "injury or damage" is known if, prior to the policy period, any insured authorized by you to give or receive notice of an occurrence, offense or accident knew that the "injury or damage" had occurred, in whole or in part.

If such insured knew, prior to the policy period that the "injury or damage" occurred, then any continuation, change or resumption of such "injury or damage" during or after the policy period will be deemed to have been known prior to the policy period.

_____     _____/_____
AUTHORIZED REPRESENTATIVE                          DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

XLS-0795 (11-08)                          Page 1 of 1

**SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
|  |  |  |  |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LEAD CONTAMINATION EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS LIABILITY COVERAGE FORM**

Insurance provided under this Coverage Part does not apply to:

**Lead Contamination**

    **a.** To any "injury or damage" arising out of the ingestion, inhalation or absorption of lead in any form.

    **b.** Any loss, cost or expense arising out of any:

        **(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

        **(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

_____  / _____
AUTHORIZED REPRESENTATIVE              DATE

XLS-0821 (11-08)             Page 1 of 1

FILED DATE: 4/23/2026 11:10 AM  2026CH03888



**ENDORSEMENT NO.** _____

Attached to and forming a part of

Policy No.  XLS0065165

Named Insured  BENNY'S PRIME CHOPHOUSE, LLC

Endorsement Effective Date  02-17-10

12:01 A.M., Standard Time

Agent No.  12728

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PROFESSIONAL LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS LIABILITY COVERAGE FORM**

**SCHEDULE**

**Description of Professional Services:**

ALL PROFESSIONAL SERVICES OF ANY INSURED

The following exclusion is added to paragraph **2. Exclusions:**

Insurance provided under this Coverage Part does not apply to:

**Professional Liability**

"Injury or damage" arising out of the rendering or failure to render any professional service shown in the **Schedule** below.

_____      ____/_____

AUTHORIZED REPRESENTATIVE                          DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

XLS-1160 (11-08)                          Page 1 of 1

Home Office Copy

**SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS LIABILITY COVERAGE FORM**

The following exclusion is added to paragraph **2. Exclusions:**

Insurance provided under this Coverage Part does not apply to:

**War Liability**

Any "injury or damage" however caused, arising, directly or indirectly, out of:

  **a.** War, including undeclared or civil war; or

  **b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

  **c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

_____     _____
AUTHORIZED REPRESENTATIVE                    DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

XLS-1502 (11-08)                     Page 1 of 1

FILED DATE: 4/23/2026 11:10 AM 2026CH03888


**SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
|  |  |  |  |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

### COMMERCIAL EXCESS LIABILITY COVERAGE FORM

The following exclusion is added to paragraph **2. Exclusions:**

Insurance provided under this Coverage Part does not apply to:

**Fungi Or Bacteria**

a. Any "injury or damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such "injury or damage."

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

For purposes of this endorsement, the following definition applies:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

_____/_____
AUTHORIZED REPRESENTATIVE              DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS LIABILITY COVERAGE FORM**

The following exclusion is added to paragraph **2. Exclusions:**

Insurance provided under this Coverage Part does not apply to:

**Violation Of Statutes**

Any "injury or damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a.  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

b.  The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c.  Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

AUTHORIZED REPRESENTATIVE                           DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2005

XLS-2318 (11-08)                           Page 1 of 1

SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UNDERLYING SUBLIMIT COVERAGE EXCLUSION

This endorsement modifies insurance provided under the following:

### COMMERCIAL EXCESS LIABILITY COVERAGE FORM

The following exclusion is added to paragraph **2. Exclusions:**

Insurance provided under this Coverage Part does not apply to:

**Underlying Sublimit(s)**

An "event" covered in the "controlling underlying insurance" unless the "controlling underlying insurance" limit for "injury or damage" is at least equal to the Applicable Limits as shown on the Schedule Of Controlling Underlying Insurance.

_____                              _____/_____

AUTHORIZED REPRESENTATIVE                                         DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

XLS-2322 (11-08)                                        Page 1 of 1

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AUTO LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

### COMMERCIAL EXCESS LIABILITY COVERAGE FORM

The following exclusion is added to paragraph **2. Exclusions:**

Insurance provided under this Coverage Part does not apply to:

**Auto Liability**

Any "injury or damage" arising out of the ownership, maintenance, operation, use, loading or unloading or entrustment to others of any auto.

_____     /_____

AUTHORIZED REPRESENTATIVE       DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

### COMMERCIAL EXCESS LIABILITY COVERAGE FORM

Insurance provided under this Coverage Part does not apply to:

**Silica Or Silica-Related Dust**

a. "Injury or damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust."

b. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust," by any insured or by any other person or entity.

We will have no duty to defend the insured against any suit seeking damages to which this insurance does not apply.

With respect to this endorsement, the following definitions apply:

"Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

"Silica-related dust" means a mixture or combination of silica and other dust or particles.

_____ /
AUTHORIZED REPRESENTATIVE                    DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

XLS-2341 (11-08)                    Page 1 of 1

FILED DATE: 4/23/2026 11:10 AM   2026CH03888

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT**

NO._____

Attached to and forming a part of
Policy No. XLS0065165
Named Insured BENNY'S PRIME CHOPHOUSE, LLC

Endorsement Effective Date 02-17-10
12:01 A.M., Standard Time
Agent No. 12728

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due under this policy, the Company at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court. In a suit instituted against any one of them under this contract, the Company agrees to abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

Pursuant to any statute of any state, territory or district of the United States of America which makes a provision, the Company will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance).

The officer named below is authorized and directed to accept service of process on behalf of the Company:

DIRECTOR OF INSURANCE

320 W. WASHINGTON

SPRINGFIELD, IL 62767

Having accepted service of process on behalf of the Company, the officer is authorized to mail the process or a true copy to:

RECIPIENT NOT REQUIRED

_____
AUTHORIZED REPRESENTATIVE              DATE

UTS-9g (5-96)

Home Office Copy

FILED DATE: 4/23/2026 11:10 AM  2026CH03888

# CHANGE ENDORSEMENT NO. ___001___

Policy No. XLS0065165

Named Insured BENNY'S PRIME CHOPHOUSE, LLC

Effective Date: 02-17-10
12:01 A.M., Standard Time

Agent No. 12728

**COVERAGE PART INFORMATION - Coverage parts affected by this change as indicated by below. [X]**

- [ ] Commercial Property
- [ ] Commercial General Liability
- [ ] Commercial Crime
- [ ] Commercial Inland Marine
- [X] UMBRELLA _____                NO CHARGE
- [ ] _____

**CHANGE DESCRIPTION**

THIS POLICY IS AMENDED AS FOLLOWS:
THE FOLLOWING FORM(S) HAS BEEN AMENDED:
XLS-SP-3      11-08    COMML EXCESS SCHED CONTROLNG UNDERLYING

**PREMIUM CHANGE**

Additional $ NO CHARGE                          Return $ NO CHARGE

AUTHORIZED REPRESENTATIVE

UTS-244L (6-92)

Home Office Copy



**SCOTTSDALE INSURANCE COMPANY®**

## COMMERCIAL EXCESS LIABILITY
## SCHEDULE OF CONTROLLING UNDERLYING INSURANCE

Policy No.: **XLS0065165**                    Effective Date: **02-17-10**

                                                            12:01 A.M. Standard Time

Named Insured: **BENNY'S PRIME CHOPHOUSE, LLC**    Agent No.: **12728**

---

**Type of Coverage:** UMBRELLA LIABILITY    **Applicable Limits:**

                                            $2,000,000 EACH OCCURRENCE
                                            $2,000,000 ANNUAL AGGREGATE
**Insurer:**                                EXCESS OF PRIMARY
BADGER
**Policy Number:**
ON FILE WITH COMPANY
**Policy Period:** 02/17/10 to 02/17/11    [X] Occurrence    [ ] Claims-Made

---

**Type of Coverage:** UMBRELLA LIABILITY    **Applicable Limits:**

**Insurer:**
NOT APPLICABLE
**Policy Number:**

**Policy Period:** _____ to _____    [ ] Occurrence    [ ] Claims-Made

---

**Type of Coverage:** UMBRELLA LIABILITY    **Applicable Limits:**

**Insurer:**
NOT APPLICABLE
**Policy Number:**

**Policy Period:** _____ to _____    [ ] Occurrence    [ ] Claims-Made

---

**Type of Coverage:** UMBRELLA LIABILITY    **Applicable Limits:**

**Insurer:**
NOT APPLICABLE
**Policy Number:**

**Policy Period:** _____ to _____    [ ] Occurrence    [ ] Claims-Made

XLS-SP-3 (11-08)

FILED DATE: 4/23/2026 11:10 AM 2026CH03888

# CHANGE ENDORSEMENT NO. ___002___

Policy No. XLS0065165

Effective Date: 04-13-10

12:01 A.M., Standard Time

Named Insured BENNY'S PRIME CHOPHOUSE, LLC

Agent No. 12728

**COVERAGE PART INFORMATION - Coverage parts affected by this change as indicated by below.** [X]

- [ ] Commercial Property
- [ ] Commercial General Liability
- [ ] Commercial Crime
- [ ] Commercial Inland Marine
- [X] UMBRELLA _____ $ 4,245.00
- [ ] _____

**CHANGE DESCRIPTION**

THIS POLICY IS AMENDED AS FOLLOWS:

ITEM 4. LIMIT OF INSURANCE, ON THE DECLARATIONS PAGE, IS AMENDED TO READ:

A. EACH OCCURRENCE..........................$8,000,000

B. AGGREGATE..............................$8,000,000

ITEM 6. PREMIUM, ON THE DECLARATIONS PAGE, IS AMENDED TO READ $7,245.00.

**PREMIUM CHANGE**

Additional $ _____4,245.00_____      Return $ _____

AUTHORIZED REPRESENTATIVE

UTS-244L (6-92)

Home Office Copy

FILED DATE: 4/23/2026 11:10 AM 2026CH03888